1  LATHAM & WATKINS LLP
   Philip Perry (D.C. Bar No. 434278 - admitted)
2  Janice M. Schneider (D.C. Bar No. 472037)
   (application for *pro hac vice* pending)
3  555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
4  Telephone: (202) 637-2200
   Facsimile: (202) 637-2201
5  Email: phil.perry@lw.com
   Email: janice.schneider@lw.com
6  Holly J. Tate (Ca. Bar No. 237561)
   505 Montgomery Street, Suite 1900
7  San Francisco, California 94111-2562
   Telephone: (415) 391-0600
8  Facsimile: (415) 395-8095
   Email: holly.tate@lw.com
9
   ARENT FOX LLP
10 Stanley H. Abramson (D.C. Bar No. 217281)
   Rachel G. Lattimore (D.C. Bar No. 450975)
11 (applications for *pro hac vice* pending)
   1050 Connecticut Avenue, N.W.
12 Washington, D.C. 20036-5339
   Telephone: (202) 857-6000
13 Facsimile: (202) 857-6395
   Email: abramson.stanley@arentfox.com
14
   Attorneys for Proposed Intervenor-Defendant
15 Monsanto Company

16          **UNITED STATES DISTRICT COURT**
         **NORTHERN DISTRICT OF CALIFORNIA**
17           **SAN FRANCISCO DIVISION**

18 CENTER FOR FOOD SAFETY, *et al.*,          CASE NO. C-08-484 JSW

19          Plaintiffs,
                                              **MONSANTO COMPANY'S NOTICE**
20    v.                                      **OF MOTION AND MOTION TO**
                                              **INTERVENE; MEMORANDUM IN**
21 CHARLES CONNOR, *et al.*,                  **SUPPORT THEREOF**

22          Defendants,                       Date: June 6, 2008
                                              Time: 9:00 a.m.
23          and                               Place: 17th Floor, Courtroom 2
                                              Judge: Hon. Jeffrey S. White
24 MONSANTO COMPANY,

25          Proposed Intervenor-Defendant.

26

27

28

1

## <u>NOTICE OF MOTION AND MOTION TO INTERVENE</u>

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      Notice is hereby given that on June 6, 2008, at 9:00 a.m. or as soon thereafter as the case

4  may be heard, in the Courtroom of the Honorable Jeffrey S. White (Courtroom 2, 17th Floor),

5  Monsanto Company will and hereby does move to intervene as a defendant in the above-entitled

6  action.

7      With this Motion, Monsanto Company seeks an Order from the Court permitting the

8  company to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

9  This Motion is based upon this Notice of Motion and Motion to Intervene, the Memorandum in

10  Support thereof, the Declarations of David Berg, E. Joe Dahmer, Duane Grant, Michael Hofer,

11  Luther Markwart, Robert D. Nixon, Paulette Pierson, Ervin Schlemmer, Ronald W. Schneider,

12  Holly J. Tate, and Mark Wettstein, the Proposed Order, all pleadings and papers filed in this

13  action, and upon such matters the Court may entertain, including oral argument, at the time of

14  the hearing on this Motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

<u>**TABLE OF CONTENTS**</u>

3   NOTICE OF MOTION AND MOTION TO INTERVENE ......................................................... i

4   MEMORANDUM OF POINTS AND AUTHORITIES .................................................. ii

5   TABLE OF CONTENTS.................................................................................. ii

6   LIST OF DECLARATIONS IN SUPPORT................................................... iii

7   TABLE OF AUTHORITIES ................................................................. iv

8   SUMMARY OF ARGUMENT ................................................................ 1

9   BACKGROUND .................................................................................. 2

10              A.    Monsanto's Interests ................................................... 3

11              B.    Roundup Ready Sugarbeets ...................................... 3

12              C.    Deregulation................................................................ 4

13              D.    Plaintiffs' Claims ........................................................ 5

14   ARGUMENT ...................................................................................... 6

15   I.    MONSANTO SHOULD BE ALLOWED TO INTERVENE AT BOTH
16        THE NEPA MERITS AND NEPA REMEDY STAGES OF THIS SUIT...................... 6

17              A.    Monsanto Should Be Granted Permissive Intervention............................ 6

18              B.    Monsanto Is Entitled To Intervene As Of Right At The NEPA Remedy
                    Stage.......................................................................................... 10

19   II.   MONSANTO IS ENTITLED TO INTERVENE AS OF RIGHT UNDER
20        THE PPA. ................................................................................................... 10

21              A.    APHIS's Decision Deregulating Roundup Ready Sugarbeets Implicates
                    Significantly Protectable Interests. ........................................................ 11
22                        1.    Monsanto's interest in the unrestricted sale and
                              marketing of Roundup Ready sugarbeets ........................ 11
23                        2.    Monsanto's substantial, nonspeculative economic
                              interest in its intellectual property and contract
                              rights .............................................................................. 13
24                        3.    Monsanto's interest in defending agency action
                              initiated at Monsanto's request ....................................... 13
25
26              B.    The Relief Sought by Plaintiffs Will Impair Monsanto's Interests ......... 14

27              C.    Monsanto's Interests Are Not Adequately Represented By The Existing
                    Parties.................................................................................................. 14

28   CONCLUSION........................................................................................................ 15

NOTICE OF MOT. & MOT. TO INTERVENE;
                                                    MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

## **LIST OF DECLARATIONS IN SUPPORT**

Declaration of David Berg in Support of Grower/Processor Motion to Intervene

Declaration of E. Joe Dahmer

Declaration of Duane Grant in Support of Grower/Processor Motion to Intervene

Declaration of Michael Hofer in Support of Grower/Processor Motion to Intervene

Declaration of Luther Markwart in Support of Grower/Processor Motion to Intervene

Declaration of Robert D. Nixon in Support of Monsanto Company's Motion to Intervene

Declaration of Paulette Pierson, in Support of Monsanto Company's Motion to Intervene

Declaration of Ervin Schlemmer in Support of Grower/Processor Motion to Intervene

Declaration of Ronald W. Schneider, B.S., in Support of Monsanto Company's Motion to Intervene

Declaration of Holly J. Tate, in Support of Monsanto Company's Motion to Intervene

Declaration of Mark Wettstein in Support of Grower/Processor Motion to Intervene

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Apotex Inc. v. United States Food & Drug Administration,*
  508 F. Supp. 2d 78 (D.D.C. 2007) ..................................................................13

*Audubon Society of Portland v. United States Fish & Wildlife Service,*
  No. 04-670, 2004 WL 2026429 (D. Or. Sept. 10, 2004) .....................................7

*Center for Biological Diversity v. Leavitt,*
  No. 02-1580, 2004 WL 2940597 (N.D. Cal. Dec. 20, 2004)...........................10

*Center for Biological Diversity v. United States Bureau of Land Management,*
  No. 06-4884, 2007 WL 101705 (N.D. Cal. Jan. 11, 2007).............................7, 8

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) .........................................................................11

*Exxon Mobil Corp. v. Allapattah Services, Inc.,*
  545 U.S. 546 (2005).........................................................................................9

