Joanne Lichtman (SBN 137300)
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071-2627
Telephone: (213) 892-1800
Facsimile: (213) 892-2300
Email: lichtmanj@howrey.com

Gilbert S. Keteltas (*Pro Hac Vice*)
John F. Bruce (*Pro Hac Vice*)
Christopher H. Marraro (*Pro Hac Vice*)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

*Attorneys for Proposed Intervenor-Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, ORGANIC SEED ALLIANCE, SIERRA CLUB, and HIGH MOWING ORGANIC SEEDS,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLES CONNOR, in his official capacity as Acting Secretary of the United States Department of Agriculture; and CINDY SMITH, in her official capacity as Administrator of the Animal and Plant Health Inspection Service,<br><br>Defendants;<br><br>AMERICAN SUGARBEET GROWERS ASSOCIATION; ERVIN SCHLEMMER; MARK WETTSTEIN; DUANE GRANT; JOHN SNYDER; UNITED STATES BEET SUGAR ASSOCIATION; AMERICAN CRYSTAL SUGAR COMPANY; THE AMALGAMATED SUGAR COMPANY LLC; WESTERN SUGAR COOPERATIVE and WYOMING SUGAR COMPANY, LLC,<br><br>Proposed Intervenor-Defendants. | Case No. 3:08-cv-00484-JSW<br><br>**REPLY IN SUPPORT OF GROWER/PROCESSOR MOTION TO INTERVENE**<br><br>DATE: June 6, 2008<br>TIME: 9:00 a.m.<br>COURTROOM: 2, 17th Floor<br>JUDGE: Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

Page

I. SUGARBEET GROWERS AND PROCESSORS SHOULD BE PERMITTED TO INTERVENE IN ALL PHASES OF THIS CASE ........................................ 1

    A. Growers and processors will significantly contribute to the just and equitable resolution of the merits of this case. ............................................................ 2

    B. Inadequate representation is not required for permissive intervention and, in any event, is present here ............................................................. 5

    C. The participation of growers and processors on the merits will not unduly hinder resolution of plaintiffs' delayed complaint. .............................................. 8

II. CONCLUSION ................................................................................................................ 10

1

**TABLE OF AUTHORITIES**

2  **CASES**

3  *Abbott Laboratories v. Gardner*,
      387 U.S. 136 (1967) .................................................................................................. 2

4  *Apache Survival Coalition v. United States*,
      21 F.3d 895 (9th Cir. 1994)................................................................................... 2, 3

5  *California v. Tahoe Regional Planning Agency*,
      792 F.2d 775 (9th Cir. 1986) .................................................................................. 6

6  *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*,
      152 F.3d 1184 (9th Cir. 1998) ................................................................................ 7

7  *Costello v. United States*,
      365 U.S. 265 (1961) ................................................................................................ 2

8  *Forest Conservation Council v. U.S. Forest Serv.*,
      66 F.3d 1489 (9th Cir. 1995) .................................................................................. 7

9  *Friends of Yosemite v. Frizzell*,
      420 F. Supp. 390 (N.D. Cal. 1976)......................................................................... 3

10 *Golden Gate Restaurant Assoc. v. City & County of San Francisco*,
      2007 U.S. Dist. LEXIS 28974 10 (N.D. Cal. 2007) .............................................. 7

11 *Hallco Mfg. Co., Inc. v. Quaeck*,
      161 F.R.D. 98 (D. Or. 1995) ................................................................................... 6

12 *Kootenai Tribe of Idaho v. Veneman*,
      313 F.3d 1094 (9th Cir. 2002)........................................................................ 5, 6, 9

13 *Lathan v. Brinegar*,
      506 F.2d 677 (9th Cir. 1974)................................................................................... 2

14 *Parsippany v. Costle*,
      503 F. Supp. 314 (D.N.J. 1979).............................................................................. 3

15 *Philadelphia Indem. Ins. Co. v. Bus. Computor Training Inst.*,
      2006 WL 2883010 (W.D. Wash. 2006)................................................................. 6

16 *Rodriquez v. Ridge*,
      290 F. Supp. 2d 1153 (C.D. Cal. 2003) ................................................................. 6

