JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
LORI CARAMANIAN
Environment & Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, Colorado 80294
Telephone: (303) 844-1499
Fax: (303) 844-1350
Email: lori.caramanian@usdoj.gov

CHARLES MICHAEL O'CONNOR
Office of the US Attorney
Civil Division - ENR
450 Golden Gate Ave, 10th Floor
PO Box 36055
San Francisco, CA 94102-3495
415-436-7180
Fax: 415-436-6748
Email: Charles.OConnor@usdoj.gov

ATTORNEYS FOR UNITED STATES

JAMES J. GILLIGAN
Assistant Director, Federal Programs Branch
JOHN R. COLEMAN (Va. Bar # 70908)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8460
Email: John.Coleman3@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, ORGANIC SEED ALLIANCE, SIERRA CLUB AND HIGH MOWING ORGANIC SEEDS,<br><br>Plaintiffs,<br><br>vs.<br><br>EDWARD T. SCHAFER, in his official capacity as Secretary of the United States Department of Agriculture; and CINDY SMITH, in her official capacity as Administrator of the Animal and Plant Health Inspection Service,<br><br>Defendants. | Civil Action No 08-0484-JSW<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 3, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 2<br>Judge: Hon. Jeffrey S. White |

1

**TABLE OF CONTENTS**

I.      APHIS COMPLIED WITH THE PLANT PROTECTION ACT . . . . . . . . . . . . . . . . . . . 1

II.     APHIS COMPLIED WITH NEPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Supreme Court's Decision in *Public Citizen* is
                Controlling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      Plaintiffs Misconstrue APHIS' Arguments and the
                Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      APHIS Reasonably Concluded that an EIS was not
                Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.      APHIS Adequately Addressed the Potential Impacts
                of the Deregulation Decision on Other Plant Species . . . . . . . . . . . . . . . . . . . . . 11

        E.      APHIS Adequately Addressed Socio-economic Impacts . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## CASES

*Ashley Creek Phosphate Co. v. Norton*, 420 F.2d 934 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 14

*Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*,
   126 F.3d 1158 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bicycle Trails Council v. Babbitt*, 82 F.3d 1445 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 15

*Cactus Corner, LLC v. USDA*, 450 F.3d 428 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Camp v. Pitts*, 411 U.S. 138 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Center for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*,
   538 F.3d 1172 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dep't of Transp. v. Public Citizen*, 541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 7, 8

*Geertson Seed Farms v. Johanns*,
   No. C 06-01075, 2007 WL 518624 (N.D. Cal. Feb. 13, 2007) . . . . . . . . . . . . . . 6, 13, 14

*Ground Zero Ctr. for Non-Violent Action v. U.S. Dep't of Navy*,
   383 F.3d 1082 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lands Council v. McNair*, 537 F.3d 981 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

*McFarland v. Kempthorne*, 545 F.3d 1106 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Metropolitan Edison Co. v. People Against Nuclear Energy*,
   460 U.S. 775 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*NRDC v. USDA*,
   No. 05-cv-8005, 2007 WL 1610420 (S.D.N.Y. June 4, 2007) . . . . . . . . . . . . . . . . . . . . 4

*Native Ecosystems Council v. U.S. Forest Serv.*,
   428 F.3d 1233 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Nw. Coal. for Alternatives to Pesticides v. U.S. E.P.A.*,
   544 F.3d 1043 (9th Cir 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nw. Envt'l Def. Ctr. v. Bonneville Power Admin.*,
   117 F.3d 1520 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Portland General Elec. Co. v. Bonneville Power Admin.*,
    501 F.3d 1009 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ranchers Cattlemen Action Legal Fund v. USDA*,
    415 F.3d 1078 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Wetlands Action Network v. U.S. Army Corps of Eng'rs*,
    222 F.3d 1105 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7 U.S.C. § 7701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

7 U.S.C. § 7702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

7 U.S.C. §§ 7713-15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7717 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. §§ 7719-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7756 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. §§ 7759-61 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7 U.S.C. §§ 7781-85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7 U.S.C. § 7758 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1

**REGULATIONS**

2

7 C.F.R. PART 340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

3

7 C.F.R. § 340.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5

4

7 C.F.R. § 360.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5

40 C.F.R. § 1508.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6

40 C.F.R. § 1508.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

7

40 C.F.R. § 1508.27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

8

52 Fed. Reg. 22,892 (June 16, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

58 Fed. Reg. 17,044 (March 31, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10

73 Fed. Reg. 60,008 (October 9, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court should uphold APHIS' decision to deregulate H7-1 sugar beets because Plaintiffs have not carried their heavy burden of demonstrating that it was arbitrary or capricious in violation of the Plant Protection Act or the National Environmental Policy Act (NEPA). In their reply, Plaintiffs fail to respond to our explanation of the record and raise spurious arguments instead. APHIS is entitled to summary judgment.

