KEVIN GOLDEN, State Bar No. 233378
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Email:  kgolden@icta.org

PAUL H. ACHITOFF (Admitted Pro Hac Vice)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

GREGORY C. LOARIE, State Bar No. 215859
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612
T: (510) 550-6725 / F: (510) 550-6749
Email: gloarie@earthjustice.org

Attorneys for Plaintiffs

IGNACIA S. MORENO
Assistant Attorney General
BEVERLY F. LI
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044
Tel: (202) 353-9213 / Fax: (202) 305-0506
Email: beverly.li@usdoj.gov

TONY WEST
Assistant Attorney General
JOHN R. GRIFFITHS
Assistant Director, Federal Programs Branch
JOHN R. COLEMAN (Va. Bar # 70908)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Tel: (202) 514-4505 / Fax: (202) 616-8460
Email: john.coleman3@usdoj.gov

Attorneys for Defendants

*Attorneys for Defendant-Intervenors listed in signature block*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

CENTER FOR FOOD SAFETY, ORGANIC
SEED ALLIANCE, SIERRA CLUB, and
HIGH MOWING ORGANIC SEEDS,

       Plaintiffs,

       v.

THOMAS J. VILSACK, in his official
capacity as Secretary of the United States
Department of Agriculture; and CINDY
SMITH, in her official capacity as
Administrator of the Animal and Plant Health
Inspection Service,

       Defendants.

Case No.:   3:08-cv-0484-JSW

SUPPLEMENTAL
JOINT CASE MANAGEMENT
STATEMENT

JOINT CASE MANAGEMENT STATEMENT

Pursuant to Local Rules 16-9 and 16-10(d), as well as this Court's Standing Order, the Parties submit their Supplemental Joint Case Management Statement in this matter.  This Supplemental Joint Case Management Statement updates the Parties' prior Statement filed on April 9, 2008 to address issues relevant to the remedies phase in this litigation.

1. Subject-matter jurisdiction, personal jurisdiction & venue.

Plaintiffs allege that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 2201-02 (declaratory relief), 5 U.S.C. § 702 (Administrative Procedure Act), and 28 U.S.C. § 2201 (declaratory judgments).  Plaintiffs allege that this Court has personal jurisdiction over the defendant officers of federal agencies under 28 U.S.C. § 1391(e).

Venue in this Court is proper, 28 U.S.C. § 1391(e).  All Parties have been served.

2. Brief description of case, defenses, and related proceedings.

Plaintiffs filed this suit in January 2008, challenging a March 2005 determination by Defendants that a variety of sugar beet that has been genetically engineered to resist glyphosate, the active ingredient in the herbicide Roundup, does not pose a plant pest risk pursuant to the Plant Protection Act and therefore must be given nonregulated status.  This variety of sugar beet is known as "Roundup Ready" sugar beets.  Plaintiffs alleged that Defendants' determination that the "Roundup Ready" sugar beets do not pose a plant pest risk is unsupported by the evidence in the record and is arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law, and without observance of procedures required by law, in violation of the Plant Protection Act and the Administrative Procedure Act.  Plaintiffs also alleged that Defendants violated the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, in

connection with the deregulation determination, in that Defendants arbitrarily and capriciously failed to conclude that their determination may have significant environmental impacts, requiring preparation of an Environmental Impact Statement (EIS).  Plaintiffs also alleged that Defendants violated NEPA by issuing an Environmental Assessment (EA) that inadequately evaluates the deregulation determination's environmental impacts.

Defendants asserted that they have not taken any actions that violate NEPA, the Plant Protection Act or the Administrative Procedure Act.

On September 21, 2009, this Court granted Plaintiffs' motion for summary judgment and denied Defendants' cross-motion for summary judgment.  See Order Regarding Cross-Motions for Summary Judgment ("MSJ Order") (Doc. # 139).  The Court found that the agency violated NEPA because, among other reasons, the agency failed to provide analyses of relevant impacts, and plaintiffs established that deregulation may have a significant effect on the environment. MSJ Order at 12-14.  The Court found that the agency did "not demonstrate the 'hard look' that NEPA requires" specifically with respect to the analysis of the pollination distances of sugar beets, the effectiveness of isolation distances seed growers may use to prevent cross-pollination of genetically modified sugar beets with other sexually-compatible crops and whether such isolation distances are in fact utilized, and the socio-economic effects of gene transmission on farming and consumption of conventional sugar beets and related crops.  MSJ Order at 13-14. The Court also required Defendants to prepare an EIS.  The Court did not reach Plaintiffs' Plant Protection Act, Administrative Procedure Act, or other NEPA claims. The Court determined that "because the Court has concluded that APHIS must prepare an[] EIS before approving the petition to deregulate Roundup Ready sugar beets, the Court need [not] address whether APHIS also violated the PPA."  MSJ Order at 14 & n.4.

