Pages 1 - 20

United States District Court

Northern District of California

Before The Honorable Jeffrey S. White

Center for Food Safety,       )
et al.,                       )
                              )
          Plaintiff,          )
                              )
  vs.                         )          No. C08-0484 JSW
                              )
Charles Connor,               )
et al.,                       )
                              )
          Defendant.          )
_____ )

                              San Francisco, California
                              Friday, December 4, 2009

                 **Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:          Earthjustice
                        223 South King Street, Suite 400
                        Honolulu, Hawaii  96813
                By:  **Paul Henry Achitoff, Esquire**

                        Earthjustice
                        426 Seventeenth Street, 5th Floor
                        Oakland, California  94612
                By:  **Gregory C. Loarie, Esquire**

                        The Center for Food Safety
                        2601 Mission Street, Suite 803
                        San Francisco, California  94110
                By:  **Zelig Golden, Esquire**


(Appearances continued on next page.)

**Reported By:**        *Sahar McVickar, RPR, CSR No. 12963*
                        *Official Reporter, U.S. District Court*
                        *For the Northern District of California*

```
 1   Appearances, (continued:)

 2   For Defendant:        U.S. Department of Justice
                           Environment & Natural Resources Div.
 3                         601 D Street NW
                           Washington, D.C.  20004
 4                    By:  Beverly Li, Esquire
                           Trial Attorney/Gen. Litigation Section
 5
                           U.S. Department of Justice
 6                         Civil Division
                           20 Massachusetts Avenue, NW
 7                         Washington, DC  20530
                      By:  John R. Coleman, Esquire
 8                         Trial Attorney/Federal Programs Branch

 9   For Intervenors:      Latham & Watkins, LLP
                           555 Eleventh Street, NW., Suite 1000
10                         Washington, DC  20004
                      By:  Phillip J. Perry, Esquire
11
                           Howrey, LLP
12                         1299 Pennsylvania Avenue, NW
                           Washington, DC  20004
13                    By:  Christopher Marraro, Esquire
                           Gilbert S. Keteltas, Esquire
14
                           Farella Braun & Martell, LLP
15                         Russ Building
                           235 Montgomery Street
16                         San Francisco, California  94104
                      By:  David J. Lazerwitz, Esquire
17
                           Holland & Hart, LLP
18                         975 F Street NW, Suite 900
                           Washington, DC  20004
19                    By:  Nancy S. Bryson, Esquire

20                         Debevoise & Plimpton, LLP
                           919 Third Avenue
21                         New York, NY  10022
                      By:  Harry Zirlin, Esquire
22
                           Stinson Morrison Hecker, LLP
23                         1201 Walnut Street, Suite 2900
                           Kansas City, Missouri  64106
24                    By:  Daniel Bukovac, Esquire

25                           ---o0o---
```

1   **Friday**, **December** **4**, **2009**                    **9:00 a.m.**

2                    P R O C E E D I N G S

3           **THE CLERK:**  Calling case No. C-08-0454, Center for

4   Food Safety, et al., versus Charles Connor, et al.

5           Counsel, please step forward and state your

6   appearances.

7           **MR. ACHITOFF:**  Given the number of counsel, do you

8   want us here or here *(pointing to counsel table and podium)*?

9           **THE COURT:**  No matter how many counsel, I need

10  everybody to introduce themselves.  And then you go back to

11  counsel table.  If anybody is going to speak, they can come up

12  to the lecturn.

13          I need to have everybody give their appearances.

14          So on the plaintiff's side?

15          **MR. ACHITOFF:**  Thank you.

16          Good morning, Your Honor.

17          **THE COURT:**  Good morning.

18          **MR. ACHITOFF:**  Paul Achitoff and Zelig Golden and

19  Greg Loarie on behalf of plaintiffs.

20          **THE COURT:**  All right.

21          **MS. LI:**  Beverly Li for the federal defendants.  And

22  also John Coleman for the federal defendants.

23          **THE COURT:**  Welcome.

24          **MR. PERRY:**  Phil Perry for intervenor, Monsanto.

