### Sugar beet suit progresses



Written by CJ Baker                                          Thursday, December 24, 2009

**Judge's decision may not come until June**

This past fall, local sugar beet growers expecting a record harvest were disappointed by Mother Nature; this coming summer, their crops could be impacted by a federal judge's decision.

In September, in response to a lawsuit filed by environmental groups and organic seed growers, a federal judge in California's Northern District voided the U.S. Department of Agriculture's 2005 decision to allow the planting of Roundup Ready sugar beets across the U.S.

In his order, Judge Jeffrey White told the USDA to complete an environmental impact statement examining the potential impacts of the genetically-engineered beets on organic seed growers and consumers.

Roundup Ready sugar beets, developed by the agricultural biotechnology company Monsanto, are genetically engineered to tolerate the company's herbicide, Roundup. In short, when Roundup, made of glyphosate, is applied to a field, the weeds die, and the beets don't. The product is designed to boost yields and save labor costs and other growing expenses.

Big Horn Basin farmers growing Roundup Ready beets were expected to have perhaps the best harvest on record until an early-October frost devastated area fields.

Writing an impact statement is a process that could take the USDA years to complete, and in the interim, Judge White must decide what he wants done with Roundup Ready beets.

Earlier this month, White scheduled a June 11 hearing where he will listen to suggestions on what should be done with the engineered beets while the USDA revisits the approval process.

That timeline would seem to make it unlikely that his decision would impact the planting of the 2010 beet crop.

"Clearly, if you don't have a remedies hearing until June, it's pretty difficult to affect this (2010) year's crop," said Luther Markwart, vice president of the American Sugarbeet Growers Association, in an interview earlier this month.

But attorney Paul Achitoff of the environmental law firm Earthjustice said the groups he represents will seek an injunction between now and June that would bar the planting, growing, sale, and use of Roundup Ready sugar beets and seed.

If granted, such an injunction would likely have serious effects on the U.S. economy and foods containing sugar — especially since more than half of the United States' sugar supply currently comes from Roundup Ready beets.

In court filings, sugar beet industry representatives said the environmental groups "have demonstrated little, if any, understanding of the dramatic consequences of their proposed relief given the lack of alternatives available to the growers, including billions of dollars in direct economic harm."

Achitoff said that if Earthjustice prevails in winning an injunction, and sugar beet producers are put in a bind, they'll have themselves to blame. He noted that the environmental groups first filed suit in 2008.

"The (sugar beet) industry has known for two years that this day (a request for an injunction) might come," Achitoff said.

In court filings, USDA attorneys have said a narrowly-tailored temporary remedy would be more appropriate than a blanket injunction.
Sugar beets only pollinate and produce seed in their second year of growth, and essentially the only place where they are grown for that seed is in Oregon's Willamette Valley. In the other 10 states, sugar beets are harvested for their sugar after

EXHIBIT 39

one year of growth, and pollination concerns are negligible, the sugar beet industry has argued. Requiring Roundup Ready and conventional beets to be kept separate in the Willamette Valley would eliminate any problems, the industry says.

Groups such as the U.S. Center for Food Safety and the Sierra Club are generally skeptical of the benefits of genetically-modified crops and question their safety. Those two groups, along with two organic seed growers, filed suit against the USDA in January of 2008 — almost three years after the agency's initial approval of the Roundup Ready beets, but prior to the first season of widespread commercial production of the beets.

Meanwhile, a number of seed producers, growers, and sugar beet processors — including the Western Sugar Cooperative and the Wyoming Sugar Company — filed briefs in support of the USDA's decision to sign off on Roundup Ready beets.

Among other concerns, the organic seed growers and environmental groups voiced concern that pollen from genetically-engineered sugar beets could contaminate their conventional crop — ruining their status as organic producers.

That argument resonated with Judge White, who on Sept. 21 ordered the USDA to take a harder look at the environmental consequences and socioeconomic impacts of possible cross-pollination.

White found that the "potential elimination of farmer's choice to grow non-genetically engineered crops, or a consumer's choice to eat non-genetically engineered food" was a significant impact to the human environment and merited further review in an environmental impact statement.

His decision followed a similar order from a fellow judge in California's Northern District — Judge Charles Breyer — requiring further review of Roundup Ready alfalfa.

Last week — nearly three years after Breyer ordered the USDA to do so — the federal government released a draft environmental impact statement on Roundup Ready alfalfa. Much as before, it recommends deregulating the crop, finding that widespread use of the plant will have "no significant impact on the human environment." The agency is accepting public comment until Feb. 16 of next year on the 1,476 page document.

In that case, Judge Breyer issued an injunction prohibiting new plantings of Roundup Ready alfalfa, but allowing already-planted crops to continue being grown and harvested.

The environmental organizations, the USDA and representatives from the sugar beet industry failed to reach a settlement in the suit during a court-ordered mediation session on Monday.

The parties had previously agreed that reaching an agreement was "unlikely" given the divergent positions.