IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al., | |
| Plaintiffs, | No. C 08-0484 JSW |
| v. | |
| THOMAS J. VILSACK, et al., | **NOTICE OF QUESTIONS** |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON MARCH 5, 2010 AT 9:00 A.M.:

The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, with pin cites and without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority. The Court suggests that associates or of counsel attorneys who are working on this case be permitted to address some or all of the Court's questions contained herein.

The parties shall each have 25 minutes to address the following questions:

1.  Do Defendant-Intervenors know how the genetically engineered stecklings got in the potting soil? What precautions, if any, have Defendant-Intervenors taken to ensure that more topsoil or compost containing genetically engineered stecklings will not be contaminated again?

2.  Other than the planting of the root crop in the Spring, what activities, if any, are planned to occur between now and the scheduled hearing on remedies in June that will affect the production of future crops of sugar beets?

3.  Between now and when the Environmental Impact Study is likely to be completed, do Defendant-Intervenors have plans to increase the percentage of genetically engineered sugar beets beyond the current 95 percent?

4.  When do the seed producers sort their seeds and when do they deliver their seeds to the root crop farmers?
    a.  Has the sorting for the root crop that will be planted in 2010 already occurred?
    b.  Have the seeds that will be planted in 2010 already been delivered to the farmers?
    c.  What percentage of root crop farmers have already purchased the seeds to plant in 2010?

5.  What percentage of genetically engineered sugar beet seed that has been planted place the genetically engineered trait on the male sterile or female non-pollinating plant? Will that percentage change for the sugar beet seed that will be planted in 2011?

6.  Do Plaintiffs dispute that sugar beets, Swiss chard, and table beets are grown in different parts of Willamette Valley? If so, on what evidence in the record do Plaintiffs rely?

7.  Do Plaintiffs contend that there is an organic market for sugar beets? If so, on what evidence in the record do Plaintiffs rely?

8.  As the court in *Geertson Seed* noted: "These plantings have occurred because plaintiffs did not seek an injunction prior to the Court's ruling on the merits of their claim." *See Geertson Seed*, 2007 WL 776146, at *2 (N.D. Cal. Mar. 12, 2007). In light of the scope of the preliminary injunction issued by the court in *Geertson Seed* preserving the status quo at the time of the hearing, as well as the cautionary note given by the court for the plaintiffs' delay in moving for a preliminary injunction in that case, why did Plaintiffs here wait until after the Court ruled on the merits portion in this action to file a motion for preliminary injunction?

9.  If cross-pollination occurs between conventional and genetically engineered sugar beets or if some genetically engineered seeds are mixed in with conventional seeds, what would the process be for cleansing the genetically engineered crop from the conventional crop?
    a.  How long would this process take?
    b.  How would the process differ if the cross-pollination or mixing occurs with the basic seed? With the commercial seed? With the root crop?
    c.  What would the process be if genetically engineered sugar beets cross-pollinated with Swiss chard or table beets?
    d.  Would the cross-pollination or mixing of one crop affect future crops? If so, how?
    e.  John Navazio states in his declaration that once the transmission of the genetically engineered trait occurs, there is no way for the farmer to control its further spread. (Navazio Decl., ¶ 16.) Why is that? Is Mr. Navazio addressing

the transmission of the genetically engineered trait to conventional sugar beets, to Swiss chard, to table beets, or to all three crops?

10. Do Plaintiffs dispute that if a genetically engineered sugar beet plant cross-pollinates with a table beet or Swiss chard plant, the resulting seed would grow into an offtype that would be readily identifiable? If so, on what evidence in the record do Plaintiffs rely?

11. On page five of their motion, Plaintiffs point to a statement made in Exhibit 8 to the Declaration of George Kimbrell and do not provide a pin cite. Exactly where in Exhibit 8 is the statement from the U.S. Fish and Wildlife Service?

12. Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: March 4, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California