IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al. | |
| Plaintiffs, | No. C 08-00484 JSW |
| v. | |
| EDWARD T. SCHAFER, et al. | **ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| Defendants. | |

Now before the Court is the motion for a preliminary injunction filed by plaintiffs Center for Food Safety, Organic Seed Alliance, Sierra Club, and High Mowing Organic Seeds (collectively, "Plaintiffs"). Having considered the parties' arguments and relevant legal authority, and having had the benefit of oral argument, the Court hereby DENIES Plaintiffs' motion for preliminary injunction.[1]

## BACKGROUND

In September 2009, the Court ruled that the decision by the United States Department of Agriculture ("USDA") and its Animal and Plant Health Inspection Service ("APHIS") to

---

[1] The Court GRANTS the parties' requests to file supplemental declarations by Paul H. Achitoff, John Navazio, and David Berg. The Court GRANTS Defendant-Intervenors's request to file the designated portions of the Declarations of Susan Henley Manning, Ph.D., Richard J. Sexton, David Berg, Richard Gerstenberger, Duane Grant, Michael Hofer, Russell Mauch, Michael Petersen, and John Snyder under seal and Plaintiffs' request to file portions of their reply brief and Exhibits 50 through 69 to the confidential and supplemental declarations of Paul H. Achitoff under seal.

Defendant-Intervenors submitted voluminous evidentiary objections. To the extent the Court relied on evidence objected to in resolving Plaintiffs' motion, the objections are overruled. To the extent the Court did not need to consider such evidence in order to resolve the motion for preliminary injunction, the Court need not rule on the admissibility of such evidence at this time.

deregulate a variety of genetically engineered sugar beets without preparing an environmental impact statement ("EIS") violated the National Environmental Policy Act, 42 U.S.C. §§ 4321-4335 ("NEPA"). Plaintiffs now move for a preliminary injunction to preclude all further planting, cultivation, processing, or other use of genetically engineered Roundup Ready sugar beets or sugar beet seeds, including but not limited to permitting any Roundup Ready sugar beet seed crop to flower. Plaintiffs' proposed preliminary injunction would include requiring the sugar beet seed crop that has already been planted to be pulled up.

Defendants Edward T. Schafer, in his official capacity as Secretary of the United States Department of Agriculture, and Cindy Smith, in her official capacity as Administrator of the Animal and Plant Health Inspection Service (collectively, "Defendants"), and Defendant-Intervenors American Sugarbeet Growers Association, Ervin Schlemmer, Mark Wettstein, John Synder, and Duane Grant, American Crystal Sugar Company, the Amalgamated Sugar Company, Western Sugar Cooperative, Wyoming Sugar Company, LLC, United States Beet Sugar Association, Betaseed, Inc., Monsanto Company, Syngenta Seeds, Inc., and SESVanderHave USA, Inc. (collectively, "Defendant-Intervenors") all oppose Plaintiffs' motion.

The Court shall discuss additional facts as necessary in the analysis.

## ANALYSIS

**A.    Legal Standards Applicable to Motion for a Preliminary Injunction.**

In order to obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)). Thus "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"

1 *Id*. at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

**B.  Discussion.**

    **1.  Likelihood of Success on the Merits.**

Plaintiffs have done more than shown a likelihood of success on the merits. By order dated September 21, 2009, the Court has already found, on the merits, that Defendants have violated NEPA by failing to conduct an EIS before deregulating genetically engineered sugar beets. Therefore, Plaintiffs have already succeeded on the merits.

    **2.  Likelihood of Irreparable Harm.**

Upon review of the record currently before the Court, the Court also finds that Plaintiffs have demonstrated a likelihood of irreparable harm. Defendants and Intervenor-Defendants expend a great amount of time in an effort to demonstrate that the chances of genetically engineered sugar beets cross-pollinating with conventional sugar beets, Swiss chard, or table beets are minuscule, if they exist at all. However, there is evidence in the record to show that genetically engineered sugar beets may mix with and contaminate Swiss chard, table beets or conventional sugar beets through mechanical, or other means. Jay Miller, the product manager of Intervenor-Defendant Betaseed, admits that "[n]o matter how careful a seed producer is, when the same facility is being used to process and ship both [genetically engineered] and conventional seed, there is no way to completely prevent conventional seed from being found in shipments of [genetically engineered] seed, and vice versa." (Declaration of Jay Miller, ¶ 34.) Producers of sugar beet seed, including Betaseed, produce both genetically engineered and conventional seed. (*Id*.)

