UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE JUDGE

CENTER FOR FOOD SAFETY, et al., )
)
)
       Plaintiffs, )
)
         v.    ) NO. C08-0484 JSW
)
CHARLES CONNOR, et al., )
)
       Defendants. )
_____)

San Francisco, California
Wednesday, May 12, 2010

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES BY TELEPHONE:**

| | |
|---|---|
| For Plaintiff | Earthjustice |
| | 223 South King Street, Suite 400 |
| | Honolulu, HI 96813-4501 |
| **BY:** | **PAUL HENRY ACHITOFF, ESQ.** |
| | |
| For Plaintiff | Center for Food Safety |
| | 2601 Mission Street, Suite 803 |
| | San Francisco, CA 94110 |
| **BY:** | **PAIGE MICHELE TOMASELLI, ESQ.** |
| | **KATERYNA L. RAKOWSKY, ESQ.** |
| | **GEORGE KIMBRELL, ESQ.** |

APPEARANCES CONTINUED ON THE NEXT PAGE

Reported By:      CHRISTINE TRISKA, CSR 12826
                     Pro-Tem Reporter

CONTINUED:

| | |
|---|---|
| Intervenor Defendant<br>Betaseed | Debevoise & Plimpton, LLP<br>919 Third Avenue<br>New York, NY 10022<br>**BY: HARRY ZIRLIN, ESQ.**<br>**WILLIAM C. WEEKS, ESQ.** |
| Intervenor Defendant<br>SESVanderHave USA | Stinson Morrison Hecker, LLP<br>1201 Walnut Street, Suite 2900<br>Kansas City, MO 64106-2150<br>**BY: DANIEL BUKOVAC, ESQ.** |
| Intervenor Defendant<br>Syngenta Seeds | Holland & Hart, LLP<br>975 F Street, N.W., Suite 900<br>Washington, D.C. 20004<br>**BY: NANCY SOUTHARD BRYSON, ESQ.**<br>**FRANK RIEBLI, ESQ.** |

```
 1  Wednesday, May 15, 2010
 2                                         11:03 A.M.
 3                    P R O C E E D I N G S
 4          THE CLERK:  Calling case number C08-0484, Center for
 5  Food Safety versus Charles Connor.  Counsel, please state your
 6  appearances.
 7          MR. ACHITOFF:  Paul Achitoff, Paige Tomaselli, George
 8  Kimbrell and Kateryna Rakowsky for plaintiffs.
 9          MR. ZIRLIN:  Harry Zirlin and William Weeks for
10  defendant intervenor Betaseed, Inc.
11          MR. BUKOVAC:  Daniel Bukovac for defendant intervenor
12  SESVanderHave, Inc.
13          MR. RIEBLI:  Frank Riebli for defendant intervenor
14  Syngenta Seed.
15          THE COURT:  Thank you very much.  We are down to the
16  last issue arising out of the April 21 joint letter, and that is
17  the application for the production of category of documents
18  related to plans for planting -- contingency planning for
19  planting conventional sugarbeet seed or root crops in the event
20  that the intervenors are prevented from planting or harvesting
21  Round-Up Ready sugarbeets.
22          The issue has been resolved with respect to
23  SESVanderHave, and it has been resolved with respect to
24  Syngenta, and they have agreed to produce a particular date
25  range of documents responsive to that request.  That's
```

1  reflected in the transcript of the last hearing.

2           What is left is Betaseed has declined to enter into
3  that compromise, and so the issue is with respect to
4  Betaseed.

5           I received on or about May 3rd a package of materials
6  from counsel for Betaseed, which I'll just generally describe as
7  a cover letter, which gave me a -- let me see.  Let me get it in
8  front of me.  No.  It's May 5th.  I'm sorry -- a cover letter
9  which gave me the identification of the personnel that might be
10 listed in the document, as well as some terminology, and then a
11 package of about, oh, I would say, about an inch-and-a-half,
12 maybe a little less, of documents which are being withheld on
13 the basis of the work product objection at issue, and I reviewed
14 those documents.

15          And having reviewed those documents, you know, it is
16 my tentative thought on this is that -- I mean, the only issue
17 before the Court is whether or not there is substantial need for
18 the production of this -- these documents that no one contests
19 are work product.

20          And on that issue I have two thoughts:  Number one,
21 is it seems clear to me that the work product is based on
22 facts as to which no one would assert a privilege, that is to
23 say -- it almost goes without saying when you do contingency
24 planning you send your team out, and they figure out what the
25 facts are, and then they put that together in their

1  contingency plan.
2        The underlying facts regarding the crops and rotations
3  and areas and what seed can be produced when -- those are not
4  facts which are subject to the privilege.
5        On the other hand, I don't see a substantial need
6  for the plaintiffs to get into the documents that are subject
7  to the work product privilege when they have been perfectly
8  at their liberty, and are still perfectly at their liberty,
9  to examine the underlying questions that would form such
10 contingency planning, or the basis of such contingency
11 planning.  It seems to me that that's the nub of the issue,
12 and my tentative thought is they haven't made the significant
13 showing of substantial need.
14       I will say, having looked through it, there's very
15 little absolute work product in the documents.  There are
16 occasional references, which could be interpreted as either,
17 and indeed perhaps privileged, at least containing the
18 thoughts and impressions of counsel, but those are relatively
19 minor and just occasional references.  It is the qualified
20 work product that is at issue, and I just don't see the
21 substantial need.
22       So I guess somebody from the plaintiff may want to
23 respond.
24       **MR. ACHITOFF:**  Thank you, your Honor.  This is Paul
25 Achitoff.

