GEORGE A. KIMBRELL (Pro Hac Vice)
PAIGE M. TOMASELLI State Bar No. 237737
KATERYNA L. RAKOWSKY State Bar. No. 246248
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@icta.org
       ptomaselli@icta.org
       kateryna@icta.org

PAUL H. ACHITOFF (Pro Hac Vice)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawaiʻi 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> THOMAS J. VILSACK, *et al.*, <br><br> Defendants. | Case No.: 3:08-cv-0484-JSW <br><br> **PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PERMANENT RELIEF** <br><br> Date: August 13, 2010 <br> Time: 9:00 a.m. <br> Judge: Hon. Jeffrey S. White <br> Place: Courtroom 11 |

Plaintiffs' Supplemental Brief in Support of Motion for Permanent Relief
No. 3:08-cv-00484-JSW

1   TABLE OF CONTENTS

2   INTRODUCTION ................................................................................................................... 1

3   ARGUMENT .......................................................................................................................... 2

4      I.    THE COURT'S MERITS HOLDING IS INAPPOSITE IN THE MAIN, AND WHERE RELEVANT, SUPPORTS PLAINTIFFS' ARGUMENTS IN THIS CASE ................................................................... 2

6           A.    The Court Set Aside the Injunction Based On a Particular Circumstance Not Present Here. ................................................... 2

8           B.    The Court Declined to Order That the Lower Court Install the Monsanto/USDA Remedy That Would Have Allowed Planting. Rather, the Court's Analysis is Predicated on Administrative Process and NEPA Compliance Following Vacatur and Remand. ....................................................................... 3

11          C.    The Court Confirmed the Independent Preclusive Effect of the Vacatur But Did Not Foreclose Additional Injunctive Relief if Necessary. ............................................................................ 5

13     II.   THE *MONSANTO* COURT'S STANDING HOLDING SUPPORTS PLAINTIFFS' STANDING HERE ................................................................ 7

14          A.    The Court Dismissed Intervenors' Arguments That the Threat of Transgenic Contamination is Not Cognizable Injury. ............................................................................................. 7

16          B.    The Court Did Not Limit Plaintiffs' Standing or Potential Relief. ............................................................................................ 9

18     III.  THE COURT'S OPINION CONFIRMS THAT AN EVIDENTIARY HEARING IS NOT REQUIRED, TRANSGENIC CONTAMINATION CAN BE IRREPARABLE, AND THE COURT NEED NOT ADOPT , LET ALONE DEFER TO, APHIS' UNPRECEDENTED PROPOSAL ................................................. 11

21          A.    The Court's Opinion Confirms That an Evidentiary Hearing Is Not Required. ............................................................. 11

22          B.    Transgenic Contamination Can Be Irreparable Harm and Does Not Require a Species-Level Showing of Harm. ..................... 12

24          C.    The Court Need Not Defer to, Let Alone Adopt, USDA's Unprecedented Remedy Proposal. .................................................. 14

25   CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) ...................................................... 8

*Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987) ........................................................................ 10

*Califano v. Yamasaki*, 442 U.S. 682 (1979) ............................................................................... 10

*Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988) .................................................... 12

*Ctr. for Food Safety v. Schafer*, No. C 08-00848,
    2010 WL 964017 (N.D. Cal. March 16, 2010) ..................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 .......................... 10

*Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975) ..................................................... 13

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002) .............................................. 12

*Jackson v. Motel 6 Multipurposes, Inc.,* 172 F.R.D. 469 (M.D. Fla. 1997) ............................... 12

*Livestock Marketing Ass'n v. USDA*, 207 F. Supp. 2d 992 (S.D. 2002) ..................................... 10

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990) ..................................................................... 11

*McCall-Bey v. Franzen*, 777 F.2d 1178 (7th Cir. 1985) ............................................................... 6

*Monsanto v. Geertson Seed Farms*, ___ S.Ct. ___,
    2010 WL 2471057 (U.S. June 21, 2010) ...................................................................... passim

*Nat'l Min. Ass'n. v. U.S. Army Corps of Engin'rs*, 145 F.3d 1399 (D.C. Cir. 1998) ................. 11

*Northwest Envtl. Advocates v. EPA*, No. C 03-05760 SI,
    2006 WL 2669042 (N.D. Cal. Sep. 18, 2006) ..................................................................... 10

*Oklahoma Broadcasters Ass'n v. Crisp*, 636 F. Supp. 978 (W.D. Okla. 1985) ......................... 12

*United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) .......................................................... 12

*Waterkeeper Alliance v. Dep't of Defense*, 271 F.3d 21 (1st Cir. 2001) .................................... 13

*Winter v. Natural Resources Defense Council*, 129 S.Ct. 365 (2008) ......................................... 2

### REGULATIONS

C.F.R. § 1506.1(a) ........................................................................................................................ 4

