1   IGNACIA S. MORENO
    Assistant Attorney General
2   BEVERLY F. LI
    LUTHER L. HAJEK
3   Trial Attorneys
    U.S. Department of Justice
4   Environment and Natural Resources Division
    Natural Resources Section
5   P.O. Box 663
    Washington, D.C. 20044-0663
6   Tel.: (202) 353-9213 (Li)/ (202) 305-0492 (Hajek)
    Facsimile: (202) 305-0506
7   Beverly.Li@usdoj.gov
    Luke.Hajek@usdoj.gov
8
    TONY WEST
9   Assistant Attorney General
    JOHN R. GRIFFITHS
10  Assistant Director, Federal Programs Branch
    JOHN R. COLEMAN (Va. Bar # 70908)
11  Trial Attorney, U.S. Department of Justice
    Civil Division, Federal Programs Branch
12  20 Massachusetts Ave., N.W., Room 6118
    Washington, D.C. 20530
13  Telephone: (202) 514-4505
    Facsimile: (202) 616-8460
14  Email: John.Coleman3@usdoj.gov

15  Attorneys for Federal Defendants

16              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                  SAN FRANCISCO DIVISION

18  CENTER FOR FOOD SAFETY., et al.,      )   Case No. C-08-00484 JSW
                                          )
19            Plaintiffs,                 )   **FEDERAL DEFENDANTS'**
                                          )   **SUPPLEMENTAL BRIEF ON**
20       v.                               )   **PERMANENT INJUNCTIVE RELIEF**
                                          )
21  THOMAS J. VILSACK, et al.,            )   Date:  August 13, 2010
                                          )   Time:  9:00 a.m.
22            Defendants.                 )   Judge: Hon. Jeffrey S. White
                                          )   Place: Courtroom 11
23                                        )
                                          )
24

25

26

27

28

FED. DEFS.' SUPP. BR. ON PERMANENT INJ. RELIEF

1

## TABLE OF CONTENTS

2   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4   I.      THE MONSANTO OPINION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5   II.     APPLICATION OF MONSANTO TO THE REMEDY ISSUES IN THIS
            CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
6
            A.      Monsanto Did Not Address the Propriety of Vacatur and the Court Should
7                   Exercise its Discretion in this Case by Not Completely Vacating APHIS's
                    Determination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
8
            B.      Monsanto Confirms that Injunctive Relief in Addition to Complete
9                   Vacatur Would Be Inappropriate in this Case . . . . . . . . . . . . . . . . . . . . . 8

10
            C.      Monsanto Does Not Support Plaintiffs' Arguments Concerning Injury and
11                  the Extent of Injunctive Relief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12          D.      Monsanto Did Not Address Whether an Evidentiary Hearing Is
                    Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
13
    III.    APHIS COULD TAKE SEVERAL REGULATORY ACTIONS ON REMAND
14          IF THE COURT COMPLETELY VACATES AND DOES NOT WITHHOLD
            OR STAY VACATUR  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

Allied Signal v. U.S. Nuclear Regulatory Comm'n,
    988 F.2d 146 (D.C. Cir. 1993)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4

5

Califano v. Yamasaki,
    442 U.S. 682 (1979)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6

Central & South West Servs., Inc. v. EPA,
    220 F.3d 683 (5th Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

8

Central Maine Power Co. v. FERC,
    252 F.3d 34 (1st Cir. 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9

Cheyenne Tribe v. Norton,
    503 F.3d 836 (9th Cir. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10

Friends of the Earth v. Laidlaw Envt'l Servs.,
    528 U.S. 167 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

12

Hecht v. Bowles,
    321 U.S. 321 (1944)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

Idaho Farm Bureau v. Fed'n v. Babbitt,
    58 F.3d 1392 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

Idaho Watersheds Proj. v. Hahn,
    307 F.3d 815 (9th Cir. 2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15

16

Marsh v. Or. Natural Res. Council,
    490 U.S. 360 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17

18

Monsanto Co. v. Geertson Seed Farms,
    No. 09-475, 2010 WL 2471057 (U.S. Jun. 21, 2010)  . . . . . . . . . . . . . . . . . . . . . . 1-5, 8-13

19

Nat'l Wildlife Fed'n v. Espy,
    45 F.3d 1337 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

21

Orantes-Hernandez v. Thornburgh,
    919 F.2d 549 (9th Cir. 1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22

W. Oil & Gas Ass'n v. EPA,
    633 F.2d 803 (9th Cir. 1980)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23

24

Weinberger v. Romero-Barcelo,
    456 U.S. 305 (1982)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

### <u>STATUTES</u>

26

7 U.S.C. § 7701  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

27

7 U.S.C. § 7711(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

28

7 U.S.C. § 7711(c)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7 U.S.C. § 7754  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>REGULATIONS</u>**

