LATHAM & WATKINS LLP
    Holly J. Tate (Bar No. 237561)
    holly.tate@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-2562
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

LATHAM & WATKINS LLP
    Philip J. Perry (Bar No. 148696)
    philip.perry@lw.com
    Janice M. Schneider (DC Bar No. 472037) (*pro
    hac vice* granted)
    janice.schneider@lw.com
555 11th Street, N.W., Suite 1000
Washington, D.C.  20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

HOWREY LLP
    Gilbert S. Keteltas (DC Bar No. 421236) (*pro hac
    vice* granted)
    keteltasg@howrey.com
    John F. Bruce (DC Bar No. 1578) (*pro hac vice*
    granted)
    brucej@howrey.com
    Christopher H. Marraro (DC Bar No. 395152) (*pro
    hac vice* granted)
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Intervenor-Defendants American Sugarbeet Growers
Association, et al.

[Complete list of Parties on signature page]

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| Center for Food Safety, *et al.*,<br><br>           Plaintiffs,<br><br>       v.<br><br>Thomas J. Vilsack, *et al.*,<br><br>          Defendants. | CASE NO. C-08-0484 JSW<br><br>**INTERVENOR-DEFENDANTS'<br>SUPPLEMENTAL BRIEF IN OPPOSITION<br>TO PLAINTIFFS' MOTION FOR<br>PERMANENT INJUNCTION**<br><br>**(Honorable Jeffrey S. White)**<br><br>Date:  August 13, 2010<br>Time:  9:00 a.m.<br>Place:  Courtroom 11<br>**Trial Date:  None Set** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF ARGUMENT ............................................................................................... iv

BACKGROUND ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.  A COURT MAY NOT PREEMPTIVELY IMPAIR OR LIMIT A
    FEDERAL AGENCY'S AUTHORITY TO ENTER INTERIM
    MEASURES FOLLOWING A NEPA VIOLATION. ....................................... 2

II.  THERE ARE NO SPECIAL RULES FAVORING INJUNCTIVE
     RELIEF IN NEPA REMEDIES PROCEEDINGS. ........................................... 4

III.  IMMEDIATE VACATUR IS NOT APPROPRIATE WHEN IT WOULD
      BE INEQUITABLE OR HAVE "DISRUPTIVE CONSEQUENCES." ............ 5

IV.  NO INJUNCTION BANNING RRSB PLANTING IS AVAILABLE. ............... 8

     A.  Plaintiffs Are Not Entitled To An Injunction To Ensure The Law Is
         Enforced. ................................................................................................ 8

     B.  The Court May Order APHIS's Proposed Interim Measures
         Pending Agency Action. ...................................................................... 10

V.  LIKEWISE, PLAINTIFFS LACK STANDING TO SEEK THEIR
    PROPOSED NATIONWIDE INJUNCTIVE RELIEF. ................................... 12

VI.  AN EVIDENTIARY HEARING IS REQUIRED TO IMPOSE
     PLAINTIFFS' PROPOSED INJUNCTIVE RELIEF. ..................................... 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                                       **Page(s)**

*Amoco Production Co. v. Village of Gambell,*
    480 U.S. 531 (1987)........................................................................................9

*Charlton v. Estate of Charlton,*
    841 F.2d 988 (9th Cir. 1988) .........................................................................15

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006)......................................................................................12

*eBay, Inc. v. MercExchange, L.L.C.,*
    545 U.S. 388 (2006)........................................................................................5

*Geertson Seed Farms v. Johanns,*
    570 F.3d 1130 (9th Cir. 2009) .........................................................................2

*Heckler v. Chaney,*
    470 U.S. 821 (1985)......................................................................................10

*Idaho Farm Bureau Federation v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ...........................................................................6

*Idaho Watersheds Project v. Hahn,*
    307 F.3d 815 (9th Cir. 2002) ...................................................................2, 15

*In re Core Communications, Inc.,*
    531 F.3d 849 (D.C. Cir. 2008) .........................................................................6

*Lewis v. Casey,*
    518 U.S. 343 (1996).................................................................................5, 13

*Metropolitan Edison Co. v. People Against Nuclear Energy,*
    460 U.S. 766 (1983)......................................................................................13

*Monsanto Co. v. Geertson Seed Farms,*
    No. 09-475, --- S. Ct. ---, 2010 WL 2471057 (Mar. 2, 2010)................... *passim*

*National Parks & Conservation Association v. Babbitt,*
    241 F.3d 722 (9th Cir. 2001) ...........................................................................2

*Ohio Forestry Association v. Sierra Club,*
    523 U.S. 726 (1998)........................................................................................9

*Sugar Cane Growers Cooperative of Florida v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) ...........................................................................6

*Summers v. Earth Island Institute.,*
    129 S. Ct. 1142 (2009)..............................................................................13, 14

*Texas v. United States,*
    523 U.S. 296 (1998)........................................................................................9

Page(s)

*United States v. Shabani,*
    513 U.S. 10 (1994)................................................................5, 11

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982)................................................................10

*Winter v. NRDC, Inc.,*
    129 S. Ct. 365 (2008).............................................................5, 9, 12

**STATUTES AND REGULATIONS**

7 U.S.C. §§ 7701 *et seq*.................................................................10

7 U.S.C. §§ 7731-36.......................................................................10

40 C.F.R. pt. 1500...........................................................................3

40 C.F.R. § 1506.1(a)......................................................................3

40 C.F.R. § 1506.11.........................................................................3

### **SUMMARY OF ARGUMENT**

The Supreme Court's recent decision, *Monsanto Co. v. Geertson Seed Farms*, No. 09-475, -- S. Ct. --, 2010 WL 2471057 (2010) ("*Geertson*"), speaks directly to the issues in this case and clarifies the task before this Court.  Following *Geertson*, five key principles govern this case:

1.  Even when a court determines that a federal agency has violated NEPA, it may not enter relief preemptively prohibiting or limiting that agency's authority to implement interim measures (here "partial deregulation") pending completion of an EIS.  *Id.* at *14-15.  On remand, APHIS must be free to fashion measures consistent with *Geertson* that allow continued planting of RRSB subject to mandatory stewardship conditions.  *Id.*

2.  Injunctive relief is a "drastic and extraordinary" remedy.  *Id.* at *16.  NEPA cannot justify a "thumb on the scale" or a presumption in favor of injunctive relief.  *Id.* at *12.  Instead, plaintiffs bear the burden of establishing each of the four traditional factors, including a likelihood of irreparable injury to specific plaintiffs—not to the environment generally or to non-parties.  *Id.*  There are no shortcuts to an injunction.

