IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR FOOD SAFETY, et al. | |
| Plaintiffs, | No. C 08-00484 JSW |
| v. | |
| THOMAS J. VILSACK, et al. | **ORDER REGARDING REMEDIES** |
| Defendants. | |

Now before the Court is the motion regarding remedies filed by plaintiffs Center for Food Safety, Organic Seed Alliance, Sierra Club, and High Mowing Organic Seeds (collectively, "Plaintiffs"). Plaintiffs seek a vacatur of the agency decision to deregulate genetically engineered sugar beets and a permanent injunction. Having considered the parties' arguments and relevant legal authority, the Court hereby GRANTS Plaintiffs' request for a vacatur but DENIES Plaintiffs' motion for a permanent injunction.[1]

---

[1] The Court GRANTS Plaintiffs' motion to strike the declaration of Susan Henley Manning, Ph.D. on the grounds that she is not an expert in the field on which she testified and to the extent she is an expert in economics and industrial organization, she did not apply her expertise in her declaration. Defendant-Intervenors move to exclude the entire declarations submitted by John Fagan in support of Plaintiffs' motions for preliminary and permanent injunctions. However, Plaintiffs only cite to paragraphs 9, 11, and 13 of in his first declaration and paragraphs 4 through 15 in his second declaration. Therefore, the Court will only address the motion with respect to these cited paragraphs. Plaintiffs agree to strike the sentence in paragraph 13 of Fagan's first declaration that states "Willamette Valley seed producers currently have more than 50% of the world market for chard and table beet seed and 80% of the domestic market" and the portion of paragraph 13 that relies on this sentence to demonstrate harm. Therefore this portion of Fagan's first declaration is hereby stricken. The Court DENIES the remainder of Defendant-Intervenors' motion to exclude Fagan's declarations.

The Court GRANTS Defendant-Intervenors' request to file under seal the designated portions of the Declarations of Susan Henley Manning, Ph.D., Richard J. Sexton, Duane Grant, Kerry Bowen, Steve Fritz, Mark Anfinrud, and Bennett French in support of their

**BACKGROUND**

In September 2009, the Court ruled that the decision by the United States Department of Agriculture ("USDA") and its Animal and Plant Health Inspection Service ("APHIS") to deregulate a variety of genetically engineered sugar beets without preparing an environmental impact statement ("EIS") violated the National Environmental Policy Act, 42 U.S.C. §§ 4321-4335 ("NEPA"). On March 16, 2010, the Court denied Plaintiffs' motion for a preliminary injunction. However, the Court admonished the parties that they should not assume that the Court's decision to deny a preliminary injunction was indicative of its views on a permanent injunction pending the full environmental review that APHIS is required to conduct. Rather, while the environmental review is pending, the Court warned the parties that it was inclined to order the Defendant-Intervenors to take all efforts, going forward, to use conventional seed. In light of Plaintiffs' showing of irreparable harm to the environment, the Court informed Defendants and Defendant-Intervenors that it was troubled by maintaining the status quo that consists of ninety-five percent of sugar beets being genetically engineered while APHIS conducts the environmental review that should have occurred before the sugar beets were deregulated. Moreover, the Court noted that the length of time that is necessary to conduct the full environmental review, as compared to the several months between the preliminary and permanent injunction hearing, could increase the likelihood and potential amount of irreparable harm to the environment.

---

opposition to Plaintiffs' motion for permanent injunction, their reply in opposition to Plaintiffs' motion for permanent injunction, the declarations of March Anfinrud, Steve Fritz, Bryan Meir, Richard J. Sexton and Christopher Tuner in support of their reply in opposition to Plaintiffs' motion for permanent injunction, their documents in opposition to Plaintiffs' motion to exclude the Declaration of Susan Henley Manning, Ph.D., and their documents in support of their motion to exclude the declaration of John Fagan, including their reply papers, Plaintiffs' request to file under seal the designated portions of their memorandum and reply in support of permanent injunction, their reply in support of their motion to exclude Manning's Declaration, the confidential declarations of Paul H. Achitoff, including the attached exhibits, and Exhibits N, O, P, Q, R, S, T and U to the declaration of Paige Tomaselli, and Defendants' request to file under seal the designated portions of the Third Declaration of Neil Hoffman.

The parties all submitted voluminous evidentiary objections. To the extent the Court relied on evidence objected to in resolving Plaintiffs' motion, the objections are overruled. To the extent the Court did not need to consider such evidence in order to resolve the instant motion for vacatur and a permanent injunction, the Court need not rule on the admissibility of such evidence.

