GEORGE A. KIMBRELL (*Pro Hac Vice*)
PAIGE M. TOMASELLI State Bar No. 237737
KATERYNA L. RAKOWSKY State Bar No. 246248
Center for Food Safety
2601 Mission St., Suite 803
San Francisco, CA 94110
T: (415) 826-2770 / F: (415) 826-0507
Emails: gkimbrell@icta.org
          ptomaselli@icta.org
          kateryna@icta.org

PAUL H. ACHITOFF (*Pro Hac Vice*)
Earthjustice
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
T: (808) 599-2436 / F: (808) 521-6841
Email: achitoff@earthjustice.org

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR FOOD SAFETY, *et al.*,<br><br>            Plaintiffs,<br><br>    vs.<br><br>THOMAS J. VILSACK, *et al.*,<br><br>            Defendants. | Case No.: 3:08-cv-0484-JSW (EDL)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:    August 23, 2011<br>Time:   9:00 a.m.<br>Judge:  Hon. Elizabeth Laporte<br>Place:  Courtroom F, 15th floor |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .......................................................................................... 1

II.   DEFENDANTS WERE NOT SUBSTANTIALLY JUSTIFIED ....................................... 1

III.  PLAINTIFFS ACHIEVED EXCELLENT RESULTS AND NONE OF
      PLAINTIFFS' CLAIMS WERE "UNSUCCESSFUL" ........................................ 3

IV.   PLAINTIFFS' ATTORNEYS' RATES ARE FULLY SUPPORTED ............................ 7

V.    PLAINTIFFS' EXPERTISE WAS NEEDED IN THIS CASE ......................................... 8

VI.   NO FURTHER REDUCTION IS APPROPRIATE FOR WORK ON MATTERS
      INVOLVING BOTH INTERVENORS AND DEFENDANTS ....................................... 10

VII.  PLAINTIFFS' ATTORNEYS' WORK IS RELATED TO THIS CASE AND IS
      ADEQUATELY DESCRIBED ...................................................................... 12

VIII. NO REDUCTION FOR INELIGIBLE PLAINTIFFS IS APPROPRIATE ..................... 15

IX.   CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Avoyelles Sportsmen's League v. Marsh*,
786 F.2d 631 (5th Cir. 1986) ........................................................................10

*Blum v. Stenson*,
465 U.S. 886 (1984).........................................................................................7

*Cabrales v. County of Los Angeles*,
935 F.2d 1050 (9th Cir. 1991) ........................................................................5

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ..........................................................................7

*Commissioner, I.N.S. v. Jean*,
496 U.S. 154 (1990).........................................................................................2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................2, 3, 5, 6

*In re Hunt*,
238 F.3d 1098 (9th Cir. 2001) ........................................................................9

*Kali v. Bowen*,
854 F.2d 329 (9th Cir. 1988) ..........................................................................2

*La. ex rel. Guste v. Lee*,
853 F.2d 1219 (5th Cir. 1988) ......................................................................15

*Love v. Reilly*,
924 F.2d 1492 (9th Cir. 1991) ......................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
__ U.S. __, 130 S. Ct. 2743 (2010)................................................................5

*Nadarajah v. Holder*,
569 F.3d 906 (9th Cir. 2009) ..........................................................................9

*Natural Res. Def. Council v. Winter*,
543 F.3d 1152 (9th Cir. 2008) ........................................................................8

*O'Neal v. City of Seattle*,
66 F.3d 1064 (9th Cir. 1995) ..........................................................................4

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 (9th Cir. 2010) ..........................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page

**CASES (Cont.)**

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  776 F.2d 383 (2d Cir. 1985)..................................................................................15

*U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal.*,
  190 F.3d 977 (9th Cir. 1999) ..................................................................................8

*Wash. Dep't of Wildlife v. Stubblefield*,
  739 F. Supp. 1428 (W.D. Wash. 1989)..................................................................15

*Webb v. Sloan*,
  330 F.3d 1158 (9th Cir. 2003) ................................................................................4

*Welch v. Metropolitan Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ..................................................................7, 8, 12, 13

*Wilderness Society v. Babbitt*,
  5 F.3d 383 (9th Cir. 1993) ......................................................................................2

**UNPUBLISHED FEDERAL CASES**

*Citizens for Better Forestry v. U.S. Dep't of Agr.*,
  No. 08-01927 CW, 2010 WL 3222183 (N.D. Cal. Feb. 14, 2011)....................12, 15

*Citizens for Better Forestry v. U.S. Dep't of Agr.*,
  Nos. C 05-1144 PJH, C 04-4512 PJH, 2008 WL 5210945 (N.D. Cal. Dec. 11, 2008).........4, 6

*Geertson Seed Farms v. Johanns*,
  No. C 06-01075 CRB, 2007 WL 518624 (N.D. Cal. Feb. 13, 2007) ...................4, 5, 13, 14

*George v. Bay Area Rapid Transit District*,
  No. 00-2206, 2007 WL 2778784 (N.D. Cal. Sept. 21, 2007)..................................10

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  No. CV-00-755-HU, 2004 WL 1853134 (D. Or. Aug. 18, 2004) .........................2, 3

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
  No. 07-CV-358-PK, 2008 WL 4866063 (D. Or. Nov. 5, 2008) ............................13

*Lands Council v. Swick*,
  No. CV03-344-N-EJL, 2005 WL 3241184 (D. Idaho Nov. 23, 2005)..................2, 6