*Eyak Preservation Council v. United States Forest Service,*
  No. 03-180, 2003 WL 24085349 (D. Alaska Dec. 9, 2003)...............................7

*Forest Conservation Council v. United States Forest Service,*
  66 F.3d 1489 (9th Cir. 1995) ...............................................................10, 11, 14

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
  528 U.S. 167 (2000).........................................................................................9

*Greene v. United States,*
  996 F.2d 973, 976 (9th Cir. 1993) ...................................................................11

*Idaho Farm Bureau Federation v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995) .......................................................................1, 13

*Kleissler v. United States Forest Service,*
  157 F.3d 964 (3d Cir. 1998).........................................................................7, 15

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ..................................................................6, 7, 8

*Montana Wilderness Association v. McAllister,*
  Nos. 07-39 & 07-59, 2007 WL 4564175 (D. Mont. Dec. 20, 2007) ..............7, 8

*National Wildlife Federation v. United States Army Corps of Engineers,*
  188 F.R.D. 381 (D. Or. 1999) ..........................................................................12

*Natural Resources Defense Council, Inc. v. EPA,*
  99 F.R.D. 607 (D.D.C. 1983)...........................................................................12

*Pacific Rivers Council v. United States Forest Service,*
  No. 05-0953, 2005 WL 2671404 (E.D. Cal. Oct. 19, 2005)...............................7

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

*Prete v. Bradbury,*
    438 F.3d 949 (9th Cir. 2006) ...........................................................................14

*Protect Lake Pleasant, LLC v. Johnson,*
    No. 07-454, 2007 WL 1108916 (D. Ariz. Apr. 13, 2007) ...............................7, 9

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983) ...........................................................................14

*Sequoia Forestkeeper v. United States Forest Service,*
    No. 07-1690, 2008 WL 324013 (E.D. Cal. Feb. 5, 2008).................................1, 7

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993) ...............................................................9, 11, 12

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) ........................................................................13, 15

*Sierra Nevada Forest Protection Campaign v. Rey,*
    No. 05-0205, 2005 WL 2231548 (E.D. Cal. Sept. 14, 2005) ...........................7, 8

*South Yuba River Citizen's League v. National Marine Fisheries Service,*
    No. 06-2845, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007)................................12

*Southern California Edison Co. v. Lynch,*
    307 F.3d 794 (9th Cir. 2002) .............................................................................8

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) .................................................................... *passim*

*Stevens County v. United States Department of Interior,*
    No. 06-156, 2006 U.S. Dist. LEXIS 74730 (E.D. Wash. Oct. 3, 2006) ...................8, 9, 14

*Trbovich v. United Mine Workers,*
    404 U.S. 528, 538 n.10 (1972).........................................................................14

*United States v. City of Los Angeles,*
    288 F.3d 391 (9th Cir. 2002) ...........................................................................11

*Utah Association of Counties v. Clinton,*
    255 F.3d 1246 (10th Cir. 2001) .....................................................................7, 15

*Washington State Building & Construction Trades Council v. Spellman,*
    684 F.2d 627 (9th Cir. 1982) ...........................................................................14

*Wetlands Action Network v. United States Army Corps of Engineers,*
    222 F.3d 1105 (9th Cir. 2000) ........................................................................7, 10

*Wilderness Society v. Babbitt,*
    104 F. Supp. 2d 10 (D.D.C. 2000) .....................................................................7

1

**STATUTES, REGULATIONS AND RULES**

2   7 U.S.C. §§ 136 *et seq.*........................................................................................2

3   7 U.S.C. § 7711...................................................................................................12

4   21 U.S.C. §§ 301 *et seq.*....................................................................................2

5   28 U.S.C. § 1367(a)............................................................................................9

6   7 C.F.R. § 340.0.................................................................................................12

7   7 C.F.R. § 340.1.................................................................................................12

8   70 Fed. Reg. 13,007 (Mar. 17, 2005)..........................................................4, 14

9   Federal Rule of Civil Procedure 24(a)(2) ......................................................14

10  Federal Rule of Civil Procedure 24(b)(1) ........................................................6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. & MOT. TO INTERVENE;
        MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1

**SUMMARY OF ARGUMENT**

2      Proposed Intervenor-Defendant Monsanto Company ("Monsanto") owns intellectual

3    property rights in the technology used to produce Roundup Ready[1] sugarbeets—the product at

4    issue in this suit.  Together with its business partner and licensees, Monsanto has invested

5    millions of dollars to obtain regulatory clearances necessary to bring this product to market, and

6    to ensure that it is safe and reliable for consumers and the environment.  Following more than 10

7    years of testing and regulatory review by three separate federal agencies, the federal government

8    "deregulated" Roundup Ready sugarbeets in March 2005, specifically concluding that they are

9    safe and the same as conventional sugarbeets in all material respects.  Since 2005, Monsanto's

10   licensees have grown Roundup Ready sugarbeet seed crops.  Sugarbeet growers and processors

11   across this country, along with many others, have now invested in and are relying on Roundup

12   Ready sugarbeets for increased sugar yield, reduced herbicide use and other environmental and

13   efficiency benefits.  At this late date, the relief Plaintiffs seek in this suit could cause very

14   significant harm to thousands of farmers, their communities, Monsanto and others, and

15   potentially have very significant effects on the U.S. sugarbeet crop.  These interests must be

16   represented.

17      Courts in the Ninth Circuit repeatedly have granted permissive intervention to address the

18   merits of National Environmental Policy Act ("NEPA") claims (Claims One & Two) and

19   intervention as of right at the NEPA remedial stage.  *See, e.g.*, *Sequoia Forestkeeper v. U.S.*

20   *Forest Serv.*, No. 07-1690, 2008 WL 324013, at *3-5 (E.D. Cal. Feb. 5, 2008); *see also infra* at

21   7-8 & n.5.   Here, Monsanto's substantial, investment-backed economic interests in its

22   intellectual property and contractual rights are implicated directly.  Likewise, Monsanto is

23   entitled to intervene as of right to respond to Plaintiffs' Plant Protection Act ("PPA") claim

24   (Claim Three) because that Act directly regulates Monsanto and Monsanto initiated the

25   deregulation proceedings.  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.

26   2001); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995).

27

28   ---
     [1] ® Roundup and Roundup Ready are registered trademarks of Monsanto Technology LLC.