17 *S. Cal Edison Co. v. Lynch*,
      307 F.3d 794 (9th Cir. 2002)................................................................................... 6

18 *Sequoia Forestkeeper v. U.S. Forest Service*,
      2008 WL 324013 (E.D. Cal. 2008) ........................................................................ 7

19 *Sierra Nevada Forest Protection Campaign v. Rey*,
      2005 WL 2231548 (E.D. Cal. Sept. 14, 2005)................................................... 1, 9

20 *Spangler v. Pasadena Bd. of Educ.*,

1 | 552 F.2d 1326 (9th Cir. 1977)..................................................................................1, 2, 6

2 | **RULES**

3 | Fed. R. Civ. P. 24(b) ................................................................................................. 6

## I. SUGARBEET GROWERS AND PROCESSORS SHOULD BE PERMITTED TO INTERVENE IN ALL PHASES OF THIS CASE

Plaintiffs recognize "it is within the discretion of the Court" to permit the growers and grower-owned processors of sugarbeets to intervene on the merits of this NEPA action.[1] They do not dispute that growers and processors meet all the criteria for permissive intervention under Federal Rule of Civil Procedure 24(b): (1) the motion is timely; (2) growers and processors share common issues of fact and law with the USDA and APHIS ("the government"); and (3) the Court has independent jurisdiction to hear growers' and processors' defenses. Because it is undisputed that these threshold requirements have been met, the Court has "broad discretion to grant permissive intervention."[2]

Because permissive intervention is discretionary, it is not surprising that plaintiffs cite cases in which intervention has not been permitted on the merits of a NEPA case, just as growers and processors cite a body of Ninth Circuit cases that permit intervention on the merits.[3] There is no bright line test for permissive intervention beyond the threshold requirements that have been met by the growers and processors. The remaining question, which is only superficially addressed by plaintiffs, is whether permissive intervention is appropriate on the merits of *this* NEPA case.

Plaintiffs' brief does not discuss their delay of three years in filing this case or the significant potential prejudice and harm from their belated attempt to halt the growers' and processors' nearly-completed transition to Roundup Ready sugarbeets. Instead, plaintiffs offer three generic reasons that the Court should not permit intervention: (1) the growers and processors are "irrelevant" to the merits phase of this action; (2) growers and processors are adequately represented by the government; and (3)

---

[1] Opposition at 9:23. Plaintiffs do not dispute that growers and processors may intervene of right in any remedial phase of the litigation, although they prematurely seek to impose limitations on that participation.

[2] *Sierra Nevada Forest Protection Campaign v. Rey*, 2005 WL 2231548 *2 (E.D. Cal. Sept. 14, 2005); *see also Spangler v. Pasadena City Board of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

[3] *See* Grower/Processor Memorandum of Points and Authorities, pp. 8-9. Plaintiffs attempt to discredit case law cited by growers and processors by referring to the cases as "unreported district court decisions" contrary to "the great weight of Ninth Circuit authority." Opposition at 13. This attempt falls flat given plaintiffs' own – and indeed sole – reliance on "unreported district court decisions" to establish the "great weight of Ninth Circuit authority." Opposition at 15-16.

intervention by growers and processors would create undue delay and prejudice. As set forth below, these arguments do not address the specific facts that support intervention by growers and processors. Nor do they provide a compelling basis to shut the door on those who are growing and processing the sugarbeets at issue and who will be most directly affected by plaintiffs' request for declaratory relief.

### A. Growers and processors will significantly contribute to the just and equitable resolution of the merits of this case.

Plaintiffs do not want this Court to hear the voices of sugarbeet growers and processors. They declare those voices "irrelevant" to resolution of declaratory relief claims that threaten more than 600,000 acres of Roundup Ready sugarbeets being grown in 2008 (and even greater acreage planned for 2009 and beyond). Growers and processors of sugarbeets should be permitted to intervene in all phases of this case because they will "significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[4] This contribution will be in two independent areas: (1) adjudication of the recognized equitable defense of laches, which was not even discussed by plaintiffs; and (2) full development of underlying factual issues in the record and in plaintiffs' extra-record allegations. Either of these areas supports intervention on the merits, as well as in any remedy phase of this case.