## I.    APHIS COMPLIED WITH THE PLANT PROTECTION ACT

APHIS' decision to grant the petition for nonregulated status of H7-1 sugar beets pursuant to 7 C.F.R. § 340.6 was "based on a consideration of the relevant factors," and Plaintiffs cannot show "a clear error of judgment." *Cactus Corner, LLC v. USDA*, 450 F.3d 428, 433 (9th Cir. 2005) (quoting *Baccarat Fremont Developers, LLC v. US Army Corps of Eng'rs*, 425 F.3d 1150, 1153 (9th Cir. 2005)). Rather than address the evidence in the administrative record, *see* Def. SJ Br. at 10-14, Plaintiffs wrongly assert that "[d]efendants cannot point to anything . . . in the [administrative] record to support APHIS's deregulation decision." Pl. Opp. at 22.

*First*, APHIS' determination that H7-1 sugar beets are unlikely to interbreed with wild relatives of the species *Beta macrocarpa* in the Imperial Valley of California is not a clear error of judgment. *See* AR 796; Def. SJ Br. at § I.A. H7-1 sugar beets are grown exclusively for the root crop and are harvested in the first year of cultivation before they flower. AR 823. In the rare instances – generally less than 1% of the time, *see* AR 591 – that sugar beets bolt (*i.e.*, flower) during the first year, they are manually removed by sugar beet farmers. AR 634, 799-800, 3143. H7-1 sugar beets and *Beta macrocarpa* will rarely flower at the same time in the Imperial Valley, and, based on this fact alone, glyphosate-resistant hybrids will rarely develop.[1] *See* AR 800, 662-63 (citing study finding minimal gene introgression between wild and cultivated sugar beets in the

---

[1] Several additional factors would further reduce the likelihood that glyphosate-resistant sugar beets will develop, even if flowering times did overlap. *See* Def. SJ Br. at 11 - 12 (citing the record).

Imperial Valley over the past seventy years). APHIS also explained that any glyphosate-resistant hybrids that did develop would not present a weed problem because they would have no competitive advantage outside of managed systems, and could be easily controlled with manual techniques or other herbicides within managed systems. AR 800, 824-25; *see also* 663-64, 814, 835-36.

*Second*, APHIS found that granting the petition would "not cause damage to raw or processed agricultural commodities." AR 796; Def. SJ Br. at § I.B. Plaintiffs' argument to the contrary is based exclusively on the possibility of gene flow between H7-1 sugar beets and sexually compatible crops – *i.e.*, swiss chard and table beets – in the seed producing region of the Willamette Valley. However, none of the Plaintiffs raised this issue during the public comment period, and they have therefore "forfeited" their ability to raise the issue now. *See Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 764-65 (2004); *see also Nw. Envt'l Def. Ctr. v. Bonneville Power Admin.,* 117 F.3d 1520, 1534-35 (9th Cir. 1997). Moreover, notwithstanding Plaintiffs' failure to raise it, APHIS considered this issue during the administrative process, stating that "current seed certification standards are sufficient to address" the possibility of gene flow in seed production fields. AR 816. This conclusion is consistent with the record. The lone comment APHIS received related to seed production described the precautions seed growers take, including extended isolation distances, to ensure seed purity. AR 780-82. The petition itself stated that seed growers are selected for their ability to comply with seed certification standards. *See* AR 634-35; *see also* AR1910; AR 2486; AR 2533-34.[2] That these isolation distances are "voluntary" – in the sense that they are required by market forces but not by law – is immaterial. "Agricultural or cultivation practices" are relevant to

---

[2] Plaintiffs belatedly submit extra-record evidence contrary to the record review provisions of the APA. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). However, their declaration supports the proposition that isolation distances *will* be sufficient to prevent gene transfer in the seed producing region of Oregon's Willamette Valley. *See, e.g.,* Tichinin Decl. ¶ 6 ("Industry standards are far more stringent than the certification standards set out by OSU."); Morton Decl. ¶ 6 (explaining that WVSSA isolation distances are more demanding than those of the OSU).

APHIS' determination of nonregulated status, *see* 7 C.F.R. § 340.6(c)(4), and "[a]ll that is required [by the APA] is that the agency have considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Ranchers Cattlemen Action Legal Fund v. USDA*, 415 F.3d 1078, 1093 (9th Cir. 2005) (internal citations and quotation marks omitted).