1   This case is now in the remedies phase.

2       *Statement of Plaintiffs Regarding Defenses*:

3

4       It is Plaintiffs' understanding, in accordance with this Court's Standing Order regarding
the contents of Case Management Statements, that the document is intended to present a " brief
chronology of the facts and a statement of the principal factual issues in dispute," and a "brief
statement, without extended legal argument, of the disputed points of law, including reference to
specific statutes and decisions," and that the statement "except in unusually complex cases,
should not exceed ten pages."  Plaintiffs do not view this as an unusually complex case, and are
reluctant to offer arguments that Plaintiffs believe should be made in the parties' briefs, rather
than in a Case Management Statement.

       Although Intervenor-Defendants have herein argued unsupported facts concerning their
purported defenses and where the balance of equities in this case supposedly lies, Plaintiffs do
not believe this is appropriate, and will present their own arguments and evidence on these
subjects in their briefs.

       *Statement of Intervenor-Defendants Regarding Defenses:*

       During the remedial phase, Intervenor-Defendants are permitted to oppose injunctive
relief, including by asserting defenses.  The deregulation decision challenged by Plaintiffs in this
case was issued in March 2005 and efforts to commercialize the Roundup Ready sugar beet crop
began soon thereafter.  In the following four and one half years, the overwhelming majority of
seed production and nearly all commercial root production has shifted from conventional sugar
beets to Roundup Ready sugar beets so that today roughly 95% of all sugar beet crops are
Roundup Ready and more than half of the nation's sugar supply is derived from these Roundup
Ready crops.  This is the *status quo*.

Rather than filing a timely suit or seeking immediate injunctive relief to challenge the commercial development of this crop, Plaintiffs waited roughly three years following deregulation to file suit challenging Federal Defendants' deregulation decision.  Over four and one half years after deregulation, Plaintiffs still have yet to file a motion seeking injunctive relief.  The "seed" crop for Roundup Ready sugarbeets is planted primarily in the Willamette Valley in Oregon, and must be planted two years before the seed can be available for the commercial sugarbeet crop – which is in turn planted in ten other states across the country.  Although the seed crop for 2010 was planted in 2008 and is predominantly Roundup Ready, and the seed crop planted for 2011 (planted in 2009) is likewise predominantly composed of Roundup Ready varieties, Plaintiffs now seek an immediate halt to all commercial planting of Roundup Ready varieties of sugarbeets across the country.  In doing so, Plaintiffs have demonstrated little, if any, understanding of the dramatic consequences of their proposed relief given the lack of alternatives available to the growers, including billions of dollars in direct economic harm to thousands of farmers in at least ten states and numerous farming communities supported by sugar beet production, plus significant potential effects on the domestic sugar supply, consumers of sugar nationwide and other interests.

By contrast, the potential harm to Plaintiffs from the alleged risk of cross-pollination appears to be miniscule, if it exists at all.  And Plaintiffs' concerns regarding a possibility of cross-pollination and other issues could easily be mitigated by temporary mandatory stewardship measures specifically designed to address such issues pending Federal Defendants' compliance with NEPA.  Plaintiffs themselves requested exactly these types of stewardship measures in their initial public comments on the government's deregulation of Roundup Ready sugar beets in 2005.  See AR 716 (proposing, in the alternative, "conditional deregulation" of Roundup Ready

sugar beets).  Moreover, Plaintiffs' principal declarant in this proceeding to date—Frank

Morton—has acknowledged publicly that standard protective measures such as isolation

distances could mitigate his concerns.  See, e.g., Decl. of Frank Morton in Supp. of  Pls.' Mot.

for Summ. J. at ¶ 15.

Based on these and other facts, Intervenor-Defendants intend to assert, *inter alia*, the

defenses of laches, equitable estoppel, waiver and unclean hands.  Intervenor-Defendants will

also offer evidence and expert testimony in support of interim stewardship measures that allow

continued planting of Roundup Ready sugarbeets subject to conditions that address the NEPA

violation identified by the Court, pending completion of NEPA review.

3. Disputed legal issues.

A.      Plaintiffs' Position:

As Plaintiffs may not have a further opportunity to address the issues raised herein

concerning an evidentiary hearing, Plaintiffs' position is as follows:

Defendant-Intervenor Monsanto appealed Judge Breyer's issuance of preliminary and

permanent injunctions without an evidentiary hearing in Geertson Farms Inc. v. Johanns, 2007

WL 776146 (March 12, 2007 N.D. Cal.) and Geertson Farms Inc. v. Johanns, 2007 WL 1302981

(May 03, 2007 N.D. Cal.).  The Ninth Circuit rejected its arguments.  Geertson Seed Farms v.

Johanns, 541 F.3d 938, 946-947 (9th Cir. 2008).  After briefing on intervenors' petition for

rehearing and rehearing en banc, the Ninth Circuit rejected them yet again.  Geertson Seed Farms

v. Johanns, 570 F.3d 1130, 1139-1140 (9th Cir. 2009).