25          **MR. KETELTAS:**  Gill Keteltas for the intervenors,

```
1    the growers and processors.

2              THE COURT:  Good afternoon.

3              Nancy Bryson for intervenor, Syngenta Seeds.

4              THE COURT:  Good afternoon.

5              MR. LAZERWITZ:  David Lazerwitz, also for Syngenta

6    Seeds.

7              MR. MARRARO:  Your Honor, Chris Marraro with Howrey,

8    representing the defendant intervenors, growers and processors.

9              THE COURT:  Welcome.

10             MR. MARRARO:  Thank you.

11             MR. ZIRLIN:  Harry Zirlin for intervenor, Betaseed.

12             THE COURT:  Welcome.

13             MR. BUKOVAC:  Daniel Bukovac for intervenor,

14   SES VanderHave.

15             THE COURT:  All right, do we have everybody covered?

16             Okay, you may take your seats, Counsel.  I have some

17   things to say, and then if anybody has any questions or

18   comments or additional matters to be brought up, then I will

19   certainly attempt to address those.

20             So I've reviewed your case management conference

21   order statements and proposed orders.  And I have, of course,

22   issued an order in connection with the most recent motion for

23   intervention, which you all should have by now.  And so the

24   issue is where do we go from here.

25             I have tried to both distill what you've requested
```

1    and also figure out what works best for the Court, and so

2    what -- so as a first go-around, I think the parties should be

3    prepared to present their evidence in documentary form and to

4    proceed with or without an evidentiary hearing.  I'll have more

5    on that in a moment.

6            And in their briefs on the remedies, the parties

7    shall present their arguments for and against having an

8    evidentiary hearing; in other words, I'm not convinced at this

9    point one way or the other whether an evidentiary hearing is

10   mandated, but I want to hear the arguments for and against an

11   evidentiary hearing.  And by the way, just because both sides

12   agree doesn't mean I'm going to have one; you've got to

13   convince me that I'm legally required to have one.

14           I am going to allow the parties to engage in limited

15   discovery regarding remedies.  Each side will be permitted to

16   conduct eight depositions, which would be seven hours, not to

17   exceed seven hours each, and may be allowed to conduct -- may,

18   underscore, may, be allowed to discuss further depositions upon

19   a showing of good cause, really good cause, not just, hey, we

20   need them or this person has knowledge.  I think eight is the

21   proper number, but I could be wrong about that.  Each side will

22   also be permitted to propound requests for production of

23   documents in accordance with the Local Rules and the rules of

24   this Court.

25           The Court is going to order the parties to

1    participate in a settlement conference with a randomly selected

2    magistrate judge to be conducted within 60 days of today, if

3    possible.  The "if possible" is not for you, it's for the

4    magistrate judge because they ask us to put that in there in

5    the order.

6              So Ms. Ottolini, would you give us a date on that?

7              **THE CLERK:**  February 4th, 2010.

8              **THE COURT:**  So February 4th, 2010, assuming the

9    judge can do it in that time frame.  If not, the magistrate

10   judge will set a different date after contacting counsel.

11             Now, let me set a briefing schedule.  So the

12   plaintiff's opening brief regarding proposed remedies shall be

13   filed by March 12th, 2000 -- all these dates are 2010 --

14   March 12th for the plaintiff's opening brief on remedies.

15             The defendants and the defendant intervenor opening

16   and opposition briefs regarding remedies shall be filed --

17   shall be filed by April 9th.  And all the defendant

18   intervenors, including S-E-S, V -- VanderHave,

19   V-a-n-d-e-r-H-a-v-e, shall file one brief.  And by limiting the

20   defendant -- all the defendant intervenors to filing one brief,

21   the Court does not intend to limit the defendant intervenors

22   from raising issues particular to the individual intervenors,

23   of course.

24             The defendants and defendant intervenors shall meet

25   and confer to avoid duplicative briefing on overlapping issues.

7

1   And so you should be able to get together and present your best

2   arguments on each issue and not multiple arguments or multiple

3   arguments on the same issue.  So that's on by April 9th.