The Court also finds it significant that genetically engineered sugar beet stecklings were found in a large pile of compost or potting soil being sold at a nursery in Oregon. (Declaration of Carol Savonen, ¶¶ 8-14; Declaration of Casper Lehner, ¶¶ 19-20.) Although Intervenor-Defendant Betaseed took efforts to retrieve the soil with these stecklings from the nursery and

3

1 from customers who had already purchased it, and have taken precautions to guard against such
2 an event from occurring again, the fact that it already did happen demonstrates that, based on
3 human error, genetically engineered sugar beets may not be contained and may contaminate
4 conventional sugar beets, Swiss chard, or table beets. Moreover, the Court finds it significant
5 that there have been instances in which genetically engineered corn, cotton, soybean and rice
6 have mixed with and contaminated the conventional crops. This mixing or contamination
7 occurred with soybean despite the fact that soybeans are largely self-pollinating. (Declaration
8 of Doug Gurian-Sherman, ¶¶ 23-29, Exs. 4-7; Declaration of Harvey Howington, ¶¶ 4-14.)[2]

Therefore, the Court finds that the growth and processing of genetically engineered sugar beets creates a likelihood that such genetically engineered seeds and plants will mix with, and thus, contaminate conventional sugar beets, Swiss chard, or table beets. Depending on when and how they mix, and when the contamination is discovered, the difficulty and length of time involved in decontaminating the conventional sugar beets, Swiss chard, or table beets varies greatly. (Supplemental Declaration of John Navazio, Ph.D., ¶¶ 9-20.)

**3. Balance of the Equities and the Public Interest.**

Despite the Court's finding regarding the likelihood of harm to the environment, upon balancing the equities and considering the public's interest, the Court finds that issuing a preliminary injunction is not warranted. The Court finds Plaintiffs' delay in seeking a preliminary injunction significant. As Judge Breyer noted in *Geertson Farms Inc. v. Johanns*, 2007 WL 776146, *1 (N.D. Cal. March 12, 2007) (quoting *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002)), "[i]n the run of the mill NEPA case, the contemplated project ... is simply delayed until the NEPA violation is cured." However, the court in *Geertson Farms* found the case was, in some respects, not a typical NEPA case because, in reliance on the deregulation decision, some growers had already planted genetically engineered alfalfa. *Id*. The court noted that those "plantings [had] occurred because plaintiffs did not seek an injunction prior to the Court's ruling on the merits of their claim." *Id*. Therefore, the court

---

[2] Plaintiffs cite to large exhibits without providing pin cites. The parties are directed to provide pin cites for all evidence in future filings with the Court.

4

1 declined to issue an injunction to order the growers to remove the genetically engineered alfalfa
2 or to prohibit them from harvesting, using, or selling the genetically engineered alfalfa that had
3 already been planted. *Id*. On the other hand, the *Geertson Farms* court noted that the case was
4 a typical NEPA case with respect to alfalfa growers who had not yet planted the genetically
5 engineered alfalfa. *Id*. at *2. Nevertheless, to minimize the harm to the growers who
6 imminently intended to plant the genetically engineered alfalfa, the court allowed those growers
7 who intended to plant the genetically engineered alfalfa within the next three weeks who had
8 already purchased the seed to proceed with the planting. The court merely preliminarily
9 enjoined those growers who had not yet purchased or did not have imminent plans to grow
10 genetically engineered alfalfa from switching over from conventional to genetically engineered
11 alfalfa. *Id*.

12 Here, Plaintiffs request this Court to issue a preliminary injunction that is much broader
13 than the one issued in *Geertson Farms* and seek to alter the status quo. *See Stanley v.*
14 *University of Southern Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1994) (internal quotations omitted) (if
15 "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo
16 *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction.").
17 Despite the admonition from Judge Breyer in *Geertson Farms* regarding the impact of the
18 plaintiffs delay in moving for a preliminary injunction with respect to genetically engineered
19 alfalfa, Plaintiffs here did not move for a preliminary injunction until five years after genetically
20 engineered sugar beets were deregulated, three years after this case was filed, and four months
21 after the Court granted Plaintiffs' motion for summary judgment on the merits. During the time
22 in which genetically engineered sugar beets have been deregulated and Plaintiffs did not move
23 for a preliminary injunction, the industry has overwhelmingly converted to the use of
24 genetically engineered sugar beets. Ninety-five percent of sugar beets currently being grown
25 and processed are genetically engineered. Counsel represented at the hearing on the motion for
26 preliminary injunction that 99.9% of the seed that has been or will be planted this spring has
27 already been purchased and almost all of the seed has been or will be delivered by the end of
28 March.