1       Well, first, just preliminarily I would like to
2  raise the point that in our view Betaseed waived the work
3  product claim because they didn't raise it.
4       In their response to our requests -- and they didn't
5  raise it until we got into a debate quite many weeks later about
6  this issue.  They essentially raised it in other -- in the
7  context of other requests for production, but they did not raise
8  it in response to this one.
9       And therefore, I mean, they are certainly
10 sophisticated attorneys and they know how to raise work
11 product when they want to, and they didn't raise it here.
12      So that's my first point.
13      My second point is that -- well, of course, it's
14 difficult for plaintiffs to know what the nature of the material
15 is that the Court considers to be qualified work product.
16      I'm sorry.  I heard a click.  Are people still
17 there?
18      **THE COURT:**  Go ahead.
19      **MR. ACHITOFF:**  Yeah.  Sorry.
20      However, it seems to me that the -- essentially
21 saying -- I guess the Court is saying that as long as we can
22 take depositions of work product we haven't shown substantial
23 need.  If that's the Court's position then I really can't
24 respond to that because we still do have the opportunity to
25 take depositions.

1 However, in order to take proper depositions I
2 think that we realistically need to see a certain amount of
3 underlying material so we know what -- what the facts are and
4 what we are asking about.
5       **THE COURT:** Well, it's -- just to be clear, I am not
6 saying that you can ask them about their contingency planning.
7 You can't.
8       What you can ask them about is about the
9 fundamental underlying facts that might go into such
10 contingency planning -- what can be planted here, what can be
11 planted there, where can you get this, where can you get
12 that, how much many more will it cost, et cetera, et cetera,
13 et cetera -- the stuff that your expert would need to put
14 together in order to rebut the showing that they are going to
15 try to make through their expert, et cetera.
16       And that's what I mean. I don't think -- what is
17 at issue is not their contingency planning. What is at issue
18 is whether or not the assertion that this is -- that the
19 imposition of an injunction would cause a great financial
20 hardship, and that would be based on underlying financial and
21 other facts, and those are the facts that you are entitled to
22 get and you can still get information about. I'm not saying
23 you can get into their contingency planning.
24       **MR. ACHITOFF:** I understand, your Honor. Well, it did
25 appear to me that you were saying initially that there's a

1  certain amount of material in the documents that are facts and
2  therefore are not protected work product.
3          **THE COURT:**  No.  That's actually not what I meant.
4          **MR. ACHITOFF:**  I'm sorry.  I misinterpreted.
5          **THE COURT:**  And maybe it's just the way I said it.
6  But what I meant to say is that when one puts together a work
7  product document like these as all parties have agreed are
8  the -- you inevitably gather facts and put them together.  The
9  composite of those is still going to be work product.  You can
10 get discovery of the underlying facts but you can't get it
11 through the work product.
12         So the fact that somebody happens to have given a
13 disclosure as to whether or not the particular fields in
14 California can be replanted with conventional seed in 2011 and
15 how much seed is available from that source in 2011, and what
16 suppliers might be impacted, or what customers might be impacted
17 by the lack of seed from that source, the fact that those
18 ultimate facts may or may not be protected doesn't mean that --
19 and you can get discovery of them doesn't mean that the
20 compilation, which is their ultimate compilation of those facts
21 in their contingency plan -- doesn't mean that's discoverable.
22 But certainly the underlying facts are.
23         **MR. ACHITOFF:**  Well, your Honor, to the extent that
24 the underlying facts have been subjected to analysis, I can
25 understand the Court saying that's work product.  To the extent

1  that the facts themselves -- the facts are in the documents and
2  are segregable, and that the analysis of them, the speculation
3  about them is redactable I think plaintiffs are entitled to
4  those facts in the documents.
5       **THE COURT:**  Well, I'm not sure, because it's a -- it
6  is a line that is nearly impossible to draw, because the
7  analysis is -- I mean, the facts are all being analyzed.  If
8  they put together a table of what one could expect, or what can
9  be produced, or this or that or the other thing it's all an
10 analysis.  So I'm not sure that's right.  They only put this
11 together in anticipation of the problem that might be created by
12 the posture of the litigation.
13       So I don't think you are entitled to get their
14 tables but not the conclusion, therefore we can or we cannot
15 produce, et cetera, et cetera.
16       But --
17       **MR. ACHITOFF:**  Well --
18       **THE COURT:**  -- you know, all you have to do is ask the
19 same question their management asked.  And, you know, I don't
20 know what those questions are.  Your people and your experts
21 will know much better.  What are the facts you need to know in
22 order to decide what can be produced at what cost other than
23 their own analysis?
24       **MR. ACHITOFF:**  Well, your Honor, I'd like to point out
25 that in terms of what Betaseed has produced to date in response

1 to requests for production, much of the material that is of a
2 similar nature in terms of -- I mean, Betaseed is a seed
3 production company, so a lot of what they have produced relates
4 to what seed they have grown, when they have grown it, where
5 they have grown it, what their inventories are and so forth.
6      And most if not all of that material from this
7 particular party has been in the form of tables and
8 compilations that have been put together by Betaseed for
9 purposes of production in this litigation.  It has not been
10 in the form of raw data that has simply been taken off of
11 their systems and given to us as is the case, I think, with
12 some of the other seed company parties.
13      So in terms of compilations and tables that's what
14 Betaseed has already seen fit to produce to us.
15      **MR. ZIRLIN:**  Your Honor --
16      **THE COURT:**  Just let him finish.
17      But my concern about that analysis is it depends on
18 the purpose.  You know, I'm sure that one of the reasons they
19 did it this way is because in their view it's more accessible
20 to you, number one; and number two, it keeps from you from
21 rummaging around on their database.  So that's why they want
22 to produce it in that format.
23      That doesn't mean that when they happen to have a
24 similar format in terms of work product they've given up
25 their right to the work product doctrine.  I just don't

1  understand that.

2       It is -- you know, if there are other questions
3  that you want to ask that go to their ability to produce
4  their crop and not lose money, or lose less money using
5  conventional seed, then you get to ask those questions.  And
6  maybe the answer to those questions, or the request for
7  information or documents comes out in a tabular format, but
8  that's okay.  That's -- you are talking about the underlying
9  questions.  It's not asking, "Give me your contingency plan."

10      So that's why I don't think it's the same thing.

11      **MR. ZIRLIN:**  Yes, your Honor.  This is Harry Zirlin
12 for Betaseed.

13      You kind of responded the same way that I was going
14 to, but just to say it again, I mean, we did inform Mr.
15 Achitoff that with respect to certain information he was
16 requesting the information was scattered throughout Betaseed,
17 you know, in lots of different documents, in lots of
18 different places.  It was not all in one place that would
19 make it easy for them to digest and ascertain.

20      And we, at great expense to Betaseed, had -- they
21 had the expert at Betaseed respond to those document requests
22 almost as if they were interrogatories and format the
23 information in tables so that that information would be, you
24 know, more accessible to plaintiffs.

25      And as you know, they obviously say they have that

1  information.  I'm just saying what you've already said, but
2  I'll say it anyway, which is they have eight depositions to
3  take.  They were granted by his honor Judge White at the very
4  beginning of the discovery process.  They haven't taken any
5  depositions of anyone, let alone Betaseed representatives,
6  nor of the expert who also used compilations of data from all
7  the seed producing companies to -- you know, to put in her
8  expert opinion as to the availability of conventional seed
9  and why that would -- why there wasn't enough conventional
10 seed to go around.
11         So I do think, you know, as I read the cases -- and
12 I think where I see your Honor coming out is they need to
13 take a deposition or two, and then if they can't -- you know,
14 if after the deposition they can show that that was somehow
15 unsatisfactory for any reason, you know, maybe this is
16 without a prejudice to their ability to come back after the
17 deposition and say, "Well, all right, you made us take a
18 deposition and now look where we are.  We still don't have
19 the information they need."
20         I don't see why they couldn't get that, because
21 they can ask, as you said, what sources of conventional seed
22 are out there, what is the maximum amount of time that you
23 could -- or the minimum amount of time that you could raise a
24 new crop of conventional seed, or is this source available or
25 that source available, and if -- you know, they will

1   obviously get sworn testimony as to those questions.

2          **THE COURT:**  Mr. Achitoff, did you want to add

3   anything?

4          **MR. ACHITOFF:**  No.

5          **THE COURT:**  Well, that's the ruling of the Court,

6   then.  You haven't showed me the required showing.  I don't

7   think it's waived.  I'm not -- I'll just refer you to footnote

8   10 of the joint letter.

9          **MR. ACHITOFF:**  I'm sorry, your Honor.  I can't hear

10  the Court.

11         **THE COURT:**  So I don't think the question has been

12  waived.  I'll refer you to footnote 10 of the joint letter.

13         As to the substance I'll find that there has not

14  yet been a showing of substantial need.  I'm not ruling it

15  out altogether, although it does seem to be the kind of

16  underlying facts that one could get even without the

17  contingency planning, and maybe there are circumstances that

18  I don't know about that make it difficult or nearly

19  impossible to do that, but I certainly don't have any showing

20  on that subject now.

21         So the motion is denied, obviously without prejudice

22  if there's an additional showing at some point in the future.

23         **MR. ZIRLIN:**  Thank you, your Honor.

24         **THE COURT:**  Thank you all.

25         (The proceedings concluded at 11:22 a.m.)

**CERTIFICATE OF REPORTER**

I, CHRISTINE TRISKA, Pro-Tem Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in Case No. C08-0484, Center for Food Safety versus Charles Connor, et al. were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_____/S/ Christine Triska_____

Christine Triska, CSR 12826, RPR

Thursday, May 13, 2010