# INTRODUCTION

The Court's decision in *Monsanto v. Geertson Seed Farms*, ___ S.Ct. ___, 2010 WL 2471057 (U.S. June 21, 2010), firmly supports Plaintiffs' request for relief: a halt on planting of Roundup Ready sugar beets (RRSB) until APHIS completes an EIS, or enacts a partial deregulation that complies with NEPA. Vacatur and remand, accompanied by such injunctive relief as may be necessary to ensure compliance, is the appropriate remedy. While the Court did reverse the issuance of the injunction in *Monsanto*, it did so on grounds that do not offer support for any theory advanced by Defendants or Intervenors in this case. Nor does any aspect of the decision undermine any argument Plaintiffs have made. On the other hand, the Court expressly disagreed with several arguments Defendants and Intervenors have made in this case, and declined to adopt several others.

The gravamen of the Court's decision was that the district court's injunction improperly prohibited USDA from proposing any interim measures in the form of a partial deregulation, and therefore was overbroad. That holding is irrelevant here: Plaintiffs have made clear that they do not seek an injunction barring partial deregulation. *See* Pls.' Reply Perm. Relief at 1 n.1. Rather, Plaintiffs seek only to exercise the right to challenge any such partial deregulation Defendants may decide to put forward. The Court's opinion preserved that right. Importantly, the Court also confirmed the independent effect of the vacatur, and did not foreclose additional injunctive relief if necessary, so long as the agency was not enjoined from proposing a partial deregulation after vacatur and remand. The Court's standing analysis and holding regarding the threat of transgenic contamination also strongly support Plaintiffs' position in this case.

Critically, the Court declined to support a number of far-reaching arguments upon which Petitioners sought certiorari and which they emphasized in their briefing, several of which Defendants and Intervenors have pressed upon this Court, including their demand for an evidentiary hearing. Finally, the Court did not order the lower court to adopt the declaration-based, interim partial deregulation proposed by the Government, as Monsanto demanded, nor give the Government's remedy proposal deference, as the Government asked. Rather, the Court

preserved the public's ability to challenge any proposed partial deregulation for compliance with NEPA and other statutory mandates, including whether such a proposal would itself require an EIS.

## ARGUMENT

I. THE COURT'S MERITS HOLDING IS INAPPOSITE IN THE MAIN, AND WHERE RELEVANT, SUPPORTS PLAINTIFFS' ARGUMENTS IN THIS CASE

The Court first reiterated that the traditional four-factor test applied to plaintiffs seeking injunctive relief to remedy a NEPA violation. *Id.* at *11-12 (*citing Winter v. Natural Resources Defense Council*, 129 S.Ct. 365, 380-82 (2008)). Plaintiffs have never argued that anything but the traditional standard applies. *See, e.g.*, Pls.' Mot. Prelim. Inj. at 2; Pls.' Reply Perm. Relief at 11.

    A. <u>The Court Set Aside the Injunction Based On a Particular Circumstance Not Present Here.</u>

All of the *Monsanto* briefing—throughout the court of appeals, the certiorari stage and the merits briefing—focused entirely on the court's order enjoining planting of Roundup Ready Alfalfa (RRA). Instead, the majority opinion analyzed something else entirely, "whether the District Court erred in enjoining APHIS from partially deregulating RRA during the pendency of the EIS process":

> Petitioners focus their challenge on the part of the District Court's order prohibiting the planting of RRA. As we explain below, however, the broad injunction against planting cannot be valid if the injunction against partial deregulation is improper.

*Monsanto*, 2010 WL 2471057, at *12 n.4.

This distinction permeated the majority's injunction analysis, making it inapposite here: "*In light of these particular circumstances*, we hold that the District Court did not properly exercise its discretion in enjoining a partial deregulation of any kind pending APHIS's

preparation of an EIS." *Monsanto*, 2010 WL 2471057, at *15 (emphasis added).[1] The bottom line is that the Petitioners had a smorgasbord of reasons why they claimed enjoining planting was improper, many of them the same arguments they raise here. The Court declined to grant them relief on *any* of them, s*ee* Section III *infra*, because it ruled only on another ground, a "particular circumstance" not present here. Beyond the narrow ruling regarding the impropriety of enjoining USDA from undertaking a partial deregulation, the Court expressly declined to address the propriety of any other aspect of the court's issuance of injunctive relief:

> In sum, the District Court abused its discretion in enjoining APHIS from effecting a partial deregulation and in prohibiting the possibility of planting in accordance with the terms of such a deregulation. Given those errors, this Court need not express any view on whether injunctive relief of some kind was available to respondents on the record before us.

*Id.* at *17.

        B.      <u>The Court Declined to Order That the Lower Court Install the Monsanto/USDA Remedy That Would Have Allowed Planting. Rather, the Court's Analysis is Predicated on Administrative Process and NEPA Compliance Following Vacatur and Remand.</u>

The Court did not order the lower court to install APHIS's proposed measures and let planting continue, as Petitioners had strenuously demanded. To the contrary, at various parts of its analysis the Court expressly held, or strongly implied, that the lower court correctly declined

---

[1] For example, in applying the injunction standard, the Court held that the Respondents had not shown irreparable injury absent the enjoining of partial deregulations, but not for any reason having to do with the nature or likelihood of transgenic contamination (as the Petitioners had argued). Rather, the Court held that Respondents "cannot show they will suffer irreparable injury if APHIS is allowed to proceed with any partial deregulation" because at that time "respondents may file a new suit challenging such action and seeking appropriate preliminary relief" and thus an injunction was "not now needed." *Id.* at *15. Similarly, in analyzing whether there was a sufficient likelihood of harm, the Court discussed neither the likelihood of contamination from wholesale deregulation nor the likelihood under the specific USDA-Monsanto remedial proposal based on declarations (again, as Petitioners had argued). Instead, in concluding the harm not sufficiently likely to enjoin *any* partial deregulation, the Court posited a future partial deregulation hypothetical based on a "new EA," limited to "a remote part of the country" without conventional alfalfa farming and with "a plan to police vigorously compliance." *Id.* at *15.

to install the continued planting scheme recommended by USDA and Monsanto (exactly what those parties request the Court to order in this case): "The District Court may well have acted within its discretion in refusing to craft a judicial remedy that would have *authorized* the continued planting and harvesting of RRA while the EIS is being prepared." *Monsanto*, 2010 WL 2471057, at *13; *cf. id.* at *15 (holding the injunction improperly "pre-empts the very procedure by which the agency could determine" what, if any, interim measures were appropriate). A decision by this Court to install a partial deregulation as a remedy would similarly pre-empt that process.

Instead, the Court predicated its analysis on the conclusion that such action would have to comply with administrative process for partial deregulations pursuant to NEPA, the APA and the PPA, including that any party could challenge a new decision: "If and when the agency were to issue a partial deregulation order, any party aggrieved by that order could bring a separate suit under the Administrative Procedure Act to challenge the particular deregulation attempted." *Id.*; *id.* ("Until APHIS actually seeks to effect a partial deregulation, any judicial review of such a decision is premature."); *id.* at *13 ("Even if the District Court was *not required to adopt* that judgment, there was no reason to stop the agency from effecting a partial deregulation in accordance *with the procedures established by law*.") (emphases added); *id.* at *13 n.5 ("Because APHIS has not yet invoked the *procedures necessary* to attempt a limited deregulation, any judicial consideration of these issues is not warranted at this time.") (emphasis added); *id.* at *15 ("[W]e also know that any party aggrieved by a hypothetical future deregulation decision will have ample opportunity to challenge it, and to seek appropriate preliminary relief, if and when such a decision is made."). This analysis of course requires first a vacatur and remand to the agency.

The Court assumed that any such partial deregulation would have to comply with NEPA, and might require an EIS: "We do not express any view on the Government's contention that a limited deregulation of the kind embodied in its proposed judgment would not require the prior preparation of an EIS." *Id.* at *13 n.5 (citing 40 C.F.R. § 1506.1(a)); *id.* at *16 ("If APHIS may

partially deregulate RRA before preparing a full-blown EIS—a question that we need not and do not decide here ...."); *id.* at *23 (Stevens, J., dissenting) (noting that "the majority does not dispute that the District Court could have reasonably concluded that NEPA requires an EIS for even partial deregulation....").

### C. The Court Confirmed the Independent Preclusive Effect of the Vacatur But Did Not Foreclose Additional Injunctive Relief if Necessary.

In setting aside the injunction, the Court also relied on the independent effect of the vacatur, confirming that it alone was sufficient to preclude planting:

> In sum, we do not know whether and to what extent APHIS would seek to effect a limited deregulation during the pendency of the EIS process if it were free to do so; *we do know that the vacatur of APHIS's deregulation decision means that virtually no RRA can be grown or sold until such time as a new deregulation decision is in place, and we also know that any party aggrieved by a hypothetical future deregulation decision will have ample opportunity to challenge it*, and to seek appropriate preliminary relief, if and when such a decision is made.

*Monsanto*, 2010 WL 2471057, at *15 (emphasis added). Accordingly, pursuant to the Court's ruling, RRA is still illegal and cannot be planted, even though the Court set aside the injunction. This ruling supports Plaintiffs' position on the effect of a vacatur in this case.

The Court also held that "if" the "less drastic remedy" of a vacatur "was sufficient to redress respondents' injury," then "no recourse to the additional and extraordinary relief of an injunction was warranted." *Id.* at *16. Plaintiffs in this matter have asked for relief in the forms of vacatur, declaratory relief, and injunctive relief. In light of the Court's holding that vacatur has the independent effect of stopping planting, Plaintiffs continue to request that form of relief as proper here.

Plaintiffs' primary concern with a vacatur-only remedy is its enforcement. RRSB are currently in use and without an injunction, some parts of the industry may continue to use RRSB illegally. APHIS has acknowledged its enforcement constraints and inability to monitor for compliance. Decl. of Cindy Smith (Dkt. No. 277) ¶ 18 ("APHIS does not have the resources nor the personnel to inspect and monitor the approximately 1.4 million acres that are now planted with GE sugar beets."). The majority opinion also recognized this reality, mooring its

5

Plaintiffs' Supplemental Brief in Support of Motion for Permanent Relief
No. 3:08-cv-00484-JSW

hypothetical partial deregulation that might not cause irreparable harm to one that limited RRA use to a "remote part of the country" without conventional crops, *and* where the agency "adopts a plan to *police vigorously compliance* with its administrative order in the limited geographic area in question." *Monsanto*, 2010 WL 2471057, at *15 (emphases added); *see also id.* at *24 n.12 (Stevens, J., dissenting) (noting that "because APHIS concedes that it cannot monitor such limits, rules that protect these or any other parties may be merely hortatory in practice."); *id.* at *22 n.8 ("APHIS has very limited capacity to monitor its own restrictions. The agency could place all manner of constraints on its deregulation orders; they will have no effect unless they are enforced.").

A limited injunction against illegal planting and use of RRSB pending a new agency determination, in addition to vacatur, would allow this Court's judgment to be enforced. *McCall-Bey v. Franzen*, 777 F.2d 1178, 1183 (7th Cir. 1985) ("When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings."). Absent injunctive relief, plaintiffs and the general public may be without effective means to halt unlawful RRSB use.

The Court did not consider the appropriateness of delayed vacatur as Defendants urge here, although it had no quarrel with immediate vacatur. Plainly, by qualifying its observation that an injunction would be unwarranted only if vacatur was "sufficient to redress respondents' injury," *Monsanto*, 2010 WL 2471057, at *16, the Court implied that injunctive relief would be appropriate to the extent this was not the case. If this Court were to postpone vacatur, this would both deny Plaintiffs effective protection and be contrary to the public interest for all the reasons Plaintiffs have briefed, from undermining NEPA's purpose of requiring consideration of alternatives,[2] to protecting the environment, to protecting competitive markets and healthy crops.

---

[2] Similarly, while the Court noted the CEQ regulation that prohibits any interim action that would, *inter alia*, "limit the choice of reasonable alternatives," *id.* at *5, *13 n. 5, it did not have to address directly that continued planting would moot the NEPA process by eliminating alternatives, because the vacatur alone preserved the process' integrity. A

Accordingly, in the event of a stay, injunctive relief providing such protection in the interim would be appropriate.

In sum, contrary to Intervenors' misrepresentation that the *Monsanto* decision makes the relief Plaintiffs seek "unavailable," DIs' Opp. Hr'g Date at 2 n.3—the decision actually: 1) confirms vacatur provides the relief Plaintiffs have argued it does; 2) does not support Defendants' proposal to install a partial deregulation without vacatur and remand; and 3) leaves wide open the door for an injunction where necessary, as long as the Court does not enjoin APHIS from attempting a lawful partial deregulation following vacatur.

## II. THE *MONSANTO* COURT'S STANDING HOLDING SUPPORTS PLAINTIFFS' STANDING HERE

### A. The Court Dismissed Intervenors' Arguments That the Threat of Transgenic Contamination is Not A Cognizable Injury.

The Court began its standing analysis by holding that both the Petitioners and the Respondents had standing. *Monsanto*, 2010 WL 241057, at *8-11. The Court held that Respondents had demonstrated standing because they had established a "reasonable probability" of contamination and that the "substantial risk of gene flow injures [them] in several ways," including the need to "conduct testing to find out whether and to what extent their crops have been contaminated," and the need to "take certain measures to minimize the likelihood of potential contamination and to ensure an adequate supply of non-genetically engineered alfalfa." *Id.* at *10 & n.3. The Court held that these harms were "sufficiently concrete" to confer constitutional standing "even if their crops are not actually infected." *Id.* at *10. Petitioners also had argued that Respondents' injury was solely economic in nature and beyond the scope of NEPA injury. The Court found that argument "unpersuasive," because the injury "has an environmental as well as economic component." *Id.* Thus, the Court held that Respondents also

---

vacatur would do so in this case as well, unless the Court delayed the vacatur, or otherwise allowed continued planting by installing a partial deregulation or limiting relief to minimizing the risk to specific individuals of cross-pollination. Any of these options would gut NEPA's fundamental purpose.

had "zone of interests" or prudential standing pursuant to NEPA. *Id.* ("The mere fact that respondents also seek to avoid certain economic harms that are tied to the risk of gene flow does not strip them of prudential standing.").[3]

The Court's analysis is on-point here, as Defendants and Intervenors have repeatedly argued that Plaintiffs lack any cognizable injury (for purposes of either standing or relief) for precisely the reasons the Supreme Court has now firmly rejected. For example, Intervenors have argued that Plaintiffs lack any injury because Plaintiffs' crops have not yet been contaminated. *See, e.g.*, DIs' Opp. Perm. Inj. at 1, 6-7. The Court has now foreclosed this argument, holding sufficient evidence similar to that introduced here,[4] in which Plaintiffs have discussed the *risk* of contamination by cross-pollination, seed mixing, and other means, as well as the burden of testing and other protective measures they are forced to take in trying to avoid contamination. *Monsanto*, 2010 WL 2471057, at *10. Also echoing the Petitioners in *Monsanto*, Defendants and Intervenors have repeatedly argued that contamination harm is solely economic and therefore not irreparable in nature, *see, e.g.*, DIs' Opp. Prelim. Inj. at 14-16, Defs.' Reply Perm. Inj. at 4-6, but the Court has now held to the contrary. *Monsanto*, 2010 WL 241057, at *10-11; *see Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) (environmental injury is

---

[3] The Court also held that the Petitioners had standing, even though they had not challenged the vacatur of the deregulation, because the intervenors had supported replacing the vacatur with the government's proposed remedy, which would have permitted continued planting. *Monsanto*, 2010 WL 2471057, at *8-9. However, in doing so the Court expressly did "not decide whether the District Court had the authority to replace the vacated agency order with an injunction of its own making." *Id.* at *8 n.1. Accordingly, it is an open question whether it is even within this Court's equitable discretion to install, without first remanding, interim partial deregulation measures that would allow for more activity than the vacatur, as the Defendants and Intervenors request here. The Court held that the Petitioners had standing "in any case" because they could challenge the part of the district court's order "enjoining partial deregulation," since that part of the injunction went "beyond the vacatur of APHIS's deregulation decision." *Id.* at *8. In so holding, the Court recognized that the vacatur remedy alone was sufficient to bar planting and use of RRA.

[4] *See, e.g.*, Decls. of Dillon (First) (Dkt. No. 92) ¶¶ 6, 9-10, 12, 13, 15-16; MacDonald (Dkt. No. 95) ¶ 7; Des Marets (Dkt, No. 96) ¶ 7-9; Morton (First) (Dkt. No. 98) ¶¶ 11, 19-20, 22; Morton (Third) (Dkt. No. 220); Morton (Fifth) (Dkt. No. 422) ¶¶ 5, 8-11, 14, 16-21; Stearns (Dkt. No. 99) ¶¶ 8-10; Tipping (First) (Dkt. No. 100) ¶¶ 5, 8-10; Tipping (Second) (Dkt. No. 224) ¶¶ 8-11; *see also* Pls.' Perm. Relief Reply at 13-15.

normally irreparable).

Plaintiffs have met their burden under the Court's standard to show a "reasonable probability" of harm here. In its Preliminary Injunction Order, this Court found irreparable harm sufficiently likely. *Ctr. for Food Safety v. Schafer*, No. C 08-00848 JSW, 2010 WL 964017, at *2 (N.D. Cal. March 16, 2010). And since, as Plaintiffs detailed in their last brief, discovery has uncovered abundant evidence proving that Intervenors have continuous and common cross-pollination contamination problems, the reasonable probability of harm is even more apparent. *See* Pls.' Reply Perm. Relief at 13-15 (and discovery evidence therein).

B.  The Court Did Not Limit Plaintiffs' Standing or Potential Relief.

Apparently because the Court's standing analysis focused on the specific risks of transgenic contamination to alfalfa farmers, Intervenors may argue that relief in this case is limited to addressing the risks of transgenic contamination through cross-pollination, and just to the areas around Plaintiff farmers' fields. *See* DIs' Mot. in Opp. Hr'g Date at 2 n.3 (claiming that the decision "confirms that plaintiffs' requests for broader relief to protect non-parties or the environment generally are not viable").[5] Intervenors are incorrect, *see generally* Pls.' Reply Prelim. Inj. at 15-17, and the *Monsanto* decision did not hold otherwise.

First, the record includes strong evidence that cross-pollination in the Willamette Valley and elsewhere is much more likely than Defendants suggest. This is shown, for example, by Intervenor SESVanderHave's continuing problems with not only contamination between conventional sugar beets and RRSB, but also red beet/chard/sugar beet contamination in the

---

[5] Intervenors seemingly base this claim on one stray sentence of dicta in the opinion: "It is hard to see how respondents could show that such a limited deregulation would cause them likely irreparable injury. (Respondents in this case do not represent a class, so they could not seek to enjoin such an order on the ground that it might cause harm to other parties.)" *Id.* at *15. First, this sentence is in the merits injunction analysis, not the standing analysis section of the opinion and therefore is dictum. Second, while the Respondents were not a class, they included numerous national environmental and consumer organizations such as Sierra Club, Beyond Pesticides, and Center for Food Safety that have hundreds of thousands of members across the country. The Court's failure to address the likelihood of harm to them due to its focus on alfalfa farmers in its merits hypothetical should not be mistaken as a holding that other plaintiffs would not be harmed.

Valley. *See* Pls.' Reply Perm. Relief at 13-15.

That said, the issue is *not* just contamination of Willamette Valley farmers' crops through cross-pollination, and never has been, despite Defendants' repeated attempts to cabin the issue in that way. The Court's remedial order must address *all* substantial risks of harm to all plaintiffs, including injury to the interests of Plaintiffs Center for Food Safety's and Sierra Club's many thousands of members in avoiding environmental harm due to increased herbicide use and increased development of glyphosate resistant superweeds, and harm due to reduced choice in the foods they may consume. *See* Pls.' Reply Perm. Relief at 11 & n.7; [6] *Monsanto*, 2010 WL 2471057, at *24 n.12 (Stevens, J., dissenting) ("And, given that plaintiffs include environmental organizations as well as farmer and consumer associations, it is hard to see how APHIS could so carefully isolate and protect their interests."); *Northwest Envtl. Advocates v. EPA*, No. C 03-05760 SI, 2006 WL 2669042, at *8-9 (N.D. Cal. Sep. 18, 2006) (court may enjoin any harm to the environment the action likely will cause in which plaintiffs have shown an interest) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Moreover, "[t]here is no general requirement that an injunction affect only the parties in the suit." *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987). Rather, "the scope of injunctive relief is dictated by the extent of the violation established, not the geographic extent of the plaintiff class." *Califano v. Yamasaki*, 442 U.S. 682, 701, 702 (1979); *see also Livestock Marketing Ass'n v. USDA*, 207 F. Supp. 2d 992, 1007 (S.D. 2002) *aff'd* 335 F.3d 711, 726 (8th Cir. 2003) (limiting injunction against federal agency to only named plaintiffs would only encourage others to file additional lawsuits).

With regard to the vacatur remedy, the courts have been clear that this remedy is not to be limited to particular plaintiffs proving particular injuries: "When a reviewing court determines

---

[6] *See also* Decls. of Burd (Dkt. No. 90) ¶¶ 3-4, 6-8; Carmen (Dkt. No. 91) ¶¶ 12, 15-16; Des Marets (Dkt. No. 96) ¶¶ 6,10; Dillon (First) (Dkt. No. 92) ¶ 16; Feldman (Dkt. No. 212) ¶¶ 8-10; Hoffman (Dkt. No. 93) ¶¶ 5-6; Andrew Kimbrell (Dkt. No. 94) ¶¶ 10-11; MacDonald (Dkt. No. 95) ¶¶ 6-8; and, Martenson (Dkt. No. 97) ¶ 6.

that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n. v. U.S. Army Corps of Engin'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quotation, alteration and citation omitted); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 890 n.2 & 913 (1990) (Blackmun, J., dissenting)[7] ("The Administrative Procedure Act permits suit to be brought by any person 'adversely affected or aggrieved by agency action.' . . . [I]f the plaintiff prevails, the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual. Under these circumstances a single plaintiff, so long as he is injured by the rule, may obtain 'programmatic' relief that affects the rights of parties not before the court."). The Court in *Monsanto* did not hold anything to the contrary; for example, it did not suggest that Plaintiffs' vacatur was overbroad because of their purported limited standing, or that any possible injunctive relief was limited to any particular form of harm or geographic area. This Court should reject Intervenors' attempt to spin one sentence of dicta into a reversal of long-standing principles of public interest litigation.

III. THE COURT'S OPINION CONFIRMS THAT AN EVIDENTIARY HEARING IS NOT REQUIRED, TRANSGENIC CONTAMINATION CAN BE IRREPARABLE, AND THE COURT NEED NOT DEFER TO, LET ALONE ADOPT, APHIS' UNPRECEDENTED PROPOSAL

The Court's decision also is notable for what the Court declined to hold. Petitioners had pushed upon the Court many of the same arguments, based on the same precedents and misconceptions of law that they press on this Court. Given the chance to rule for Petitioners on any of these grounds, the Court declined to grant Petitioners relief on any of them. This Court should follow the Supreme Court's lead.

A. The Court's Opinion Confirms That an Evidentiary Hearing Is Not Required.

Petitioners led with the evidentiary hearing argument in their certiorari petition, *see* Monsanto's Petition for A Writ of Certiorari, (October 22, 2009), at Questions Presented, 18-28,

---

[7] This aspect of Justice Blackmun's dissent apparently expresses the sentiments of all nine justices. *See* majority opinion, *id.* at 890 n.2.

and continued to press it on the merits briefing to the Court. *See* Opening Brief for Petitioners, at 50-57; Reply Brief for Petitioners, at 20-23 (all briefings citing, *inter alia*, *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) and *Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988)). Intervenors used the same arguments and cited the same precedents to this Court. *See* DIs' Opp. Prelim. Inj. at 21 (citing same cases); DIs' Opp. Perm. Inj. at 15; DIs' Reply in Opp. to Pls.' Mot. Perm. Inj. at 19-21 (citing same cases).[8] Despite Petitioners' insistence, the Supreme Court expressly declined to grant such relief. *Monsanto*, 2010 WL 2471057, at *17 ("Nor does the Court address the question whether the District Court was required to conduct an evidentiary hearing before entering the relief at issue here."). Thus, contrary to Intervenors' repeated arguments to this Court that the *Monsanto* decision would vindicate them on this point, it did not. Moreover, since the Court declined to reach this issue, the Ninth Circuit precedent that such a hearing is not required is binding. *See Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 831 (9th Cir. 2002); *see, e.g.*, *Jackson v. Motel 6 Multipurposes, Inc.,* 172 F.R.D. 469, 471-72 (M.D. Fla. 1997) (because the Supreme Court declined to address an issue, the existing circuit precedent controlled); *see also Oklahoma Broadcasters Ass'n v. Crisp*, 636 F. Supp. 978, 982 (W.D. Okla. 1985).

### B. Transgenic Contamination Can Be Irreparable Harm and Does Not Require a Species-Level Showing of Harm.

Petitioners also argued to the Court at length that the injunction was not proper because transgenic contamination from gene flow was by its nature not irreparable. Opening Br. of Petitioners at 35-41; Reply Br. of Petitioners at 10-13. Defendants and Intervenors have asserted

---

[8] While Defendant USDA now argues it would not object to a limited type of evidentiary hearing, *see* Defs' Reply Perm. Relief at 18-19, the Solicitor General's briefing to the Supreme Court outright opposed Monsanto on this point, arguing that such hearings are inappropriate in the APA context. *See* SG's Merits Brief at 38-42; *id.* at 42 ("If petitioners would not have a right to a trial-type hearing on such issues before the agency—either in the first instance or if the court had remanded the case to APHIS—it is hard to see why they should gain that right by intervening in the part of an APA action regarding the same issues."); SG's Reply Brief at 19-22.

numerous versions of that same argument here.[9] First, as discussed above, in the standing context the Court expressly rejected these arguments, holding that the threat of transgenic contamination was a sufficient injury, being environmental as well as economic. *Monsanto*, 2010 WL 2471057, at *10-11.[10] Then in the merits context, the Court ruled the injunction overbroad only on the narrow partial deregulation ground, but despite that, left open the possibility that "injunction relief of some kind was available to respondents." *Id.* at *17. This Court should similarly reject Defendants' arguments that transgenic contamination is not irreparable harm.

Petitioners also argued to the Court the same extreme "species-level" harm arguments Defendants submit here, *i.e.*, that the whole species of a plant must be at risk before a harm based on the plant's commercial disappearance can be irreparable. *Compare* Opening Br. of Petitioners at 36-37 (relying on *Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1975) and *Waterkeeper Alliance v. Dep't of Defense*, 271 F.3d 21 (1st Cir. 2001)) *with* Defs.' Opp. Perm. Inj. at 5 n.3, and Defs.' Reply Perm. Inj. at 4-5 (citing same cases). The Supreme Court did not agree with Defendants' position; this Court should similarly reject it.

---

[9] *See, e.g.,* DI's Opp. to Pls.' Prelim. Inj. at 14-16; Defs.' Opp to Pls.' Prelim. Inj. at 6-13; DI's Opp to Pls.' Perm. Inj. at 6-12; Defs' Opp Pls.'. Perm Inj at 4-8.

[10] As part of their argument Petitioners derided the harm to the organic industry from contamination, as Defendants and Intervenors do here. However the Court specifically noted evidence that "there is *zero tolerance* for contaminated seed in the organic market") in holding that the threat of harm and the burden of testing was a cognizable injury. *Id.* at *10 (emphasis added). More fundamentally, the Court did not distinguish between the harm to farmers, either conventional or organic. *Id.* (holding that " a judicial order prohibiting the growth and sale of all or some genetically engineered alfalfa would remedy respondents' injuries by eliminating or minimizing the risk of gene flow to *conventional and organic* alfalfa crops") (emphases added). This conclusion underscores that the injury is to farmers' ability to sow the crop of their choice—the underlying NEPA violation in that case and here—regardless of Intervenors' protestations about organic contamination.

Plaintiffs' Supplemental Brief in Support of Motion for Permanent Relief
No. 3:08-cv-00484-JSW

13

C. The Court Need Not Defer to, Let Alone Adopt, USDA's Unprecedented Remedy Proposal.

Finally, in *Monsanto* the Petitioners argued that the Court should not just vacate the lower court's injunction, but also should order the lower court to replace it with USDA's proposed remedial measures that would have allowed continued planting. Petitioners at 57 ("The judgment of the court of appeals should be reversed, and the case remanded with instructions to vacate the district court's injunction *and enter APHIS's proposed remedy in its place*.") (emphasis added), 47-50; Petitioners' Reply at 19-20. Monsanto did not receive the relief they sought, and consequently their product is still banned under the vacatur.[11] The Court expressly declined to reach whether the lower court even had the equitable discretion to do what Monsanto requested. *Monsanto*, 2010 WL 2471057, at *8 n.1 (not reaching whether the court had the "authority to replace the vacated agency order with an injunction of its own making" that would have allowed further planting). In fact, it strongly implied the lower court was correct not to do so. *Id.* at *13 (In refusing to "craft a judicial remedy that would have *authorized* continued planting and harvesting" during the pendency of the EIS, the lower court "may well have acted within its discretion").

The Government similarly stressed to the Court that the lower court had not properly deferred to it during the remedy phase, and that deference for their declarations should be the same as deference based on an administrative record, claims Defendants and Intervenors echo in this matter. SG's brief at 33-38, 37 ("Just as a court would have deferred to the agency's decision on an administrative record, so too the district court should have deferred to the Director's submission."); *see, e.g.*, Defs.' Opp. Prelim. Inj. at 20-22; Defs.' Opp. Perm. Inj. at 14; Defs.' Reply Perm. Inj. at 15-16. Again, the Court did not agree with the Petitioners' and Government's contentions on this point. *Monsanto*, 2010 WL 2471057, at *13. Instead, the

---

[11] As the Court noted in its most recent Order (Dkt. No. 529), Intervenors already have flatly misrepresented that result. DIs' Mot. in Opp. Hr'g Date at 1 (Claiming that the Court in *Monsanto* held that the lower court "erred in halting the planting rather than entering the agency's narrowly-tailored, proposed interim measures on continued planting").

Court gave every indication that the proper course of action was for the Government to prepare any new proposal based not on declarations, but on an administrative record, with NEPA compliance and public process, after vacatur and remand. *See* pp. 4-6 *supra* and *Monsanto* citations therein; *Monsanto*, 2010 WL 2471057, at *13 ("If the agency found, on the basis of a new EA, that a limited and temporary deregulation satisfied applicable statutory and regulatory requirements, it could proceed .... If and when the agency were to issue a partial deregulation order, any party aggrieved by that order could bring a separate suit under the Administrative Procedure Act to challenge the particular deregulation attempted.").

This guidance is consistent with the public policy embedded in NEPA. *See* Pls.' Reply Perm. Relief at 5-6; *Monsanto*, 2010 WL 2471057, at *25 (Stevens, J., dissenting) ("Congress also recognized that agencies cannot fully weigh the consequences of these decisions without obtaining public comments through an EIS."); *id.* ("Congress recognized in NEPA that complex environmental cases often require exceptionally sophisticated scientific determinations, and that agency decisions should not be made on the basis of 'incomplete information.'"). This is particularly true here, where APHIS has "never―not once" partially deregulated a genetically engineered crop. *Id.* at *22 n.6. As Government audits have concluded, APHIS's track record containing regulated field tests is poor at best, *see* Pls.' Reply Perm. Relief at 19-20; it has no experience controlling crops comparable to the RRSB production it proposes to allow here, and even acknowledges its inability to enforce and monitor existing acreage. Smith Decl. ¶ 18. Accordingly, the Court should vacate and remand, rather than adopt the agency's de facto partial deregulation issued without the required administrative process.

## CONCLUSION

The Supreme Court's decision in *Monsanto* is entirely consistent with Plaintiffs' requested relief: vacatur, accompanied by such injunctive relief as may be necessary to ensure compliance. It also supports Plaintiffs' standing, Plaintiffs' opposition to the proposed partial-deregulation-by-declaration-of-interested-parties, and the Court's discretion to dispense with a burdensome and redundant evidentiary hearing.

Respectfully submitted this 6th day of July, 2010.

   /s/  George A. Kimbrell
GEORGE A. KIMBRELL (Pro Hac Vice)
PAIGE M. TOMASELLI State Bar No. 237737
KATERYNA L. RAKOWSKY State Bar. No. 246248
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@icta.org
       ptomaselli@icta.org
       kateryna@icta.org

PAUL H. ACHITOFF (Pro Hac Vice)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

*Counsel for Plaintiffs*