7 C.F.R. Part 340  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 12

73 Fed. Reg. 60008 (Oct. 9, 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INTRODUCTION**

Pursuant to the Court's June 22, 2010 Order (Dkt. No. 523), Defendants U.S. Department of Agriculture ("USDA"), Animal and Plant Health Inspection Service ("APHIS") et al. hereby submit this supplemental brief regarding the Supreme Court's decision in Monsanto Co. v. Geertson Seed Farms, No. 09-475, 2010 WL 2471057 (U.S. Jun. 21, 2010). This Court has instructed the parties to address the impact of that decision on the remedy issues in this case. Further, in a subsequent order, the Court instructed the parties "to address the Supreme Court's statement that: 'we do know that the vacatur of APHIS's deregulation decision means that virtually no [Roundup Ready alfalfa] can be grown or sold until such time as a new deregulation decision is in place.'" Order of June 24, 2010 at 2 (Dkt. No. 529) (quoting Monsanto, 2010 WL 2471057, at *15).

As explained below, the analysis provided by the Court in Monsanto shows that Plaintiffs are not entitled to the injunctive relief they seek. The Supreme Court assumed without deciding that vacatur was appropriate. Monsanto, 2010 WL 2471057, at *11. The Court held that the additional injunctive relief ordered by the district court was an abuse of discretion, including both the injunction precluding APHIS from partially deregulating RRA before the Environmental Impact Statement ("EIS") is complete and the nationwide injunction prohibiting the planting of RRA during the same period. Id. at *15-*16. When applied to the facts of this case, the Monsanto decision establishes that this Court should not impose the injunctive relief sought by Plaintiffs. Monsanto identifies partial or complete vacatur as a possible remedy, but here the equities of the case dictate a different remedy. In this case, fully consistent with the Monsanto decision, the Court should decline to completely vacate the determination and instead, though a partial vacatur, allow planting to occur under the conditions proposed by APHIS while the EIS is being prepared.

In response to the Court's inquiry regarding the effect of an immediate vacatur of APHIS's determination, vacatur would result in all Roundup Ready Sugar Beets ("RRSB") being immediately subject to regulation under the Plant Protection Act ("PPA"), 7 U.S.C. § 7701 *et*

*seq.* If the Court were to vacate and remand, APHIS would have several potential courses of action it could pursue administratively. First, APHIS could continue to regulate RRSB under the permitting scheme set forth in the regulations at 7 C.F.R. Part 340. Second, APHIS could revise its Part 340 regulations to allow APHIS to issue a general permit, allow the movement of specified regulated articles without further restrictions if the Secretary finds that a permit is not necessary, or alter its current permitting scheme in other ways. After revising its regulations, APHIS could implement actions concerning RRSB under the revised regulations. Third, APHIS could issue an administrative order if the Secretary finds such an order necessary to carry out the PPA. Finally, APHIS could determine to grant a petition for partial deregulation if Intervenors submitted such a petition. However, none of these actions could be fully implemented immediately. At a minimum, several months would be required in order to conduct an appropriate analysis under the National Environmental Policy Act ("NEPA") to carry out any of these options in their entirety. APHIS estimates the earliest any of these courses of action could be finalized is March 1, 2011. For that reason, APHIS has requested in the alternative that if the Court were to completely vacate its determination, it should stay the mandate until March 1, 2011, to allow the agency time to take appropriate administrative action to alleviate the hardship caused by an immediate switch from non-regulated to regulated status.

**ARGUMENT**

## I.   THE *MONSANTO* OPINION

The <u>Monsanto</u> case involved a challenge to APHIS's determination of non-regulated status for Roundup-Ready Alfalfa ("RRA"). <u>See</u> 2010 WL 2471057 at *6. The district court found that APHIS's determination violated NEPA and entered a preliminary injunction enjoining all future planting of RRA, except for seed that had been purchased prior to the court's decision. <u>Id.</u> Subsequently, the district court entered a permanent injunction and judgment that: "(1) vacated APHIS's deregulation decision; (2) ordered APHIS to prepare an EIS before it made any decision on Monsanto's deregulation petition; (3) enjoined planting of any RRA in the United States after March 30, 2007, pending APHIS's completion of the required EIS; and (4) imposed certain conditions (suggested by APHIS) on the handling of already-planted RRA." <u>Id.</u> Because

1   the district court's order allowed some continued planting of RRA, it was in effect a partial

2   vacatur and not a complete vacatur of APHIS's determination.  Id.  The defendants appealed,

3   challenging the scope of the relief granted, but they did not challenge the district court's decision

4   on the merits.  Id. at *7.  After the Ninth Circuit affirmed the district court's decision, Monsanto

5   and Forage Genetics International ("FGI") filed a petition for certiorari and the petition was

6   granted.  Id.

7           In its decision, the Supreme Court first addressed the issue of standing.  The Court found

8   that the petitioners (Monsanto and FGI) had standing to bring their claims, despite not

9   challenging the district court's vacatur, because they preserved their objection to the district

10  court's rejection of APHIS's proposed remedy.  Id. at *8-*9.  In addition, the petitioners had

11  standing to challenge the district court's injunction against further regulatory action by APHIS to

12  partially deregulate RRA.  Id.  The Court also found that the private respondents had standing to

13  challenge APHIS's determination given their allegations of potential risk of gene flow from

14  RRA, which could cause both economic and environmental injuries to the private respondents.

15  Id. at *10-*11.

16          The Court then turned to whether the district court had erred (a) by enjoining APHIS

17  from deregulating RRA, in whole or in part, until it had prepared an  EIS; and (b) by entering a

18  nationwide injunction prohibiting almost all future planting of RRA.  Id. at *11.  The Court

19  began its discussion by emphasizing that it was not deciding whether the district court properly

20  vacated APHIS's determination: "[W]e assume without deciding that the District Court acted

21  lawfully in vacating the deregulation decision."  Id.

22          Turning then to the issue of whether the injunction against even partial deregulation was

23  proper, the Court reiterated that, even in cases of alleged environmental injury, a plaintiff must

24  meet the traditional four-factor test in order to obtain an injunction.  Id. at *11-*12.  The Court

25  then found that "none of the traditional four factors governing the entry of permanent injunctive

26  relief supports the District Court's injunction prohibiting partial deregulation."  Id. at *13.  What

27  the Court deemed of most importance, id. at *14, was its determination that the plaintiffs could

28

1   not show irreparable injury if APHIS were allowed to proceed with partial deregulation.  Id at

2   *14-*15.  The Court held that irreparable injury would not occur because the plaintiffs could

3   challenge a partial deregulation in a new suit and seek preliminary relief to protect their interests.

4   Id. at *15.  The Court also recognized that the agency decision could result in no injury

5   whatsoever to the plaintiffs (depending on the extent of the partial deregulation).  Id.  Given the

6   lack of irreparable injury, the Court held that the district court erred in enjoining APHIS from

7   exercising its regulatory authority on remand: "[W]e hold that the District Court did not properly

8   exercise its discretion in enjoining a partial deregulation of any kind pending APHIS's

9   preparation of an EIS."  Id.

10          The Court then addressed whether the district court had erred in entering a nationwide

11  injunction against the planting of RRA.  Id. at *16.  The Court found that the district court had

12  abused its discretion for two reasons.  First, the Court recognized that the planting injunction was

13  necessarily improper because of the Court's determination that APHIS must be allowed to use its

14  regulatory authority to partially deregulate:  "Because it was inappropriate for the District Court

15  to foreclose even the possibility of a partial and temporary deregulation, it necessarily follows

16  that it was likewise inappropriate to enjoin any and all parties from acting in accordance with the

17  terms of such a deregulation decision."  Id. at *16.  Second, the injunction was improper because

18  it was unnecessary – by the plaintiffs' own admission, the district court's vacatur had already

19  provided the private respondents with sufficient relief.  Id.  The Court made clear that any

20  injunction "is a drastic and extraordinary remedy" which should not be granted as a matter of

21  course:

22              If a less drastic remedy (such as partial or complete vacatur of
                APHIS's deregulation decision) was sufficient to redress
23              respondents' injury, no recourse to the additional and
                extraordinary relief of an injunction was warranted.
24

25  Id.  The Court thus held that the injunction against virtually all planting was also erroneously

26  imposed.  Id.

27  II.     APPLICATION OF *MONSANTO* TO THE REMEDY ISSUES IN THIS CASE

28          In this case, Defendants have requested that the Court not vacate APHIS's determination

of non-regulated status regarding RRSB and instead allow APHIS's determination to remain in effect for a limited period to allow APHIS to complete an EIS, while putting in place conditions to prevent harm to the environment in the interim.  See Defendants' Opposition to Plaintiffs' Motion for a Permanent Injunction ("Def. Opp.") (Dkt. No. 384) at 1-2.  Defendants also argue that, if the Court were to vacate APHIS's deregulation determination, it would be unnecessary and improper  to impose the additional injunctive relief sought by Plaintiffs, including their request to enjoin any subsequent partial deregulation determination by APHIS.  See id.; see also Defendants' Reply Brief Regarding Permanent Injunction ("Def. Reply") (Dkt. No. 541) at 1.  As discussed in more detail below, these arguments are fully supported by the Monsanto decision.  The Supreme Court's analysis makes abundantly clear that the Plaintiffs here are not entitled to injunctive relief and it would be an abuse of discretion for this Court to both vacate APHIS's determination and order further injunctive relief.  Moreover, although the Supreme Court did not address whether vacatur was appropriate, its decision fully supports Defendants' position that the Court may, and should, examine the equities to determine whether vacatur is appropriate.  In this case, given the hardship of immediately re-imposing regulatory status on RRSB and the public interest implications of doing so, the Court should exercise its discretion by not completely vacating APHIS's determination and instead ordering a partial vacatur imposing the conditions suggested by the agency while it completes an EIS and makes a new determination.

**A.**   ***Monsanto* Did Not Address the Propriety of Vacatur and the Court Should Exercise its Discretion in this Case by Not Completely Vacating APHIS's Determination**

The Supreme Court's decision in Monsanto does not address vacatur and therefore does not affect this Court's determination of whether vacatur is appropriate in the context of this case.  See Monsanto, 2010 WL 2471057 at *7-*8.  The Supreme Court's analysis of the propriety of the injunctive relief ordered by the district court proceeded on the assumption that vacatur had occurred and was proper: "[W]e *assume without deciding* that the District Court acted lawfully in vacating the deregulation decision."  Id. at *11 (emphasis added).  Analyzing the facts in light of this assumption, the Court found that the injunctive relief ordered by the district court was

1    improper.  Id. at *15-*16.

2        In contrast, this Court is starting with a clean slate with respect to the appropriate remedy

3    and the Court retains its discretion to either withhold vacatur pending completion of APHIS's

4    EIS or to stay its vacatur for a period of time to allow APHIS to consider and, if appropriate,

5    promulgate interim regulatory measures.  See Def. Opp. at 11-15; Def. Reply at 11-18.

6    Monsanto does not foreclose any of the remedial options advocated by Defendants in this case.

7        The ability of courts to remand without vacatur is well established.  See Idaho Farm

8    Bureau v. Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995) ("[W]hen equity demands, the

9    regulation can be left in place while the agency follows the necessary procedures."); Nat'l

10   Wildlife Fed'n v. Espy, 45 F.3d 1337, 1343 (9th Cir. 1995) ("Although the district court has

11   power to do so, it is not required to set aside every unlawful agency action.  The court's decision

12   to grant or deny injunctive or declaratory relief under the APA is controlled by principles of

13   equity.") (citations omitted); W. Oil & Gas Ass'n v. EPA, 633 F.2d 803, 813 (9th Cir. 1980)

14   ("[G]uided by authorities that recognize that a reviewing court has discretion to shape an

15   equitable remedy, we leave the challenged designations in effect.") (citations omitted); see also

16   Allied Signal v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150 (D.C. Cir. 1993) ("An

17   inadequately supported rule . . . need not necessarily be vacated."); Central Maine Power Co. v.

18   FERC, 252 F.3d 34, 48 (1st Cir. 2001) (remanding without vacating defective rule); Central &

19   South West Servs., Inc. v. EPA, 220 F.3d 683, 692 (5th Cir. 2000) (remanding without vacating

20   defective rule).  Nothing in Monsanto decision suggests or implies that this discretion is

21   circumscribed in this case.  To the contrary, the Court cites to cases such as Weinberger v.

22   Romero-Barcelo, 456 U.S. 305 (1982), which emphasize the discretion (and duty) of courts to

23   fashion equitable relief.  Id. at 312  ("The essence of equity jurisdiction has been the power of

24   the Chancellor to mould each decree to the necessities of the particular case.  Flexibility rather

25   than rigidity has distinguished it.") (quoting Hecht v. Bowles, 321 U.S. 321, 329 (1944)).

26       In fact, while the Monsanto decision does not directly address this issue, the Supreme

27   Court clearly leaves open the prospect that the district court could have properly withheld

28   vacatur.  In its concluding paragraph analyzing why the planting injunction was improper, the

FED. DEFS.' SUPP. BR. ON PERMANENT INJ. RELIEF                                            6

Court not only reiterates that injunctive relief is an extraordinary remedy that should not be granted as a matter of course, it also in a parenthetical indicates that partial vacatur should be considered as a possible remedy:

> If a less drastic remedy (such as *partial* or complete vacatur of APHIS's deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.

Id. at 16 (emphasis added).  In this case, the less drastic remedy of partial vacatur is appropriate because an immediate, complete vacatur would have drastic effects on the U.S. sugar market, sugar consumers, and sugar beet growers and processors.  See Def. Opp. at 6-7 (Dkt. No. 384); Def. Reply at 10-11 (Dkt. No. 541).

In fact, there is precedent for a district court to impose conditions proposed by the agency in order to both avoid the drastic effects of a complete vacatur or broad injunction and to prevent harm to the environment during remand.  See, e.g., N. Cheyenne Tribe v. Norton, 503 F.3d 836, 844 (9th Cir. 2007) (upholding the district court's decision to adopt measures proposed by BLM "to minimize potential damage to the environment"); Idaho Watersheds Proj. v. Hahn, 307 F.3d 815, 831 (9th Cir. 2002) (upholding district court's decision to reject the "drastic" remedy urged by plaintiffs and defer to agency expertise in adopting interim remedy crafted by the agency); see also Marsh v. Or. Natural Res. Council, 490 U.S. 360, 378 (1989) ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts.").  Monsanto does not modify existing precedent supporting the remedy Defendants are proposing.[1]/

Plaintiffs claim that Monsanto "held, or strongly implied" that the district court had appropriately declined to adopt the remedy proposed by APHIS and that the way for APHIS to install an interim regulatory scheme would be to conduct a regulatory process.  Plf. Supp. at 3;

---

[1]/   Monsanto also does not address the propriety of Federal Defendants' requested alternative relief of staying vacatur to avoid undue hardship to sugar growers, processors, and consumers.  The authority of a court to exercise its equitable discretion to stay its vacatur is well established.  See Def. Reply at 17-18.  Accordingly, Plaintiffs' assertion that Monsanto suggests that a stay would be improper is unfounded.  See Plf. Supp. at 6-7.

1  see also id. at 14-15.  While the Court certainly held that APHIS must be provided the

2  opportunity to partially deregulate even when the Court decides to vacate the agency's

3  determination, the decision does not foreclose the ability of this Court to withhold complete

4  vacatur and instead order a partial vacatur imposing the conditions suggested by APHIS while an

5  EIS is being prepared.

6       For their argument, Plaintiffs seize upon the first sentence of the following passage from

7  the Court's opinion:

8           The District Court may well have acted within its discretion in
            refusing to craft a judicial remedy that would have *authorized* the
9           continued planting and harvesting of RRA while the EIS is being
            prepared. It does not follow, however, that the District Court was
10          within its right in *enjoining* APHIS from allowing such planting
            and harvesting pursuant to the authority vested in the agency by
11          law.

12  Id. at *13 (emphasis in original).  But this statement does not support Plaintiffs' argument.  The

13  quoted provision merely recognizes that the district court in Monsanto had discretion in

14  fashioning a remedy and that it may have acted within that discretion by refusing to adopt the

15  type of conditions suggested by APHIS in that case.  But the passage does not support the

16  proposition that adopting those conditions would have been improper.  That issue simply was not

17  addressed in Monsanto.

18       **B.**    ***Monsanto* Confirms that Injunctive Relief in Addition to Complete Vacatur
19              Would Be Inappropriate in this Case**

20       The Monsanto decision makes clear that, unless a plaintiff can meet the four-factor test

21  for obtaining the extraordinary remedy of an injunction, injunctive relief in addition to complete

22  vacatur is inappropriate.  See Monsanto, 2010 WL 2471057 at *16.  Where a court vacates an

23  agency's determination, in order to grant an injunction in addition to the vacatur, it must

24  separately find that the four factors justifying injunctive relief are met in the vacated scenario.

25  Id.  Thus, in Monsanto, the Court found that additional injunctive relief was not warranted

26  because the vacatur, by its nature, prohibited the very activity sought to be enjoined by the

27  private respondents.  Id.  Similarly, in this case, if APHIS's determination regarding RRSB were

28  completely vacated, that would effectively prohibit the planting, growing, and harvesting of

1   RRSB in the absence of APHIS approval and therefore would provide Plaintiffs the relief they

2   are seeking.  Monsanto thus confirms Defendants' position that the Court may not both

3   completely vacate APHIS's determination *and* impose an injunction on the planting, growing,

4   and harvesting of RRSB.  See Def. Opp. at 1.

5       Plaintiffs argue that their requested relief falls outside of the relief prohibited by

6   Monsanto because they are not requesting that the Court bar APHIS from partially deregulating

7   RRSB.  See Plf. Supp. at 1; see also Plaintiffs' Opposition and Reply in Support of Motion for

8   Permanent Relief ("Plf. Reply") (Dkt. No. 413) at 1 n.2.  Plaintiffs' proposed order, however,

9   would enjoin "Intervenors and all others acting in concert with them or under their control . . .

10  from further planting of RRSB or RRSB seed crop."  Id. at 3, ¶ 5.   See Plf. Proposed Order

11  Granting Plaintiffs' Motion for Permanent Relief (Dkt. No. 413-1). Just as in Monsanto, this

12  injunction is not warranted.  As argued earlier, vacatur itself is not warranted in this case, but

13  certainly if this Court were to vacate APHIS's determination, Plaintiffs would neither need nor

14  be entitled to any additional injunctive relief.[2]/  See Monsanto, 2010 WL 2471057 at *16.

15      Plaintiffs also contend that an injunction is necessary because a "vacatur-only remedy"

16  cannot be enforced.  Plf. Supp. at 5.  In making this assertion, Plaintiffs take out of context a

17  statement in the First Declaration of Cindy Smith ¶ 18 (Dkt. No. 277).  In her declaration, Ms.

18  Smith discussed APHIS's enforcement constraints as it pertains to monitoring and inspecting the

19  1.4 million acres of RRSB root crop that are currently in the ground.  Id.  This statement was

20  made in response to Plaintiffs' demand for a far-reaching preliminary injunction against "further

21  planting, cultivation, processing, or other use of Roundup Ready sugar beets or sugar beet seeds,

22  including the flowering of any sugar beet seed crop."  Plaintiffs' Memorandum in Support of

23  Motion for Preliminary Injunction at 1 (Dkt. No. 194-1).  However, the permanent injunction

24

25  _____

26  [2]/    Furthermore, Plaintiffs seek an order declaring that RRSB "are once again REGULATED
    ARTICLES pursuant to the Plant Protection Act."  Plf. Proposed Order at 3, ¶ 3.  This provision
27  would be redundant of any vacatur but, if the court entered a vacatur and retained the provision, it
    should be modified to make clear that APHIS may partially deregulate RRSB on remand consistent
28  with Monsanto.

1   Plaintiffs now seek would not require that RRSB planted before the date of the Court's Order be

2   considered a regulated article.  Plf. Proposed Order at 3, ¶ 3.  Since Plaintiffs are no longer

3   asking for RRSB that is currently in the ground to be regulated, the enforcement issues described

4   by Ms. Smith in her first declaration are no longer relevant.  Moreover, Ms. Smith's statement

5   related to the RRSB root crop, not the RRSB seed crop which is planted in a concentrated area of

6   3,000 to 5,000 acres in the Willamette Valley.  AR 634.  Her statement also did not consider the

7   use of resources beyond those of APHIS, such as the use of third party auditing.  Additionally,

8   Ms. Smith's statement was made in the context of the current regulatory scheme under the Part

9   340 regulations, which could be revised in the future, as discussed further below.

10          **C.**     ***Monsanto*** **Does Not Support Plaintiffs' Arguments Concerning Injury and**
                    **the Extent of Injunctive Relief**

11

12          Contrary to Plaintiffs' assertions, Monsanto does not support their view that injunctive

13   relief should be broader than the violations found by the Court.  See Plf. Supp. at 10.  Indeed, the

14   Supreme Court's opinion suggests that any remedy should be narrowly tailored to address the

15   violations found and any potential irreparable harm demonstrated by Plaintiffs:

16              It is hard to see how respondents could show that such a limited
                deregulation would cause them likely irreparable injury.
17              (Respondents in this case do not represent a class, so they could
                not seek to enjoin such an order on the ground that it might cause
18              harm to other parties.").

19   Monsanto, 2010 WL 2471057 at *15.

20          In any case, it is well-established that the Court should fashion a remedy based only on

21   the violations found.  See Friends of the Earth v. Laidlaw Envt'l Servs., 528 U.S. 167, 193

22   (2000) (Courts should ensure "the framing of relief no broader than required by the precise

23   facts."); Califano v. Yamasaki, 442 U.S. 682, 702 (1979) ("[T]he scope of injunctive relief is

24   dictated by the extent of the violation established."); Orantes-Hernandez v. Thornburgh, 919

25   F.2d 549, 558 (9th Cir. 1990) ("[A]n injunction must be narrowly tailored to give only the relief

26   to which plaintiffs are entitled.").

27          Furthermore, contrary to Plaintiffs' claims, the Court did not address the issue of whether

28   potential harm to particular plants, as opposed to harm to a plant species, could give rise to a

1   finding of irreparable harm.  <u>See</u> Plf. Reply at 12-13.  Plaintiffs' claim that the Supreme Court

2   addressed Defendants' legal argument regarding species-level harm and "expressly rejected" it

3   finds no basis in the Supreme Court's opinion.  <u>See</u> <u>id.</u> at 13.  The fact that the Supreme Court

4   chose not to address a particular issue cannot be construed as an endorsement of the private

5   respondents' position in that case.

6       Finally, the <u>Monsanto</u> Court's statements about whether the plaintiffs' alleged injuries

7   were sufficient to meet the injury-in-fact standard to establish constitutional standing cannot be

8   relied on by Plaintiffs in this case to argue that they have shown irreparable injury and

9   entitlement to injunctive relief.  <u>See</u> <u>Monsanto</u>, 2010 WL 2471057 at *10; <u>id.</u> at *8 n.1

10  (recognizing that "[t]he question of whether petitioners are entitled to the relief that they seek

11  goes to the merits, not to standing").

12      **D.**    ***Monsanto*** **Did Not Address Whether an Evidentiary Hearing Is Required**

13      As Plaintiffs acknowledge, the <u>Monsanto</u> Court declined to address whether an

14  evidentiary hearing is required prior the issuance of an injunction.  Plf. Supp. at 12 (citing

15  <u>Monsanto</u>, 2010 WL 2471057 at *17).  The Court, in its discretion, remains free to hold such a

16  hearing.  In this case, Federal Defendants have indicated that we would support Intervenors'

17  request for an evidentiary hearing only as to specific issues that are beyond the scope of the

18  agency's knowledge or expertise.  Def. Reply at 18-19 (Dkt No. 541).  Contrary to Plaintiffs'

19  assertions, our position here is not inconsistent with Government's Supreme Court briefs in

20  <u>Monsanto</u>, which addressed the separate issue of whether Intervenors would have a *right* to an

21  evidentiary hearing prior to the entry of injunctive relief and not whether such an evidentiary

22  hearing might be appropriate in the context of a particular case.  <u>See</u> Plf. Supp. at 12 n.8.

23  **III.   APHIS COULD TAKE SEVERAL REGULATORY ACTIONS ON REMAND IF
         THE COURT COMPLETELY VACATES AND DOES NOT WITHHOLD OR
24       STAY VACATUR**

25      If the Court completely vacates APHIS's determination of nonregulated status for RRSB,

26  which would require RRSB to be regulated under the PPA, APHIS could pursue several

27

28

1   administrative actions in the interim while it prepares its EIS.  <u>See</u> Fourth Smith Decl. ¶ 5.[3]/  The

2   <u>Monsanto</u> Court's sweeping statement that "we do know that the vacatur of APHIS's

3   deregulation decision means that virtually no [Roundup Ready alfalfa] can be grown or sold until

4   such time as a new deregulation decision is in place," <u>Monsanto</u>, 2010 WL 2471057 at *15,

5   appears to overlook certain aspects of APHIS's authority under the PPA.

6         First, vacatur would not affect APHIS's ability to regulate RRSB under the existing

7   permitting scheme set forth in 7 C.F.R. Part 340.  Indeed, earlier in its decision, the Supreme

8   Court recognized that there was no injunction against "continued planting of [Roundup Ready

9   alfalfa] as a regulated article under permit from APHIS."  <u>Monsanto</u>, 2010 WL 2471057, at *14.

10  Neither <u>Monsanto</u> nor any ruling in this action has altered APHIS's authority to permit the

11  movement and release into the environment of a regulated article under the Part 340 regulations.

12

13        An immediate vacatur of APHIS's determination of nonregulated status would make

14  imminent the task of regulating the RRSB seed crop planting that will have already begun before

15  the Court's August 13, 2010 hearing.  Fourth Smith Decl. ¶¶ 9-10.  APHIS could use the existing

16  permitting scheme under 7 C.F.R. Part 340 in connection with the RRSB seed crop, which

17  covers only 3,000-5,000 acres in the Willamette Valley.  AR 634; Fourth Smith Decl. ¶ 11.  In

18  the past, APHIS has issued permits under the Part 340 regulations that are of a comparable, or

19  even larger, geographic size.  <u>See</u> Fourth Smith Decl. ¶ 7 (describing APHIS's issuance of

20  permits for field trials as large as 20,000 acres).  APHIS would employ its own resources or use

21  qualified independent third party inspections and auditing in connection with any permits to

22  ─────────────────────

23  [3]/     Federal Defendants are aware that the Court previously ordered that the parties were not to
    submit "any supplemental brief or evidence" following the reply briefs submitted by Federal
24  Defendants and Intervenor-Defendants on June 18, 2010.  Order of June 10, 2010 (Dkt. No. 476).
    Subsequently, however, the Court ordered the parties to submit additional briefing regarding the
25  <u>Monsanto</u> case and asked the parties to specifically address the effect of an immediate vacatur of
    APHIS's determination.  <u>See</u> Orders of June 22, 2010 (Dkt. No. 523) and June 24, 2010 (Dkt. No.
26  529).  Federal Defendants submit the Fourth Declaration of Cindy Smith solely to address the
    Court's question regarding the effect of a potential vacatur and not to address any evidentiary issues
27  that were previously briefed to the Court.

28

1   ensure compliance with permit conditions.  Id.  If APHIS were to use its existing permitting

2   authority in connection with the RRSB seed crop, the only permits APHIS might be able to issue

3   in time for any of the RRSB seed crop planting, which begins as early as July 2010, would be

4   permits that allowed planting but did not allow flowering, which would begin in May 2011.  Id. ¶

5   11.  APHIS has considerable experience with the issuance of permits that allow regulated articles

6   to be planted but do not allow them to flower.  Id.  APHIS would not allow any flowering of the

7   RRSB seed crop until it had completed an Environmental Assessment, which would be expected

8   by March 1, 2011.  Id.  Thus, by the spring of 2011, APHIS could be in a position to authorize

9   the flowering of the RRSB seed crop by issuing new permits or amending the permits that had

10  allowed only planting.

11          Second, APHIS could amend its Part 340 regulations.[4]/  The PPA provides APHIS with

12  authority to issue a general permit, 7 U.S.C. § 7711(a), and also provides APHIS with authority

13  to issue regulations to allow the movement of specified regulated articles without further

14  restrictions if the Secretary finds that a permit is not necessary.  7 U.S.C. § 7711(c)(1).  Thus, it

15  would be permissible under the PPA for APHIS to amend its Part 340 regulations in a way that

16  would allow the planting of RRSB.  If APHIS were to revise the Part 340 regulations after notice

17  and comment, APHIS would conduct NEPA analysis prior to taking any regulatory action

18  regarding RRSB that the revised regulations might allow.  Fourth Smith Decl. ¶ 5.

19          Third, because the PPA provides the Secretary the authority to issue such orders and

20  regulations as the Secretary considers necessary to carry out the PPA, 7 U.S.C. § 7754, APHIS

21  could issue an administrative order that would impose appropriate restrictions and prohibitions

22  on any 2010-2011 RRSB seed crop already planted as of the date of a vacatur and on any future

23  planting of RRSB, after preparing appropriate NEPA analysis and documentation.  APHIS is

24  evaluating how its PPA authority to issue an administrative order might be used in the RRSB

25  context, and what NEPA analysis would be appropriate. Fourth Smith Decl. ¶¶ 5, 11.

26

27  [4]/     In 2008, APHIS released a proposed revision to the Part 340 regulations and sought public
    comment. 73 Fed. Reg. 60008 (Oct. 9, 2008).  APHIS is still reviewing the comments received and
28  has not yet made a final decision regarding the revision of the Part 340 regulations.

1    Lastly, if the Court vacated and remanded and Intervenors submitted a new petition or a

2    supplement or amendment to a previous petition for a determination of nonregulated status of

3    RRSB, APHIS could consider granting that petition in whole or in part after conducting the

4    requisite NEPA analysis.  Monsanto clearly indicates that this type of interim administrative

5    action would be permissible.  2010 WL 2471057 at *14 (finding that the district court's

6    injunction that "barred the agency from pursuing *any* deregulation – no matter how limited" was

7    improper); id. at *15 ("a partial deregulation need not cause respondents any injury at all, much

8    less irreparable injury; if the scope of the partial deregulation is sufficiently limited, the risk of

9    gene flow to their crops could be virtually nonexistent.").  The NEPA analysis APHIS would

10   prepare in connection with such a petition could take at least until March 1, 2011 to complete.

11   Fourth Smith Decl. ¶ 13.

12       In sum, if the Court were to vacate completely and remand, several potential courses of

13   action remain open to APHIS, but none of these could be fully implemented in time for the

14   RRSB seed crop planting that will have begun by the time of the Court's August 13, 2010

15   hearing.  The NEPA analysis APHIS would need to conduct for the courses of action it may take

16   in the interim while it prepares an EIS would, at a minimum, take several months.  Thus, as

17   Defendants explained in our prior remedy briefing, Def. Opp. at 14-15; Defs. Reply at 17-18, if

18   the Court is inclined to completely vacate APHIS's determination, the Court should in its

19   discretion stay the vacatur until at least March 1, 2011 to allow APHIS time to prepare its NEPA

20   analysis and implement appropriate interim regulatory measures.  Second Smith Decl. ¶¶ 46-48;

21   Third Smith Decl. ¶ 6.  A stay of vacatur until March 1, 2011, would avoid disruptive effects to

22   the U.S. sugar markets and sugar beet industry, while posing no risks of cross-pollination

23   between RRSB and non-genetically engineered *Beta* crops.  Third Smith Decl. ¶¶ 4, 7.

24       Respectfully submitted this 15th day of July, 2010.

25                                    IGNACIA S. MORENO
                                      Assistant Attorney General
26
27                                    /s/    Beverly F. Li
                                      BEVERLY F. LI
28                                    LUTHER L. HAJEK

Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel.: (202) 353-9213 (Li)/ (202) 305-0492 (Hajek)
Facsimile: (202) 305-0506
Beverly.Li@usdoj.gov
Luke.Hajek@usdoj.gov

TONY WEST
Assistant Attorney General
JOHN R. GRIFFITHS
Assistant Director, Federal Programs Branch
JOHN R. COLEMAN (Va. Bar # 70908)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8460
Email: John.Coleman3@usdoj.gov

Attorneys for Federal Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2010, I electronically filed the foregoing (1) FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF ON PERMANENT INJUNCTIVE RELIEF, AND (2) FOURTH DECLARATION OF CINDY SMITH with the Clerk of Court using the CM/ECF system, which will automatically send email notification to the following attorneys of record:

Paul H. Achitoff
Gregory C. Loarie
Paige Tomaselli
Kateryna Rakowsky
George Kimbrell

Attorneys for Plaintiffs

Philip J. Perry
Christopher H. Marraro
Gilbert S. Keteltas
Holly J. Tate
Janice M. Schneider
John F. Bruce
Rachel G. Lattimore
David J. Lazerwitz
Nancy Bryson
Harry Zirlin
Walter Edmiston
Joanne Lichtman
Daniel Bukovac

Attorneys for Intervenor-Defendants

**Served by First Class Mail:**

J. Thomas Carrato
Monsanto Company
Mail Zone EINH
800 N. Lindbergh Blvd.
St. Louis, MO 63167-0001

Stanley H. Abramson
1050 Connecticut Avenue NW
Washington, DC 20036

Attorneys for Intervenor-Defendants

/s/   *Beverly F. Li*
Beverly F. Li
Counsel for Federal Defendants