3.  While plaintiffs urge immediate vacatur, they do not acknowledge the applicable standard.  Vacatur is an equitable remedy available only when it would not cause inequitable effects or "disruptive consequences."   An immediate vacatur here would threaten massive disruption and significant harm.

4.  Entering plaintiffs' proposed ban on RRSB cultivation would be error.  If this Court vacates, plaintiffs' proposed injunction cannot be justified.  If this Court remands without vacatur or delays the effective date of a vacatur to permit the Government to implement interim action, only the type of narrowly tailored relief discussed in *Geertson* and proposed here by APHIS would be appropriate—and then only for a limited period until APHIS takes further administrative action.

5.  While plaintiffs argue that *Geertson* establishes standing here, the Supreme Court reiterated principles that make much if not all of plaintiffs' proposed nationwide injunction unavailable; a plaintiff must establish standing "for each form of relief sought," and may not obtain injunctive relief by arguing an action "might cause harm to other parties."  *Id.* at *10, 15.

iv

1

## **BACKGROUND**

2      The *Geertson* litigation related to Roundup Ready alfalfa ("RRA") seed and hay crops

3 grown in more than 40 states across the U.S.  After USDA's Animal and Plant Health Inspection

4 Service ("APHIS") granted non-regulated status (commonly known as "deregulation"), RRA

5 was grown without any government-mandated restrictions or conditions.  In 2007, the district

6 court held that APHIS had not complied with NEPA in deregulating RRA.  Seeking to

7 "streamline" the remedies proceedings (*Geertson*, 2010 WL 2471057, at *13), the Government

8 asked the court to vacate the deregulation and replace it with an order that instituted a series of

9 Government-proposed mitigation measures, including isolation distances for seed crops and

10 other stewardship requirements intended to minimize any risk of gene flow pending completion

11 of its EIS.  Plaintiffs argued that the nature and purposes of NEPA required a ban on all planting

12 nationwide, and that injunctions are presumptively appropriate for all NEPA violations, absent

13 "unusual circumstances."  *See*, *e.g.*, Pls. Memo. in Supp. Mot. Final Relief at 3, *Geertson Seed*

14 *Farms v. Johanns*, No. C-06-1075, 2007 WL 1221903 (N.D. Cal. Mar. 2, 2007) ("The Ninth

15 Circuit applies a more liberal standard in NEPA cases," and "'NEPA claims give[] rise to more

16 liberal standards for granting an injunction.'" (citation omitted)).

17      As the Government requested, the district court vacated the deregulation decision.

18 (Because the Government had sought vacatur, the district court did not analyze the traditional

19 equitable factors for entering a vacatur.)  But the district court declined to implement the interim

20 measures that the Government proposed to replace the vacated deregulation determination.

21 Although the parties disputed the appropriate isolation distances for seed crops—APHIS

22 proposed up to a 3-mile requirement, and plaintiffs argued that 5 miles would be required—the

23 district court declined to tailor its injunction, concluding that "'fine-tune[d]'" mitigation

24 measures would be too "complicate[d]."  *Geertson*, 2010 WL 2471057, at *15 n.6 (quoting

25 district court).  Instead, the district court entered a prospective ban on all planting.  *Id.* at *6.

26 Further, in its Permanent Injunction Order, the district court prohibited APHIS from entering any

27 administrative interim measures allowing RRA planting with mitigation conditions:  "'Before

28 granting Monsanto's deregulation petition, *even in part*, the federal defendants shall prepare an

1   environmental impact statement.'"   *Id.* at *12 (quoting district court) (emphasis added by

2   Supreme Court).

3        The Ninth Circuit affirmed.  Citing its prior decisions in *Idaho Watersheds Project v.*

4   *Hahn*, 307 F.3d 815 (9th Cir. 2002), and *National Parks & Conservation Ass'n v. Babbitt*, 241

5   F.3d 722 (9th Cir. 2001), the Ninth Circuit explained that "[i]n the run of the mill NEPA case,"

6   307 F.3d at 833, an injunction is appropriate until the NEPA violation is cured and that, absent

7   "'unusual circumstances,'" a broad injunction will issue.  *Geertson Seed Farms v. Johanns*, 570

8   F.3d 1130, 1137 (9th Cir. 2009) (amended opinion) (quoting *Babbitt*, 241 F.3d at 737 n.18).  The

9   Supreme Court reversed and remanded in a 7-1 decision.

10                                   **ARGUMENT**

11        The Supreme Court in *Geertson* clarified what remedies are (and are not) available for a

12   NEPA violation in this context.   No court may preemptively prohibit an agency from

13   implementing "interim measures" (pending an EIS) under its administrative authority.   And

14   while a court should remand without vacatur or delay vacatur when equity requires, a court in

15   this context may not simultaneously enter both a vacatur and an injunction banning planting of

16   the crop.  Only the type of narrowly tailored injunctive relief discussed in *Geertson* could be

17   available.  *Geertson*, 2010 WL 2471057, at *15 & n.6.  In light of the *Geertson* decision, this

18   Court should deny plaintiffs' proposed relief and either (1) remand without vacatur; (2) delay the

19   entry of a vacatur until APHIS implements interim measures; or (3) decline to vacate in full and

20   enter APHIS's proposed interim measures pending further APHIS administrative action.

21   **I.    A COURT MAY NOT PREEMPTIVELY IMPAIR OR LIMIT A**
          **FEDERAL AGENCY'S AUTHORITY TO ENTER INTERIM MEASURES**
22        **FOLLOWING A NEPA VIOLATION.**

23        When a court determines that a federal agency has violated NEPA in this context, it may

24   not preemptively limit that agency's authority to implement administrative interim measures.

25   *Geertson*, 2010 WL 2471057, at *13-15 (holding that the district court was *not* "within its rights

26   in *enjoining* APHIS from allowing such planting and harvesting pursuant to the authority vested

27   in the agency by law").  If plaintiffs wish to challenge those interim measures, they can do so in

28   a separate suit after the agency implements them.  *Id.* at *15 ("[I]f and when APHIS pursues a

1  partial deregulation that arguably runs afoul of NEPA, respondents may file a new suit

2  challenging such action and seeking appropriate preliminary relief. ").

3          In their most recent brief, plaintiffs argue that they have always accepted these principles.

4  Pls. Supp. Br. at 1 (Dkt. #551) (arguing also that no "aspect of the decision undermine[s] any

5  argument Plaintiffs have made").  Yet plaintiffs' repeated citations to the *Geertson dissent* and

6  the language of both of their most recent proposed orders suggest the opposite.  *See id.* at 5, 6,

7  10, 15 (citing to Justice Stevens' dissent); Pls. Proposed Order at 1 (Dkt. #329) (imposing ban on

8  RRSB cultivation pending completion of EIS); Pls. Proposed Order at 3 ¶¶ 1-2, 5 (Dkt. #413-1)

9  (requiring that "[i]ntervenors and all others acting in concern with them or under their control are

10 enjoined from further planting of RRSB or RRSB seed crops").

11         Plaintiffs' most recent Proposed Order also seeks to limit how APHIS could proceed

12 administratively in implementing interim measures.  Pls. Proposed Order at 3 ¶¶ 5, 6 (Dkt.

13 #413-1).  But APHIS has broad authority and multiple procedural options for implementing

14 measures compliant with NEPA and applicable law, and a court may not prejudge how APHIS

15 intends to structure its administrative approach.  *See* 40 C.F.R. pt. 1500; *see also* 40 C.F.R.

16 §§ 1506.1(a), 1506.11; Brief for Federal Respondent Supp. Pet'rs, *Monsanto Co. v. Geertson*

17 *Seed Farms*, 2010 WL 740752, at *17-19 (Mar. 2, 2010); *Geertson*, 2010 WL 2471057, at *14,

18 17; *see also id.* at *9, 15 (citing "representation from the Solicitor General that APHIS may

19 impose conditions on the deregulation" under its existing authorities).  Indeed, the Supreme

20 Court in *Geertson* identified multiple options for an APHIS interim partial deregulation that

21 could eliminate "any injury at all, much less irreparable injury." *Id.* at *15.  This Court should

22 not limit APHIS's procedural or substantive options or issue an advisory opinion to the

23 Executive Branch on what these options are or should be.

24         In this case, the Government has already identified interim measures for RRSB that

25 closely parallel the Supreme Court's examples, and has submitted thorough supporting scientific

26 analysis in multiple declarations.  *See generally* Intervenors' Reply Memo. Supp. Opp'n Perm.

27 Inj. at 4-12 (Dkt. #488) ("Intv. Reply") & Supp. App'x A.  Even plaintiffs' own witness in this

28 case, Professor Carol Mallory-Smith—Assistant Head of the Oregon State University

Agriculture Department, a published authority on gene flow from genetically engineered crops and an expert on cultivation practices in the Willamette Valley—has recently concluded that the Government's proposed interim measures are appropriate:

- The Government's proposed interim measures are "an effective, practical and fair resolution of the competing interests before the court pending completion of an Environmental Impact Statement ('EIS')";

- The Government's proposed interim measures "will provide significant safeguards to protect *Beta* species seed producers while the EIS is being conducted"; and

- "Placing an injunction on the production of Roundup Ready sugarbeet seed places the hardship on only one group of *Beta* seed producers. This group of producers would sustain significant financial loss from such a ruling."

Mallory-Smith Decl. ¶¶ 4-7 (Dkt. #498). APHIS must be permitted the flexibility to implement these interim measures under its statutory and regulatory authorities.

## II.   THERE ARE NO SPECIAL RULES FAVORING INJUNCTIVE RELIEF IN NEPA REMEDIES PROCEEDINGS.

In each of plaintiffs' remedies briefs since the Case Management Conference—including their supplemental brief filed last week (Pls. Supp. Br. at 6 & n.2, 15)—plaintiffs have argued that NEPA violations present special circumstances that require a halt in planting. *See e.g.* Pls. Memo. Mot. For Prelim. Inj. at 10 (Dkt. #194) (arguing that "harm occurs whenever actions are allowed to proceed before the NEPA process is completed"); Pls. Perm Inj. Reply at 5 (Dkt. #413) (stressing that "NEPA's uniquely procedural context weighs even *more* heavily" in favor of such relief); Pls. Supp. Br. at 6 (arguing that vacatur *and* injunction are simultaneously required to avoid "undermining NEPA's purpose").[1]   But the Supreme Court in *Geertson* rejected that view and stated unequivocally that there is no special rule or "thumb on the scale" applicable to injunctive relief in NEPA cases. 2010 WL 2471057, at *12. Instead, plaintiffs bear the burden of demonstrating that each of the four traditional requirements for injunctive relief are met. *Id.* (citing *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 380-82 (2008)). Thus, a plaintiff seeking a permanent injunction to remedy a NEPA violation must establish:

---

[1] Pls. Prelim. Inj. Reply at 15-17 (Dkt. #283); Pls. Perm. Inj. Br. at 5-6 (Dkt. #329) (emphasizing "the public interest in enforcing Congress's intent in enacting NEPA"); *see also* Pls. Perm. Inj. Reply at 11 & n.10 (arguing that "continued planting will lead to substantive harms as a result of action taken without meaningful NEPA analysis" and that, for example, "anticompetitive impacts" of patents are "well within the Court's power to enjoin pending NEPA compliance").

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at *11 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 545 U.S. 388, 391 (2006), and citing *Winter*, 129 S. Ct. at 365).[2]   And any injunctive relief must be narrowly tailored to redress harms to specific plaintiffs in the case.  *Id.* at *15 & n.6; *Winter*, 129 S. Ct. at 374-75; *Lewis v. Casey*, 518 U.S. 343, 359-60 (1996) (collecting cases).   As the *Geertson* Court explained, the district court's nationwide ban on all new planting was admittedly overbroad and improper.  2010 WL 2471057, at *15 & n.6 (observing that the "District Court itself appears to have recognized that its broad injunction may not have been necessary to avert any injury to respondents").   Thus, NEPA cannot justify a blanket injunction untethered from specific likely irreparable harm to identified plaintiffs.  *Id.* at *15.

### III.   IMMEDIATE VACATUR IS NOT APPROPRIATE WHEN IT WOULD BE INEQUITABLE OR HAVE "DISRUPTIVE CONSEQUENCES."

The Supreme Court in *Geertson* expressly declined comment on whether the district court should have entered an immediate vacatur—rather than remanding without vacatur, or delaying the entry of a vacatur.  2010 WL 2471057, at *11 ("[W]e assume without deciding that the District Court acted lawfully in vacating the deregulation decision").[3]   As both the Ninth and D.C. Circuits have held, however, vacatur is not automatic.   Rather, as an equitable remedy, vacatur should not be entered when it would result in inequitable effects or "disruptive consequences."   *See* Intv. Reply at 17-19; Defs. Reply Memo. Supp. Opp'n Perm. Inj. at 11-12

---

[2] Plaintiffs improperly conflate the injury required to establish constitutional standing to sue and the harm necessary to obtain injunctive relief under the traditional equitable standards.   Pls. Supp. Br. at 13.   The *Geertson* Court's discussion that the threat of cross-pollination in alfalfa was injury sufficient to establish limited standing (2010 WL 2471057, at *10-11) in no way suggests that the potential for cross-pollination among sugarbeets and other *beta* crops constitutes the likely irreparable harm required under *Winter*.

[3] Plaintiffs assume that because the Supreme Court did not reach the lower court's vacatur of the deregulation of alfalfa, the complete and immediate vacatur they seek is warranted.   Pls. Supp. Br. at 5-6.   Plaintiffs are mistaken.   *E.g.*, *United States v. Shabani*, 513 U.S. 10, 16 (1994) ("'[Q]uestions which "merely lurk in the record" are not resolved, and no resolution of them may be inferred.'" (citation omitted)).

(Dkt. #479) ("Gov't Reply").  This test was not applied by the district court in *Geertson* because the Government had itself sought vacatur.  The Government opposes immediate vacatur in this case.

A remand without vacatur, or a delay in the effective date of a vacatur, is typically appropriate in circumstances where a procedural violation is identified after a regulatory action has already taken effect.  *See* Intv. Reply at 18; Gov't Reply at 11-12; *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405-06 (9th Cir. 1995) (leaving rule in place while agency "remedies its procedural error"); *see also Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97-98 (D.C. Cir. 2002) (remanding without vacatur where "[t]he egg has been scrambled").[4] Where, as here, the agency (USDA-APHIS) has the statutory authority to address the alleged violation on remand, remand without vacatur is appropriate to prevent "'the disruptive consequences of an interim change that may itself be changed.'"  *Sugar Cane Growers*, 289 F.3d at 98 (citation omitted).  As this Court has already held, this shift from the "status quo" of RRSB planting threatens "dramatic and wide-spread" harm.  Order at 5-7 (Dkt. #313); *see also* Intervenors Memo. Supp. Opp'n Perm. Inj. at 12-14 (Dkt. #358) ("Intv. Opp'n");  Defs. Memo. Supp. Opp'n Perm. Inj. at 6-7 (Dkt. #384) ("Gov't Opp'n").  This remains the case today.  Intv. Opp'n at 12-14; Gov't Opp'n at 6-7.

Here, absent agency administrative action, an immediate halt on RRSB cultivation would severely impact both the RRSB seed crop and root crop.[5]  *First*, harvest and processing of the 2010 root crop (planted this Spring) begin in August.[6]  An immediate vacatur would threaten

---

[4] The D.C. Circuit, for example, has delayed vacatur for six months to allow the FCC to promulgate a new rule—without requiring the agency to seek or meet the requirements for a stay. *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008).  Ironically, the concurring opinion cited by plaintiffs (at 2-3 of their reply brief (Dkt. #413)) makes this very point.  *Id.* at 862-63 (Griffith, J., concurring) ("I simply urge future panels to consider the alternatives to the open-ended remand without vacatur.") (collecting cases providing for delayed vacatur).

[5] The RRSB seed crop planted in August 2010 will be harvested in Fall 2011, sold to and planted by sugarbeet farmers in 2012, who will harvest the root crop in Fall 2012 to be processed into sugar and sold thereafter.

[6] Plaintiffs unsuccessfully sought preliminary injunctive relief to halt this planting.  Order at 1-2, 8 (Dkt. #313).

1  havoc and massive financial harm to thousands of sugarbeet growers and to the entire sugarbeet

2  processing industry.  Intv. Opp'n at 12-14.  Moreover, roughly half of the nation's sugar supply

3  would be in jeopardy.  Gov't Opp'n at 6-7.

4        *Second*, the RRSB seed crop planted in 2009 will be harvested beginning this August (for

5  root crop planting in 2011).  An immediate restriction (created by a vacatur) against harvesting

6  the RRSB seed crop or selling seed from that harvest would serve no purpose—the seed crop

7  flowered this past Spring (and this Court denied plaintiffs' preliminary injunction motion

8  intended to halt that flowering).  Harvest and sale of that seed crop for next Spring's root crop

9  poses no issues for red beet and chard seed growers in Oregon.  But a restriction on sales of that

10  seed crop would create a seed shortfall for the 2011 root crop.  Intv. Opp'n at 12-14.

11        *Third*, a ban on planting RRSB seed for the next seed crop (which plaintiffs acknowledge

12  is planted in the Willamette Valley in August) would also have far-reaching impacts on the 2012

13  root crop, including certain and substantial harm to the majority of sugar cooperatives, their

14  members, and the communities in which they operate.  *Id.*  In short, the seed that the growers

15  have approved for planting their 2012 root crops based on the careful and detailed multi-year

16  seed trials selection process would not be produced.  *See id.*; Gov't Opp'n at 6-7.

17        The immediate damage to sugarbeet growers and the industry caused by plaintiffs'

18  proposed relief could also substantially impair, if not effectively eliminate, the agency's

19  discretion to narrowly tailor a balanced administrative remedy in the first instance.  This would

20  be inconsistent with *Geertson*.  2010 WL 2471057, at *13-15.  Plaintiffs acknowledge that an

21  August decision would come down in the middle of intervenors' Fall seed planting season.  Pls.

22  Mot. Reinstate Hearing Date at 2 (Dkt. #524).  But in their supplemental briefing, plaintiffs have

23  not meaningfully addressed the impacts that an immediate and complete vacatur could cause by

24  suddenly rendering RRSB planting and cultivation illegal.  *See* Pls. Supp. Br. at 6-7.

25        A delayed vacatur, by contrast, would not cause the same harm to intervenors or the

26  public but would provide USDA-APHIS the limited time needed to take interim action and avoid

27  the market upheaval and other consequences of an immediate RRSB ban.  Plaintiffs contend that

28  "[t]he Court did not consider the appropriateness of delayed vacatur as Defendants urge here,

although it had no quarrel with immediate vacatur." *Id.* Yet this is misleading, as Judge Breyer implemented a vacatur at the Government's request in *Geertson* and did not apply the traditional equitable standard. And Judge Breyer explicitly allowed *new* planting even after the vacatur for a period of weeks, and permitted continued cultivation of perennial Roundup Ready alfalfa seed crops under certain conditions.[7] Preliminary Inj. Order, *Geertson Farms, Inc. v. Johanns*, No. C-06-1075, 2007 WL 776146, at *2-3 (N.D. Cal. Mar. 12, 2007).

## IV. NO INJUNCTION BANNING RRSB PLANTING IS AVAILABLE.

Here, as in *Geertson*, a complete vacatur would in and of itself result in a prohibition on planting RRSB, absent agency administrative action. *Geertson*, 2010 WL 2471057, at *15. As in *Geertson*, it would not be appropriate both to vacate and enter an injunction halting the cultivation of RRSB. *Id.* at *16 (recognizing that "no recourse to the additional and extraordinary relief of an injunction was warranted" and citing respondents' admission that "the mistake that was made by the District Court was in not appreciating that the vacatur did have the effect of independently prohibiting the growth and sale of almost all RRA" (alterations omitted)). Plaintiffs err in suggesting otherwise.

### A. Plaintiffs Are Not Entitled To An Injunction To Ensure The Law Is Enforced.

Plaintiffs' most recent brief seeks both a vacatur and an injunction banning planting, arguing that: (1) "RRSB are currently in use and without an injunction, some parts of the industry may continue to use RRSB illegally" and (2) Plaintiffs would like to "police" RRSB farmers' compliance by seeking judicial sanctions against any farmers they find are non-compliant. *See* Pls. Supp. Br. at 6. This request is misguided for at least six reasons.

*First*, a long line of cases holds that that federal courts lack jurisdiction to enjoin hypothetical future possible violations of the law. *See*, *e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (citation omitted); *Ohio*

---

[7] Approximately 200,000 acres of Roundup Ready alfalfa remain in the ground today. The useful lifespan of such crops is 4-6 years.

1    *Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998).

2    *Second*, plaintiffs have not even attempted to show that the traditional factors support

3    entering an injunction on top of a vacatur. *See Geertson*, 2010 WL 2471057, at *14-15; *Winter*,

4    129 S. Ct. at 374. Their hypothetical concern that some private parties might use RRSB in a way

5    that violates the PPA cannot justify injunctive relief, particularly without any showing of any

6    *likely* injury in any context to any plaintiff (much less any other person). *Winter*, 129 S. Ct. at

7    374-75. Essentially, plaintiffs are again improperly asking this Court to presume irreparable

8    harm, as they did in the *Geertson* litigation. 2010 WL 2471057, at *12*; see also Amoco Prod.*

9    *Co. v. Vill. of Gambell*, 480 U.S. 531, 544-45 (1987).[8] Nor do plaintiffs make any effort to

10   balance the equities. A broad injunction on planting the RRSB seed crop in 2010 impacts seed

11   supplies in 2012, the viability of sugarbeet growers and processors, and the livelihoods of

12   thousands of family farmers. *See supra* at 6-7.

13   *Third*, *Geertson* forbids a court from preemptively finding that whatever action APHIS

14   might take following a vacatur to enforce the law will be insufficient. *See* 2010 WL 2471057, at

15   *13-14 (refusing to permit a court to prejudge a federal agency action not yet taken).[9]

16   *Fourth*, plaintiffs' request for an injunction amounts to an improper attempt to preempt

17   APHIS's enforcement discretion by seeking contempt power over the nation's farmers who they

18   cynically believe will violate the law. There is no indication in the PPA or NEPA that Congress

19   intended to give private parties an ability to seek civil or criminal sanctions for violations of

20   NEPA in the PPA context, and plaintiffs have not even attempted to show that the agency has

21   abused its enforcement discretion in its actions to date. *See, e.g.*, *Heckler v. Chaney*, 470 U.S.

22

---

23   [8]  *See* Intv. Opp'n at 6-14; Intv. Reply at 4-15.

24   [9]  Here, as elsewhere in their Supplemental Brief (at 5, 10, 15), plaintiffs rely on Justice Stevens'
     dissent in a 7-1 decision as if it were the majority opinion. Pls. Supp. Br. at 6 (quoting 2010 WL

25   2471057, at *22 n.18, 24 n.12 (Stevens, J., dissenting). This only reinforces that the *Geertson*
     Court did not recognize plaintiffs' enforcement concern as a viable basis for injunctive relief.

26   Moreover, APHIS has already indicated its intent in its Proposed Order in this Court to
     implement a third party audit system to ensure compliance with interim measures, once

27   implemented. Such audit requirements are common and fundamental components of many
     federal and state regulatory systems and cannot be presumed to be insufficient. Thus, plaintiffs'

28   apparent concern regarding APHIS's limited resources for inspections and enforcement are not
     necessary.

Case Number:  C 08-0484 JSW
INTERVENORS' SUPPLEMENTAL BRIEF

821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."); 7 U.S.C. §§ 7701 *et seq.* (PPA provides no private cause of action); 7 U.S.C. §§ 7731-36 (PPA providing for public enforcement through USDA-initiated actions).

*Fifth*, immediate and future damage caused to sugarbeet growers and the industry by such broad injunctive relief could substantially impair, if not effectively eliminate, the agency's discretion to narrowly tailor a balanced adminstrative remedy in the first instance. *See* Intv. Reply at 4-15. Again, this runs directly counter to *Geertson*. *See* 2010 WL 2471057, at *16-17.

*Finally*, as indicated above, plaintiffs ignore the fact that an injunction is an equitable remedy, and that this Court's obligation in equity is to "'balance[] the conveniences of the parties and possible injuries to them'" to arrive at a "'nice adjustment and reconciliation' between the [parties'] competing claims." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.'") (citation omitted). As indicated, the record here cannot support an inequitable and significantly harmful injunction banning planting. Intv. Opp'n at 7-14; Gov't Opp'n at 2-11.

**B.     The Court May Order APHIS's Proposed Interim Measures Pending Agency Action.**

If this Court determines that it will remand without vacatur or delay vacatur (as both Ninth and D.C. Circuit precedents permit), nothing in *Geertson* would prohibit this Court from entering the Government's proposed interim measures as temporary relief pending further administrative action by APHIS. *See Geertson*, 2010 WL 2471057, at *8 n.1 ("We need not decide whether the District Court had the authority to replace the vacated agency order with an injunction of its own making."). This is so because APHIS's proposed measures set out narrowly tailored relief that is consistent with—and would not impair—the interim measures APHIS would itself implement.[10] This is common sense: a court cannot be found to intrude upon an agency's prerogatives by *accepting* the agency's proposal. Thus, consistent with

---

[10] As indicated previously, intervenors have consented to the Government's proposed measures.

*Geertson*, this Court could enter the Government's proposed relief pending APHIS's entry of interim measures.

Plaintiffs disagree, focusing on the Supreme Court's statement in *Geertson* that it might not have been an abuse of discretion for the district court to decline to enter the agency's interim measures as a court order authorizing continued planting. 2010 WL 2471057, at *13. Of course, the fact that the Court did not decide that issue is not a holding in either way. *Shabani*, 513 U.S. at 16.[11] And plaintiffs ignore the very next sentences in the *Geertson* opinion:

> It does not follow, however, that the District Court was within its rights in *enjoining* APHIS from allowing such planting and harvesting pursuant to the authority vested in the agency by law. When the District Court entered its permanent injunction, APHIS had not yet exercised its authority to partially deregulate RRA. Until APHIS actually seeks to effect a partial deregulation, any judicial review of such a deregulation is premature.

2010 WL 2471057, at *13. Even if the court could properly have declined to enter the proposed measures in *Geertson* (and remanded to the agency to take such action), it need not decline here, where the sufficiency of APHIS's stewardship measures is clear. Unlike *Geertson*, there is no evidence in this case of any prior alleged gene flow (what plaintiffs termed "contamination") to plaintiffs' red beet or chard crops, or any evidence of any harm to any other crop, any party in this case, or any other person in the four years RRSB has been grown on a nationwide basis. Intv. Reply at 5-6. Likewise, unlike *Geertson*, the record includes a recently developed consensus organic standard—the Non-GMO Project Working Standard—demonstrating that low levels of gene flow are accepted by the organic community generally, and cannot be harm, irreparable or otherwise. *Id.* at 11-12 & n.10 (citing consensus market standard's tolerance for RRSB content); Gov't Reply at 5-6 (same); Ex. C to Phillips Decl. at 25, 34 (Dkt. #382) (providing that organic crops may be verified "non-GMO" despite presence of up to 0.25% biotech content in seed and 0.9% in food).

Moreover, the specific measures proposed by USDA-APHIS are nearly identical to the

---

[11] Throughout plaintiffs' Supplemental Brief, they argue that because the Supreme Court failed to reach certain issues, this Court should infer that the Supreme Court ruled against the Government or intervenors on those issues. *See, e.g.*, Pls. Supp. Br. at 1-2, 3, 6-7, 11-15. This bald assertion, of course, finds no support in the law. *See Shabani*, 513 U.S. at 16.

measures that the Supreme Court identified in *Geertson* as fashioned not to "cause [plaintiffs] any injury at all, much less irreparable injury" from gene flow.  2010 WL 2471057, at *15; *compare id.* (recommending planting zones, isolation distances and compliance efforts) *with* Gov't Proposed Order (Dkt. #384-1) ¶¶ 5(1) (proposing RRSB-free zone where majority of beet and chard seed are grown), 5(2) (setting a 4-mile isolation distance), 5(7) (instituting compliance audits).  Nothing in *Geertson* prevents this Court from entering the Government's proposed interim measures, as intervenors have consented to such measures, and the measures, in accord with *Winter*, 129 S. Ct. at 374-75, narrowly tailor relief consistent with actions APHIS would implement under its own authority.

## V.   LIKEWISE, PLAINTIFFS LACK STANDING TO SEEK THEIR PROPOSED NATIONWIDE INJUNCTIVE RELIEF.

*Geertson* also makes clear that plaintiffs seeking injunctive relief must themselves face irreparable injury absent the relief they seek.  2010 WL 2471057, at *10, 15.  *Geertson* does not establish that the plaintiffs have standing in this case to obtain nationwide injunctive relief.[12]

First, plaintiffs cannot establish standing or any injury to a plaintiff justifying an injunction as to the RRSB root crop grown in 10 states across the country.  *Geertson* emphasizes that a "'*plaintiff must demonstrate standing separately for each form of relief sought*,'" 2010 WL 2471057, at *10 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added)).  Likewise, *Geertson* clarifies that a non-class plaintiff cannot seek relief on behalf of non-parties.  2010 WL 2471057, at *15 (recognizing that *because plaintiffs "do not represent a class, ... they could not seek to enjoin such an order on the ground that it might cause harm to other parties"*) (emphasis added).  But none of plaintiffs' standing declarations identify any concrete harm from the RRSB root crop:  plaintiffs do not grow either RRSB or conventional sugarbeets; they do not use Roundup herbicides; they do not grow any crop that has ever been harmed by RRSB root crops or would ever face any tangible risk from RRSB root crops; they do

---

[12] *Geertson* addressed a crop grown throughout the U.S., with seed crops grown throughout multiple western states where conventional alfalfa is also grown.  *Geertson*, 2010 WL 2471057, at *6.  Here, by contrast, the vast majority of sugarbeet seed crops are grown in a single valley in Oregon, while the root crops (posing no risk of cross-pollination) are grown elsewhere.

1   not face any possible injury from the "competitive" antitrust concerns they raise (and have not

2   pled any antitrust claim).  *See* Dkt. #90-100 (plaintiffs' "standing" declarations).  While plaintiffs

3   allege that they prefer sugar not sourced from RRSB, they present no evidence that sugar from

4   RRSB differs in any chemical or other physical way from sugar from other sugarbeets, Gov't

5   Opp'n at 8 (citing Hoffman Decl. ¶¶ 38, 64 (Dkt. #275) and Burkam Dep. at 81:2-10), and

6   identify no harm from sugar produced since 2007.  And, in any event, plaintiffs have admitted

7   that cane sugar is widely available to satisfy their preferences.  *See id.* at 8-9.

8         In response, plaintiffs argue that *Geertson*'s requirement that an injunction be based on

9   harm to an identified plaintiff is not a "standing" principle but rather a principle governing the

10  availability of injunctive relief.  *See* Pls. Supp. Br. at 9-11.[13]  Either way, it bars plaintiffs from

11  seeking nationwide injunctive relief.  *See*, *e.g.*, *Lewis*, 518 U.S. at 359-60 (holding that "two

12  instances" of legal violations "were a patently inadequate basis for … imposition of systemwide

13  relief").  Similarly, the Supreme Court has unambiguously stated that NEPA does *not* provide a

14  "general opportunity to air their policy objections to proposed federal actions."  *Metro. Edison*

15  *Co. v. People Against Nuclear Energy*, 460 U.S. 766, 777 (1983).

16        Plaintiffs also argue that they are public interest organizations with many members who

17  could allege facts sufficient for standing purposes (Pls. Supp. Br. at 9-10 & n.5).  But the

18  Supreme Court specifically rejected that argument in *Summers v. Earth Island Institute*. 129 S.

19  Ct. 1142, 1151-52 (2009) (rejecting Sierra Club's contention "that some (unidentified) members

20  have planned to visit some (unidentified) small parcels … and will suffer (unidentified) concrete

21  harm").[14]  Plaintiffs' non-specific standing arguments thus squarely violate *Summers*.

22        Nor does *Geertson* establish plaintiffs' standing (or right to seek injunctive relief) even in

23

24  [13]  Plaintiffs admit that "the scope of injunctive relief is dictated by the extent of the violation

25  established."  Pls. Supp. Br. at 10 (quotation marks omitted).  Here, the NEPA violation focused
    on RRSB seed production in the Willamette Valley, not on other issues such as weed resistance

26  or antitrust concerns.  Order at 11, 13-14 (Dkt. #139).

27  [14]  The Court in *Summers* held also that neither "generalized harm to the … environment," nor the
    "deprivation of a procedural right *in vacuo*" is sufficient to create standing, and thus required

28  plaintiffs "to make specific allegations establishing that at least one identified member had
    suffered or would suffer harm."  129 S. Ct. at 1149-52.

Case Number: C 08-0484 JSW
INTERVENORS' SUPPLEMENTAL BRIEF

1   the Willamette Valley where RRSB seed crops are grown.  Plaintiffs' concern in this case is

2   about gene flow from RRSB to red beet (*i.e.* table beet) and chard seed crops, but (as plaintiffs'

3   expert has admitted) the vast majority of those fields are outside the Willamette Valley,[15] and

4   those in the Willamette Valley are generally grown at its northern and western margins.  Morton

5   Dep. at 149:24-150:20 (Ex. E to Turner Decl. (Dkt. #396-6)).  Unlike *Geertson*, there has been

6   no evidence of any gene flow here to the relevant crops—red beet or chard crops—and no

7   evidence of any prior harm to any crops or to any party or non-party from RRSB.  Intv. Opp'n at

8   7-11; Morton Dep. at 98:25-99:18.  Indeed, unlike in *Geertson*, the record in this case includes

9   the recently developed consensus organic industry standard (the Non-GMO Project Working

10   Standard) *allowing* traces of biotech gene flow in organic crops.  *See supra* at 11-12.  That

11   standard recommends isolation distances and permissible gene flow levels for food products and

12   seed.  *Id.*  Thus, there would not be "any injury at all, much less irreparable injury," even in the

13   unlikely event of limited gene flow to any organic red beet or chard crops.  *Geertson*, 2010 WL

14   2471057, at *15.[16]  Indeed, the only person affiliated with plaintiffs who they allege faces any

15   risk of gene flow in the Willamette Valley is Frank Morton, a board member of plaintiff Organic

16   Seed Alliance, and plaintiffs have recently acknowledged that Mr. Morton is not a plaintiff in

17   this case.[17]  If Mr. Morton is not a plaintiff, then there are no plaintiffs who have conducted

18   genetic tests or faced any risk or suffered any harm from RRSB gene flow.  Certainly no

19   injunction may issue to remedy the alleged harms of a non-plaintiff.

20

21

22   [15]  *See* Intv. Reply at 7 (citing Navazio Dep. at 77:12-82:25 (acknowledging that majority of red beet and chard crops are grown in Washington state or California)).

23   [16]  The negligible risk of gene flow is further minimized by the widespread use of "gene on the

24   female" seed production methods (which, plaintiffs admit, "'drastically reduce[]'" any potential for gene flow) and four-mile isolation distances between GE and non-GE *Beta* fields.  *See* Intv. Reply at 5-6 & n.5, 8-10.

25   [17]  Mr. Morton is the only person identified by plaintiffs who has conducted genetic tests of his

26   red beet and chard crops over the past four years (at a total cost of $700).  Plaintiffs argue that Mr. Morton's testing expense confers standing, even though Mr. Morton's tests demonstrated

27   zero "contamination."  Pls.' Supp. Br. at 7-8; *Geertson*, 2010 WL 2471057, at *10.  But plaintiffs have also recently taken the position that Mr. Morton *is not a plaintiff in this case*, in

28   order to avoid searching for and producing his documents on the tolerances for gene flow set by the Non-GMO Project Working Standard.

## VI.   AN EVIDENTIARY HEARING IS REQUIRED TO IMPOSE PLAINTIFFS' PROPOSED INJUNCTIVE RELIEF.

Although plaintiffs seem to acknowledge that "[g]enerally 'the entry or continuation of an injunction requires a hearing,'" *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988) (citation omitted), they continue to argue NEPA actions are special and do not require evidentiary hearings, citing *Hahn*, 307 F.3d at 831.  Pls. Supp. Br. at 12.  Yet *Geertson* expressly disavows the basis for the holding in *Hahn*, squarely rejecting the Ninth Circuit's prior notion that NEPA actions should be treated differently than other actions for injunctive relief, and holding that the Ninth Circuit "invert[ed] the proper mode of analysis" for injunctive relief. 2010 WL 2471057, at *11-12.[18]   In the wake of *Geertson* and *Winter*, the idea that NEPA environmental actions are special and should be handled differently than other actions is dead. *Charlton* remains the unquestioned Ninth Circuit authority on whether an evidentiary hearing is required, and it provides that "[o]nly when the facts are not in dispute, or when the adverse party has waived its right to a hearing" is the hearing requirement removed.[19]

Plaintiffs have opposed an evidentiary hearing, and the Court could remand without vacatur, delay vacatur or enter the Government's proposed measures without one.  But granting plaintiffs' proposed relief banning RRSB planting without an evidentiary hearing would be an error of law and an abuse of discretion.

### CONCLUSION

In light of the *Geertson* decision, this Court should deny plaintiffs' proposed relief and either (1) remand without vacatur; (2) delay the entry of a vacatur until APHIS implements interim measures; or (3) decline to vacate in full and enter APHIS's proposed interim measures pending further APHIS administrative action.

---

[18] Although plaintiffs rely on *Hahn*, that court accepted and entered the Government's proposed interim measures.

[19] No hearing is required to impose the interim measures the Government has proposed, as plaintiffs have opposed an evidentiary hearing and thus waived their right to seek such a hearing.

Case Number:  C 08-0484 JSW
INTERVENORS' SUPPLEMENTAL BRIEF

1    Dated: July 15, 2010                    Respectfully Submitted,

2                                            _____/s/  Holly J. Tate_____
3    PHILIP J. PERRY (CA Bar No. 148696)     HOLLY J. TATE (CA Bar No. 237561)
     JANICE M. SCHNEIDER (DC Bar No.         LATHAM & WATKINS LLP
4    472037) (*pro hac vice* granted)        505 Montgomery Street, Suite 1900
     LATHAM & WATKINS LLP                    San Francisco, California 94111-2562
5    555 11th Street, N.W., Suite 1000       Telephone: (415) 391-0600
     Washington, D.C. 20004                  Facsimile: (415) 395-8095
6    Telephone: (202) 637-2200               Email: holly.tate@lw.com
     Facsimile: (202) 637-2201
7    Email: phil.perry@lw.com
     Email: janice.schneider@lw.com
8

9    STANLEY H. ABRAMSON (DC Bar No. 217281)
     (*pro hac vice* granted)
10   RACHEL G. LATTIMORE (DC Bar No.450975)
     (*pro hac vice* granted)
11   ARENT FOX LLP
     1050 Connecticut Avenue, N.W.
12   Washington, D.C. 20036-5339
     Telephone: (202) 857-6000
13   Facsimile: (202) 857-6395
     Email: abramson.stanley@arentfox.com
14   Email: lattimore.rachel@arentfox.com

15                  Attorneys for Intervenor-Defendant Monsanto Company

16                                           _____/s/ Gilbert S. Keteltas_____
17   JOANNE LICHTMAN (Ca. Bar No. 137300)    GILBERT S. KETELTAS (DC Bar No.
     HOWREY LLP                              421236)
18   550 South Hope Street, Suite 1100       (*pro hac vice* granted)
     Los Angeles, California 90071-2627      JOHN F. BRUCE (DC Bar No. 1578) (*pro hac
19   Telephone: (213) 892-1800               vice* granted)
     Facsimile: (213) 892-2300               CHRISTOPHER H. MARRARO (DC Bar No.
20   Email: lichtmanj@howrey.com             395152) (*pro hac vice* granted)
                                             HOWREY LLP
21                                           1299 Pennsylvania Avenue, N.W.
                                             Washington, D.C. 20004-2402
22                                           Telephone: (202) 783-0800
                                             Facsimile: (202) 383-6610
23                                           Email: keteltasg@howrey.com
                                             Email: brucej@howrey.com
24                                           Email: marraroc@howrey.com

25          Attorneys for Intervenor-Defendants American Sugarbeet Growers Association, Ervin
        Schlemmer, Mark Wettstein, Duane Grant, John Snyder, Jr., United States Beet Sugar
26   Association, American Crystal Sugar Company, The Amalgamated Sugar Company LLC,
                                  Western Sugar Cooperative
27                             and Wyoming Sugar Company LLC

28

1

2 | DAVID J. LAZERWITZ (Cal. Bar. No. 221349 – admitted)

/s/ Nancy Bryson

NANCY BRYSON (DC Bar No. 913673) (*pro hac vice* granted)

3 | FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor

HOLLAND & HART LLP
975 F Street, N.W., Suite 900

4 | San Francisco, CA 94104
Telephone: (415) 954-4400

Washington, D.C.  20004
Telephone:  (202) 654-6921

5 | Facsimile: (415) 954-4480
Email: dlazerwitz@fbm.com

Facsimile:  (202) 747-6567
Email:  nbryson@hollandhart.com

6

Attorneys for Intervenor-Defendant Syngenta Seeds, Inc.

7

8 | DANIEL M. ABUHOFF (NY Bar No. 1227057) (*pro hac vice* granted)

/s/ Daniel Murphy

DANIEL MURPHY (Ca. Bar No. 141006)
W. ALLAN EDMISTON (Ca. Bar No.

9 | HARRY ZIRLIN (NY Bar No. 2315737) (*pro hac vice* granted)

228246)
LOEB & LOEB LLP

10 | DEBEVOISE & PLIMPTON LLP
919 Third Avenue

10100 Santa Monica Blvd., 22nd Floor
Los Angeles, California  90067

11 | New York, NY  10022
Telephone:  (212) 909-6000

Telephone:  (310) 282-2000
Facsimile:  (310) 282-2200

12 | Facsimile:  (212) 909-6836
Email:  dmabuhof@debevoise.com

Email:  dmurphy@loeb.com
Email:  aedmiston@loeb.com

13 | Email:  hzirlin@debevoise.com

14

Attorneys for Intervenor-Defendant Betaseed, Inc.

15

/s/ Daniel Bukovac

SARAH G. FLANAGAN (CA Bar No. 70845 –

DANIEL BUKOVAC (Mo. Bar No. 33456)

16 | admitted)
PILLSBURY WINTHROP SHAW PITTMAN

(*pro hac vice* granted)
STINSON MORRISON HECKER LLP

17 | LLP
50 Fremont Street

1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106

18 | P.O. Box 7880
San Francisco, CA 94120-7880

Telephone:  (816) 842-8600
Facsimile:  (816) 412-1051

19 | Telephone:  (415) 983-1000
Facsimile:  (415) 983-1200

Email:  dbukovac@stinson.com

20 | Email:  sarah.flanagan@pillsburylaw.com

21

Attorneys for Intervenor-Defendant SESVanderHave USA, Inc.

22

23

24

25

26

27

28

Case Number:  C 08-0484 JSW
INTERVENORS' SUPPLEMENTAL BRIEF