2

1 Plaintiffs now move to vacate APHIS's decision to deregulate genetically engineered sugar beets and to enjoin all further planting, cultivation, processing, or other use of genetically engineered Roundup Ready sugar beets or sugar beet seeds, including but not limited to permitting any Roundup Ready sugar beet seed crop to flower pending APHIS's preparation of an EIS. In light of the Supreme Court's recent ruling in *Monsanto Co. v. Geertson Seed Farms*, 130 S.Ct. 2743, 2761 (2010), Plaintiffs clarify that the order they seek from the Court would be without prejudice to Defendants taking interim measures that are compliant with the Plant Protection Act, NEPA and the Administrative Procedure Act ("APA").

Defendants Edward T. Schafer, in his official capacity as Secretary of the United States Department of Agriculture, and Cindy Smith, in her official capacity as Administrator of the Animal and Plant Health Inspection Service (collectively, "Defendants"), and Defendant-Intervenors American Sugarbeet Growers Association, Ervin Schlemmer, Mark Wettstein, John Synder, and Duane Grant, American Crystal Sugar Company, the Amalgamated Sugar Company, Western Sugar Cooperative, Wyoming Sugar Company, LLC, United States Beet Sugar Association, Betaseed, Inc., Monsanto Company, Syngenta Seeds, Inc., and SESVanderHave USA, Inc. (collectively, "Defendant-Intervenors") all oppose Plaintiffs' motion.

The Court shall discuss additional facts as necessary in the analysis.

## ANALYSIS

**A.     Applicable Legal Standards.**

The APA provides that a "reviewing court shall ... hold lawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(a). "In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abused of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413-14 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). Despite the mandatory language of the APA, the Ninth Circuit has held that although "ordinarily"

1 regulations that are not promulgated in compliance with the APA are invalid, "when equity
2 demands, the regulation can be left in place while the agency follows the necessary
3 procedures." *Idaho Farm Bureau Federation v. Babbitt*, 58 F. 3d 1392, 1405 (9th Cir. 1995).

4     In the concurring opinion in *Comcast Corp v. F.C.C.*, 579 F.3d 1 (D.C. Cir. 2009),
5 Judge Randolph finds that the plain language of the statute mandates a reviewing court that
6 finds an administrative rule or order unlawful to vacate the agency's action. *Id.* at 10
7 (Randolph, J., concurring) ("'[S]hall' means 'must.' I see no play in the joints."). Judge
8 Randolph laments that occasionally the D.C. Circuit has remanded invalid rules without
9 vacating them, and notes that "none of those decisions made even the slightest attempt to square
10 the remand-only disposition with § 706(2)(A)." *Id.* at 11. He notes that although "[i]t is easy to
11 postulate cases in which vacating an agency rule or order might have dire consequences,... the
12 prospect is not a reason to disregard the command of § 706(2)(A)." Judge Randolph opines that
13 the better approach in such circumstances, and one that is consistent with the statutory language
14 of the APA, is to require the losing agency to file a motion to stay the mandate "showing why
15 its unlawful rule or order should continue to govern until the proceedings on remand are
16 completed." *Id*. Although this Court agrees with Judge Randolph, it is bound by the Ninth
17 Circuit. The Ninth Circuit does not appear to require the agency to meet the standards required
18 for a stay. Nevertheless, the Ninth Circuit has only found remand without vacatur warranted by
19 equity concerns in limited circumstances, namely serious irreparable environmental injury.

20     For example, in *Idaho Farm*, the Ninth Circuit remanded without vacatur based on
21 concerns that immediately vacating the regulation threatened the potential extinction of an
22 animal species – an irreparable environmental injury. *Id.*, 58 F. 3d at 1405-06. The court did
23 not refer to any potential harm that would have been incurred by leaving the listing of the
24 endangered species in place while the agency reconsidered its decision. *Id*. Moreover, the error
25 in question was merely the agency's failure to make available for public comment one study
26 that the agency had relied upon in making its decision. *Id*. at 1405.

27     Similarly, in *Western Oil and Gas v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980), the court
28 was reluctant to vacate the challenged designation based on "a desire to avoid thwarting in an

4

unnecessary way the operation of the Clean Air Act in the State of California during the time the deliberative process is reenacted." The court was "also influenced by the possibility of undesirable consequences which [it could not] predict that might result from invalidation of the designations." *Id*. Based on "the unusual circumstances" of the case, the court left the challenged designations in place while the agency corrected its errors. *Id*. Again, the court did not refer to any potential harm that would have been incurred by leaving the designation in place. *Id*.; *see also Natural Resources Defense Council, Inc. v. United States Depart. of Interior*, 275 F. Supp. 2d 1136, 1143-44 (C.D. Cal. 2002) ("Both Idaho Farm Bureau and Western Oil involved challenges to rulemaking under environmental statutes. In that context the Ninth Circuit expressed special concern for the potentially one-sided and irreversible consequences of environmental damage prompted by vacating defective rules during remand.").[2]

The Ninth Circuit has not delineated specific standards governing when a court may remand an unlawful agency rule or order without vacatur. Therefore, the Court will apply the test set forth by the D.C. Circuit: "[t]he decision whether to vacate depends on the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. United States Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). "[T]he

---

[2] In *United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005), a case misleadingly cited by Defendant-Intervenors, the court was reviewing the constitutionality of a statute prohibiting financial support to organizations designated as "terrorist" and preceded pursuant to a different statute, 8 U.S.C. § 1189, not the APA. *Id*. at 1155-56. The D.C. Circuit had held that the designation of Mujahedin-e Khalq ("MEK") as a terrorist organization violated the due process rights of the petitioners, but did not vacate the designation due to "foreign policy and national security concerns, as well as the fact that the designation would be expiring shortly." *Id*. at 1156. In *Afshari*, the Ninth Circuit held that it did not have the authority to reverse the decision of a sister circuit and did not have the authority to review the State Department's designation. *Id*. In dicta, the court noted that although the language of § 1189(c)(3) appeared to be mandatory, the D.C. Circuit's approach was consistent with precedent in analogous situations under § 706 of the APA. *Id*. (citing *Idaho Farm Bureau Federation*, 58 F.3d at 1405-06). The court stated *"[t]hough not entirely uncontroversial*, remand without vacatur has been long supported by Supreme Court precedent" and that "despite the seemingly mandatory language of the statute, we believe § 1189(c)(3) can reasonably be read as the D.C. Circuit read it, to allow the remand of a designation without vacating it." *Id*. (emphasis added).

5

1  second *Allied-Signal* factor is weighty only insofar as the agency may be able to rehabilitate its
2  rational for the regulation." *Comcast*, 579 F.3d at 9.[3]
3  　　　　Defendants and Defendant-Intervenors argue that the Court should remand without
4  vacating APHIS's deregulation decision. They contend that APHIS's deficiencies were not that
5  serious or numerous and seem certain that APHIS will affirm its decision to deregulate
6  genetically engineered sugar beets upon remand. The Court disagrees with their assessment of
7  the seriousness of APHIS's errors. NEPA is a procedural statute designed to ensure
8  comprehensive consideration of the environmental consequences of agency action. The fact
9  that the Court has already found that APHIS failed to fully consider the potential consequences
10 of deregulation and that Plaintiffs have shown that deregulation may significantly affect the
11 environment demonstrates that APHIS's errors are not minor or insignificant. Moreover,
12 APHIS's apparent position that it is merely a matter of time before they reinstate the same
13 deregulation decision, or a modified version of this decision, and thus apparent perception that
14 that conducting the requisite comprehensive review is a mere formality, causes some concern
15 that Defendants are not taking this process seriously. Finally, the Court notes that Defendants
16 request, at a minimum, a ninth-month delay of any vacatur in order to give APHIS time to
17 implement interim measures. However, the Court ruled in September 2009, over ten months
18 ago, that APHIS's deregulation decision without preparing an environmental impact statement
19 was invalid. According to APHIS's position, it has already had more than sufficient time to
20 take interim measures, but failed to act expediently.
21 　　With respect to the factor regarding disruptive consequences of an interim change that
22 may itself be changed, despite the fact that the statutes at issue are designed to protect the
23 environment, Defendants and Defendant-Intervenors focus on the economic consequences they

---

[3] Other courts have also applied the following factors: "the purposes of the substantive statute under which the agency was acting, (2) the consequences of invalidating or enjoining the agency action, ... (3) the potential prejudice to those who will be affected by maintaining the status quo[]" and (4) "the magnitude of the administrative error and how extensive and substantive it was." *Home Builders Ass'n of Northern California v. U.S. Fish and Wildlife Serv.*, 268 F. Supp. 2d 1197, 1236, 1239 (E.D. Cal. 2003) (vacating the agency's rule where court found that vacating the rule would not expose the animal to significantly greater threats of extinction and that the designation violated the Endangered Species Act and the APA on numerous grounds).

1  claim Defendant-Intervenors would incur. In light of the limited circumstances in which the
2  Ninth Circuit has determined that equity warranted remanding without a vacatur, it is not clear
3  that economic consequences is a factor the Court may consider in environmental cases. *See*
4  *Natural Resources Defense Council*, 275 F. Supp. 2d at 1146 n. 21 (noting the "differences in
5  character" between the potential irreversible environmental harm and any potential economic
6  harm to private developers); *see also Natural Resources Defense Council, Inc. v. United States*
7  *Environmental Protection Agency*, 676 F. Supp. 2d 307, 317 n.10 (S.D.N.Y. 2009) (questioning
8  whether economic considerations may be given any weight in a decision regarding whether to
9  vacate insecticide registrations by the EPA). The cases cited to by Defendants, none of which
10 are environmental cases, do not support their proposition. *See Milk Train, Inc. v. Veneman*, 310
11 F.3d 747 (D.C. Cir. 2002); *Sugar Cane Growers Coop. of Florida v. Veneman*, 289 F.3d 89
12 (D.C. Cir. 2002); *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484 (D.C. Cir. 1995).

13       In *Milk Train*, large milk producers challenged the implementation by the Secretary of
14 Agriculture of the 1999 subsidy program for dairy farmers. *Id*., 310 F.3d at 748-49. The court
15 determined that the district court lacked jurisdiction to hear the first challenge to the Secretary's
16 conduct and with respect to the second challenge, the court found that, based on the
17 administrative record, it was unable to determine whether the Secretary's interpretation of the
18 regulation was unlawful. *Id*. at 752, 755. Moreover, the 1999 subsidies had already been
19 distributed to numerous farmers throughout the country and were not recoverable three years
20 later. *Id*. at 756. Therefore, "[t]he egg [had] been scrambled and there [was] no apparent way
21 to restore the status quo ante." *Id.* (quoting *Sugar Can Growers*, 289 F.3d at 97). In this
22 context, the court remanded the case without vacating the Secretary's decision. *Id*.

23       In *Sugar Cane Growers*, sugar cane growers, processors, refiners and marketers
24 challenged the Secretary of Agriculture's implementation of a payment in kind program for the
25 2001 sugar crop. *Id*., 289 F.3d at 91. The court determined that the agency had violated the
26 APA. However, before the court's decision, the payment in kind program had already been
27 launched and crops were already plowed. Therefore, the court found that "[t]he egg [had] been
28

7

1  scrambled and there [was] no apparent way to restore the status quo ante." *Id*. at 97.
2  Accordingly, the court remanded without vacatur. *Id*. at 98.[4]

3  In *A.L. Pharma*, a competitor sought judicial review of the Food and Drug
4  Administration's ("FDA") approval of an applicant's animal drug for sale. *Id*., 62 F.3d at 1486.
5  In the early 1970's, an industry trade association conducted a study which provided an adequate
6  basis for the FDA to determine that the drug was safe, but did not establish that the drug met the
7  required efficacy standards. *Id*. The court remanded but declined to vacate the FDA's approval
8  of the drug because the applicant had for *thirteen years* relied in good faith on the agency's
9  decision. Moreover, it was significant that there was no evidence to suggest that any harm
10 would result from allowing the approval to remain in effect pending the agency's further
11 explanation regarding efficacy. *Id*. at 1492.

12 Moreover, even if the Court could consider the potential economic consequences of a
13 vacatur in an environmental case, in light of the Court's determination that the declaration by
14 Susan Henley Manning, Ph.D. is inadmissible, Defendants and Defendant-Intervenors have
15 failed to demonstrate that serious economic harm would be incurred pending a full
16 environmental review or any interim action by APHIS. Accordingly, the Court finds that equity
17 does not warrant remand without issuing a vacatur.

18 Plaintiffs seek an injunction in addition to the vactur of the deregulation decision. The
19 Supreme Court recently stated in *Monsanto*, 130 S.Ct. at 2761, that recourse to the "additional
20 and extraordinary relief of an injunction" was not warranted if a less drastic remedy, such as a
21 vacatur of APHIS's deregulation decision, was sufficient to redress the plaintiff's injury. Here,
22 Plaintiffs' only argument that a vacatur would not be sufficient to redress their injury is that
23 Defendant-Intervenors or other third parties might violate the vacatur and APHIS might not be
24 able to enforce the reinstated regulated status of genetically engineered sugar beets. (Plaintiffs'

---

[4] Despite Defendants' and Defendant-Intervenors' assertion that the "egg has been scrambled" here as well, issuing a vactur would not be moot. A vacatur would prevent the planting and processing of genetically engineered sugar beets going forward, unless and until APHIS again deregulates, or partially deregulates, genetically engineered sugar beets in a lawful manner.

8

1  Suppl. Br. at 5-6.)[5] The Court finds that any injury from such conduct is purely speculative and
2  dependant on future conduct, and therefore, finds that Plaintiffs' request for an injunction is not
3  warranted. Accordingly, the Court denies Plaintiffs' request for a permanent injunction. This
4  Order is without prejudice to Plaintiffs seeking further redress if, after the deregulation decision
5  is vacated, Plaintiffs can demonstrate that Defendant-Intervenors or other third parties have in
6  fact violated the vacatur.

7  The Court will limit the vacatur to any planting of genetically modified sugar beets *after*
8  the date of this Order. Because Plaintiffs apparently do not seek to have the vacatur apply to
9  the genetically modified sugar beet root and seed crops planted *before* the date of this Order, the
10 Court will not impose a vacatur that would require the destruction of the genetically engineered
11 crop that has already been planted.[6]

---

[5] At the hearing on Plaintiffs' motion regarding remedies, Plaintiffs attempted to re-characterize their motion as merely seeking an injunction with respect to the crops that have already been planted as of the date of this Order. Because Plaintiffs are not requesting that the vacatur apply to the genetically engineered sugar beet root and seed crops that have already been planted, Plaintiffs argued that a limited injunction is necessary to ensure that precautions are taken to reduce any contamination with conventional sugar beets. The Court agrees that such a limited injunction, especially if the vactur were limited to apply to future plantings, may address potential injuries that may not be redressed through a vacatur. However, unfortunately, Plaintiffs did not argue for such a limited injunction in their papers, and, thus, did not make the showing required for an injunction. In order to obtain a permanent injunction, Plaintiffs must demonstrate that: (1) they have suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for such injuries; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Monsanto*, 130 S. Ct. at 2756. All of Plaintiffs briefing regarding an injunction was directed at *future* plantings. Therefore, Plaintiffs failed to demonstrate that the requisite elements for an injunction have been satisfied with respect to the genetically engineered sugar beet root and seed crops that were planted before the date of this Order.

[6] At the hearing on Plaintiffs' motion regarding remedies, Plaintiffs argued that they only intended to allow the genetically engineered sugar beet root and seed crops that had been planted in the spring of 2010 to be protected, not the 2010 fall seed crop that has already been planted. According to Plaintiffs, their briefs were submitted when the hearing on their motion was still scheduled for July 9, 2010, before the planting of 2010 fall seed crop was to begin. However, Defendants and Defendant-Intervenors argued in their briefs that they construed Plaintiffs' request as being limited to plantings conducted after the date of the Court's order on remedies. In their supplemental brief submitted on July 6, 2010, after the Court had moved the hearing to August 13, 2010, Plaintiffs made no attempt to clarify their position. Moreover, although Plaintiffs argued at the hearing that to the extent any of the 2010 fall seed crop had already been planted with genetically engineered sugar beets, such crop should be destroyed, Plaintiffs did not make any persuasive argument as to why such crop should be distinguished from the other genetically engineered sugar beets that had

9

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' request to vacate APHIS's decision to deregulate genetically engineered sugar beets and remands this matter to APHIS. Based on this vacatur, genetically engineered sugar beets are once again regulated articles pursuant to the Plant Protection Act. This vacatur applies to all *future* plantings and does *not* apply to genetically engineered sugar beet root and seed crops that were planted before the date of this Order. Therefore, such crops may be harvested and processed. The genetically engineered sugar beet root crop that has already been planted may be processed and sold as sugar. The genetically engineered sugar beet seed crop that has already been planted may be harvested and stored.

The Court DENIES Plaintiffs' request for a permanent injunction. The Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: August 13, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

---

already been planted in the spring of 2010. Therefore, the Court rejects Plaintiffs' last minute attempt to change the scope of the relief they are seeking.