*League for Coastal Prot. v. Kempthorne*,
  No. C 05-0991-CW, 2006 WL 3797911 (N.D. Cal. Dec. 22, 2006) ......................15

*Natural Res. Def. Council v. Locke*,
  No. C 01–0421 JL, 2011 WL 1034255 (N.D. Cal. Feb. 14, 2011)................6, 10, 12

Page

**UNPUBLISHED FEDERAL CASES (CONT.)**

*Prineville Sawmill Co. v. Longview Fibre Co.*,
   Civ. No. 01-1073-BR, 2003 WL 23957141 (D. Or. 2003) .......................................................12

*Save San Francisco Bay Ass'n v. U.S. Dep't of Interior*,
   No. Civ.-F-97-6140, OWW/DLB, 2006 WL 1581882 (E.D. Cal. June 6, 2006 ......................6

*Sierra Club v. Hankinson*,
   No. CIV.A.1:94-CV2501MHS, 1997 WL 33303277 (N.D. Ga. April 18, 1997) ..................15

*Sierra Club v. U.S. Dep't of Transp.*,
   No. C-86-3384, 1998 WL 289315 (N.D. Cal. April 6, 1998)....................................................3

*Southwest Ctr. For Biological Diversity v. Bartel*,
   No. 98-CV-2234-B (JMA), 2007 WL 2506605 (S.D. Cal. Aug. 30, 2007) ....................11, 12

## I.    INTRODUCTION

Plaintiffs' handful of *pro bono* attorneys representing nonprofits spent three years engaged in extraordinarily hard-fought, complex, high-stakes litigation against the coordinated efforts of the U.S. Department of Agriculture (Defendants) and five private law firms representing Fortune 500 companies and the sugar industry (Intervenors).  Plaintiffs sought to establish Defendants had violated the law and obtain a meaningful remedy, and Plaintiffs did exactly that.

Defendants fought Plaintiffs every step of the way, but now struggle to avoid responsibility with a by-the-numbers opposition collecting miscellaneous cases from Defendants' form files.  Where Defendants' arguments are not woven from whole cloth they are contradicted by settled law, based on authorities whose holdings Defendants have grossly distorted, or bear little relation to the facts of this case.

## II.   DEFENDANTS WERE NOT SUBSTANTIALLY JUSTIFIED

Defendants do not dispute that their agency action that precipitated this litigation—deregulating genetically engineered "Roundup Ready" sugarbeets without complying with the National Environmental Policy Act—and their defense of that action, lacked justification. Nor could they dispute it: the Court noted Defendants' "complete failure to consider the effects of gene transmission on conventional farmers and consumers, or of the harms resulting from contamination of related red table beet and Swiss chard crops," and their having reached conclusions for which "there is no support in the record."  Order Regarding Cross-Motions for Summary Judgment, Dkt. No. 139, at 12 & 14.  Defendants therefore try to sever the remedy phase, arguing that while ignoring NEPA when deregulating the crop may have been indefensible, at least one of their (unsuccessful) remedy positions must have been substantially justified, so Plaintiffs should be denied all fees incurred in the remedy phase.

First, Defendants' position even in that phase of the case was not justified; the Court rejected virtually all of Defendants' arguments and took Defendants to task for their "apparent position that it is merely a matter of time before they reinstate the same deregulation decision, or a modified version of this decision," and noted this "apparent perception that conducting the

1   requisite comprehensive review is a mere formality, causes some concern that Defendants are not

2   taking this process seriously." Order Regarding Remedies, Dkt. No. 570, at 6.

3          Moreover, the Supreme Court rejected Defendants' argument as a legal matter in

4   *Commissioner, I.N.S. v. Jean*, 496 U.S. 154 (1990).  There, the government sought to avoid

5   liability for fees incurred in fee litigation, arguing that even if  the plaintiffs prevailed in the

6   underlying litigation, no fees for the fee award phase should be recoverable unless the

7   government was not substantially justified in opposing the fee award itself. Id. at 157.  The

8   Court found a "complete absence of any textual support for this position."  *Id*. at 158-59.

9          The statute's plain language precluded the government's attempt to require multiple

10  findings of substantial justification for each litigation phase, and the Court held, "While the

11  parties' postures on individual matters may be more or less justified, the EAJA—like other fee-

12  shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-

13  items." *Id.* at 161-62.  The Court emphasized that "only one threshold [substantial justification]

14  determination for the entire civil action is to be made." *Id.* at 159 (emphasis added).  That

15  determination "properly focuses on the governmental misconduct giving rise to the litigation."

16  *Id.* at 165 (emphasis added).  Defendants thus have the burden of proving they were justified in

17  violating NEPA.  *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988); *see also Hells Canyon Pres.*

18  *Council v. U.S. Forest Serv.*, No. CV-00-755-HU, 2004 WL 1853134, at *1 (D. Or. Aug. 18,

19  2004) ("[E]ven if the government's litigation position is justified, it cannot meet its burden if the

20  underlying conduct was not.") (citing *Wilderness Society v. Babbitt,* 5 F.3d 383, 388 (9th Cir.

21  1993)).[1]  They have not met that burden, and as a matter of law the government is responsible for

22  Plaintiffs' fees in the "case as an inclusive whole."  *Jean*, 496 U.S. at 162.

23         The legal standard that applies to Plaintiffs' motion instead is provided by *Hensley v.*

24  *Eckerhart*, 461 U.S. 424 (1983):

25         _____
           [1] Remarkably, elsewhere in their brief Defendants rely on a case in which the court flatly
26  rejected, as "contravene[ing] Supreme Court and Ninth Circuit precedent," precisely the
    argument Defendants make here—that the Court should make a separate finding of substantial
27  justification concerning the remedy phase and reduce a fee award accordingly.  *See Lands*
    *Council v. Swick*, No. CV03-344-N-EJL, 2005 WL 3241184, at *4 (D. Idaho Nov. 23, 2005).

28

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. <u>Normally this will encompass all hours reasonably expended on the litigation</u>, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances <u>the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit</u>. Litigants in good faith may raise alternative legal grounds for a desired outcome, and <u>the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee</u>. The result is what matters.

*Id.* at 435 (emphasis added) (citation omitted).

Plaintiffs accomplished their fundamental objectives in the litigation: preparation of an EIS, and a halt to the planting of Roundup Ready sugarbeets pending a new agency decision. The Court vacated Defendants' decision to deregulate the crop, and this vacatur barred planting pending a new agency decision whether to allow production during preparation of the EIS. The vacatur also preserved Plaintiffs' ability to challenge any such provisional action, in that the Court rejected Defendants' efforts to have the Court install the government's proposal simply to allow continued production of the crop in lieu of vacatur. Plaintiffs achieved an excellent result for the whole of the litigation, and all "reasonably expended" fees are compensable.

## III.   PLAINTIFFS ACHIEVED EXCELLENT RESULTS AND NONE OF PLAINTIFFS' CLAIMS WERE "UNSUCCESSFUL"

Defendants' argument that Plaintiffs' award should be slashed because Plaintiffs' Plant Protection Act ("PPA") claim supposedly was "unsuccessful," Defs' Opp. at 4, is frivolous. First, the PPA claim was not "unsuccessful"; the Court found it unnecessary to address the claim after determining that Defendants had violated NEPA. *See* Order Regarding Cross-Motions for Summary Judgment, Dkt. No. 139, at 14 n.4 ("[B]ecause the Court has concluded that APHIS must prepare an EIS before approving the petition to deregulate Roundup Ready sugar beets, the Court need [not] address whether APHIS also violated the PPA.") Defendants offer no support for their argument that where the plaintiffs' success on other claims makes it unnecessary to decide a claim, the prevailing plaintiffs forfeit their right to recover fees incurred in litigating that claim. In both *Hells Canyon Pres. Council*, 2004 WL 1853134, at *5, and *Sierra Club v. U.S. Dep't of Transp.*, No. C-86-3384, 1998 WL 289315, at *6 (N.D. Cal. April 6, 1998), which

1    Defendants cite, the courts exercised their discretion not to award fees for claims those courts

2    had expressly found lacked merit.

3         Even if the PPA claim had been unsuccessful, it was sufficiently related to the NEPA

4    claim to entitle Plaintiffs to recover the fees expended on it.  Claims are closely related for fee-

5    shifting purposes if they "involve a common core of facts <u>or</u> are based on related legal theories."

6    *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original).  "The test is whether

7    relief sought on the unsuccessful claim is intended to remedy a <u>course of conduct entirely</u>

8    <u>distinct and separate</u> from the course of conduct that gave rise to the injury upon which the relief

9    granted is premised."  *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995) (emphasis

10   added).  Plaintiffs' PPA and NEPA claims arose out of the identical course of conduct:

11   Defendants' deregulation of the genetically engineered crop.  The NEPA claim alleged

12   Defendants failed to assess the deregulation's impacts in an EIS, while the PPA claim alleged

13   they failed to assess the impacts in accordance with that statute's standards.

14        Accordingly, in the fee litigation in the very similar *Geertson Seed Farms v. Johanns*,

15   No. C 06-01075 CRB, 2007 WL 518624 (N.D. Cal. Feb. 13, 2007), in which Judge Breyer

16   declined to address a PPA claim after concluding these same Defendants were required to

17   prepare an EIS before approving a petition to deregulate Roundup Ready alfalfa, the court

18   expressly rejected Defendants' argument that the PPA claim was not related to the plaintiffs'

19   successful NEPA claim for purposes of EAJA fee recovery.  *See* Order Referring Fees Motion to

20   Magistrate Judge at 8 (citing *Citizens for Better Forestry v. U.S. Dep't of Agr.*, Nos. C 05-1144

21   PJH, C 04-4512 PJH, 2008 WL 5210945, at *4 (N.D. Cal. Dec. 11, 2008)); Exh. A to Achitoff

22   decl.

23        Although Plaintiffs achieved exactly what they set out to accomplish in this litigation—

24   preparation of an EIS, and a halt to further production absent a new agency decision—

25   Defendants ask that much of the fees Plaintiffs incurred in the remedy phase be deleted because

26   Plaintiffs also asked for preliminary and permanent injunctive relief, which the Court did not

27   award.  Defs' Opp. at 5.  The notion that fees should not be awarded for time spent on any issue,

28   motion, or claim on which Plaintiffs did not prevail is simply not the law.

1    Although the preliminary injunction motion was denied, Plaintiffs were ultimately

2    successful in the remedy phase as well as on the merits; in denying the preliminary injunction,

3    the Court made critical findings of irreparable harm and the inequity of continuing the *status quo*

4    that the Court later cited and built upon in its vacatur order five months later.  *Compare* Dkt. No.

5    313 at 3 *with* Dkt. No. 570 at 2.  The Ninth Circuit, in *Cabrales v. County of Los Angeles*, 935

6    F.2d 1050 (9th Cir. 1991), rejected the approach Defendants urge in this case:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to
> winning the war. … The County would have us scalpel out attorney's fees for
> every setback, no matter how temporary, regardless of its relationship to the
> ultimate disposition of the case.  This makes little sense.
>
> We hold, instead, that a plaintiff who is unsuccessful at a stage of litigation that
> was a necessary step to her ultimate victory is entitled to attorney's fees even for
> the unsuccessful stage.

12   *Id.* at 1053. *See also, Hensley*, 461 U.S. at 435 ("[T]the fee award should <u>not be reduced</u> simply

13   because the plaintiff failed to prevail on every contention raised in the lawsuit. … [T]he court's

14   rejection of … certain grounds is <u>not a sufficient reason for reducing a fee</u>.  The result is what

15   matters.")

16   Defendants fail to acknowledge that the Court declined to issue the permanent injunction

17   because it concluded that the relief it did issue—vacating Defendants' deregulation decision—

18   was "sufficient to redress the plaintiff's injury."  Order Regarding Remedies, Dkt No. 570, at 8-

19   9. (quoting *Monsanto Co. v. Geertson Seed Farms*, __ U.S. __, 130 S. Ct. 2743, 2761 (2010)).

20   *See also Monsanto*, __ U.S. __, 130 S. Ct. at 2761 (the vacatur of APHIS's deregulation decision

21   means that virtually no [genetically engineered alfalfa] can be grown or sold until such time as a

22   new deregulation decision is in place…").  Plaintiffs argued alternative theories for cessation of

23   sugar beet production under an invalid deregulation, and the Court selected one which achieved

24   that result.  Plaintiffs are entitled to a "fully compensatory fee" for obtaining "excellent results."

25   *Hensley,* 461 U.S. at 435.

26   Consequently, Judge Breyer, in his ruling in the *Geertson Seed Farms* fee litigation, held

27   that the vacatur and injunctive relief remedies also proposed in that case were, like the PPA and

1  NEPA claims, related for purposes of fee recovery.  *See* Order Referring Fees Motion to

2  Magistrate Judge at 9 ("Plaintiffs' assertion that '[t]he injunction and the vacatur were a belt and

3  suspenders remedy, both intended to remedy the NEPA violation and stop the commercial

4  planting and use of [the crop],' … is therefore persuasive.  …  The two remedies were rather

5  obviously intended to remedy the same course of conduct–the planting of [the crop] before an

6  EIS had been conducted.") (citing *Citizens for Better Forestry*, 2008 WL 5210945, at *4).

7        While a fee award may be reduced for limited success, Defendants fail to show that

8  Plaintiffs' success was substantially limited, but simply demand that every task not directly tied

9  to a ruling in Plaintiffs' favor be uncompensated.  Finding no support in any reported decision,

10  Defendants cite *Save San Francisco Bay Ass'n v. U.S. Dep't of Interior*, No. Civ.-F-97-6140

11  OWW/DLB, 2006 WL 1581882 (E.D. Cal. June 6, 2006).  Defs' Opp. at 5 n.3.  That court

12  agreed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully

13  compensatory fee," and that "[a] plaintiff may obtain excellent results without receiving all the

14  relief requested,"  2006 WL 1581882, at *6 (quoting *Hensley*, 461 U.S. at 435 & *id.* at n.11), but

15  emphasized that in the case before it, the plaintiff succeeded "only on a few discrete accounting

16  issues, and, critically, failing to succeed in the district court or the Ninth Circuit on its

17  fundamental assertion…."  *Id.* at *6.  This is not even remotely analogous to this case, in which

18  Plaintiffs achieved virtually everything they sought, and Defendants did not prevail on any

19  matter of consequence throughout the entire lawsuit.[2]  *See Natural Res. Def. Council v.  Locke*,

20  No. C 01–0421 JL, 2011 WL 1034255, at *10-11 (N.D. Cal. Feb. 14, 2011) (rejecting

21  government's argument that the plaintiffs' award should be reduced for "limited success").

22

23

24        [2] Defendants' reliance on *The Lands Council v. Swick*, *supra* note 1, is misplaced for the
same reason.  That court emphasized that the plaintiffs had been almost entirely unsuccessful in

25  the remedy phase of the case.  *See* 2005 WL 3241184, at *7 ("In fact, of the hundreds of miles of
roads that Plaintiffs originally sought to close or obliterate, the Court concluded that only Road

26  625 warranted closure.")  Plaintiffs in this case obtained the result they sought—total cessation
of all crop production absent a new agency decision—based on one of the remedy theories they

27  argued, which made the alternative theory superfluous.

28

## IV.   PLAINTIFFS' ATTORNEYS' RATES ARE FULLY SUPPORTED

Defendants argue that Plaintiffs' attorneys' hourly rates are excessive, but offer no evidence, nor even a credible argument, that the rates Plaintiffs seek exceed the rates applicable law dictates that Plaintiffs are entitled to recover.  Having failed to show that market rates where this Court sits are lower than the rates Plaintiffs request, Defendants misleadingly raise the *non sequitur* that several years ago, Plaintiffs' lead counsel sought a fee recovery at a lower rate for work in a different state where the market is dramatically lower than the market where this Court sits.  Defendants then suggest that because Mr. Achitoff is Plaintiffs' legal team's most senior member, the other team members' rates should be commensurately lower than the inapplicable rate Defendants have attributed to Mr. Achitoff.

No legal support for this approach exists.  To the contrary, Plaintiffs' award is to be based on the rates charged by others in "the forum in which the district court sits" for "similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010) (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) and *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  Defendants' creative argument that once an attorney seeks fees at a rate applicable in one market, his fees should forever be capped at that rate, and the fees of all attorneys with whom he may ever work should be pegged to that rate, is frivolous.[3]  Plaintiffs' uncontroverted evidence of the rates charged by attorneys of reasonably comparable skill and experience in the district where this Court sits are the rates to which Plaintiffs are entitled by law.  *See* Drury decl., Dkt. No. 630.  Defendants did not meet their burden to show the applicable rates are otherwise.  *Camacho v.*

---

[3] Notably, although Defendants clamor for evidence of Plaintiffs' attorneys' "normal hourly rate[s]," Defs' Opp. at 11-12, 14, unlike private firm attorneys, none of Plaintiffs' nonprofit *pro bono* attorneys charge their clients attorney fees, so Plaintiffs' attorneys do not have "normal hourly rates" independent of the market in the forum where a motion for a fee award is pending.  *See* Achitoff decl., ¶2; G.Kimbrell decl., ¶3.  It is settled that *pro bono* attorneys are entitled to be compensated at market rates.  *Blum*, 465 U.S. at 895; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) ("We have repeatedly held that the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.'  Rather, billing rates 'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'") (citations omitted).

*Bridgeport Financial, Inc.,* 523 F.3d 973, 980 (9th Cir. 2008).  "In the absence of contrary

evidence … on remand the district court must presume those rates are reasonable."  *Welch*, 480

F.3d at 947.

## V.    PLAINTIFFS' EXPERTISE WAS NEEDED IN THIS CASE

Defendants argue that all of the work of several of Plaintiffs' attorneys should be

compensated at EAJA statutory rates rather than market rates because Defendants, while not

disputing the attorneys' specialized expertise in environmental litigation, do not believe their

skills were needed in this case.  Defs' Opp. at 11-12, 15.  It is beyond dispute that in complex

litigation requiring thousands of hours of work on myriad tasks, not every itemized task or tenth

of an hour will require specialized expertise, and this case is no exception.  However, Defendants

offer no authority for their position that the Court, before awarding fees at market rates, should

examine each time entry and try to determine whether each task performed by each attorney on

each date reflects the need for specialized expertise.

Defendants cite *Natural Res. Def. Council v. Winter*, 543 F.3d 1152 (9th Cir. 2008), but

the case offers them no support.  In *Winter*, the Ninth Circuit examined whether certain attorneys

possessed sufficient specialized knowledge of environmental law to be entitled to a market rate

award, and if so, whether that knowledge was needed in the case.  It found that one group of

attorneys (the "junior Irell attorneys") lacked such distinctive skill, and it therefore found it

unnecessary to determine whether such skills were needed in the litigation.  *Id.* at 1159-1160.

The court then found that the "NRDC junior attorneys" and the "Irell senior partner" both

possessed environmental litigation expertise.  *Id.* at 1160-61.  The court's conclusion that these

latter two groups' specialized skills were needed in the litigation did not, as Defendants here try

to suggest, hinge on whether each of the hundreds of particular tasks they performed required

specialized knowledge of environmental law (and it is inconceivable that they did), but whether,

given the nature of the litigation as a whole, such skills were needed.  *Id.* at 1161.[4]

---

[4] In *U.S. v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal.*, 190
F.3d 977 (9th Cir. 1999), upon which Defendants also rely, the court did not reach the issue

1    Plaintiffs have established that Andrew Kimbrell, Isaac Moriwake, and Will Rostov all

2  have specialized skill not only in environmental litigation, but also specifically in genetic

3  engineering litigation, based on prior experience in such cases.  *See* A. Kimbrell decl., Dkt. No.

4  629, at ¶¶ 9-17; G. Kimbrell decl., Dkt. No. 628, at ¶¶ 19-23; and Achitoff decl., Dkt. No. 627, at

5  ¶¶ 10-12.  The time entries for Mr. Rostov show he worked on, among other matters, working up

6  the case and drafting the complaint.  Dkt. No. 627-2 at 27.  Those for Mr. Kimbrell show he

7  worked primarily on settlement and litigation strategy.  *Id*. at 11.  Mr. Moriwake's work, *see* Dkt.

8  No. 627-1 at 17, was instrumental in obtaining a key ruling in the case, one that the Court cited

9  in support of its vacatur.[5]  All of these attorneys' work was both critical to the success of the case

10  and required expertise in environmental law.  The law does not require that Plaintiffs establish

11  that each telephone call required such specialized knowledge.

12    Defendants argue that Plaintiffs should be limited to a rate of $75 per hour for law clerks,

13  because in *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009), the court affirmed an award at

14  that rate.  Defs' Opp. at 15.  Defendants fail to disclose that in that case:  (1) the fees were

15  incurred in 2004-2006 and awarded in 2008, 569 F.3d at 911; (2) the defendants did not object to

16  the rates, *id.* at 918; and (3) the fees were incurred in a different judicial district.  Citing this case

17  and *In re Hunt*, 238 F.3d 1098 (9th Cir. 2001), affirming an award more than a decade ago for

18  work in a different district, does not meet Defendants' burden to rebut Plaintiffs' evidence that in

19  this district, at this time, the market rate is $145 per hour.  Dkt. No. 630 at 8.

20

21

22

23  ――――――――――――――――――――――――――――――――――――――――
    Defendants argue here, having found that no specialized expertise was needed by any of the

24  attorneys in any aspect of the litigation.  *Id.* at 984 ("This was a routine civil forfeiture case, not
    needing specialized skills.")  Defendants acknowledge that is not the case here.

25    [5] *See* Dkt. No. 570 at 8 ("Moreover, even if the Court could consider the potential

26  economic consequences of a vacatur in an environmental case, in light of the Court's
    determination that the declaration by Susan Henley Manning, Ph.D. is inadmissible, Defendants

27  and Defendant-Intervenors have failed to demonstrate that serious economic harm would be
    incurred pending a full environmental review or any interim action by APHIS.")

28

1

**VI.   NO FURTHER REDUCTION IS APPROPRIATE FOR WORK ON MATTERS INVOLVING BOTH INTERVENORS AND DEFENDANTS**

2       Defendants' effort to deny Plaintiffs an award for hours "expended on issues raised by

3   Intervenors rather than USDA," Defs' Opp. at 6, is misleading and overreaching.  As the cases

4   Defendants cite demonstrate, the law requires deletion of hours spent opposing an intervention

5   on which the government took no position, and Plaintiffs therefore deleted those hours before

6   submitting their motion. *See* Dkt. No. 626 at 9-10; Dkt. No. 627 at 9.  Although Defendants

7   assert that Plaintiffs "have not deleted all of the time associated with opposing intervention,"

8   Defs' Opp. at 6, Defendants had the burden of identifying with particularity any allegedly

9   improper time entries.  *Natural Res. Def. Council*, 2011 WL 1034255, at *9.  Defendants failed

10  to identify any such time entries (and Plaintiffs are aware of none).[6]

11      Defendants go far beyond excluding fees incurred opposing intervention, and try to

12  exclude all time spent litigating any matters in which Intervenors had any substantial

13  involvement, although Defendants participated in those same matters in opposing Plaintiffs'

14  efforts to obtain a remedy.  This, too, is contrary to applicable law.

15      In *Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991), the court explained that "an award is not

16  appropriate for a phase of the litigation in which the party seeking an award was opposed only by

17  other, non-governmental parties," but an award for any fees incurred in opposing "government

18  resistance to their rightful demands" is proper, regardless of whether other parties are also

19  involved.  *Id*. at 1496 (emphasis added) (quoting *Avoyelles Sportsmen's League v. Marsh*, 786

20  F.2d 631, 636 (5th Cir. 1986)).  There was no "phase of this litigation" opposed only by

21  Intervenors, other than the intervention motions themselves, for which Plaintiffs have not sought

22  any fees.  During the remedy phase to which all of the fees Defendants challenge pertain,

23  Defendants opposed all forms of relief Plaintiffs sought, routinely filed briefs and presented oral

24

25      [6] Defendants' attempt to distinguish *George v. Bay Area Rapid Transit District*, No. 00-
    2206, 2007 WL 2778784 (N.D. Cal. Sept. 21, 2007), Defs' Opp. at 6, n.6, is a specious straw
26  man argument.  *George* held that fees incurred opposing intervention may be awarded where the
    government invites the intervention.  *Id*. at *6.  As Plaintiffs' noted in their opening brief, they
27  do not seek an award of any fees incurred opposing intervention, and therefore did not rely on
    *George*.  Op. Brf. at 10.

28

1    argument on all motions, sought discovery from and made discovery to Plaintiffs, and attended

2    depositions.  The positions argued by Defendants were always in line with those argued by

3    Intervenors, with whom they coordinated their briefing and arguments.

4          While Defendants purport to identify time entries "pertaining to work relating only to

5    Intervenors," Defs' Opp. at 7 n.7, Defendants offer no authority that Plaintiffs may not recover

6    fees for reviewing a document produced by an Intervenor in an effort to counter Defendants' and

7    Intervenors' joint resistance to Plaintiffs' remedy request, but may recover only fees incurred

8    reviewing documents Defendants themselves produced.  *See, e.g.*, Exh. 4 to Defs' Opp., Dkt. No.

9    642-4, at 4 (objecting to entries for reviewing Intervenors' documents).  Nor do Defendants offer

10   any authority that where Defendants attended depositions, cross-examined the deponents, and

11   utilized evidence from the depositions in their briefs resisting Plaintiffs' remedy request,

12   Defendants are not responsible for Plaintiffs' fees related to the depositions because Defendants

13   themselves did not notice the depositions, or because Defendants describe their role at the

14   deposition as "minor."  (Defendants assert that authority for their position is found on page 7 of

15   their brief.  Dkt. No. 642-5 at 2.  The page references no authorities.)

16         Following summary judgment in Plaintiffs' favor, Defendants could have proceeded to

17   prepare the EIS per the Court's order, and allowed Intervenors to oppose a remedy that would

18   halt planting in the interim.  Defendants chose instead to aggressively oppose any such relief,

19   primarily for the benefit of Intervenors.  Defendants cannot now avoid responsibility for their

20   litigation positions by hiding behind Intervenors' skirts.  In *Southwest Ctr. For Biological*

21   *Diversity v. Bartel*, No. 98-CV-2234-B (JMA), 2007 WL 2506605 (S.D. Cal. Aug. 30, 2007),

22   which Defendants cite, the court found that where the intervenors' and the federal defendants'

23   positions were aligned, "the issues raised by the … Intervenors were variations of the positions

24   of the Federal Defendants," and the "briefs necessarily intertwined essential issues and thus

25   cannot be easily compartmentalized," no reduction in fees was appropriate.  *Id.* at *10.  The court

26   similarly rejected the government's argument that fees incurred in settlement discussions with

27   the intervenors were not recoverable, noting "Federal Defendants have not stated that they did

28   not oppose the Plaintiffs' attempts to settle at this stage of the litigation or that they took 'no

1   position' on the desirability of settlement, thus, this factor is not present." *Id*. at *11. *See also*

2   *id*. at *12 (federal defendants should bear the cost of all of the settlement discussions "since that

3   portion of the litigation was 'made necessary' by the [federal defendants' underlying unlawful

4   agency action]. The Federal Defendants' position was 'antagonistic' to Plaintiffs' claims and

5   Plaintiffs prevailed on the merits by showing the Federal Defendants were 'remiss in enforcing

6   the [ESA].'") (citation omitted).

7

8   **VII.  PLAINTIFFS' ATTORNEYS' WORK IS RELATED TO THIS CASE AND IS ADEQUATELY DESCRIBED**

9          Defendants' argument that fees for time "not sufficiently described" relies on two

10  inapposite cases that Defendants seek to parlay into a rule that all time that identifies a task, such

11  as a telephone call between counsel, without also describing the subject matter of the telephone

12  call (*e.g.*, "telephone call re litigation strategy"), should be stricken. Once again, Defendants

13  overreach. In *Prineville Sawmill Co. v. Longview Fibre Co*., No. 01-1073-BR, 2003 WL

14  23957141, at *2 (D. Or. 2003), the court excluded some "block billed" time. The case contains

15  no support for Defendants' argument that they need not compensate for tasks (*e.g*., telephone

16  calls) unless the subject matter of the call has been identified. The Ninth Circuit defines block

17  billing as "the time-keeping method by which each lawyer and legal assistant enters the total

18  daily time spent working on a case, rather than itemizing the time expended on specific tasks."

19  *Welch*, 480 F.3d at 945 n.2. An entry stating that one attorney had a telephone call or conference

20  with another attorney is permissible and compensable, without any requirement that the entry

21  describe what the attorneys discussed, if the amount of time spent on that task is noted. *See*

22  *Natural Res. Def. Council,* 2011 WL 1034255, at *10 (rejecting government's claim of "block

23  billing," and holding: "Entries that specify the tasks billed do not constitute block billing.")

24  (citing *Citizens for Better Forestry v. U.S. Dep't of Agr.*, No. 08-01927 CW, 2010 WL 3222183,

25  at *11 (N.D. Cal. Feb. 14, 2011)).

26         Moreover, the *Prineville Sawmill* court was concerned about a lack of specificity because

27  it was very pervasive, and most important, because the court had already determined that the

28  movant admitted it was entitled to recover only fees incurred for defending a particular claim,

1    and the entries did not contain sufficient detail to enable the court to determine which fees

2    pertained to that claim.  *Id*. at *2.  Thus, the court could not determine whether <u>any</u> of the

3    claimed fees were awardable, and denied an award of fees completely.  *Id.*  No such problem is

4    presented in this case; there exists no claim on which Plaintiffs did not prevail in the sense that

5    an award of all associated fees should be denied.

6         Similarly, in *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv*., No. 07-CV-358-PK,

7    2008 WL 4866063, at *16 (D. Or. Nov. 5, 2008), the billing practice the court disallowed bears

8    no comparison with those Plaintiffs used here.  That court noted the complete failure to

9    document the claimed time:  "There is no indication as to the date or dates on which Mr. Anuta's

10   work took place or as to the nature of the tasks Mr. Anuta performed; nor is there any indication

11   that Mr. Anuta himself maintained any contemporaneous record of his time expenditures."  *Id.* at

12   *15.  Nothing remotely like this appears in this case.

13        Defendants have not identified any entries that fail for lack of specificity as disallowed by

14   any cited authority.  They have identified block billing only as to one attorney's time during her

15   first few weeks on the case during February and March of 2010.  *See* Dkt. No. 642-6 at 16

16   (Kateryna Rakowsky, a total of 92.79 hours).  The appropriate approach is to discount these

17   particular hours modestly; in *Welch*, the court reversed as clear error a 20 percent across-the-

18   board fee reduction for block billing, and deemed a 40 percent discount of only the block-billed

19   time as "well above" the appropriate discount.  480 F.3d at 948.

20        Defendants' effort to exclude fees for work it claims was "unrelated to the litigation"

21   shows only that whoever drafted Defendants' brief has little understanding of the connection

22   between the challenged work and this litigation, and objections that some entries are "overly

23   vague" are petty and arbitrary.  For example, Defendants challenge all hours Plaintiffs spent

24   studying *Geertson Seed Farms v. Johanns,* 2007 WL 518624 (N.D. Cal. Feb. 13, 2007), as

25   "work performed in another matter."  Defs' Opp. at 9.  This is absurd.  *Geertson Seed Farms* was

26   more relevant to this litigation than any other single case.  In that case, some of the same

27   plaintiffs alleged very similar claims in this court concerning another genetically engineered crop

28   against the same government agency and intervenor as in this case, and the Court in this case

1   cited *Geertson Seed Farms* repeatedly in its rulings.  *E.g.,* Dkt. No. 139 at 3, 12-13.  During the

2   remedy phase of this case, the Court required the parties to brief the significance of the *Geertson*

3   *Seed Farms* ruling the Supreme Court had just handed down.  *See* Dkt. No. 523.

4           As another example, Defendants assert that research regarding sugar exports and sugar

5   beets in Colorado are unrelated to the litigation.  *See* Dkt. No. 642-6 at 13-14.  However,

6   Defendants argued vigorously (and unsuccessfully) that granting Plaintiffs relief would adversely

7   affect sugar prices, *see* Dkt. No. 393, and this entry was a small part of the many hours Plaintiffs

8   spent researching their opposition.  Defendants cite as "unrelated" an entry for time attempting to

9   obtain a declaration from an organization on the effect denying relief would have on consumer

10  choice regarding sugar.  *See* Dkt. No. 642-6 at 14 ("Catholic healthcare west dec discussion,

11  consumer choice issue.").  Yet this was a central issue in the remedy phase.  *See, e.g.,* Dkt. No.

12  194-1 at 7 (briefing on loss of consumer choice).  An entry about "West Coast Beta Seed RR

13  bolters in potting soil" also is identified as "unrelated," Dkt. No. 642-6 at 14, yet this also was a

14  critical issue in the case.  *See* Dkt. Nos. 194-1 at 8 & 200-2 (describing Betaseed's bolting sugar

15  beet seedlings found in potting soil).  An entry for case "correspondence re declarant for DOJ/

16  antitrust issues," Dkt. No. 642-6 at 15, and "call with possible DOJ investigation declarant – Neil

17  Harl," *id.*, relate plainly enough to Plaintiffs obtaining a declaration from Dr. Harl concerning a

18  Department of Justice investigation into Intervenor Monsanto's monopolistic practices in the

19  genetically engineered seed market, which supported an argument Plaintiffs made in the remedy

20  phase.  *See* Dkt. No. 329 at 6-7 (citing Harl decl., Dkt. No. 330).  The entry "paragraph for brief

21  on highly confidential document," Dkt. No. 642-6 at 15, documents the drafting of a paragraph

22  concerning highly confidential discovery information for redacted portions of Plaintiffs' 4/9/10

23  Memorandum in Support of Permanent Injunction, Dkt. No. 329.  Whether or not all of the

24  hundreds of time entries in this case are models of precision and clarity, they are all more than

25  adequate to support a fee award.

26

27

28

## VIII.   NO REDUCTION FOR INELIGIBLE PLAINTIFFS IS APPROPRIATE

Defendants' arguement that Plaintiffs' fees should be reduced because not all Plaintiffs are eligible for a fee award under EAJA, Defs' Opp. at 9, effectively asks the Court to abandon the rule applied in this Court and elsewhere within the Ninth Circuit, and adopt the approach in *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 393 (2d Cir. 1985), without offering any reason why the Court should do so.  In *League for Coastal Prot. v. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911 (N.D. Cal. Dec. 22, 2006), this Court held that no reduction in an EAJA fee award was appropriate where the plaintiffs included the ineligible Sierra Club, and the Sierra Club played a relatively minor role in the litigation, did not contribute significantly to attorneys' fees and expenses, and the case would have been filed without it.  *Id*. at *3.  *See also Citizens For Better Forestry v. U.S. Dep't of Agr.*, No. 08-01927 CW, 2010 WL 3222183, *1 n.2 (Aug. 13, 2010) (same); *Wash. Dep't of Wildlife v. Stubblefield*, 739 F. Supp. 1428, 1432 (W.D. Wash. 1989) (ineligible party did not warrant fee reduction); *Sierra Club v. Hankinson*, No. CIV.A.1:94-CV2501MHS, 1997 WL 33303277, at *3 (N.D. Ga. April 18, 1997) (same).  The court in *La. ex rel. Guste v. Lee*, 853 F.2d 1219 (5th Cir. 1988) remanded for a determination whether the ineligible party was "fully willing and able to prosecute the action," or its participation was "nominal or narrow"—the same rule this Court has applied.  *Id.* at 1225.

Plaintiffs submitted uncontradicted evidence that the ineligible plaintiffs played minor roles in this case and would not have brought the case on their own, and that the case would have been filed without them.  Dkt. Nos. 629, ¶ 7; 632, ¶¶ 1-2; 633, ¶¶ 4-5.  Under this Court's prior rulings, this is sufficient, and no reduction in the fee award is warranted.

## IX.   CONCLUSION

To avoid paying the piper, Defendants argue rules that do not exist and seek to extend existing rules far beyond what the cases support, with little regard for the facts of this case. Plaintiffs trimmed nearly $300,000, or about ten percent, from their fees before filing their motion in the exercise of billing judgment.  Dkt. No. 627, ¶22.  With the exception noted on page 13 above, no further reduction is warranted.  Moreover, the additional fees Plaintiffs incurred drafting this brief should be included in Plaintiffs' award.  *See* Achitoff decl., Exhs. B and C.

1    Respectfully submitted this 29th day of July, 2011.

2

3                          GEORGE A. KIMBRELL (*Pro Hac Vice*)
                           PAIGE M. TOMASELLI State Bar No. 237737
                           KATERYNA L. RAKOWSKY State Bar No. 246248
4                          Center for Food Safety
                           2601 Mission St., Suite 803
5                          San Francisco, CA 94110
                           T: (415) 826-2770 / F: (415) 826-0507
6                          Emails: gkimbrell@icta.org
                                   ptomaselli@icta.org
7                                  kateryna@icta.org

8                           __/s/____Paul H. Achitoff_____
                           PAUL H. ACHITOFF (*Pro Hac Vice*)
9                          Earthjustice
                           223 South King Street, Suite 400
10                         Honolulu, Hawai'i 96813
                           T: (808) 599-2436 / F: (808) 521-6841
11                         Email: achitoff@earthjustice.org

12                         *Counsel for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28