# **BACKGROUND**

This case is about Roundup Ready sugarbeets—a variety of sugarbeets engineered to produce a naturally occurring protein that confers resistance to the herbicide glyphosate. Farmers who grow Roundup Ready sugarbeets can apply a lower toxicity and lower risk herbicide, Roundup, to eliminate persistent weeds and bring to market a more valuable crop. Before crops such as Roundup Ready sugarbeets can be brought to market in the United States, review and clearance is required by three separate federal regulatory agencies:  the Federal Food and Drug Administration ("FDA"), the Environmental Protection Agency ("EPA"), and the Animal and Plant Health Inspection Service of the United States Department of Agriculture ("APHIS" or "USDA").  Schneider Decl. ¶¶ 10-11, 13, 15.  After 10 years of laboratory experiments and field tests, evaluation and regulatory review Roundup Ready sugarbeets cleared all of these hurdles.[2]  Pierson Decl. ¶ 38; Schneider Decl. ¶¶ 8, 12, 14, 16.  Among other things, the government concluded that Roundup Ready sugarbeets:

- are "just as safe" as conventional sugarbeets;
- will have "no significant impact on the human environment;"
- "exhibit no plant pathogenic properties;"
- are no more likely to become weeds than non-genetically engineered herbicide tolerant sugarbeets;
- will present "no adverse impact[] on raw or processed agricultural commodities;" and
- present "no significant potential to either harm organisms beneficial to the agricultural ecosystem . . . or to harm threatened and endangered species."

Tate Decl. Ex. B at 3.  Indeed, ten other countries and the European Union have approved import and sale of sugar and feed produced from Roundup Ready sugarbeets.  Schneider Decl. ¶ 17; Markwart Decl. ¶ 22; Berg Decl. ¶ 24.

---

[2] On August 7, 2004, the FDA completed its safety review of Roundup Ready sugarbeets under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ("FFDCA"), after concluding that it "is not materially different in composition, safety, or other relevant parameters from sugar beet now grown, marketed, and consumed."  Schneider Decl. ¶ 12; *id.* at Ex. B.  The EPA also approved the use of Roundup agricultural herbicides on Roundup Ready sugarbeets under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*, and established food safety "tolerances" for this crop under the FFDCA.  Schneider Decl. ¶ 14.

1

## A.    Monsanto's Interests

2     Monsanto owns intellectual property rights to the technology through which Roundup

3 Ready sugarbeets are produced, and is the developer and patent holder of the Roundup Ready

4 trait.  Nixon Decl. ¶ 7; Schneider Decl. ¶ 6.  Monsanto has invested millions of dollars in

5 obtaining the necessary government clearances to grow, market and sell the crop in the United

6 States, and approval to import and sell sugar from Roundup Ready sugarbeets in countries

7 abroad.  Schneider Decl. ¶ 7; *see also id.* ¶¶ 9, 17-19; Pierson Decl. ¶ 38.  USDA's approval of

8 Monsanto's petition to deregulate Roundup Ready sugarbeets is the subject matter of this suit.

9     KWS SAAT AG ("KWS") is Monsanto's exclusive technology partner for the

10 development and commercialization of Roundup Ready sugarbeets.  Nixon Decl. ¶¶ 8-9, 11.

11 Through contractual agreements with licensees, Monsanto receives a technology premium for

12 sales of all Roundup Ready sugarbeet seed sold for commercial planting.  Nixon Decl. ¶ 14.

13 Unless restrictions are imposed on Roundup Ready sugarbeets, Monsanto will collect tens of

14 millions of dollars in technology fees in 2008 and 2009, based on current projections.  *Id*. ¶ 14.

15

## B.    Roundup Ready Sugarbeets

16     Sugarbeets are a biennial crop that develop a large, succulent root—the "sugarbeet"—

17 during its first year or growing season.  Pierson Decl. ¶¶ 8, 9, 22, 26; Markwart Decl. ¶ 10; Berg

18 Decl. ¶ 20.  If allowed to vernalize over the winter, cold temperatures and other environmental

19 signals trigger the production of a seed stalk, and flowering and seed production will occur in the

20 second year.  Pierson Decl. ¶¶ 8, 9, 27, 28; Markwart Decl. ¶ 10.  Thus, it takes *multiple years* to

21 produce a supply of Roundup Ready sugarbeet *seed* to plant for a commercial sugarbeet crop.

22 Pierson Decl. ¶¶ 8, 9.  For example, sugarbeet seed planted in 2006 was harvested in 2007 and

23 sold for the 2008 commercial sugarbeet crop.  *Id.*; *see also* Dahmer Decl. ¶ 37 (seed crop for

24 2009 season planted in 2007).  The commercial sugarbeet crop is planted in the spring and

25 harvested in late summer of the same year (before it could produce seed).  Pierson Decl. ¶ 26

26 The sugarbeet is processed into refined sugar and other products, like molasses and dried pulp

27

28

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1    (used for animal feed).[3]  Pierson Decl. ¶¶ 22-23.  Thousands of farmers in 10 states are using

2    Roundup Ready sugarbeet seeds for the 2008 sugarbeet crop.  *Id*. ¶¶ 25-26.

3          **C.**     **Deregulation**

4          On November 19, 2003, Monsanto and KWS petitioned APHIS to deregulate Roundup

5    Ready sugarbeets.  70 Fed. Reg. 13,007 (Mar. 17, 2005).  This petition presented detailed

6    information on the biology of sugarbeets, in general, and Roundup Ready sugarbeets, in

7    particular.  Specifically, the petition addressed many of the issues bearing directly on the merits

8    of Plaintiffs' claims, including:  the potential for cross-pollination from Roundup Ready

9    sugarbeets to sugarbeet relatives, Tate Decl. Ex. A at 115-17; sugarbeet stewardship practices, *id*.

10    at 116-17; and any environmental impacts of Roundup Ready sugarbeets, such as the benefits in

11    terms of crop safety, reduced herbicide use, and water quality, *id*. at 94-107.

12          APHIS held a public comment period on the petition and APHIS's environmental

13    assessment ("EA"), during which APHIS received public comments overwhelmingly in support

14    of deregulation—of the 44 public comments received, 41 of the comments supported

15    deregulation.  70 Fed. Reg. 13,007 (Mar. 17, 2005).  In its subsequent Finding of No Significant

16    Impact, APHIS responded specifically to the one commenter (namely, *Plaintiff* Center for Food

17    Safety) that opposed deregulation based on the adequacy of the EA.  In that regard, APHIS

18    concluded that "these glyphosate tolerant sugarbeets will be just as safe as [conventional]

19    sugarbeets that are grown and not subject to regulation" and that "there should be no significant

20    impact on the human environment if these glyphosate tolerant sugarbeets were no longer

21    considered regulated articles."  Tate Decl. Ex. B at 3.  As a result, Roundup Ready sugarbeets

22    were "deregulated," effective March 4, 2005.  70 Fed. Reg. 13,008; Schneider Decl. ¶ 16.

23          Slightly over 50% of the U.S. sugar supply is derived from sugarbeets, and approximately

24    50% of the 2008 sugarbeet crop will be Roundup Ready.  Pierson Decl. ¶ 24; Nixon Decl. ¶ 14;

25    Markwart Decl. ¶¶ 7, 18.  This percentage is projected to increase further the following year.

26

---

27    [3] Although palatable, in general humans and animals do not eat unprocessed sugarbeets themselves.  Pierson Decl. ¶ 22.  And contrary to Plaintiffs' complaint at ¶ 13, tests show that no

28    Roundup residues remain in the refined sugar products, which are then used in the U.S. or exported abroad in various commodities.  Tate Decl. Ex. C.

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1   Nixon Decl. ¶ 14; Markwart Decl. ¶ 18.  Thousands of sugarbeet growers are relying on the

2   availability of Roundup Ready sugarbeets and may be unable to obtain suitable replacement

3   seeds.  Markwart Decl. ¶¶ 19-20; Berg Decl. ¶ 18; Grant Decl. ¶ 18; Hofer Decl. ¶ 14; Wettstein

4   Decl. ¶ 8; Dahmer Decl. ¶ 25.

5          Commercial sugarbeet growers follow careful stewardship measures to minimize the risk

6   of new glyphosate-resistant weeds developing and to prevent any flow of pollen to another

7   commercial crop.  Berg Decl. ¶ 21-23; Grant Decl. ¶¶ 19-20; Hofer Decl. ¶¶ 16-17; Wettstein

8   Decl. ¶¶ 10-11; Schlemmer Decl. ¶¶ 10-11; Pierson Decl. ¶¶ 29-30, 32-35; Dahmer Decl. ¶¶ 14,

9   16-18.  These measures are detailed extensively in contractual agreements between Monsanto

10  and its licensees, including the Monsanto Technology/Stewardship Agreement and the

11  Technology Use Agreement under which licensees are bound contractually to comply with these

12  stewardship measures.  Pierson Decl. ¶¶ 30-31, 34 & Ex. B & C; Dahmer Decl. ¶ 17 & Ex. A.  In

13  short, these contractual measures, paired with the agricultural and biological makeup of the

14  sugarbeet crop itself, make it exceedingly unlikely that gene transmission will occur or that

15  glyphosate-resistant weeds will develop.  *See generally* Pierson Decl. ¶¶ 27-35; Dahmer Decl. ¶¶

16  14-24.  Likewise, for decades sugarbeet seed producers have engaged in stewardship practices

17  designed to isolate specialty seed crops from cross-pollination.  Dahmer Decl. ¶¶ 19-24.

18         **D.     Plaintiffs' Claims**

19         Plaintiffs bring claims under NEPA and the PPA.  Plaintiffs' NEPA claims allege that

20  USDA failed to "take a hard look" at the environmental impact of deregulation, and engaged in

21  an improperly narrow analysis in its EA.  Complaint ¶ 68.  Plaintiffs also allege that USDA

22  failed to prepare an environmental impact statement.  Plaintiffs' PPA claim alleges simply that

23  USDA's conclusion that Roundup Ready sugarbeets do not pose a plant pest threat is "arbitrary

24  and capricious, an abuse of discretion, and otherwise not in accordance with law."  *Id.* ¶ 79.

25         Monsanto's participation in this case can aid the court in resolving all of Plaintiffs'

26  claims.  Monsanto has been involved in every step of the regulatory process leading to the

27  USDA's deregulation of Roundup Ready sugarbeets—Monsanto itself started the process with

28  its petition to APHIS.  The petition filed by Monsanto provided data on each of the issues in

NOTICE OF MOT. & MOT. TO INTERVENE;
                                                      MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1   Plaintiffs' complaint. Complaint ¶¶ 54, 56, 57; Tate Decl. Ex. A. Indeed, the complaint

2   identifies Monsanto by name repeatedly. *See* Complaint ¶¶ 1, 42, 44, 45, 49. And Monsanto

3   provided detailed information regarding field testing of Roundup Ready sugarbeets, the impact

4   of Roundup Ready sugarbeets on industry farming practices and the environment, and the

5   stewardship practices in place to address gene-flow and weed resistance. Tate Decl. Ex. A.

6                                    **ARGUMENT**

7           Plaintiffs assert three claims for relief: Claims One and Two allege violations of NEPA

8   and Claim Three alleges a PPA violation. Courts in the Ninth Circuit repeatedly have granted

9   permissive intervention at both the merits and remedy stages of NEPA cases and intervention as

10  of right at the remedy stage. Moreover, because Monsanto initiated the challenged deregulation

11  proceeding and is subject to regulation under the PPA, it clearly satisfies the requirements for

12  intervention as of right on Plaintiffs' PPA claim.

13  **I.      MONSANTO SHOULD BE ALLOWED TO INTERVENE AT BOTH THE
14          NEPA MERITS AND NEPA REMEDY STAGES OF THIS SUIT.**

15          **A.      Monsanto Should Be Granted Permissive Intervention.**

16          Monsanto should be granted permissive intervention pursuant to Federal Rule of Civil

17  Procedure 24(b) in the entire case, including the merits phase. Rule 24(b) provides that on

18  timely application "the court may permit anyone to intervene who . . . has a claim or defense that

19  shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "The

20  language of the rule makes clear that . . . if there is a common question of law or fact, the

21  requirement of the rule has been satisfied and it is then discretionary with the court whether to

22  allow intervention." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002)

23  (upholding permissive intervention in merits stage of NEPA case). Courts in the Ninth Circuit

24  have stated that although private individuals ordinarily "may not intervene as of right pursuant to

25  Rule 24(a)" at the NEPA merits stage because the federal government generally "is the only

26  proper defendant in an action to compel compliance with NEPA," this analysis "does not control

27

28

                                          6          NOTICE OF MOT. & MOT. TO INTERVENE;
                                                     MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1   application of Rule 24(b)" when addressing permissive intervention.[4]  *Kootenai Tribe*, 313 F.3d

2   at 1108, 1110 (citing *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105,

3   1114 (9th Cir. 2000)) (internal quotation marks omitted).

4          Indeed, courts in this Circuit repeatedly have granted permissive intervention at the

5   NEPA merits stage in cases such as this where the matters at issue implicate an intervenor's

6   interests—interests that in certain cases were far less concrete and direct than Monsanto's

7   interests here.  For example:

- *Sequoia Forestkeeper v. United States Forest Service*, No. 07-1690, 2008 WL 324013, at *3-5 (E.D. Cal. Feb. 5, 2008) (granting permissive intervention at both the merits and remedy stages to party awarded a timber sale contract);

- *Protect Lake Pleasant, LLC v. Johnson*, No. 07-454, 2007 WL 1108916, at *5 (D. Ariz. Apr. 13, 2007) (granting permissive intervention at both the merits and remedy stages to party awarded a development contract);

- *Montana Wilderness Ass'n v. McAllister*, Nos. 07-39 & 07-59, 2007 WL 4564175, at *1 (D. Mont. Dec. 20, 2007) (granting association permissive intervention at the merits stage of a NEPA action based on intervenors' conservation, aesthetic and recreational interests);

- *Center for Biological Diversity v. United States Bureau of Land Management*, No. 06-4884, 2007 WL 101705, at *1 (N.D. Cal. Jan. 11, 2007) (granting counties permissive intervention at both the merits and remedy phases of a NEPA action);

- *Pacific Rivers Council v. United States Forest Service*, No. 05-0953, 2005 WL 2671404, at *1-2 (E.D. Cal. Oct. 19, 2005) (granting ski industry association permissive intervention in the merits and remedy phases of a NEPA action);

- *Sierra Nevada Forest Protection Campaign v. Rey*, No. 05-0205, 2005 WL 2231548, at *1-2 (E.D. Cal. Sept. 14, 2005) (granting cattle industry association permissive intervention in the merits and remedy phases of a NEPA action);

- *Audubon Society of Portland v. United States Fish & Wildlife Service*, No. 04-670, 2004 WL 2026429, at *1–2 (D. Or. Sept. 10, 2004) (granting association permissive intervention at the merits and remedy phases of NEPA action based on intervenors' interest in taking peregrine falcons for recreation uses); and

- *Eyak Preservation Council v. United States Forest Service*, No. 03-180, 2003 WL 24085349, at *2-3 (D. Alaska Dec. 9, 2003) (granting holder of mineral rights permissive intervention at the merits stage of a NEPA action).[5]

---

[4] Other Circuits decline to follow the Ninth Circuit's distinctive approach to intervention as of right in NEPA cases and often grant intervention as of right at the NEPA merits phase.  *See, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971, 974 (3d Cir. 1998) (granting intervention of right and rejecting explicitly the Ninth Circuit's approach to intervention in NEPA cases); *see also Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (granting intervention of right at the merits stage of a NEPA case); *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (same).

NOTICE OF MOT. & MOT. TO INTERVENE;
                                                    MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1    A proposed permissive intervenor must satisfy three prerequisites:  (1) its claims or

2 defenses must share a common question of law or fact with the main action;  (2) the motion must

3 be timely; and (3) there must be an independent ground for jurisdiction.  *Southern California*

4 *Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).  Monsanto satisfies each of these

5 prerequisites easily.

6    First, Monsanto seeks to address exactly those claims made by Plaintiffs and has a very

7 direct interest in and knowledge of the matters at issue.  Monsanto has worked with its business

8 partner for over 10 years on field trials of Roundup Ready sugarbeets, drafted and submitted the

9 petition for deregulation that is integral to the administrative record in this case, and taken all

10 other steps necessary for regulatory approval.  *See generally* Schneider Decl. ¶¶ 6-9.  Further,

11 Monsanto's deep involvement in the environmental testing, development of stewardship

12 measures, and deregulation of Roundup Ready sugarbeets will "assist the court in its orderly

13 procedures leading to the resolution of the case."  *Kootenai Tribe*, 313 F.3d at 1111.  This

14 information is not simply "common" to Plaintiffs' claims, it is "directly responsive to"  both the

15 merits phase and any remedy phase in this case.  *Id*. at 1110.  Additionally, Monsanto has

16 proceeded to work with its partners in reliance on USDA's deregulation decision—an interest

17 that supports directly the USDA's laches defense.  *See* Answer at 8.

18    Second, there is no question that Monsanto's motion is timely.  No dispositive motions

19 have been filed, nor has this Court made any substantive rulings.  *See Sierra Nev. Forest Prot.*

20 *Campaign*, 2005 WL 2231548, at *1-2 (granting permissive intervention motion filed 9 months

21 into action); *Mont. Wilderness Ass'n*, 2007 WL 4564175, at *1 (granting permissive intervention

22 motion filed 5 months into action); *Ctr. for Biological Diversity*, 2007 WL 101705, at *1

23 (granting permissive intervention motion filed 3 months into action); *Stevens County v. U.S.*

24

25    [5] Indeed one district court in this Circuit has held that, in some cases, an intervenor may present
      interests sufficient to permit intervention as of right on the merits of a NEPA claim.  *See Stevens*
26    *County v. U.S. Dep't of Interior*, No. 06-0156, 2006 U.S. Dist. LEXIS 74730, at *10, 12 (E.D.
      Wash. Oct. 3, 2006) (granting *both* permissive intervention and intervention of right at the merits
27    stage of a NEPA action and basing its permissive intervention decision on the interventors'
      "scientific, aesthetic, recreational, educational, and professional interests" in the management of
28    the National Wildlife Refuge System).

NOTICE OF MOT. & MOT. TO INTERVENE;
                                                               MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1   *Dep't of Interior*, No. 06-156, 2006 U.S. Dist. LEXIS 74730, at *10 (E.D. Wash. Oct. 3, 2006)

2   (same); *Pac. Rivers Council*, 2005 WL 2671404, at *1-2 (same); *Audubon Soc'y of Portland*,

3   2004 WL 2026429, at *2 (same).  Monsanto's intervention at this early stage does not prejudice

4   any party.  *See, e.g.*, *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993).  Moreover,

5   Monsanto agrees to abide by the proposed scheduling order submitted by the parties on April 9,

6   2008, so its participation will not delay resolution of this case.

7          Third, this Court has an independent basis for jurisdiction over the defenses Monsanto

8   seeks to advance.  Because Plaintiffs' NEPA and PPA claims arise under the laws of the United

9   States, this Court has original jurisdiction.[6]  In cases such as this, where the movant seeks to

10  intervene as a defendant in support of the government, the requirement of an independent

11  jurisdictional basis "might be more aptly categorized as an attack on standing."  *Stevens County*,

12  2006 U.S. Dist. LEXIS 74730, at *12.  To establish Article III standing, a movant must

13  demonstrate:  (1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or

14  imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

15  action . . . ; and  (3) it is likely, as opposed to merely speculative, that the injury will be redressed

16  by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528

17  U.S. 167, 180-81 (2000).  Here, Plaintiffs seek to vacate the USDA's decision to deregulate

18  Roundup Ready sugarbeets—relief that implicates the continuing commercial use of the crop.

19  Monsanto estimates it will receive tens of millions of dollars in technology fees in 2008 and

20  2009, and has invested millions in developing and obtaining regulatory approval for Roundup

21  Ready sugarbeets.  Nixon Decl. ¶ 14; Schneider Decl. ¶ 7.  Such an interest is "concrete and

22  particularized" by any standard.  *Cf. Protect Lake Pleasant*, 2007 WL 1108916, at *4 (finding

23  "beyond reasonable dispute" that economic injury from the loss of a contract is "concrete and

24  imminent").  The last two requirements to establish Article III standing are met easily:  the relief

25  Plaintiffs seek itself would cause Monsanto's injuries, and a favorable decision by this Court

26

27

28
    _____
    [6] This Court has supplemental jurisdiction over intervenors' defenses under 28 U.S.C. § 1367(a).
    *See also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

1    (i.e., upholding the agency's decision deregulating Roundup Ready sugarbeets) would redress

2    the injury by preventing it in the first instance.

3         In sum, Monsanto satisfies each prerequisite for permissive intervention and, for the

4    reasons already stated, Monsanto's participation will afford this Court significant benefits,

5    warranting a favorable exercise of discretion.

6
     **B.    Monsanto Is Entitled To Intervene As Of Right At The NEPA**
7    **       Remedy Stage.**

8         It is well established that even though parties generally may not intervene as of right at

9    the merits stage of NEPA claims (though permissive intervention is routine, *see supra* Part I.A),

10   they may intervene in any remedial proceeding.  *See Wetlands Action Network v. U.S. Army*

11   *Corps of Engineers*, 222 F.3d 1105, 1113-14 (9th Cir. 2000); *Forest Conservation Council v.*

12   *U.S. Forest Serv.,* 66 F.3d 1489, 1499 (9th Cir. 1995).  This reflects the reality that "private

13   interests can be impaired by injunctions ordering governmental compliance with NEPA."  *Ctr.*

14   *for Biological Diversity v. Leavitt*, No. 02-1580, 2004 WL 2940597, at *1 (N.D. Cal. Dec. 20,

15   2004) (citing *Wetlands Action Network*, 222 F.3d at 1114).  As discussed *infra* Part II, Monsanto

16   easily establishes each requirement for intervention as of right.

17
     **II.    MONSANTO IS ENTITLED TO INTERVENE AS OF RIGHT UNDER**
18   **        THE PPA.**

19        Independently, Monsanto is entitled to intervention as of right on account of Plaintiffs'

20   PPA claim.  *See* Complaint at 15.  The Ninth Circuit applies a four-part test under Rule 24(a)(2)

21   to determine whether a movant is entitled to intervene as of right:

22              (1) the [motion] must be timely; (2) the [movant] must have a
                'significantly protectable' interest relating to the property or
23              transaction that is the subject of the action; (3) the [movant] must
                be so situated that the disposition of the action may, as a practical
24              matter, impair or impede [its] ability to protect that interest; and (4)
                the [movant]'s interest must not be adequately represented by the
25              existing parties in the lawsuit.

26   *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).  The Ninth Circuit

27   "interprets [this] rule broadly in favor of [movants] for intervention," *Forest Conservation*

28   *Council*, 66 F.3d at 1493, to allow "parties with a *practical* interest in the outcome of a particular

10

1    case to intervene," *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002)

2    (internal quotations marks omitted). As already stated, Monsanto's motion is timely. It meets

3    the other requirements for intervention of right as well.

4

5

        **A.**      **APHIS's Decision Deregulating Roundup Ready Sugarbeets**
                   **Implicates Significantly Protectable Interests.**

6            An interest is "'significantly protectable'" if it is "'protectable under some law'" and

7    "'there is a relationship between the legally protected interest and the [plaintiff's] claims.'"

8    *Berg*, 268 F.3d at 818 (citations omitted). An interest is "related" to a claim when resolution of

9    the claim actually affects the movant's interest. *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th

10   Cir. 1998). This is "'a practical, threshold inquiry. No specific legal or equitable interest need

11   be established.'" *Forest Conservation Council*, 66 F.3d at 1493 (quoting *Greene v. United

12   States*, 996 F.2d 973, 976 (9th Cir. 1993)). APHIS's deregulation of Roundup Ready sugarbeets

13   implicates at least three significantly protectable interests recognized by the Ninth Circuit: (1)

14   Monsanto's interest in the unrestricted sale and marketing of Roundup Ready sugarbeets; (2)

15   Monsanto's substantial, nonspeculative economic interest in its intellectual property and contract

16   rights; and (3) Monsanto's interest in defending agency action initiated at Monsanto's request.

17

18

        **1.**   **Monsanto's interest in the unrestricted sale and marketing of**
            **Roundup Ready sugarbeets**

19           Intervention as of right is appropriate because Plaintiffs' PPA claim challenges directly

20   an agency decision on Monsanto's petition for deregulation. As the Ninth Circuit has

21   recognized, "[i]t is one thing to hold that only the government can be a defendant in a NEPA

22   [merits phase of a] suit, where the statute regulates only government action, but quite another to

23   exclude permit-holding property owners . . . where the statute directly regulates their conduct."

24   *Sierra Club v. EPA*, 995 F.2d at 1485 (involving a challenge to permits issued under the Clean

25   Water Act). Thus, it is settled law that under these circumstances, changes to regulatory

26   approvals or assurances constitute "significantly protectable interests" for purposes of Rule

27   24(a)(2), even when Plaintiffs purport to challenge only an agency's compliance with a statute's

28   procedural requirements. *See, e.g.*, *Berg*, 268 F.3d at 818 (granting intervention of right based

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1    on legally protectable interests in a project's approval and corresponding regulatory assurances);

2    *Sierra Club v. EPA*, 995 F.2d at 1483 (granting intervention of right where the resolution of a

3    procedural challenge would affect intervenor's rights under Clean Water Act discharge permits).[7]

4         This is precisely the case with Plaintiffs' PPA claim.  Although Plaintiffs dress their

5    claim as one of procedural compliance, they cannot escape the fact that the PPA does not

6    regulate principally the federal government.  Rather, the PPA and its implementing regulations

7    regulate private parties by, among other things, restricting the commercial sale or planting of

8    genetically engineered plants, such as Roundup Ready sugarbeets, unless authorized by the

9    USDA.  7 U.S.C. § 7711 (unlawful for any person to introduce certain organisms without USDA

10   authorization); 7 C.F.R. §§ 340.0, 340.1 (introduction of certain organisms altered or produced

11   through genetic engineering prohibited without USDA authorization).  Because these regulations

12   apply only to "regulated articles," 7 C.F.R. § 340.0, a deregulation decision constitutes a

13   regulatory assurance that the plant is no longer subject to PPA regulations.

14        Monsanto has obtained USDA approval for deregulated status of Roundup Ready

15   sugarbeets; Plaintiffs' lawsuit threatens that approval by asking this Court to vacate the USDA's

16   deregulation decision.  The practical effect of such a ruling by this Court would be the loss of

17   Monsanto's right to unrestricted use of Roundup Ready sugarbeets—a result similar to

18   revocation of a permit.  Under these circumstances, courts in the Ninth Circuit have granted

19   intervention as of right in the entirety of the case in actions where the consequences were less

20   severe.  *See Berg*, 268 F.3d at 817; *Sierra Club v. EPA*, 995 F.2d at 1485.

21

22

23

---

24   [7] *See also Natural Res. Def. Council, Inc. v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (holding
     that pesticide manufacturers had a "substantial and direct interest" and were entitled to intervene
     as of right in litigation challenging EPA's regulatory process under FIFRA and decisions that the
25   manufacturers' pesticide products merited continued registration); *S. Yuba River Citizen's
     League v. Nat'l Marine Fisheries Serv.*, No. 06-2845, 2007 WL 3034887, at *14 (E.D. Cal. Oct.
26   16, 2007) (finding a significantly protectable interest in the potential effect an adverse decision
     would have on water flows to which the movant was entitled); *Nat'l Wildlife Fed'n v. U. S. Army
27   Corps of Eng'rs*, 188 F.R.D. 381, 383-84, 385 (D. Or. 1999) (finding a significantly protectable
     interest in a movant's ability to meet water quality standards and therefore exercise its rights
28   under a Clean Water Act/NPDES permit).

NOTICE OF MOT. & MOT. TO INTERVENE;
                                           MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

**2.   Monsanto's substantial, nonspeculative economic interest in its intellectual property and contract rights**

In addition to its regulatory approvals and assurances, Monsanto has numerous nonspeculative economic interests that are implicated by Plaintiffs' PPA claims.  Monsanto owns intellectual property rights to the technology through which Roundup Ready sugarbeets are produced and is the patent holder and developer of the Roundup Ready trait.  Additionally, Monsanto retains contractual privity with parties in the sugarbeet supply chain through which Monsanto derives substantial, legally protectable interests, including the right to receive a "technology premium" payment on all Roundup Ready sugarbeet seed sold.  Nixon Decl. ¶ 14. Lost seed sales directly impact Monsanto's income; if the deregulated status of Roundup Ready sugarbeets is vacated, Monsanto expects to lose tens of millions of dollars in technology fees alone in 2008 and 2009.  *Id.*

It is beyond serious dispute that intellectual property rights, contractual rights, and substantial, nonspeculative economic interests of this nature are "significantly protectable interests," and that they relate directly to the property and decision that are the subject of these proceedings.  *See, e.g.*, *Berg*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests."); *see also Apotex Inc. v. U.S. Food & Drug Admin.*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007) (patent holder had a sufficient interest to intervene under Rule 24(a)); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (intervention of right based on "legally protectable property interests in existing timber contracts").  Thus, Monsanto has a significantly protectable interest with respect to the PPA claim based on each of these protectable economic interests.

**3.   Monsanto's interest in defending agency action initiated at Monsanto's request**

Apart from economic or other pecuniary interests, Ninth Circuit law also recognizes that parties that initiate or support adoption of a regulation or policy have a distinct "significantly protectable interest" in defending that policy or regulation against legal challenge.  *See Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (finding a significantly protectable interest in defending against an action to set aside an agency ruling listing an animal as endangered where the

NOTICE OF MOT. & MOT. TO INTERVENE; MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1    intervenors sued to have the animal listed in the first place); *Washington State Bldg. & Constr.*

2    *Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (holding that sponsors of an

3    initiative had a significantly protectable interest in defending the initiative against constitutional

4    challenge); *Stevens County*, 2006 U.S. Dist. LEXIS 74730, at *7-8 , *10-11 (granting

5    intervention as of right in a NEPA action to participants in the regulatory proceedings); *see also*

6    *Prete v. Bradbury*, 438 F.3d 949, 954-55 (9th Cir. 2006); *Sagebrush Rebellion, Inc. v. Watt*, 713

7    F.2d 525, 527 (9th Cir. 1983).  Here, not only did Monsanto participate in the APHIS

8    deregulation proceedings and urge the deregulation of Roundup Ready sugarbeets, it *initiated* the

9    entire deregulation process.  *See* 70 Fed. Reg. 13,007 (Mar. 17, 2005).  As such, under Ninth

10    Circuit law, Monsanto has a significantly protectable interest in defending the deregulation of

11    Roundup Ready sugarbeets.

12          **B.      The Relief Sought by Plaintiffs Will Impair Monsanto's Interests**

13          Federal Rule of Civil Procedure 24(a) requires that a movant be "so situated that

14    disposing of the action *may* as a practical matter impair or impede the movant's ability to protect

15    its interest."  Fed. R. Civ. P. 24(a)(2) (emphasis added).  The Ninth Circuit has held expressly

16    that impairment is demonstrated where, as here, "'the injunctive relief sought by plaintiffs will

17    have direct, immediate, and harmful effects upon [the proposed intervenor's] legally protectable

18    interests.'"  *Berg*, 268 F.3d at 818 (quoting *Forest Conservation Council,* 66 F.3d at 1494).  As

19    already explained, the relief requested by Plaintiffs would impair directly Monsanto's

20    investment-backed intellectual property and contractual rights, as well as its substantial

21    economic interests stemming from those rights, threatening economic losses of tens of millions

22    of dollars in 2008 and 2009 alone.  Nixon Decl. ¶ 14; Pierson Decl. ¶ 38; *see supra* at 12-13.

23          **C.      Monsanto's Interests Are Not Adequately Represented By The**
24                  **Existing Parties**

25          The Ninth Circuit has made clear that a movant's "burden in showing inadequate

26    representation is minimal: it is sufficient to show that representation *may* be inadequate."  *Forest*

27    *Conservation Council*, 66 F.3d at 1498 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528,

28    538 n.10 (1972)); *see also Berg*, 268 F.3d at 822-23.  In considering the adequacy of

1    representation, this Court must "consider whether the interest of a present party is such that it

2    would undoubtedly make all the intervenor's arguments; whether the present party is capable and

3    willing to make such arguments; and whether the intervenor would offer any necessary elements

4    to the proceedings that other parties would neglect." *Forest Conservation Council*, 66 F.3d at

5    1498-99.

6        In challenges to agency action, the courts consistently have held that the government does

7    not adequately represent the narrower economic and other interests of private parties affected by

8    the challenged action. *Id.*; *see also, e.g.*, *Berg*, 268 F.3d at 823-24; *Sierra Club v. Espy*, 18 F.3d

9    at 1208. Here, the government defendants are "not charged with a duty to represent" Monsanto's

10   interests. *Forest Conservation Council*, 66 F.3d at 1499. Moreover, the government's duty to

11   represent the interests of the public at large mean its interests do not align perfectly with

12   Monsanto. *See Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001);

13   *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 973-74 (3d Cir. 1998). Thus, it cannot be said

14   that the USDA will "undoubtedly make all of [Monsanto's] arguments" in favor of ensuring that

15   commercial production, sale, and cultivation of Roundup Ready sugarbeets can continue

16   uninterrupted. *Forest Conservation Council*, 66 F.3d at 1498-99.

17                                   **CONCLUSION**

18       For the foregoing reasons, Monsanto respectfully requests that this Court grant its motion

19   to intervene. Pursuant to Local Rule 3-16, a certificate of interested parties is included in the

20   Proposed Answer filed herewith.

21

22

23

24

25

26

27

28

15                    NOTICE OF MOT. & MOT. TO INTERVENE;
                      MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1    Dated:  April 17, 2008

2

Respectfully submitted,

3    PHILIP J. PERRY (D.C. Bar No. 434278 – admitted)

               _____/S/ Holly J. Tate_____

4    JANICE M. SCHNEIDER (D.C. Bar No. 472037)

HOLLY J. TATE (Ca. Bar No. 237561)
LATHAM & WATKINS LLP

5    (application for pro hac vice pending)
LATHAM & WATKINS LLP

505 Montgomery Street, Suite 1900
San Francisco, California  94111-2562

6    555 11th Street, N.W. Suite 1000
Washington, D.C. 20004

Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

7    Telephone: (202) 637-2200
Facsimile:   (202) 637-2201

Email: holly.tate@lw.com

8    Email:  phil.perry@lw.com
Email:  janice.schneider@lw.com

9    ARENT FOX LLP

10     Stanley H. Abramson (D.C. Bar No. 217281)

11     Rachel G. Lattimore (D.C. Bar No. 450975) (applications for *pro hac vice* pending)

12    1050 Connecticut Avenue, N.W. Washington, D.C. 20036-5339

13    Telephone: (202) 857-6000 Facsimile:  (202) 857-6395

14    Email: abramson.stanley@arentfox.com

*Attorneys for Proposed Intervenor-Defendant Monsanto Company*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOT. & MOT. TO INTERVENE;
MEM. IN SUPP. OF MOT.; No. C-08-484 JSW

1

## **CERTIFICATE OF SERVICE**

2

      I HEREBY CERTIFY that on April 17, 2008, I electronically filed the foregoing MONSANTO COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE

3

and MEMORANDUM IN SUPPORT THEREOF with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system.

4

      I HEREBY CERTIFY that the foregoing was served on April 17, 2008 on the following

5

individuals via the court's electronic filing system:

6

Kevin Golden
Center for Food Safety

7

2601 Mission Street, Suite 803
San Francisco, California 94110

8

Telephone: (415) 826-2770
Fax: (415) 826-0507

9

Email: kgolden@icta.org

10

Paul H. Achitoff
Earthjustice

11

223 South King Street, Suite 400
Honolulu, Hawai'i 96813

12

Telephone: (808) 599-2436
Fax: (808) 521-6841

13

Email: achitoff@earthjustice.org

14

Gregory C. Loarie
Earthjustice

15

426 17th Street, 5th Floor
Oakland, California 94612

16

Telephone: (510) 550-6725
Fax: (510) 550-6749

17

Email: gloarie@earthjustice.org

18

*Counsel for Plaintiffs*

19

Lori Caramanian
Environmental & Natural Resources Division

20

United States Department of Justice
1961 Stout Street, 8th Floor

21

Denver, Colorado 80294
Telephone: (303) 844-1499

22

Fax: (303) 844-1350
Email: lori.caramanian@usdoj.gov

23

John R. Coleman

24

United States Department of Justice
Civil Division, Federal Programs Branch

25

20 Massachusetts Avenue, N.W., Room 6118
Washington, D.C. 20530

26

Telephone: (202) 514-4505
Fax: (202) 616-8460

27

Email: john.coleman3@usdoj.gov

28

*Counsel for Defendants*

1

2    Dated:  April 17, 2008                         Respectfully submitted,

3                                                     /S/ Holly J. Tate
                                                  HOLLY J. TATE (Ca. Bar No. 237561)
4    PHILIP J. PERRY (D.C. Bar No. 434278 -      LATHAM & WATKINS LLP
     admitted)                                    505 Montgomery Street, Suite 1900
5    JANICE M. SCHNEIDER (D.C. Bar No.            San Francisco, California  94111-2562
     472037)                                      Telephone:  (415) 391-0600
6    (application for pro hac vice pending)       Facsimile:  (415) 395-8095
     LATHAM & WATKINS LLP                         Email: holly.tate@lw.com
7    555 11th Street, N.W. Suite 1000
     Washington, D.C. 20004
8    Telephone: (202) 637-2200
     Facsimile: (202) 637-2201
9    Email:  phil.perry@lw.com
     Email:  janice.schneider@lw.com

10   ARENT FOX LLP
        Stanley H. Abramson (D.C. Bar No.
11      217281)
        Rachel G. Lattimore (D.C. Bar No. 450975)
12      (applications for pro hac vice pending)
     1050 Connecticut Avenue, NW
13   Washington, D.C. 20036-5339
     Telephone: (202) 857-6000
14   Facsimile:  (202) 857-6395
     Email: abramson.stanley@arentfox.com
15                                                *Attorneys for Proposed Intervenor-*
                                                  *Defendant Monsanto Company*
16

17

18

19

20

21

22

23

24

25

26

27

28

                                  2

1   LATHAM & WATKINS LLP
        Philip Perry (D.C. Bar No. 434278 – admitted)
2       Janice M. Schneider (D.C. Bar No. 472037)
        (application for *pro hac vice* pending)
3   555 Eleventh Street, N.W., Suite 1000
    Washington, D.C.  20004-1304
4   Telephone:  (202) 637-2200
    Facsimile:   (202) 637-2201
5   Email: phil.perry@lw.com
    Email: janice.schneider@lw.com
6       Holly J. Tate (Ca. Bar No. 237561)
    505 Montgomery Street, Suite 1900
7   San Francisco, California  94111-2562
    Telephone:  (415) 391-0600
8   Facsimile:   (415) 395-8095
    Email: holly.tate@lw.com
9
    ARENT FOX LLP
10      Stanley H. Abramson (D.C. Bar No. 217281)
        Rachel G. Lattimore (D.C. Bar No. 450975)
11      (applications for *pro hac vice* pending)
    1050 Connecticut Avenue, N.W.
12  Washington, D.C. 20036-5339
    Telephone: (202) 857-6000
13  Facsimile:  (202) 857-6395
    Email: abramson.stanley@arentfox.com
14
    Attorneys for Proposed Intervenor-Defendant
15  Monsanto Company

16

17              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
18               SAN FRANCISCO DIVISION

19
    CENTER FOR FOOD SAFETY, *et al.*,       CASE NO.  C-08-484 JSW
20
                    Plaintiffs,             **[PROPOSED] ORDER GRANTING
21                                          MONSANTO COMPANY'S MOTION TO
            v.                              INTERVENE**
22
    CHARLES CONNOR, *et al.*,               Date:  June 6, 2008
23                                          Time: 9:00 a.m.
                    Defendants,             Place: 17th Floor, Courtroom 2
24                                          Judge: Hon. Jeffrey S. White
                    and
25
    MONSANTO COMPANY,
26
                    Proposed Intervenor-Defendant.
27

28

1    The Court has reviewed the motion to intervene filed by Monsanto Company

2  ("Monsanto") and the entire record in this case.  With respect to Plaintiffs' claims under the

3  National Environmental Policy Act ("NEPA"), the Court finds that the defenses Monsanto seeks

4  to assert share common questions of law and fact with Plaintiffs' claims, that the motion is

5  timely, that there are independent grounds for subject matter jurisdiction, and that Monsanto's

6  participation in all phases of this suit will assist this Court in resolving the issues before it.  With

7  respect to Plaintiffs' claim under the Plant Protection Act ("PPA"), the Court finds that the

8  motion is timely, that Monsanto asserts significantly protectable interests in the property and

9  transaction that are the subject of this action, that these interests may be impaired as a result of

10  the proceedings in this action, and that these interests may not be adequately represented by the

11  existing parties.  Accordingly, this Court concludes that Monsanto has satisfied the requirements,

12  under Rule 24(b) of the Federal Rules of Civil Procedure, for permissive intervention with

13  respect to Plaintiffs' NEPA claims and has satisfied the requirements, under Rule 24(a) of the

14  Federal Rules of Civil Procedure, for intervention as of right with respect to Plaintiffs' PPA

15  claims.

16    Having satisfied the requirements for intervention under Rule 24 of the Federal Rules of

17  Civil Procedure, Monsanto's Motion to Intervene is GRANTED.  The Clerk is directed to file the

18  answer that Monsanto has lodged with its motion to intervene.

19    **IT IS SO ORDERED.**

20

21
     Dated: _____, 2008    _____
22
                                         Honorable Jeffrey S. White
23                                       UNITED STATES DISTRICT COURT JUDGE

24

25

26

27

28

1