First, as noted in their opening brief, growers and processors have been prejudiced significantly by plaintiffs' three year delay in filing this case and seek the opportunity to raise their defense of laches on the merits. The defense of laches lies where there is "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."[5] Plaintiffs do not dispute that laches can be an equitable defense to the merits of a NEPA action.[6] Indeed, laches is a recognized defense to equitable claims for declaratory judgment like those asserted by plaintiffs.[7]

---

[4] *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d at 1329.

[5] *Lathan v. Brinegar*, 506 F.2d 677, 692 (9th Cir. 1974), quoting *Costello v. United States*, 365 U.S. 265, 282 (1961).

[6] *See* Grower and Processor Memorandum of Points and Authorities, p. 10.

[7] *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155 (1967); *see also Apache Survival Coalition v. United States*, 21 F.3d 895, 907-14 (9th Cir. 1994).

Courts have exercised their discretion to consider laches as a merits defense and entered judgment against plaintiffs who were not diligent in seeking relief.

For example, in *Apache Survival Coalition v. United States*, the Ninth Circuit applied NEPA's laches standard and affirmed the district court's grant of summary judgment against claims that the government failed to comply with statutory review requirements in approving construction of telescopes on a mountain. The Court explained that plaintiffs, with "full knowledge of the impending construction of the observatory on Mount Graham, were content to stand on the sidelines while the federal agencies undertook their administrative duties. Only after substantial work on the observatory complex had been completed did they raise objections, and even then without a reasonable amount of diligence."[8] Likewise, in *Friends of Yosemite v. Frizzell*, the court dismissed a NEPA challenge to a construction project on laches grounds where plaintiffs waited more than three years after the project was publicized to file suit.[9] Indeed, some courts suggest that a laches defense is a preliminary matter that should be reached even before the merits of the case are addressed.[10]

The laches question that arises out of the facts of this case is stark. Even a cursory comparison of the Center for Food Safety's ("CFS") December 20, 2004 comments to USDA opposing the deregulation and their 2008 Complaint demonstrates that CFS fully understood in 2004 the so-called "Effects of Deregulation" alleged in its Complaint. As but one example, CFS's 2004 comments refer to "the increasing number and extent of glyphosate resistant weeds…;"[11] while their 2008 Complaint similarly alleges that "increased glyphosate use on Roundup Ready sugarbeets will result in the development of glyphosate-resistant weeds."[12] Yet despite their full belief in these so-called "effects" and CFS' stated contention in their 2004 comments that the "EA is both substantively and legally inadequate,"[13] the plaintiffs chose to sit on their rights for nearly three years.

---

[8] *Id*. at 914.
[9] *Friends of Yosemite v. Frizzell*, 420 F. Supp. 390 (N.D. Cal. 1976).
[10] *See Parsippany v. Costle*, 503 F. Supp. 314, 318-320 (D.N.J. 1979).
[11] Certified Administrative Record at AR00078.2
[12] Complaint ¶ 54.
[13] Certified Administrative Record at AR000728.21

Further, Mr. Golden, counsel for CFS, states in his declaration in opposition to the motions to intervene that he was "co-counsel of record in *Geertson Seed Farms*," a case filed in this Court before Judge Breyer that challenged the deregulation of Roundup Ready alfalfa. That case was filed on February 16, 2006, yet the decision to deregulate alfalfa *came three months after the government's March 2005 deregulation of Roundup Ready sugarbeets*. In addition, the CFS, a named plaintiff in both *Geertson* and this matter, filed comments to the deregulation of Roundup Ready sugarbeets on December 20, 2004.[14] Plaintiffs have some explaining to do, and it should be done on the merits. Why were plaintiffs "content to stand on the sidelines" while growers and processors transitioned to Roundup Ready sugarbeets and while they (and their counsel) litigated another matter they now assert is closely related to this one? Growers and processors should be permitted to present their laches defense on a cross motion for summary judgment and to establish the significant prejudice from plaintiffs' delay that is highlighted in their opening brief and declarations.[15]

Second, growers and processors can contribute to the full and accurate exposition of the record in this case. In contrast to plaintiffs, a collection of interest groups and a Vermont internet seed seller whose collective connection to and knowledge of sugarbeets are limited, growers and processors represent all of the nation's approximately 10,000 commercial sugarbeet farmers and the processing cooperatives they collectively own. While plaintiffs glibly declare this case to be a simple record dispute between them and the government in which the actual growers and processors of sugarbeets should have no role, plaintiffs' filings in this case are peppered with inaccurate and hyperbolic statements that are not in or supported by the record, and that do not fairly represent how sugarbeets are grown and processed. Growers and processors can provide firsthand information that will accurately explain points in the administrative record (which also includes extensive comments submitted by growers and processors).[16]

---

[14] AR000714-729.

[15] *See generally* Growers' and Processors' Memorandum of Points and Authorities; *see also* Declarations of Wettstein, ¶¶ 2, 5, 7-8, Schlemmer, ¶¶ 2, 7-8, Markwart, ¶¶ 9, 15-16, 18-20, Hofer, ¶¶ 13, 15, Snyder ¶¶ 10, 12, Grant, ¶¶ 6, 15, 17-18 and Berg ¶¶ 12, 16-19.

[16] Certified Administrative Record at AR000734, AR000737-747, AR000749-751, AR000753-768, AR000770-779 and AR000783-794.

1    For example, growers and processors can respond to plaintiffs' inaccurate allegation that sugarbeets will be "grown and distributed on a commercial scale throughout the United States for the first time this year" by fairly and accurately describing how sugarbeets were commercially grown and distributed in 2006 and 2007.[17] Growers can also respond to plaintiffs' misleading allegation that Roundup will *lead to* the use of toxic and persistent herbicides by describing the suite of herbicides that Roundup is replacing *this year*.[18] And growers can directly address the misleading allegation that growers will be harmed by the loss of the "choice" to "convert to growing organic sugar beets" – a choice that is meaningless in a country where no organic sugarbeets are grown.[19] Growers and processors can also accurately describe how Roundup is applied in two or three applications so the Court is not left with the misleading suggestion that sugarbeets will be "doused" with Roundup.[20]

Moreover, the grower-owned processors can fairly and directly describe how sugarbeets are processed and respond to the false allegation that the refined sugar from Roundup Ready sugarbeets will be genetically modified or contaminated.[21] In short, the presence of growers and processors in this case "would assist the court in its orderly procedures leading to the resolution of this case, which impact[] large and varied interests,"[22] not simply the limited and remote interests of plaintiffs.

### B. Inadequate representation is not required for permissive intervention and, in any event, is present here.

Plaintiffs assert that because growers and processors share defenses with the government they are adequately represented by the government. As an initial matter, this logic would effectively do away with permissive intervention, which requires that intervenors share a claim or defense with existing parties. Moreover, plaintiffs confuse the standards for intervention of right and intervention by permission. While a showing of inadequate representation is required for intervention of right

---

[17] Complaint at ¶ 1; *see, e.g.,* Grant Decl. ¶ 14, Snyder Decl. ¶ 3.
[18] *See* Complaint at ¶ 3; *see, e.g.,* Snyder Decl. ¶ 9.
[19] Complaint at ¶ 58.
[20] *See, e.g.,* Markwart Decl. ¶ 13.
[21] Markwart Decl., ¶ 22.
[22] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002.

under Rule 24(a), it is not required for permissive intervention under Rule 24(b).[23]  Indeed, the Rule 24(a) analysis "does not control application of Rule 24(b)."[24]

Still, plaintiffs assert that it is well established that adequately represented parties should not be allowed to intervene permissively.  Since this is not a correct statement of the standard, it is not surprising that plaintiffs' cases do not stand for this proposition.  In *California v. Tahoe Regional Planning Agency*, multiple parties previously had been allowed to intervene as defendants.  The court denied later intervention by a new proposed intervenor on the ground that the collective group of existing intervenors adequately represented the later intervenor's interest.[25]  In *Rodriguez v. Ridge*, the proposed intervenors did not satisfy the threshold requirements for permissive intervention.  Moreover, the proposed intervenor was a minor child (through a guardian ad litem) seeking to intervene in a federal habeas petition filed by his father regarding a final order removing him from the U.S.  Because there was no reason given as to why the parent could not raise the same arguments as his child, and the two were even represented by the same law firm, the interest of parent and child were deemed identical.[26]  In *Philadelphia Indemnity Insurance v. Business Computer Training Institute*, the court merely identified adequacy of representation as a factor a court could consider.  But it denied permissive intervention because, unlike here, the proposed intervenor did not have a claim or defense in common with an existing party.[27]  And *Hallco* is inapposite because the proposed intervenor essentially sought to intervene as a plaintiff bringing precisely the same claims as the existing plaintiff (even though it could have separately filed its own lawsuit in which it adequately represented itself).[28]

---

[23] Fed. R. Civ. P. 24(b); *see, e.g., Spangler*, 552 F.2d at 1329 (identifying inadequate representation as only one of many factors that courts may, or may not, consider in determining whether permissive intervention is appropriate); *see also S. Cal Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (identifying the test for permissive intervention, which does not include inadequate representation).

[24] *Kootenai*, 313 F.3d at 1111.

[25] *California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

[26] *Rodriquez v. Ridge*, 290 F. Supp. 2d 1153, 1156-57 (C.D. Cal. 2003).

[27] *Philadelphia Indem. Ins. Co. v. Bus. Computor Training Inst.*, 2006 WL 2883010 at *3 (W.D. Wash. 2006).

[28] *Hallco Mfg. Co., Inc. v. Quaeck*, 161 F.R.D. 98, 102-103 (D. Or. 1995).

In any event, the government will not adequately represent the interests of growers and processors on the question of laches. Adequacy of representation is determined based on: (1) whether the interests of the present parties are such that they will make all of the intervenor's arguments; (2) whether the present parties are capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary information to the proceedings that other parties might neglect.[29] The "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate."[30] Mere fear or belief that a proposed intervenors' position will not be sufficiently emphasized is enough to establish inadequate representation.[31] Also, interests that are "more narrow and parochial" than a government's general interest in defending its regulatory decisions are sufficient to show inadequate representation.[32]

The growers and processors will not be adequately represented by the government in this lawsuit. The government's sole interest is demonstrating that it complied with its obligations under NEPA and upholding its determination. If the government does not prevail, it will merely be sent back to perform its analysis again; it will not suffer the devastating economic impact that the growers and processors would. The government is not required to take account of this impact in its decision-making under NEPA and it is not charged with representing the interests of the growers and processors in the planting, harvesting and processing of Roundup Ready sugarbeets (as they acknowledge in their reply to plaintiffs' intervention opposition). Indeed, the growers and processors have interests that are much more specific (*i.e.*, the availability of seeds, inadequate beet supply, penalties) than the government's general, overriding interest in upholding the decision. For these reasons, growers and processors have a reasonable belief that the government will not adequately emphasize the laches

---

[29] *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498-99 (9th Cir. 1995).
[30] *Id*. at 1498.
[31] *Sequoia Forestkeeper v. U.S. Forest Service*, 2008 WL 324013 (E.D. Cal. 2008).
[32] *See, e.g.*, *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998); *Golden Gate Restaurant Assoc. v. City & County of San Francisco*, 2007 U.S. Dist. LEXIS 28974 at *10 (N.D. Cal. 2007).

defense that arises out of plaintiffs' delay of three years in filing suit, and the transition to Roundup Ready sugarbeets that occurred during that three-year period.

### C. The participation of growers and processors on the merits will not unduly hinder resolution of plaintiffs' delayed complaint.

Plaintiffs assert that intervention should not be permitted because it would cause undue delay and prejudice. In other words, plaintiffs contend that growers and processors should not be permitted to show that plaintiffs' three year delay in filing this case has caused them prejudice because that would cause delay and prejudice to plaintiffs. But plaintiffs chose the timing of this litigation, which could have been brought as early as March 17, 2005. Plaintiffs' newfound sense of urgency rings hollow as a basis to deny permissive intervention by growers and processors who themselves face significant harm from plaintiffs' delay.

Plaintiffs refer to the four groups of intervenors as "a swarm"[33] that may cause the issues in this case to be "intensely litigated."[34] Plaintiffs complain that differently situated proposed intervenors "found it necessary" to hire their own counsel, in four cities no less (one more city than plaintiffs' counsel). And plaintiffs predict a "Donnybrook Fair"[35] of judicial brawling and rowdiness that they apparently believe cannot be avoided by the voluntary cooperation of the parties or the case management authority of this Court.

In contrast, growers and processors envision summary judgment briefing and argument on the schedule agreed to by the existing parties, with their laches argument raised on a cross-motion for summary judgment to be filed on July 2, 2008 (or a schedule otherwise agreed to by the parties or set by the Court). Growers and processors are willing to work with other proposed intervenors to coordinate and minimize duplication, and to work within limits set by the Court. Although plaintiffs complain about "a swarm," it is noteworthy that growers and processors made significant efforts to

---

[33] Opposition at 2:6.
[34] *See* Declaration of Kevin Golden, ¶ 5.
[35] Opposition at 11:21.

organize all of the nation's commercial sugarbeet growers and processors – more than 10,000 entitites – into a representative group of intervenors who filed a single motion supported by 7 declarations.

Finally, plaintiffs protest that intervenors will lead to more intense litigation of their NEPA challenge involving interests broader than those represented by plaintiffs and the government.[36] Again, this is largely the result of plaintiffs' own delay. Had they filed this case shortly after the deregulation determination, before growers and processors had transitioned to Roundup Ready sugarbeets, their challenge could have been resolved without putting at risk thousands of sugarbeet farmers, the processing companies they collectively own, and the communities in which they operate. Moreover, because the magnitude and implications of plaintiffs' challenge are significant for numerous parties, permissive intervention "will contribute to the just and equitable resolution of this case."[37] In *Kootenai,* the Ninth Circuit agreed with the district court that the presence of intervenors would contribute to the equitable resolution of the case given the potential impacts of the NEPA challenge on "large and varied interests."[38] Other Ninth Circuit courts have adopted the same rationale. For example, in *Sierra Nevada Forest Prot. Campaign*, the court permitted the California Cattlemen's Association (CCA) to join twenty-one intervenors in a NEPA challenge to the Sierra Nevada Forest Plan Amendment (referred to as the "Framework"). The court explained:

> In exercising its discretion to allow permissive intervention, the Court finds that the 2004 Framework impacts large and varied interests, including those advanced by CCA. The potential magnitude of the 2004 Framework is great, and the implications flowing from any challenge to it may be considerable. Ensuring that all competing interests implicated by the Framework are heard, including the particular interests advanced by CCA herein, will contribute to the just and equitable resolution of this case.[39]

A decision on the merits of plaintiffs' request for declaratory relief will have significant implications for 10,000 sugarbeet growers, the nine sugarbeet processors collectively owned by the

---

[36] While growers and processors believe that the government is intensely involved in this litigation, plaintiffs' fear of increased intensity from intervenors' participation belies their claim that the government adequately represents the broad interests at issue in this litigation.

[37] *Sierra Nevada Forest*, at *2; *Pac. Rivers Council*, 2005 WL 2671404 (E.D. Cal. 2005) at *2.

[38] *Kootenai*, at 1111.

[39] *Sierra Nevada Forest*, at *2*; see also Pac. Rivers Council*, at *2.

growers, and their twenty three processing factories. The potential harms to these growers are a direct result of plaintiffs' delay in filing this case. Permissive intervention is necessary for a fair and equitable resolution of the merits of this case.

## II. CONCLUSION

Growers' and processors' motion to intervene should be granted because they meet the requirements for permissive intervention in all phases of this litigation and intervention of right in the remedial phase, if any.

Dated: May 9, 2008

Respectfully submitted,

HOWREY LLP

By: /s/ Joanne Lichtman
Joanne Lichtman
Attorneys for Proposed Intervenor-Defendants

-10-
REPLY IN SUPPORT OF GROWER/PROCESSOR MOTION TO INTERVENE