Furthermore, even if some minimal gene transfer could occur, Plaintiffs failed to explain how that will "cause damage to raw or processed agricultural commodities." AR 796. As Plaintiffs concede, gene transfer will have no effect on "processed commodities" because sugar processed from H7-1 sugar beets is identical to sugar processed from conventional sugar beets. Pl. Opp. at 23; AR 595-602. Likewise, there could be no harm to raw agricultural commodities – *i.e.*, swiss chard and table beets – even in the remote possibility that gene transfer did occur. "Although beets and chard are both the same taxonomic species, they are different phenotypically in their late life stages." AR 4370. Therefore, any hybrids possessing  intermediate physical characteristics would be immediately recognizable as such and eliminated from the crop. This potential harm to the "raw commodity" – an unmarketable hybrid – is no greater with respect to H7-1 sugar beets than with conventional sugar beets, and possibly less given the extended isolation distances employed when growing GE seed. AR 780-82. Thus, APHIS' determination that the cultivation of H7-1 sugar beets "will not cause damage to raw or processed agricultural commodities," AR 796, is not "arbitrary and capricious." *See Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008) ("*McNair*") (court should be "particularly deferential" in reviewing matters within agency's expertise).

*Finally*, APHIS' determination that H7-1 sugar beets "should not reduce the ability to control pests and weeds in sugar beet or other crops" is based on overwhelming evidence in the record. *See* AR 796; Def. SJ Br. § I.C. Every public comment from sugar beet farmers and agricultural scientists described the advantage of H7-1 sugar beets for weed control. *See* AR 733-68, 770-71,

775-79, 783-92.  This view is consistent with numerous scientific studies contained in the record.

*See, e.g.,* AR 3934-37, 4215-30, 4241-28, 4525-36, 4747-52; *see also* AR 606-27 (discussing results

of studies demonstrating superior weed control with glyphosate-resistant system).  Contrary to

Plaintiffs' assertion, APHIS did consider issues related to weed resistance, and found that

glyphosate-resistant weeds are not considered a major weed problem in sugar beet production, and

that any glyphosate-resistant weeds that develop can be controlled with conventional herbicide or

mechanical tillage. *See* AR 800-801; *see also* AR 645-60 (extensive discussion of weed resistance

in the petition included in response to a request by APHIS, AR 509-10).  Thus, APHIS "'cogently

explained why it has exercised its discretion in a given manner'" and, therefore, its decision is not

"arbitrary and capricious."  *Cactus Corner*, 450 F.3d at 430 (quoting *Motor Vehicle Mfrs. Ass'n of

U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).[3]

## II.   APHIS COMPLIED WITH NEPA

### A.   The Supreme Court's Decision in *Public Citizen* is Controlling.

Plaintiffs' arguments regarding the scope of APHIS' authority at issue in this case, which

they now claim should be broadly construed because APHIS has the authority to regulate noxious

weeds, and their attempt to distinguish *Department of Transportation v. Public Citizen*, 541 U.S.

752, 770 (2004), are misplaced.  The H7-1 sugar beets at issue in this case are subject to regulation

– *i.e.*, a restriction on their movement in interstate commerce – only because of a presumption

_____

[3]  Unable to plausibly argue that APHIS' determination that the cultivation of H7-1 sugar beets would reduce the ability to control weeds, Plaintiffs cite a district court opinion for a proposition – that APHIS should quantify the level of risk it is willing to accept – that the Ninth Circuit has explicitly rejected.  *See Cactus Corner, LLC v. USDA*, 450 F.3d 428, 433 (9th Cir. 2006) (rejecting a similar argument based on *Harlan Land Co. v. USDA,* 186 F. Supp. 2d 1076 (E.D. Cal. 2001); *see also NRDC v. USDA*, Case No. 05-cv-8005, 2007 WL 1610420, at *4 (S.D.N.Y. June 4, 2007) ("Plaintiffs' position, in essence, is that the PPA, in 7 U.S.C. §§ 7712(a) and 7701(3), requires APHIS to adopt the rule that will most effectively reduce pest risk, and that that is the end of the question. . . . That view is both too narrow and not supported by the language of the PPA.").

contained in 7 C.F.R. Part 340 that plants produced through genetic engineering in which either the donor or vector organism is a plant pest present a "plant pest" risk. These regulations were promulgated in June 1987 and were based exclusively on APHIS' authority under the Plant Quarantine Act ("PQA") (7 U.S.C. § 151 *et seq.*) and the Federal Plant Pest Act ("FPPA") (7 U.S.C. § 150aa *et seq.*).[4] APHIS made clear that Part 340 was intended to regulate only "certain genetically engineered organisms and products that present plant pest risks," and expressly disclaimed reliance on its statutory authority under the Federal Noxious Weed Act (7 U.S.C. § 2801 *et seq.*). 52 Fed. Reg. 22,892, 22,893 (June 16, 1987). Likewise, in promulgating the operative section of these regulations (7 C.F.R. § 340.6), APHIS again made clear that the underlying statutes limited its authority to "protect[ing] American agriculture and the environment against the introduction and dissemination of plant pests," and did not provide authority for "the commercialization or marketing of plants." 58 Fed. Reg. 17,044, 17,051 (March 31, 1993).

Plaintiffs make little effort to dispute APHIS' interpretation of the plant pest aspects of the statute, which is entitled to deference from this Court. *Portland General Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1025 (9th Cir. 2007) ("We give administrative agencies considerable leeway in the interpretation of the scope of their authority.") (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (agencies entitled to "deference in the interpretation of statutes that they administer."); *see also Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984). Instead, conceding that APHIS' regulatory authority is limited to consideration of whether an organism presents a "plant pest" risk, Plaintiffs attempt to save their challenge by arguing that APHIS is obliged to consider impacts based on its separate authority under the statute to regulate

---

[4] Although the PQA, the FPPA and the Federal Noxious Weed Act were later repealed and consolidated in the Plant Protection Act ("PPA"), 7 U.S.C. § 7701 *et seq.*, Congress expressly preserved regulations promulgated under the repealed statutes until the promulgation of superceding regulations. 7 U.S.C. § 7758.

"noxious weeds."[5]  Pl. Opp. at 4-8.  Plaintiffs' efforts to broadly construe APHIS' authority under the PPA by conflating "noxious weeds" with "plant pests" should be rejected.[6]  Congress separately addressed noxious weeds and plant pests in the PPA, and APHIS' authority to regulate noxious weeds does not give it broad authority to consider factors unrelated to plant pest risk in making its determination on a petition to deregulate.[7]

The Court should therefore reject Plaintiffs' efforts to recast their claim to argue, for the first time, that because APHIS has the authority to regulate noxious weeds, the Court should therefore find it has broad authority to regulate (and deregulate) an article because of APHIS' plant pest and noxious weed authorities.[8]  Pl. Opp. at 5.  The question before this Court, as set forth in Plaintiffs'

---

[5]  Plaintiffs argue that our discussion of *Public Citizen* in this case must be discounted because it was not raised in the *Geertson Seed Farms v. Johanns*, 2007 WL 518624 (N.D. Cal Feb. 13, 2007). Plaintiffs improperly ask this Court to attempt to second-guess the government's litigation strategy. The fact that *Public Citizen* was not raised in *Geertson Seed* does not preclude APHIS from raising it now, as Plaintiffs apparently concede.

[6]  Plaintiffs argue that APHIS' proposed regulations allowing it to address future genetically engineered organisms under the authority to regulate noxious weeds, Pl. Opp. at 6, 73 Fed. Reg. 60,008, 60,012-14 (Oct. 9, 2008), means APHIS has broadly interpreted its statutory authority; the proposal only acknowledges that technology evolves and does not change the outcome.  APHIS has made no final regulatory decision whether to use its PPA noxious weed authority to regulate certain GE organisms pursuant to Part 340.

[7]  Plaintiffs' assertion that our discussion of *Public Citizen* has "no basis beyond *post hoc* attorney rhetoric," Pl. Opp. at 8, is wrong.  We showed in our opening brief that APHIS concluded in the EA that it did not have authority to consider a number of issues, including negative consumer reaction to genetically modified materials, difficulties related to identity preservation, the issue of bolting, assessment of impacts on socio-economics such as impacts on organic producers, and application of glyphosate.  AR 798; 799; 801; 805.  The EA also explained that APHIS' position that "[a]n organism is no longer subject to the regulatory requirements of 7 CFR Part 340 when it is demonstrated not to present a plant pest risk."  AR 807.  The fact that the EA does not discuss *Public Citizen* does not mean that our discussion of it as legal support for the agency's contemporaneous conclusions is a *post hoc* rationale.

[8]  Plaintiffs claim that APHIS "grudgingly acknowledge[d]" that it had authority to regulate noxious weeds.  Pl. Opp. at 7.  The reason that noxious weeds are not discussed in our brief, beyond a mention in a footnote, is because noxious weeds, and APHIS' authority to control noxious weeds, are not an issue in this case.  Indeed, the only mention of noxious weeds in Plaintiffs' opening brief is similarly found in a general recitation of APHIS' authority under the PPA.  Pl. SJ Br. at 5.

opening brief, is whether APHIS properly concluded "that Roundup Ready sugar beets do not present a plant pest risk," not, as Plaintiffs attempt to argue now, whether APHIS has the authority to regulate H7-1 sugar beets as a noxious weed.[9] Pl. SJ Br. at 1; Pl. Opp. at 5. If Plaintiffs believed that APHIS should have regulated H7-1 sugar beets as a noxious weed under the PPA, they had an obligation to raise that issue in their comments. *Public Citizen*, 541 U.S. at 764-65. They did not.

The attenuated chain of circumstances Plaintiffs manufacture in their reply in an effort to construe the PPA as granting broad authority illustrates the multiple flaws in their argument. Plaintiffs argue, without any reference to authority, that "[i]t is beyond serious dispute that the accelerated evolution of 'superweeds' which develop resistance to glyphosate from repeated exposure to that chemical; the increased use of herbicides, both glyphosate and other, even more toxic chemicals necessary to control them; as well as the cumulative effects of increased herbicide use on this new HT crop together with other previously-deregulated Roundup Ready crops, may 'directly or indirectly injure . . . interests of agriculture . . . the natural resources of the United States, the public health or the environment.'" Pl. Opp. at 6, quoting 7 U.S.C. § 7702(10).[10] Plaintiffs'

[9]  Even assuming that Plaintiffs are correct in their assertion that the PPA more broadly defines "noxious weed," Plaintiffs' belated suggestion that APHIS should consider regulate H7-1 sugar beets under that authority is simply without merit. Congress separately addressed noxious weeds in the PPA, providing a different mechanism for the Secretary to address their dissemination within the United States. 7 U.S.C. § 7712(f)(1) provides that the Secretary may publish, by regulation, a list of noxious weeds, which the Secretary has done, and sugar beets are not on that list. *See* 7 C.F.R. § 360.200. Further, it is readily apparent from the record that H7-1 sugar beets do not have the characteristics of noxious weeds. As APHIS explained in its proposed revisions to its Part 340 regulations, "federally listed noxious weeds are plants that are likely to be aggressively invasive, have significant negative impacts, and are extremely difficult to manage or control once established." 73 F.R. 60008, 60013 (Oct. 9, 2008).

[10]  Under Plaintiffs' theory of causation, it would be difficult to imagine an instance when a federal action would *not* be the "cause" of various environmental impacts. NEPA applies only to "reasonably foreseeable" impacts that are proximately caused by the agency action at issue. *See* 40 C.F.R. § 1508.8(b); *Public Citizen*, 541 U.S. at 767 (NEPA requires "a reasonably close causal relationship" between the environmental effect and the alleged cause, analogous to the "familiar doctrine of proximate cause from tort law.") (citation omitted).

reliance on a section of the PPA defining noxious weeds, § 7702(10), to make a claim not raised in

their complaint that APHIS violated NEPA is meritless.  Further, as plaintiffs concede, if APHIS

"'has no ability to prevent a certain effect due to its limited statutory authority over the relevant

actions, the agency cannot be considered a legally relevant 'cause' of the effect'" and need not

consider the effect pursuant to NEPA.  Pl. Opp. at 4 (quoting *Public Citizen*, 541 U.S. at 770).

APHIS correctly concluded that it does not have the authority to regulate H7-1 sugar beets on the

basis of "socio-economic effects on farmers and processors who do not want to grow or market GE

crops," Pl. SJ Br. at 11; *see* AR 801, or on the basis of a possible increase in glyphosate use.[11]   AR

805. Accordingly, APHIS had no obligation to explore these issues in an EA because it had no

authority to act on any additional information.  *Public Citizen*, 541 U.S. at 770.

Finally, Plaintiffs' efforts to distinguish *Public Citizen* by arguing that the issues here are

more closely akin to *Center for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538

F.3d 1172 (9th Cir. 2008) (NHTSA) and *Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006),

are unavailing.  In *Center for Biological Diversity*, the court concluded that the "NHTSA clearly has

statutory authority to impose or enforce fuel economy standards," and therefore had the statutory

authority to act on information contained in an EIS by setting higher standards.  538 F.3d at 1213.

Unlike the PPA, the NHTSA's statutory authority specifically granted NHTSA authority to set

higher standards, providing that fuel economy standards "'shall be the maximum feasible average

---

[11] Contrary to Plaintiffs' overly broad and unsupported assertion, Pl. Opp. at 7, APHIS does not have
the authority to direct a farmer to plant corn, alfalfa, sugar beets or any other crop.  The PPA gives
APHIS jurisdiction solely to prevent, control, and/or eradicate the harmful spread of plant pests or
noxious weeds.  7 U.S.C. §§ 7701(1), (7), (8), (9), 7702 (1),(10),(14), 7711-7715, 7719-21, 7751,
7756, 7759-7761, 7772, 7781-85.  Other than protecting against the introduction or dissemination
of plant pests and noxious weeds, APHIS has no PPA authority to regulate anything else in any
manner, with certain exceptions not applicable here.  *See* 7 U.S.C. §§ 7712(a), (c), (g), 7717, and
7720.  A farmer's decisions regarding what crops to plant and whether or not to apply herbicides on
those crops are clearly and definitively outside the PPA, are not "federal action" under NEPA, and
are beyond the authority of APHIS to regulate.

fuel economy level that the Secretary decides the manufacturers can achieve in that model year.'" *Id.* at 1194 (quoting 49 U.S.C. § 32902(a)).  The court held that given the statutory goal of energy conservation, the agency should have considered the impacts of global warming because it had the authority to act on the information contained in an EIS by setting higher emissions standards.  *Id.* at 1213-14.  *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 104-05 (D.D.C. 2006) is inapposite because in that case, the agency's authority was constrained by regulation, not by statute, and it had the authority to prevent impacts by denying access to federal lands.  That is not the case here.

**B.     Plaintiffs Misconstrue APHIS' Arguments and the Applicable Law.**

Plaintiffs' specious assertion that APHIS argued that the Court should defer to agency determinations "even where it has made determinations contrary to record evidence" barely deserve a response.  Pl. Opp. at 2.  We correctly set forth the standard of review, explaining that "[t]he Ninth Circuit made clear [in *McNair*] that courts are to be most deferential when the agency is making predictions within its [area of] special expertise, at the frontiers of science." 537 F.3d at 993 (citation and quotation marks omitted).  Def. SJ Br. at 16.  Plaintiffs quote at length from a footnote in *Nw. Coal. for Alternatives to Pesticides v. EPA*, 544 F.3d 1043, 1052 n.7 (9th Cir 2008), suggesting that the Ninth Circuit "clarified" its position after *McNair*, Pl. Opp. at 2, but the quoted language does no more than reiterate long-standing precedent that an agency's decision must be supported by the administrative record.  More significant, as the Ninth Circuit reiterated in another decision issued around the same time as *Northwest Coalition*, the Court should "'uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned.'" *See McFarland v. Kempthorne*, 545 F.3d 1106, 1113 (9th Cir. 2008) (quoting *Motor Vehicle*, 463 U.S. at 43).  The court explained that "the critical factor in *Motor Vehicle* was that the agency 'submitted no reasons at all' for its decision." *Id.* (quoting *Motor Vehicle*, 463 U.S. at 50).  Where the agency had articulated a basis for its

decision in its decision and in correspondence the court concluded that "[i]f an agency's determination is supportable on any rational basis, we must uphold it. This is especially true when an agency is acting within its own sphere of expertise." *Id.* at 1113 (internal citation and quotation marks omitted). Plaintiffs do not dispute that the deregulation determination is a matter within APHIS' special expertise or that the agency is entitled to deference when it acts within its sphere of expertise. Plaintiffs may disagree with APHIS' analysis, but they have not raised "substantial questions" that the decision may have significant impacts that must be evaluated in an EIS. Pl. Opp. at 1 (quoting *Klamath Siskiyou Wildlands Center v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006)).

Plaintiffs also misconstrue NEPA. In our opening brief, we explained that preparation of an EIS requires an agency to evaluate both the context and intensity of a proposed action in making a determination, which includes analysis of several sub-factors, including whether an action is likely to be "highly controversial." We showed that Plaintiffs had not demonstrated that any of those factors was implicated. Def. SJ Br. at 14-15; 40 C.F.R. § 1508.27(b)(4). Plaintiffs now devote several pages to discussing four sub-factors, but their discussion of the "highly controversial" sub-factor misconstrues NEPA. Contrary to their assertion, an "outpouring of opposition" Pl. Opp. at 21, does not render an action "highly controversial." Instead, a plaintiff must show, which Plaintiffs have not done here, that "there is a substantial dispute [about] the size, nature, or effect of the major Federal action *rather than the existence of opposition to a use.*" *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005) (internal quotation marks and citation omitted), (emphasis added); *see also Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1122 (9th Cir. 2000).

**C.      APHIS Reasonably Concluded that an EIS was not Required.**

The Ninth Circuit's decision in *Native Ecosystems Council* provides a useful starting point for analysis of any need for an EIS.  In *Native Ecosystems*, as here, the plaintiffs argued that an EIS was required because the agency's analysis in an EA concluded that there would be some negative effects.  428 F.3d at 1240.  The plaintiffs also raised the argument, as do Plaintiffs here, that the project was "highly controversial" or "highly uncertain."  *Id.*  The Ninth Circuit disagreed, finding that the plaintiffs sought to "capitalize on the [agency's] thorough and candid environmental analysis by seizing on various bits of information" in the project record to claim that substantial questions existed as to whether the project would significantly impact the environment.  *Id.*  The court explained that "[t]he presence of negative effects regarding the impact of [the project]" does not necessarily raise substantial questions about its impacts.  *Id.*  "Simply because a challenger can cherry pick information and data out of the administrative record to support its position does not mean that a project is highly controversial or highly uncertain."  *Id.*  The court therefore "decline[d] to interpret NEPA as requiring the preparation of an EIS any time that a federal agency discloses adverse impacts . . . or acknowledges information favorable to a party that would prefer a different outcome."  *Id.*  The court held that an agency may disclose impacts without "automatically triggering" an EIS, and that the court's role was simply to evaluate whether the agency took a "hard look" at the environmental consequences of the action.  *Id.*  Likewise, in this case the record shows that APHIS took a hard look at the potential impacts, and reasonably concluded the impacts are not significant.  AR 797-803; 805-06.

**D.    APHIS Adequately Addressed the Potential Impacts of the Deregulation Decision on Other Plant Species.**

To the extent that it had an obligation to evaluate the potential impacts of the increased use of glyphosate, APHIS' analysis in the EA adequately examined those impacts.[12]   In part B of their reply, Plaintiffs argue that some sort of "superweed" will result from the increased use of glyphosate.  Plfs. Reply at 8-10.  In part C of their brief, Plaintiffs assert that "superweeds" will result from wild beets cross pollinating with H7-1 sugar beets.  Plfs. Reply at 10-11.  Plaintiffs' exaggerated rhetoric cannot mask the fact that APHIS addressed both of these issues in its EA and determined that neither issue was significant.

For the proposition that glyphosate resistant weeds are a significant issue, Plaintiffs rely (again) on their own comment letter, AR 720, and a report funded by an advocacy group, AR 3014, which was not peer reviewed.  Pl. Opp. at 8.  This "evidence," simply does not raise substantial question about the agency's conclusions.  Next, Plaintiffs imply that after requesting additional information from Monsanto about weed resistance, APHIS dismissed the issue without careful evaluation.  *Id.* at 9 (citing AR 509-10).  However, APHIS concluded that although glyphosate-resistant weeds exist in this country, they are not considered a major weed in sugar beet production, and, if glyphosate-resistant weeds do develop in sugar beet production, they can be controlled with alternative herbicides and/or cultural management practices (*i.e.*, hand weeding, mechanical cultivation, rotary hoeing, etc.).  AR 800-801.  These findings were based, in part, on an extensive response to APHIS' request that Monsanto included in its revised petition as well as numerous articles addressing the issue.  AR 645-60; AR 3850-64 (status and location of glyphosate-resistant weeds); AR 4121-26 (discussing glyphosate-resistant weeds); AR 4174 (discussing ways to address problems associated with glyphosate-resistant weeds).

---

[12] Plaintiffs assert that APHIS dismissed their claim that increased use of Roundup will have an impact on the environment, and that we asserted simply that it was EPA's responsibility to regulate pesticides. Pl. Opp. at 19.  This mischaracterizes our discussion.  See Def. SJ Br. at 29-30.

Plaintiffs string cite several documents for the proposition that "[t]he record discloses the development of glyphosate-resistant weeds may have a significant impact," Pl. Opp. at 10, but none of the documents raises substantial questions about the agency's conclusions.[13] Importantly, as Plaintiffs concede, APHIS considered the issue, Pl. Opp. at 10 (citing AR 3850-51). APHIS also addressed the issue in the FONSI, stating that none of the verified glyphosate resistant weeds "is considered to be a major weed in sugar beets." AR 801. Plaintiffs quote *Geertson Seeds* at length, Pl. Opp. at 9, but in addition to the factual differences discussed in our opening brief, the important distinction they ignore is that the court found APHIS' conclusions were "not convincing" because APHIS merely stated that "weed species often develop resistance to herbicides" without explaining why those impacts were not significant. 2007 WL 518624 at *10. That is not the case here.

Likewise, contrary to their assertion that we ignored the potential for H7-1 sugar beets to hybridize with wild beets, as explained above, and in our opening brief, APHIS considered whether deregulation would increase weediness in wild relatives and found there was ample basis in the record to conclude that it would not. We also showed in that brief, and herein, that their arguments that APHIS ignored the potential impacts on chard and table beets in Oregon are without merit.

Finally, Plaintiffs wrongly argue that APHIS failed to address the potential cumulative effects of glyphosate use in connection with other crops. Pl. Opp. at 13. But, as Plaintiffs point out, reviewing an earlier petition for deregulation, APHIS requested that Monsanto provide additional

---

[13] AR 4174 is an article where several scientists are reported to express differing views on the subject of glyphosate resistance. AR 3021 and AR 3051 reference the same advocacy report that Plaintiffs previously cited. AR 4121 notes that herbicide-resistant weeds have become a problem in some crops, but Plaintiffs neglect to explain that the study does not address sugar beets. They also omit the conclusion, which supports APHIS' analysis here, that "few of these occurrences of herbicide-resistant weeds in corn and soybean have been unmanageable." AR 4124. AR 4231 is not a peer-reviewed study; nor does it conclude that lambsquarters is developing resistance to glyphosate; it states only that "researchers are looking into the possibility that glyphosate resistance is emerging." *Id.* at 4233. AR 4636 is a 1970s study assessing whether lambsquarters has a competitive advantage over sugar beets when crops are not treated with pesticide. AR 4635-36.

1   information regarding potential changes in agricultural practices associated with cultivation of

2   glyphosate tolerant sugar beets in rotation with other glyphosate tolerant crops.  Pl. Opp. at 13

3   (citing AR 124).  What Plaintiffs neglect to explain is that Monsanto addressed that issue in its

4   revised petition.  AR 627-631.  The petition explained that research involving crop rotations of

5   Roundup Ready corn, sugar beet and spring wheat "concluded there was no evidence of glyphosate-

6   resistant weeds developing after five years of continuous use" of Roundup.  AR 628.  The agency's

7   analysis "need not discuss remote and highly speculative consequences."  *Ground Zero Center for*

8   *Non-Violent Action v. U.S. Dep't of Navy*, 383 F.3d 1082, 1090 (9th Cir. 2004) (quotation marks and

9   citation omitted).  Thus, unlike in *Geertson Seed*, where the court found that APHIS failed to

10  consider that there were other Roundup Ready crops on the market requiring analysis of cumulative

11  effects, 2007 WL 518624 at *10, the record here shows that the agency required Monsanto to submit

12  information on whether the impacts were likely to occur.

13  **E.      APHIS Adequately Addressed Socio-economic Impacts.**

14          As explained above in our discussion of *Public Citizen*, APHIS had no obligation to broadly

15  assess the socio-economic impacts of its decision.  Apparently abandoning their claim that APHIS

16  was required to assess the impacts on organic producers (we showed there was no organic industry),

17  Plaintiffs make a contorted argument that because Imperial Sugar made conclusory assertions that

18  there were "questions concerning risks to their marketability and price supports to their industry,"

19  APHIS was required to examine such impacts in an EIS.  Pl. Opp. at 18.  This goes well beyond

20  what NEPA requires, and to the extent that *Geertson Seed* holds to the contrary, we respectfully

21  disagree.  We explained in our opening brief that the court's decision in *Geertson Seeds* relied on

22  *dicta* in *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934 (9th Cir. 2005), which Plaintiffs do

23  not dispute.  Plaintiffs do not dispute that the rule of law in the Ninth Circuit is that NEPA generally

does not require examination of economic consequences.  Def. SJ Br. at 23 (citing 40 C.F.R. § 1508.14; *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158, 1186 (9th Cir. 1997)).  The CEQ regulation addressing economic impacts makes clear that economic impacts need only be addressed *if environmental* impacts are significant, compelling preparation of an EIS, and only if "economic or social and natural or physical environmental effects are interrelated."  40 C.F.R. § 1508.14.  Thus, an EIS is not required on the basis of economic impacts alone.  Economic impacts are not one of the factors the agency is required to consider when it evaluates whether an action is significant, 40 C.F.R. § 1508.27(b), and to the extent the *Geertson Seed* court concluded such impacts must be considered in evaluating whether an EIS must be prepared, we submit its conclusion finds no support in the law.

Further, questions concerning risks to marketability and Imperial Sugar's concerns about price supports simply are not interrelated with the impacts on the environment, and it is somewhat ironic that the Center for Food Safety is advancing arguments on behalf of "one of the country's largest sugar processors," Plfs Reply at 17, when that company itself recognized that its comments were likely beyond the scope of the agency's analysis. AR 794. Plaintiffs' efforts to compel APHIS to analyze consumers' preferences for non-GE foods are also misplaced and their efforts to distinguish *Bicycle Trails Council v. Babbitt*, 82 F.3d 1445 (9th Cir. 1996) are unavailing.  In *Bicycle Trails*, the court held that "[a]n increased risk of accident is not an impact to the physical environment." *Id.* at 1467 (citing *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 775 (1983) ("A risk of an accident is not an effect on the physical environment. A risk is, by definition, unrealized in the physical world.")).  Likewise, here, the risk that consumers might reject processed food is also not an impact on the physical environment requiring analysis in an EIS.

**CONCLUSION**

Federal Defendants' motion for summary judgment should be granted.

DATED: February 27, 2009    Respectfully submitted,

           JOHN C. CRUDEN
           Acting Assistant Attorney General
           Environment and Natural Resources Division

           */s/ Lori Caramanian*
           LORI CARAMANIAN
           Environment & Natural Resources Division
           U.S. Department of Justice
           1961 Stout Street, 8th Floor
           Denver, Colorado 80294
           Telephone: (303) 844-1499
           Fax: (303) 844-1350
           Email: lori.caramanian@usdoj.gov

           JOHN R. GRIFFITHS
           Assistant Director, Federal Programs Branch

           */s/ John R. Coleman*
           JOHN R. COLEMAN
           Trial Attorney, U.S. Department of Justice
           Civil Division, Federal Programs Branch
           20 Massachusetts Ave., N.W., Room 6118
           Washington, D.C. 20530
           Telephone: (202) 514-4505
           Facsimile: (202) 616-8460
           Email: John.Coleman3@usdoj.gov