The Ninth Circuit has held repeatedly that an evidentiary hearing is not required before

issuing an injunction, and that submission of evidence in written form complies with due

process.  See Stanley v. University of Southern California, 13 F.3d 1313, 1326 (9th Cir. 1994)

("In this circuit, the refusal to hear oral testimony at a preliminary injunction hearing is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter.")  See also Kenneally v. Lungren, 967 F.2d 329, 335 (9th Cir. 1992), cert. denied, 506 U.S. 1054 (1993) ("We do not indulge a presumption in favor of evidentiary hearings."); San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 546 & n. 6 (9th Cir. 1969) ("While other courts may disagree, the rule in this circuit is that in a proceeding on an order to show cause why a preliminary injunction should not be granted, the injunction may, in the discretion of the trial court, be granted or denied upon the affidavits.")

Although Defendant-Intervenors argue herein "there are numerous material issues of fact in dispute," they have not shown that such disputes actually exist.  The proper balancing of equities is not an issue of fact, but a matter of judicial discretion.  See International Molders' & Allied Workers' Local Union v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986) ("Here, some facts are in dispute, but the real problem involves the application of correct substantive law to those facts.")  If Defendant-Intervenors are correct, however, this counsels further against an evidentiary hearing, which "should not be held" unless "the disputed [] facts are simple and little time would be required for an evidentiary hearing."  International Molders', 799 F.2d at 555. See also, United States v. State of Oregon, 913 F.2d 576, 582 (9th Cir. 1990) ("[W]e have rejected any presumption in favor of evidentiary hearings, especially if the facts are complicated, as they are here.").  Plaintiffs believe Federal Defendants and Defendant-Intervenors will have ample opportunity to present their views concerning remedies in declarations.

This Court does not owe any deference to Federal Defendants during the remedy phase. Deference may be owed an agency's informed discretion when the Court is reviewing an agency's decision made in an area within its expertise.  In this remedy phase, the Court is not

reviewing an agency decision; the Court already determined APHIS abused its discretion by

deciding not to prepare an EIS.  As the appropriate remedy is not a matter within APHIS's

discretion, no deference is owed to its opinions about how to remedy its own unlawful action.

See National Wildlife Federation v. National Marine Fisheries Service, 422 F.3d 782, 799 (9th

Cir. 2005) (in injunction proceedings following determination agency violated Endangered

Species Act, "there was no formal agency finding to which deference might arguably be owed.

Rather, the government chose to present its case through expert affidavit.")

       B.       Defendants' Position:

       In the remedies phase of this litigation, Defendants' view is that the principal issues

include:

       a.     Whether the Court properly ordered the agency to prepare an EIS rather than

           remanding to the agency to determine what NEPA analysis is appropriate;

       b.     Whether Plaintiffs have satisfied their burden of showing irreparable harm in

           order to be entitled to injunctive relief;

       c.     If the Court determines that injunctive relief is appropriate, what remedy will be

           narrowly-tailored so as to address the potential environmental impacts identified

           by the Court, with due consideration for the hardships of the Parties imposed by

           any remedy and the public's interest; and

       d.     Whether the Court should order an evidentiary hearing before entering injunctive

           relief.

       Defendants believe that an evidentiary hearing is necessary in the circumstances present

here to inform the Court of the current status of the implementation of the agency's 2005

deregulation determination and to allow the Court to make the factual determinations necessary

to craft an appropriate remedy regarding: (1) whether Plaintiffs can demonstrate irreparable harm; (2) the balance of harms between the Parties imposed by any remedy; and (3) the proposed remedy's impact on the public's interest.  See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542-25 (1987) (irreparable damage is not presumed when an agency fails to thoroughly evaluate the proposed impact of a proposed action); Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374-76, 381-82 (2008) (stating that "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest," and that the same standard applies for permanent injunctive relief); Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir. 1990) ("[A]n injunction must be narrowly tailored to give only the relief to which plaintiffs are entitled.").

Defendants' view is that these factual determinations are not equivalent to those that the agency may undertake in conducting any further NEPA analysis because the focus of this evidentiary hearing will be the nature of appropriate injunctive relief following the determination by this Court that the NEPA analysis was inadequate.  Under the circumstances of this case, an evidentiary hearing will be necessary in determining the appropriate remedy.

C.     Intervenor-Defendants' Position:

Just last term in Winter v. NRDC, 129 S. Ct. 365, 375 (2008), the Supreme Court clarified what is required during the remedial phase of NEPA litigation:

> i.     NEPA is a procedural and not a substantive statute and NEPA violations do not automatically require any injunctive remedy while the agency corrects the identified NEPA violation.  Winter, 129 S. Ct. at 375 (reversing the Ninth Circuit and holding that traditional equitable principles must be applied in a NEPA

remedies phase, including by mandating the Plaintiffs establish a "likelihood" rather than simply a "possibility" of irreparable harm); Dep't of Transp. v. Public Citizen, 541 U.S. 752, 756 (2004); Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) (reversing a decision establishing "absolute statutory obligation" to enjoin violations of environmental statutes).

ii.      To prevail on their request for permanent injunctive relief, Plaintiffs bear the burden of proving that 1) the remedies available at law are inadequate; 2) there is a likelihood of irreparable harm in the absence of the requested relief; 3) the balance of harms favors injunctive relief; and 4) the public interest would not be disserved by injunctive relief.  See Winter, 129 S. Ct. at 375; eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).

iii.      Under Supreme Court precedent, a court may not presume irreparable harm from a NEPA violation.  See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542–45 (1987) (reversing rule presuming irreparable damage as "contrary to traditional equitable principles").  Rather, as the Supreme Court reaffirmed in Winter, Plaintiffs must establish a likelihood of irreparable harm in support of each element of an injunction.  129 S. Ct. at 374-76.

iv.      Any remedy entered by this Court must be limited to the scope of the NEPA violation found, see Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam), and must be *narrowly tailored* to address the identified irreparable harm, see Califano v. Yamasaki, 442 U.S. 682, 702 (1979) (stating that injunctive relief must be "no more burdensome to the defendant than necessary").

v.      This Court must give deference to any remedial measures APHIS proposes

and must analyze whether irreparable harm would be likely with those measures

in place.  See Winter, 129 S. Ct. at 384 (lower courts erred by failing to analyze

whether irreparable harm would occur with the interim measures proposed by the

government in place.)

Like the Federal Defendants, Intervenor-Defendants seek an evidentiary hearing, both on

the elements necessary for injunctive relief and on their defenses (including laches).  See, e.g.,

National Wildlife Fed'n v. Burford, 835 F.2d 305 (D.C. Cir. 1987).  Because there are numerous

material issues of fact in dispute, Intervenor-Defendants are entitled to an evidentiary hearing

prior to any ruling from this Court on Plaintiffs' request for injunctive relief.  See, e.g., Goldberg

v. Kelly, 397 U.S. 254, 269 (1970) (holding that "[i]n almost every setting where important

decisions turn on questions of fact, due process requires an opportunity to confront and cross-

examine adverse witnesses"); Charlton v. Estate of Charlton, 841 F.2d 988, 989 (9th Cir. 1988)

("Generally, the entry or continuation of an injunction requires a hearing during the remedies

phase.  Only when the facts are not in dispute, or when the adverse party has waived its right to a

hearing can that significant procedural step be eliminated.") (internal quotation marks and

citations omitted); United States v. Microsoft, 253 F.3d 34, 101 (D.C. Cir.) (en banc) cert. denied

534 U.S. 952 (2001) ("It is a cardinal principle of our system of justice that factual disputes must

be heard in open court and resolved through trial-like evidentiary proceedings. …  Other than a

temporary restraining order, no injunctive relief may be entered without a hearing."); Twp. of

Piscataway v. Duke Energy, 488 F.3d 203, 214-15 (3d Cir. 2007) (laches factors "are factual

determinations that typically should be made after a full evidentiary hearing"); see also 27A Am.

Jur. 2d Equity § 201 (1996) ("Where a defendant asserts the laches defense, a full hearing of testimony on both sides of the issue is required.")

    4. <u>Motions</u>.

    The Court on August 15, 2008 issued an Order Granting in Part and Denying in Part Motions to Intervene (Doc. # 113), whereby it denied motions by industry growers, processors, seed companies, et al. to intervene as of right or permissively in the merits phase of this action, and granted motions to intervene in the remedies phase.

    Plaintiffs and Defendants filed cross-motions for summary judgment, which were decided by the Court in its Order of September 21, 2009 (Doc. # 139).  As noted above, the Court in its MSJ Order granted Plaintiffs' motion for summary judgment and denied Federal Defendants' cross-motion.

    On October 16, 2009, Proposed Defendant-Intervenor SESVanderHave USA, Inc. filed a motion to shorten time (Doc. # 145) and a motion to intervene (Doc. # 148).  On October 22, 2009, the Court denied the motion to shorten time.  <u>See</u> Doc. # 163.  On November 5, 2009, Plaintiffs filed an opposition to the motion to intervene (Doc. # 168).  Federal Defendants took no position on the motion to intervene.  On November 12, 2009, SESVanderHave USA, Inc. filed a reply in support of its motion to intervene.  The motion to intervene is noticed for hearing on December 4, 2009.

    If Plaintiffs move for injunctive relief, Defendants and Intervenor-Defendants anticipate opposing such a motion.

    5. <u>Amendment of Pleadings</u>.

    The Parties agree that no amendment of pleadings will be necessary or appropriate.

    6. <u>Evidence Preservation.</u>

*See* Section 8, *infra*.

7. Disclosures.

The merits of the claims having been adjudicated, this issue is moot.

8. Discovery.

The Parties agree that, summary judgment having been rendered, discovery regarding the merits phase is moot.

    A.    Plaintiffs' Position:

Plaintiffs believe discovery regarding the remedies phase is neither necessary nor appropriate for any party, and will unduly and pointlessly delay the issuance of appropriate injunctive relief.

    B.    Defendants' Position:

Defendants do not believe that the record before the Court is fully developed as to remedies issues because the administrative record in this case relates to the agency's determination that the genetically modified sugar beets do not pose a plant pest risk and therefore must be granted nonregulated status, rather than the potential harms arising from the NEPA violation the Court found, the balance of the hardships of the Parties that could result from any remedy, or the public's interest. Defendants' position is that narrowly-focused discovery regarding the issue of remedies is appropriate. Defendants' view is that discovery should be limited to a number less than the 10 depositions per side permitted by Federal Rule of Civil Procedure 30(a)(2)(A). Defendants' view is that written discovery in the form of interrogatories, requests for production, and requests for admission would be of limited benefit and should not be permitted. *See* Section 16, *infra*.

    C.    Intervenor-Defendants' Position:

Intervenor-Defendants believe that limited discovery is necessary, including depositions of plaintiffs' experts and other witnesses, and other limited written discovery. This should include representative depositions, limited production of documents relating to Plaintiffs' delay in filing suit and Intervenor-Defendants' laches defense, a mutual exchange of data or information considered by the experts in forming their opinions, and a mutual exchange of trial exhibits and documents to be relied on by any proposed trial witness. Intervenor-Defendants suggest that the proper scope of discovery be determined following filing of Plaintiffs' motion for a permanent injunction -- when Plaintiffs' contentions regarding proposed remedies are identified.

9. <u>Class Actions</u>.

The Parties did not, and do not, seek certification as a class action.

10. <u>Related Cases</u>.

A.    Plaintiffs' Position:

Plaintiffs believe <u>Geertson Seed Farms, et al. v. Johanns, et al</u>., No. C 06-1075 CRB (N.D. Cal.), <u>aff'd</u>, 570 F.3d 1130 (9th Cir. 2009), is related, in that two of the four plaintiffs herein challenged a determination by the same defendants herein to deregulate a variety of alfalfa that, like the sugar beets in this case, Defendant-Intervenor Monsanto had genetically engineered to be resistant to glyphosate. In that case as here, plaintiffs alleged defendants had violated NEPA and the Plant Protection Act, based on similar concerns. Judge Breyer granted summary judgment in the plaintiffs' favor and issued a permanent injunction. <u>See Geertson Seed Farms v. Johanns</u>, 2007 WL 518624 (N.D. Cal. Feb. 13, 2007). Plaintiffs will present further arguments in their briefs concerning the extent to which they believe this Court should be guided by <u>Geertson Seed Farms</u>.

B.    Defendants' Position:

Defendants' position is that because Judge Breyer denied plaintiffs' motion to relate the instant case to <u>Geertson</u>, the cases are not, and should not be considered related.  With respect to remedies, Defendants' view is that there are significant factual differences between the instant case and <u>Geertson</u> such that the injunctive relief the Court required in <u>Geertson</u> should not be followed here.  The differences between the alfalfa crop at issue in <u>Geertson</u> and the sugar beet seed industry at issue here include issues of geography, plant biology, the existence of an organic alfalfa industry, and agronomic practices.  The Defendant-Intervenors in <u>Geertson</u> have filed a petition for a writ of certiorari.

C.    Intervenor-Defendants' Position:

Intervenor-Defendants agree with the government that there are no related cases, as Judge Breyer determined when he denied Plaintiffs' Motion to Relate Case on February 1, 2008.   As indicated in the briefing on that motion, <u>Geertson</u> dealt with an entirely different crop with different agronomic circumstances.  And among many other distinctions:

i.     The Roundup Ready alfalfa crop in <u>Geertson</u> constituted slightly less than 1% of alfalfa acreage nationwide.  By contrast, as a result of plaintiffs' multiple year delay in filing this suit, roughly 95% of all sugar beet crops are now Roundup Ready and more than half of the nation's sugar supply is derived from these Roundup Ready crops;

ii.     Unlike the situation with Roundup Ready alfalfa in <u>Geertson</u>, Roundup Ready sugarbeet production and commercial root production are completely geographically separate.  Because sugarbeet seed production is concentrated in the Willamette Valley in Oregon, there are no genuine issues regarding potential cross-pollination for the many thousands of farmers who grow Roundup Ready sugarbeet crops in ten other states across the country.

iii.     For sugarbeet seed production in the Willamette Valley, there are existing private contractual measures that already require substantial isolation distances between seed production fields, and a specific private arbitration mechanism to settle disputes among growers;

iv.     Here, unlike in <u>Geertson</u>, plaintiffs and their declarants are already on the record acknowledging that properly formulated mandatory stewardship measures could address their concerns about cross-pollination and other issues; and

v.     Since the District Court in <u>Geertson</u> conducted the remedies proceeding in that matter, the United States Supreme Court decided <u>Winter</u>, clarifying that a court may not presume irreparable environmental harm in a NEPA case, that plaintiff bears the burden of establishing a likelihood of irreparable harm, and that a court must examine proposed interim measures and *narrowly tailor* any injunctive relief.

Although Intervenors do not believe these cases are related, Intervenors contend that *Plaintiffs'* belief that these cases are related is an important laches fact given that Roundup Ready Sugarbeets were deregulated before Roundup Ready alfalfa, yet plaintiffs waited until the alfalfa case was fully litigated to file this case.

11. <u>Relief Sought</u>.

A.     Plaintiffs' Position:

Plaintiffs sought declaratory and prospective injunctive relief vacating defendants' determination to deregulate Roundup Ready sugar beets, requiring defendants to prepare an EIS in connection with any determination to deregulate Roundup Ready sugar beets, and protecting the environment until such time as defendants have complied with these requirements.  As noted above, the Court has determined federal defendants "must prepare an[] EIS before approving the petition to deregulate Roundup Ready sugar beets…."  MSJ Order at 14 and 14 n.4.  It is Plaintiffs' position is that, the Court having already determined that Federal Defendants' deregulation decision was unlawful, any and all activities purportedly authorized by the deregulation are themselves unlawful. Consequently, Plaintiffs now seek vacatur of Federal Defendants' decision deregulating the Event H7-1 sugar beet, and a permanent injunction precluding the planting, growing, transplanting, harvesting, flowering, processing, transporting,

interstate movement, purchase, sale, or otherwise release into the environment of any and all Event H7-1 sugar beet seed, root, or any part of the plant produced therefrom, or any sugar or other materials derived therefrom, until such time as Federal Defendants have issued a Record of Decision following preparation of an adequate EIS as provided by NEPA.  Plaintiffs also seek costs, fees and expenses of suit.

B.     Defendants' Position:

At the remedies stage of the proceedings, if the Parties are unable to agree on a proposed remedy with the assistance of a neutral mediator or otherwise negotiate a settlement, *see* Sections 8  and 16, *infra*, Defendants (1) may seek to have the Court remand to the agency for additional NEPA analysis of the subjects that the Court identified as being inadequately examined and for the agency to determine whether an EA or an EIS is appropriate; (2) will seek denial of injunctive relief because Plaintiffs have not carried their burden of showing irreparable harm; and (3) will seek a remedy that is narrowly-tailored to address the specific harms the Court finds, and gives due consideration to the hardships imposed on the Parties by any remedy and the public's interest.  For the reasons stated in Section 3, *supra*, Defendants request that the Court hold an evidentiary hearing prior to imposing any injunctive relief.

C.     Defendant-Intervenors' Position:

Intervenor-Defendants will oppose Plaintiffs' request for vacatur and an injunction, but anticipate supporting interim mitigation measures that allow continued planting of Roundup Ready sugar beets and seed crops subject to conditions that address the NEPA violation identified by the Court.

12. <u>Settlement and ADR</u>.

Federal Defendants and Plaintiffs in their initial case management statement previously agreed that the nature of plaintiffs' requested relief is such that settlement is unlikely, and that no ADR process is likely to deliver benefits to the parties sufficient to justify the resources consumed by its use.

A.    Plaintiffs' Position:

Plaintiffs continue to believe that settlement regarding remedy is so unlikely that any investment of the parties' or the Court's time or resources is not justified, and will unduly and pointlessly delay the issuance of appropriate injunctive relief.

B.    Defendants' Position:

Defendants' view is that the issue of remedies is one that could benefit from or be resolved by settlement, in particular an ADR process that occurs before a neutral mediator. Defendants therefore ask the Court to order such mediation.  Even if the Court does not require the Parties to participate in mediation, Defendants believe that the Court should permit the Parties time to discuss settlement without the benefit of a mediator before any briefing or discovery on remedies is required.

C.    Intervenor-Defendants' Position:

Intervenor-Defendants agree with Federal Defendants that ADR would be useful in this matter and have suggested mediation to Plaintiffs.  Counsel for Plaintiffs has declined to mediate however, despite the fact that Plaintiff Center for Food Safety's comments on the subject deregulation in 2005 proposed, in the alternative, a conditional deregulation that would have permitted cultivation of Roundup Ready sugar beets subject to mandatory stewardship measures. AR 716.  In addition, Plaintiffs' declarant Frank Morton has indicated publicly that standard measures such as isolation distances could appropriately address his concerns with the potential

for cross pollination in the Willamette Valley.  See Decl. of Frank Morton in Supp. of Pls.' Mot. for Summ. J. at ¶¶ 15, 18.   Intervenor-Defendants believe that mediation could be effectively utilized in this case to resolve or narrow the disputed issues and consent to the assignment to a magistrate judge for that purpose.

13. <u>Consent to Magistrate Judge for All Purposes</u>.

Plaintiffs respectfully do not consent to assignment to a magistrate judge.  Defendants and Intervenor-Defendants consent to assignment to a magistrate judge for purposes of mediation only, but respectfully do not consent to such assignment for any other purpose.  *See* Section 12, *supra*.

14. <u>Other References</u>.

The Parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>.

A.      Plaintiffs' Position:

The parties previously agreed that bifurcation of the merits and remedies phases was appropriate.  The merits phase has been completed, leaving only remedies to be decided. Plaintiffs do not agree with Defendants-Intervenors' arguments herein that the scope of the remedy phase should be restricted to those activities Defendant-Intervenors have selected as appropriate for the Court's consideration.  Plaintiffs do not read the Court's summary judgment order, or NEPA, as suggesting or implying that only activities in the Willamette Valley may appropriately be enjoined.

B.      Defendants' Position:

Defendants believe that this phase of the proceedings is to be focused solely on remedies. Defendants believe that an ADR process that occurs before a neutral mediator may significantly narrow any differences between the Parties with respect to a potential remedy.

C.      Intervenor-Defendants' Position:

Any remedy imposed by the Court should be limited to the scope of the NEPA violation found by this Court.  See supra ¶ 3.  In its order granting Plaintiffs' motion for summary judgment, the Court identified issues related to potential cross-pollination among seed crops in Oregon's Willamette Valley as the basis for its finding of a NEPA violation.  See Ctr. for Food Safety v. Vilsack, No.3:08-cv-00484-JSW, at *10-11 (N.D. Cal. Sept. 21, 2009).  Any remedy imposed in this matter should be limited to those issues related to the Roundup Ready sugarbeet fields in the Willamette Valley, and should not be enlarged to cover sugarbeet production crops grown in other states. See supra ¶3; Lewis v. Casey, 518 U.S. 343, 357 (1996) (injunctions "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established" in the case at issue); N. Cheyenne Tribe v. Norton, 503 F.3d 836, 844 (9th Cir. 2007) (refusing to broaden injunction because "[t]he partial injunction fully remedies [the] failure" the district court identified under NEPA).

16. Scheduling.

A.      Plaintiffs' Position:

Plaintiffs seek a hearing on their request for relief such that the Court will be able to issue its order no later than April 1, 2010.  As discussed above, Plaintiffs do not believe an evidentiary hearing is necessary or appropriate, and that discovery and an evidentiary hearing will needlessly delay, and undermine, implementation of effective relief.

Plaintiffs propose the following schedule for resolution of the remedies issues before this Court:

a.  Plaintiffs' opening remedies brief due December 30, 2009;

b.  Defendants and Defendant-Intervenors' remedies briefs due February, 4, 2010;

c.  Plaintiffs' reply brief on remedies due March 1, 2010;

d.  Oral argument on remedies set on or around March 15, 2010.

In the interest of judicial economy and for the convenience of the parties, Plaintiffs further propose that Defendant-Intervenors' remedies briefs be consolidated into a single brief.

B.   Defendants' Position:

Defendants' position is that the Parties may be able to reach an agreement on a remedy with the assistance of a neutral mediator and ask the Court to order such mediation.  In the alternative, Defendants ask the Court to permit the Parties 60 days to negotiate a settlement without the assistance of a neutral mediator.  In the event the Parties are unable to agree on a proposed remedy with the assistance of a neutral mediator or otherwise negotiate a settlement, Defendants propose that the Parties file briefs on proposed remedies, proposed witness lists for the evidentiary hearing, and expert reports.  Defendants propose a limited discovery period that will permit the Parties to depose adverse witnesses who may testify at the evidentiary hearing. Following the close of discovery, Defendants propose further briefing in advance of the evidentiary hearing, three days for the Court to conduct the evidentiary hearing, and concurrent briefs presenting proposed findings of fact and conclusions of law following the hearing. Accordingly, if the Parties are unable to agree on a proposed remedy with the assistance of a neutral mediator or otherwise negotiate a settlement, Defendants propose the following schedule

for resolution of the remedies issues before this Court, and will file concurrently with this case management statement a proposed order outlining their proposed schedule:

    a.   Plaintiffs' opening brief providing proposed remedies, list of proposed witnesses for an evidentiary hearing, and expert reports are to be filed on February 19, 2010;

    b.   Defendants' and Defendant-Intervenors' opening briefs providing proposed remedies, list of proposed witnesses for an evidentiary hearing, and expert reports are to be filed on March 23, 2010;

    c.   Limited discovery by the Parties, as described above in Section 8 of the Parties' Joint Case Management Statement, is to be held for 45 days thereafter, to close on May 7, 2010;

    d.   The Parties' concurrent pre-hearing briefs on remedies are to be filed on June 7, 2010;

    e.   A three-day evidentiary hearing shall be scheduled in June 2010; and

    f.   Parties' concurrent proposed findings of fact and conclusions of law to be filed 30 days after receipt of the transcripts for the evidentiary hearing.

C.      Intervenor-Defendants' Position:

Intervenor-Defendants agree with the government's proposed schedule set out above, including the request that the Court order the parties to mediate.  Plaintiffs have proposed a March 1, 2010 "decision date."  Given the timing of Plaintiffs' lawsuit, and their decision not to seek injunctive relief in the four-and-a-half years since Roundup Ready sugar beets were deregulated, the schedule for the remedy phase should not be built around the mistaken assumption that a March 1, 2010 ruling on remedies could change the Spring 2010 planting of beet crops or the nature of the seed crop being grown now in the Willamette Valley for the 2011

planting year without causing disastrous financial impacts to growers, processors and the seed companies that supply them and severe dislocations concerning the domestic supply of sugar. The Spring 2010 crop is based on seed company planting decisions made two years ago.  At this point, a halt on planting Roundup Ready sugarbeet seed for the 2010 sugarbeet root crop in 10 states would create severe seed shortages in many areas of the country and pose other very significant problems potentially resulting in billions of dollars in damages to thousands of sugarbeet farmers, to cooperatives and processors and to communities across the country, and threatens the viability of the U.S. sugar beet industry and domestic sugar supply.  The *status quo* is a grower and processor industry that is 95% Roundup Ready (after a transition of years).  A "decision date" should not be based on the flawed assumption that the *status quo* could be changed in a matter of weeks or months.

17. <u>Disclosure of Non-Party Interested Entities or Persons</u>.

Plaintiffs filed their Certification of Interested Entities or Persons pursuant to Civil Local Rule 3-16 with the Complaint.

Plaintiffs are not aware of any persons, firms, partnerships, corporations (including parent corporations) or other entities having either (i) a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

The provisions of Civil Local Rule 3-16 do not apply to any governmental entity or its agencies.

Dated: November 25, 2009

Respectfully submitted,

KEVIN GOLDEN, State Bar No. 233378
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Email:  kgolden@icta.org

GREGORY C. LOARIE, State Bar No. 215859
Earthjustice
426 17th Street, 5th Floor
Oakland, CA 94612
T: (510) 550-6725 / F: (510) 550-6749
Email: gloarie@earthjustice.org

by  /s/
PAUL H. ACHITOFF (admitted pro hac vice)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai‘i 96813
T: (808) 599-2436
 F: (808) 521-6841
Email: achitoff@earthjustice.org

Attorneys for Plaintiffs

/s/
BEVERLY F. LI
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044
Telephone: (202) 353-9213
Fax: (202) 305-0506
Email: beverly.li@usdoj.gov

JOHN R. COLEMAN (Va. Bar # 70908)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8460
Email: john.coleman3@usdoj.gov

Attorneys for Defendants

/s/

PHILIP J. PERRY (CA Bar No. 148696 – admitted)
JANICE M. SCHNEIDER (DC Bar No. 472037) (*pro hac vice* granted)
LATHAM & WATKINS LLP
555 11th Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: phil.perry@lw.com
Email: janice.schneider@lw.com

HOLLY J. TATE (Ca. Bar No. 237561)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 1900
San Francisco, California 94111-2562
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: holly.tate@lw.com

STANLEY H. ABRAMSON (DC Bar No. 217281)
(*pro hac vice* granted)
RACHEL G. LATTIMORE (DC Bar No.450975)
(*pro hac vice* granted)
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5339
Telephone: (202) 857-6000
Facsimile: (202) 857-6395
Email: abramson.stanley@arentfox.com
Email: lattimore.rachel@arentfox.com

Attorneys for Intervenor-Defendant Monsanto Company

JOANNE LICHTMAN (Ca. Bar No. 137300)
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071-2627
Telephone: (213) 892-1800
Facsimile: (213) 892-2300
Email: lichtmanj@howrey.com

GILBERT S. KETELTAS (DC Bar No. 421236)
(*pro hac vice* granted)
JOHN F. BRUCE (DC Bar No. 1578) (*pro hac vice* granted)
CHRISTOPHER H. MARRARO (DC Bar No. 395152) (*pro hac vice* granted)
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610
Email: keteltasg@howrey.com
Email: brucej@howrey.com
Email: marraroc@howrey.com

Attorneys for Intervenor-Defendants American Sugarbeet Growers Association, Ervin Schlemmer, Mark Wettstein, Duane Grant, John Snyder, Jr., United States Beet Sugar Association, American Crystal Sugar Company, The Amalgamated Sugar Company LLC, Western Sugar Cooperative
and Wyoming Sugar Company LLC

DAVID J. LAZERWITZ (Cal. Bar. No. 221349 – admitted)
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dlazerwitz@fbm.com

NANCY BRYSON (DC Bar No. 913673) (*pro hac vice* granted)
HOLLAND & HART LLP
975 F Street, N.W., Suite 900
Washington, D.C.  20004
Telephone:  (202) 654-6921
Facsimile:  (202) 747-6567
Email:  nbryson@hollandhart.com

Attorneys for Intervenor-Defendant Syngenta Seeds, Inc.

DANIEL M. ABUHOFF (NY Bar No. 1227057) (*pro hac vice* granted)
HARRY ZIRLIN (NY Bar No. 2315737) (*pro hac vice* granted)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
Telephone:  (212) 909-6000
Facsimile:  (212) 909-6836
Email:  dmabuhof@debevoise.com
Email:  hzirlin@debevoise.com

DANIEL MURPHY (Ca. Bar No. 141006)
W. ALLAN EDMISTON (Ca. Bar No. 228246)
LOEB & LOEB LLP
10100 Santa Monica Blvd., 22nd Floor
Los Angeles, California  90067
Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200
Email:  dmurphy@loeb.com
Email:  aedmiston@loeb.com

Attorneys for Intervenor-Defendant Betaseed, Inc.

Attorneys for Intervenors