4           The plaintiff shall file their opposition and reply

5   briefs by May 7th, so opposition and reply May 7th.  And the

6   defendants and defendant intervenors shall file their replies

7   by May 21st.  And the Court will hold a hearing on the proposed

8   remedies on June 11th at 9:00 a.m.  However, if the Court

9   determines that an evidentiary hearing is appropriate, the

10  Court will issue an order re-setting the hearing at a time when

11  that will be -- when the Court has time on its calendar.

12          Now, what -- and as well, when you are arguing your

13  entitlement to evidentiary -- an evidentiary hearing, I would

14  like to get a -- a good faith estimate of how long you

15  anticipate for both -- on both sides as if you were conducting

16  pre-trial proceedings before this Court in terms of direct and

17  cross-examination so the Court can not only determine whether

18  an evidentiary hearing is appropriate, but determine how much

19  time it's going to allow, and, therefore, when such an

20  evidentiary hearing would be presented.

21          So don't just say we have a right to an evidentiary

22  hearing, but here is what we want -- here is the kind of

23  evidence we would like to present, and here is how long it's

24  going to take so that I can make an informed judgment about how

25  much time to allow.

1       Because I will, if I allow, as I do in every trial,

2  impose very strict time limits.  And I will know how much

3  time -- when I should set the matter down on the Court's

4  schedule.  So believe it or not, that's all I had on my agenda.

5  I think that kind of covers most of the issues you will have

6  had.

7       You know, if there is discovery disputes, we'll deal

8  with them.  And but hopefully there won't be any discovery

9  disputes because I think it will be pretty apparent what the

10  issues are.  We are dealing with a fairly narrow issue, and

11  we're only dealing with remedies.

12       So from the plaintiff's perspective, is there

13  anything?  Any questions or any comments?

14       Yes, sir?

15       **MR. ACHITOFF:**  Yes, thank you, Your Honor.

16       **THE COURT:**  If you could restate your name so --

17  even though the court reporter has a great memory, I don't.

18       **MR. ACHITOFF:**  Yes.

19       I'm Paul Achitoff appearing on behalf of the

20  plaintiffs.

21       I notice that the Court has set the plaintiff's

22  opening brief for the middle of March and the hearing for mid

23  June; I'd like to point out that the -- there are critical

24  issues relating to potential harm that will arise in this case

25  before the end of April.

1    Before the end of April, according to the best

2  information that we have, there is the likelihood that the seed

3  crops for the Roundup Ready sugarbeet seed will flower, as

4  intended, in the Willamette Valley.  And that will create the

5  potential, and we don't need to debate how much of a potential,

6  but that will create the potential for the contamination and

7  cross-pollination that is one of the critical issues in this

8  case in terms of remedy.

9    If we do not have any opportunity for any kind of

10 relief, even preliminary relief, prior to the end of April, I

11 think I can represent to the Court in good faith that much of

12 what we are asking for will be moot.  And given that that is

13 quite a ways away, beginning of December now, I would like to

14 suggest that there should be an opportunity to obtain at least

15 preliminary relief prior to that time.

16    The plaintiff's opening brief now is due March 12th;

17 certainly, the plaintiffs -- well, the plaintiffs have no need

18 for discovery before filing an opening brief.  The defendants

19 have no need for discovery before plaintiff's file an opening

20 brief because there's nothing -- there's no -- they don't even

21 know who our witnesses are.  If they want discovery, they will

22 look at our declarations and they can decide who they want to

23 depose.

24    So may I respectfully suggest that the plaintiffs

25 file their opening brief with declarations, and so forth, well

1   before May 12th to advance this schedule --

2           *THE COURT:*  March 12th.

3           *MR. ACHITOFF:*  I'm sorry, March 12th -- so that we

4   can hopefully advance this schedule somewhat?

5           What I'm hoping that we can -- we can wind up with

6   is at least some kind of potential preliminary relief before

7   the end of April.  If there needs to be, if the Court concludes

8   that there is a need for more process, perhaps an evidentiary

9   hearing, what have you, once there is at least preliminary

10  relief in place, then the pressure is off.

11          And if arguments that are persuasive to the Court

12  are made that we need more process, more hearing to modify

13  whatever the Court may put in place, that's fine.  But if we

14  don't do anything until June, I really think the plaintiffs

15  will be significantly prejudiced.

16          *THE COURT:*  Well, there are two issues that you are

17  raising, which are -- about which may be independent.  The one

18  is accelerating the schedule toward a faster disposition on the

19  issue of remedies overall, a final decision.  And the second

20  one is provisional relief.

21          So are you arguing for both?  Are you saying that

22  you intend to request some provisional remedy in advance of the

23  plenary hearing on remedies?

24          *MR. ACHITOFF:*  Well, Your Honor, my own personal

25  experience in similar cases:  I have never asked for, per se,

1    preliminary or otherwise relief following a judgment on the

2    merits, and therefore I was not anticipating the process by

3    which the plaintiffs would come in and say, may we have

4    preliminary injunctive relief.

5            I'm more than happy to do that if the Court thinks

6    that's an appropriate process, but, and it will be plaintiff's

7    position, I believe consistently, that there is no need for an

8    evidentiary hearing in this matter at any time.  However, I'm

9    trying to allow for the possibility that the Court will be

10   persuaded otherwise by the defendants.

11           But what I would like to have is a hearing, whether

12   we deem it provisional, preliminary, however we use that, such

13   that the Court would be in a position to provide some form of

14   relief before the end of April with the understanding that if

15   more process is deemed necessary following that, to modify it

16   or explore it further, that opportunity will exist.

17           *THE COURT:*  Well, I don't envision looking at the

18   calendar and the schedule, given, even given where we are,

19   we're talking about December to January, January to February,

20   February to March -- four months to have a complete round of

21   briefing.  That would get us to March because the Court needs

22   enough time to -- you know, the missing link maybe in your

23   thinking is the Court needs to assimilate all this paper --

24           *MR. ACHITOFF:*  I'm assuming that.

25           *THE COURT:*  -- and make a relevant decision.

1       So let's assume you would almost have to be at issue

2   at some time by the beginning of April, which is four and a

3   half months.  To have a complete round of plenary briefing with

4   discovery, or potentially discovery -- you say they don't need

5   discovery, but that may or may not be the case, they think they

6   do -- I don't see that as being possible.

7       I mean we're talking -- so there is a couple of

8   possibilities here.  So it seems to the Court that -- and then,

9   of course, as efficient as this Court likes to think it is, it

10  doesn't hear argument and issue a ruling the moment after, you

11  know, it hears all the argument.  It takes a while to write

12  these orders, and this is a very important matter and very

13  complex.  So I don't see how -- I don't see a schedule whereby

14  we could collapse this.

15      Now, I have two things to say.  Number one is, it's

16  the Court's practice that when the Court sets a date for a

17  hearing it will -- and there is a little bit of a wrinkle here,

18  but just generally, and a party files earlier than is required,

19  let's say 35 days, or whatever number of days it is prior to

20  the hearing, it is -- the Court will frequently then change the

21  schedule and order the other side -- so let's say -- I'll just

22  make it up:  Let's say you file on, you know, you file in a

23  week; I might come back and say, all right, now you filed, I'm

24  going to give the other side and intervenors an appropriate

25  period to respond and thereby collapse the schedule and maybe

1   reset the dates.  And so that's one possibility.  These two

2   possibilities are not independent.

3          The second thing you can do is, you can file your

4   papers whenever you file them, and then file an application for

5   either a preliminary injunction or a temporary restraining

6   order to ensure that would require, then, the Court to make a

7   decision about whether you need interim relief.

8          It would give everybody either more breathing or

9   less breathing room, but it's something that may require a

10  different evidentiary showing, i.e., immediate, because you are

11  going to be talking about remedies which are really more in the

12  nature of permanent injunction.  You are now talking about a

13  quick remedy targeted to a specific set of events.

14         So you may well decide that the appropriate thing to

15  do is to file a request for preliminary injunction, which would

16  go on a much more -- by law under the rules under a much more

17  rapid schedule.  But you are going to have to make a

18  concomitant showing under the applicable case -- now it's the

19  *Winters* decision, which sets a new standard for the issuance of

20  these preliminary remedies.

21         So does that give you any guidance here or any help?

22         **MR. ACHITOFF:**  Yes.

23         **THE COURT:**  What I'm not going to do right now,

24  because what I will do is this, is -- I don't believe in -- I

25  believe in -- I don't believe in deciding cases when they are

1   moot but, on the other hand, I don't believe in rocket justice

2   in a case of this complexity and this importance.

3           So the only thing I can say to you is, the schedule

4   will stay as it is right now.  If you want to file earlier,

5   with a, you know, with a request to accelerate the schedule or

6   you want to file an application for provisional remedy, then I

7   will consider that.  And you will have to make the showing of

8   irreparable harm if the Court doesn't rule by the date that you

9   want to.  Because that may take a different level of activity

10  by the Court than deciding all these motions on a plenary

11  basis.

12          If you file an application for a TRO or preliminary

13  injunction, they are going to have to respond under the Rules.

14  And I'm not going to tell you how to run your case, but that's

15  a whole different, you know, a different approach.

16          **MR. ACHITOFF:**  Right, I understand.  And that is

17  very helpful, and I appreciate it.

18          I think my confusion, frankly, was that I'm not used

19  to a process whereby a party moves for preliminary relief

20  post-judgment.  But I'm happy to do so, if the Court feels

21  that's appropriate.

22          **THE COURT:**  I think there is case law that allows

23  you to do that.  This is an extraordinary case.

24          And it may simply be -- the output of that may be it

25  would force the Court to totally reevaluate the schedule.  If

1   you make the showing and say -- you have made that

2   representation and I know it's made in good faith, but there is

3   nothing before me right now.

4           **MR. ACHITOFF:**  Understood.

5           **THE COURT:**  So if you make the case, and you say we

6   need a ruling by then, or the Court -- any remedy will be

7   mooted out, that's something -- I'm going to hear a response,

8   but that's something the Court will listen to, all right?

9           **MR. ACHITOFF:**  Yes, thank you.

10          **THE COURT:**  All right.

11          Now, let me hear why this is totally wrong and we

12  should be on a more relaxed schedule.  I was being somewhat

13  facetious, but I am trying to get to the right procedural

14  result here without unduly jamming -- you all have obviously a

15  stake in the outcome as well, a very important one.

16          **MS. LI:**  Your Honor --

17          **THE COURT:**  Please restate your name.

18          **MS. LI:**  Sorry.  I'm Beverly Li for the federal

19  defendants.

20          **THE COURT:**  Thank you.

21          Would you come on up?  By the way, my back hurts

22  watching you lean over like that.

23                      **(Laughter.)**

24          **THE COURT:**  That way I can focus on what you are

25  saying.  Thank you.

1    **MS. LI:**  With respect to the schedule that the Court

2   has set, the federal defendants are fine with that.  We are

3   happy to brief the issue of whether an evidentiary hearing is

4   required at the appropriate time.

5          With respect to, you know, plaintiff's concern about

6   compressing or accelerating the schedule, we will leave it to

7   them to determine how they want to proceed and respond

8   accordingly.  We don't believe that the harms that they are

9   asserting at this point are -- are accurate, but we can deal

10  with that in our papers.

11         **THE COURT:**  All right.

12         **MS. LI:**  It would be our preference to deal with all

13  the remedies issues at the same time rather than having

14  preliminary relief, and then separate permanent relief after

15  that to be briefed on different tracks.

16         **THE COURT:**  But you do accept the theoretical

17  possibility that the plaintiffs could make a showing of a need

18  for earlier interim remedy, which could be resolved later on,

19  depending upon the ultimate outcome or merged into a final --

20  final remedies ruling, right?

21         **MS. LI:**  That's correct.

22         **THE COURT:**  Okay, well, therefore, we are all

23  talking in hypotheticals.  And I think we just have to await

24  the events as they unfold, the filings.  And the Court will

25  deal with them, and you can deal with them as well, you'll have

1    a full opportunity.  I may set a more accelerated schedule in

2    the form of an order to show cause, but we'll face that when we

3    get to it.

4              **MS. LI:**  That's fine, Your Honor.

5              **THE COURT:**  Okay, thank you.

6              Any of the other defendants or intervenors wish

7    to --

8              **MR. KETELTAS:**  Yes, Your Honor.

9              **THE COURT:**  Yes?

10             **MR. KETELTAS:**  Gill Keteltas, Your Honor.

11             I just wanted to put -- not to add to the

12   hypotheticals, but to put the TRO notion in perspective, which

13   is, these -- these seed fields have been planted for a year and

14   a half, so this would be an extraordinary remedy, to

15   effectively remove 95 percent of the sugar beet seed for two

16   years from now.

17             And this is not the first March, April these seed

18   crops are flowering, it's happened for multiple years

19   beforehand.  In September, there could have been a motion that

20   would have allowed a schedule more amenable to the plaintiffs.

21   But our position is this would be truly extraordinary relief.

22   And, obviously, we would brief that point, if necessary.

23             **THE COURT:**  Well, what I hear coming is -- this is

24   under the rubric of, I'm sure, educating the Court -- is that

25   there may be a defense to the request for provisional relief of

1    laches, or -- and, of course, now under the *__Winters__* decision,

2    balancing the equities is the quintessential issue.  The Ninth

3    Circuit rule no longer exists.  So you will be able to make

4    that point, and I'll certainly look at whether the motion could

5    have been brought.

6          I will say that because of the compound and

7    complexity in the case and the number of parties, it's been a

8    case that's taken a long time to unfold, and none the least of

9    which it took the Court a while to write the order because it

10   was not an easy order to write, given the size of the

11   administrative record.

12         So but, of course, any issue that the parties want

13   to raise is on the table.  Plaintiff's counsel fairly alerted

14   the Court that the schedule it set was not -- may not address

15   fully what's going on in reality, and I will certainly look at

16   that and adjudicate it as it's presented to me.

17               *MR. KETELTAS:*  Thank you, Your Honor.

18               *THE COURT:*  All right.

19         Any other parties wish to address the Court?

20               **(No response.)**

21         *THE COURT:*  Okay, well, I think we have a plan in

22   place.  And the only thing I will say, which probably is

23   absolutely -- is just a plea to before you file, think about

24   the paper you are filing.  Because this case has so much paper

25   in it.  Brevity is much desired.

1        I understand these issues pretty well, I had to

2   learn them to write the order that I wrote.  And I don't

3   need -- I would like you to make an effort to be as brief as

4   possible and limit the amount of paper that's filed because,

5   you know, I have almost 500 cases and I need to read all this

6   stuff on a schedule that works for everybody and gets to the

7   right result.  So please be judicious in your use of paper and

8   what you submit to the Court in terms of presenting it in the

9   clearest possible way with the least amount of paper.

10        I know that I could say that in a vacuum; all I'm

11   saying is, when you have everything ready to file, look at it

12   and say if I were the judge, would I be able to assimilate this

13   in "x" weeks or month's notice and render a just decision?  So

14   that's just my little plea for the day.

15        So other than that, I will see you all at whenever

16   the next hearing is.  And thank you very much for your input.

17   Appreciate it.

18        **THE COURT:**  We're going to take a short recess.  So

19   we can bring everybody up in the next cases.  And we'll take

20   about ten minutes.

21               **(Recess taken at 2:26 p.m.)**

22

23                    **---o0o---**

24

25

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the
United States Court, Northern District of California, hereby
certify that the foregoing proceedings were reported by me, a
certified shorthand reporter, and were thereafter transcribed
under my direction into typewriting; that the foregoing is a
full, complete and true record of said proceedings as bound by
me at the time of filing.  The validity of the reporter's
certification of said transcript may be void upon disassembly
and/or removal from the court file.


_____
/s/ Sahar McVickar

Sahar McVickar, RPR, CSR No. 12963
Tuesday, December 8, 2009