If this Court were to ban the planting and processing of the genetically engineered sugar beet root crop, there would not be enough conventional seed for a full crop this year. (Declaration of Susan Henley Manning, Ph.D. ("Manning Decl."), ¶¶ 15-17, Ex. H.) Although the degree of the shortage would vary among the eight different sugar beet processors, all but two of the processors would not be able to produce the vast majority of their intended crop. (*Id.*, Ex. H.)[3] The economic impact of such a shortage would be dramatic and wide-spread. According to Defendant-Intervenor's expert, Richard J. Sexton, Ph.D., at least fourteen of the twenty-one sugar beet plants in the United States would close due to the lack of sugar beets. (Declaration of Richard J. Sexton, Ph.D., ¶ 7.) Dr. Sexton projects that this would cause a loss of approximately 5,800 full-time and seasonal jobs in the rural communities where the sugar beets are planted and that sugar beet growers would lose approximately $283.6 million in gross profits if they were precluded from planting the genetically engineered crop. (*Id.*) Accounting for multiplier effects, Dr. Sexton estimates that the total economic loss that would be incurred by the rural communities where sugar beets are grown would be $1.469 billion. (*Id.*) The seed growers and technology companies would lose over $180 million. (Declaration of Bryan Meier, ¶ 35; Declaration of John Enright, ¶ 4; Declaration of Steve Fritz, ¶ 10; Declaration of Robert D. Nixon (Docket No. 29), ¶ 14.) Moreover, an injunction which would ban the planting and processing of genetically engineered sugar beets in 2010 would have a large detrimental impact on the United States' domestic sugar supply and price. (Declaration of Scott K. Gregory, ¶ 5.)

The Court finds that Plaintiffs' delay in filing this suit and, in particular, in moving for a preliminary injunction, weighs in favor of denying a preliminary injunction. "Laches is not a favored defense in environmental cases." *Coalition for Canyon Preservation v. Bowers*, 632

---

[3] Plaintiffs submit evidence regarding the alleged ability of one of these processors to produce a crop this year using conventional seed. Even if this evidence did demonstrate the ability of this company to produce a full crop, such evidence would show, at most, that just one of the eight processing companies could produce a full conventional crop. Notably, it is one of the two companies that would be least affected by an injunction banning the use of genetically engineered sugar beets. Relying on the evidence submitted by Defendant-Intervenors, this company would be able to produce more than sixty percent of its intended crop this year using conventional seed. (Manning Decl., Ex. H.)

6

1 F.2d 774, 779 (9th Cir. 1980). Nevertheless, "[a]lthough a particular period of delay may not
2 rise to the level of laches and thereby bar a permanent injunction, it may still indicate an
3 absence of the kind of irreparable harm required to support a preliminary injunction." *Quince*
4 *Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (quoting
5 *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)) (denying preliminary injunction in
6 environmental case based on the plaintiffs' delay and noting that the costly impacts of an
7 injunction could have been obviated if the plaintiffs had diligently brought suit); *see also*
8 *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 665 F. Supp. 873, 876 (D.Or.
9 1987) (declining to bar suit for laches in an environmental case, but denying preliminary
10 injunction based on plaintiff's delay in bringing suit: "[Defendant]'s hardship would have been
11 largely avoided had plaintiff acted promptly.").

12 In light of the dramatic economic impact a mandatory injunction altering the status quo
13 would have, and considering Plaintiffs' long delay, the Court finds that upon balancing the
14 equities and considering the public's interest, issuing the type of preliminary injunction sought
15 by Plaintiffs is not warranted. The Court notes that the costly impacts from such an injunction
16 could have been obviated if Plaintiffs had diligently brought suit and moved for a preliminary
17 injunction earlier. Moreover, in contrast to the genetically engineered alfalfa crop at issue in
18 *Geertson Farms*, the use of which was estimated to expand by five times within the next year,
19 Defendant-Intervenors represented at the hearing that there are no plans to expand the use of
20 genetically engineered sugar beets beyond the current ninety-five percent. Therefore, a
21 prohibitory preliminary injunction, similar to the one issued in *Geertson Farms*, would not
22 provide much, if any, benefit here. Accordingly, the Court DENIES Plaintiffs' motion for a
23 preliminary injunction.

24 The parties should not assume that the Court's decision to deny a preliminary injunction
25 is indicative of its views on a permanent injunction pending the full environmental review that
26 APHIS is required to conduct. Rather, while the environmental review is pending, the Court is
27 inclined to order the Intervenor-Defendants to take all efforts, going forward, to use
28 conventional seed. In light of Plaintiffs' showing of irreparable harm to the environment, the

7

Court is troubled by maintaining the status quo that consists of ninety-five percent of sugar beets being genetically engineered while APHIS conducts the environmental review that should have occurred before the sugar beets were deregulated. Moreover, the length of time that is necessary to conduct the full environmental review, as compared to the several months between the preliminary and permanent injunction hearing, could increase the likelihood and potential amount of irreparable harm to the environment. In addition, the absence of an imminent planting season and the ability to have to time adjust back to conventional sugar beets could help alleviate any harm to Defendant-Intervenors from an injunction. Finally, the Court notes that Plaintiffs' delay, if it does not warrant the application of laches, would have less weight in consideration of a permanent injunction. Thus, the balance of the equities may likely shift when the Court considers whether to issue permanent injunction.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' motion for preliminary injunction.

**IT IS SO ORDERED.**

Dated: March 16, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE