1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT
8       FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10  CENTER FOR FOOD SAFETY, et al.,          No. C-08-00484 JSW (EDL)
11              Plaintiffs,                  **REPORT AND RECOMMENDATION
                                            RE: PLAINTIFFS' MOTION FOR
12      v.                                   ATTORNEYS' FEES**
13  THOMAS VILSACK, et al.,
14              Defendants.
15  _____/
16          Plaintiffs Center for Food Safety, Organic Seed Alliance, High Mowing Organic Seeds and
17  Sierra Club brought this action in January 2008, challenging Defendants' deregulation of a variety of
18  sugar beet known as Event H7-1, genetically engineered by Monsanto Company to be resistant to
19  Monsanto's Roundup herbicide ("Roundup Ready sugar beets").  Plaintiffs alleged that the
20  deregulation decision violated the National Environmental Protection Act (NEPA), 42 U.S.C. §§
21  4321-4335, the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the Plant Protection Act
22  (PPA), 7 U.S.C. § 7711, et seq.  Judge White granted intervention with respect to the remedy phase
23  for Intervenors Monsanto Company, seed companies and root crop growing cooperatives, and
24  allowed the Intervenors to file amicus briefs in the merits phase.
25          On September 21, 2009, Judge White granted Plaintiffs' motion for summary judgment and
26  denied Defendants' cross-motion for summary judgment, finding that Defendants violated NEPA in
27  some aspects of their analysis.  Judge White ordered Defendants to prepare an EIS, and concluded
28  that since Defendants would have to do so before issuing a new decision as to whether to deregulate,
    it was unnecessary to decide Plaintiffs' PPA claim.  In January 2010, Plaintiffs sought a preliminary

injunction, which was denied.

On August 13, 2010, Judge White vacated Defendants' deregulation of Event H7-1 sugar beets, immediately making all further planting of the crop unlawful. Finding that the vacatur was sufficient to redress Plaintiffs' injuries, Judge White denied Plaintiffs' requested permanent injunctive relief. Judge White also denied Defendants' request that the matter be remanded without vacatur, denied Defendants' request that the vacatur be stayed, denied Defendants' request that the court order a partial deregulation or interim conditions that would allow continued planting of the crop, and denied Defendants' request for an evidentiary hearing.

On June 16, 2011, Plaintiffs filed a motion for attorneys' fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Plaintiffs seek $2,814,056 in fees and $66,553.59 in costs. Defendants argue that Plaintiffs are not entitled to any more than $604,215.06 in fees and $66,553.59 in costs. See Defs.' Ex. 9. On June 22, 2011, Judge White referred this motion to this Court for a Report and Recommendation. The Court held a hearing on August 23, 2011. For the reasons stated at the hearing and in this Order, the Court recommends granting in part Plaintiffs' motion as described below.[1]

**Legal Standard**

A party seeking an award of attorney's fees, costs, and other expenses under the EAJA must, within thirty days of final judgment, submit an application which shows that the party is a prevailing party and is eligible to receive an award under the EAJA as well as the amount sought, including an itemized statement from the attorneys. 28 U.S.C. § 2412(d)(1)(B). For the court to award attorneys' fees and costs, Plaintiffs must show that (1) plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make the award unjust; and (3) the requested attorneys' fees and costs are reasonable. 28 U.S.C. § 2412(d)(1)(A).

"Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in

---

[1]   The amount of costs is undisputed and should therefore be paid by Defendants in the amount of $66,553.59.

bringing suit." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983) (citing <u>Nadeau v. Helgemoe</u>, 581 F.2d 275, 278-79 (1st Cir.1978)). "A litigant need not prevail on every issue, or even on the 'central issue' in the case, to be considered the prevailing party. It is enough that he succeed 'on any significant claim affording some of the relief sought, either pendente lite or at the conclusion of the litigation.'" <u>Stivers v. Pierce</u>, 71 F.3d 732, 751 (9th Cir. 1995) (citing <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist</u>., 489 U.S. 782, 790-91 (1989)). "Prevailing party" status may be established by showing a "material alteration of the legal relationship between the parties." <u>Tex. State Teachers Ass'n</u>, 489 U.S. at 792-793. A material "alteration of the legal relationship between the parties" may be effectuated by a judgment on the merits or a court-ordered consent decree. <u>Buckhannon Board v. Dept. of Health & Human Resources</u>, 532 U.S. 598, 605 (2001).

However, an enforceable judgment on the merits and a consent decree ordered by a court are only two examples of such a "material alteration in the legal relationship of the parties" warranting fees under a "prevailing party" fee statute such as the EAJA. <u>See</u> <u>Watson v. County of Riverside</u>, 300 F.3d 1092, 1096 (9th Cir. 2002). Other examples include preliminary injunctions (<u>see</u> <u>Watson</u>, 300 F.3d at 1096 (holding that the plaintiff was still considered a "prevailing party" pursuant to 42 U.S.C. § 1988 since he had a "judicial imprimatur " by successfully obtaining a preliminary injunction, which prohibited the defendants from introducing an arrest report)) and declaratory judgments even in the absence of injunctive relief (<u>see</u> <u>Animal Lovers Volunteer Assoc. v. Carlucci</u>, 867 F.2d 1224, 1225 (9th Cir.1989) (finding that the plaintiffs who received a declaratory judgment that the EA did not support a finding of no significant impact could be considered a "prevailing party")).

**Discussion**

Defendants do not dispute that Plaintiffs are entitled to a fee award under the EAJA. Instead, Defendants argue that any fee award should be reduced because Defendants' position in the remedies phase was substantially justified, and because the fees sought are not reasonable for several reasons, including because Plaintiffs did not prevail on all of their claims, Plaintiffs seek fees for time spent on issues related to intervenors only and Plaintiffs seek fees for other time that is not compensable. Further, Defendants argue that the enhanced hourly rates sought by Plaintiffs' counsel

1    are excessive.

2    **1.      Substantial justification**

3       The federal government bears the burden of showing that its position was "substantially

4    justified." <u>ONRC v. Marsh</u>, 52 F.3d 1485, 1492 (9th Cir.1995); <u>see also</u> <u>Pierce v. Underwood</u>, 487

5    U.S. 552, 565 (1988) (stating that substantially justified does not mean " 'justified to a high degree,'

6    but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a

7    reasonable person."). Defendants do not argue that the agency action that precipitated this lawsuit

8    or the agency's position during the liability phase of the litigation was substantially justified.

9    Instead, they argue that their position in the remedies phase of the litigation was substantially

10    justified because it was grounded in Supreme Court precedent, and that therefore, Plaintiffs are not

11    entitled to any fees after the summary judgment order in September 2009. <u>See</u> <u>Monsanto v.</u>

12    <u>Geertson Seed Farms</u>, 130 S. Ct. 2743 (2010).

13       Defendants, however, have cited no authority for parsing an EAJA fee request in this

14    manner, and there is authority to the contrary. <u>See</u> <u>Commissioner, INS v. Jean</u>, 496 U.S. 154, 158-

15    59, 161-62, 165 (1990) ("The most telling answer to petitioners' submission that they may assert a

16    "substantial justification" defense at multiple stages of an action is the complete absence of any

17    textual support for this position. . . . While the parties' postures on individual matters may be more

18    or less justified, the EAJA - like other fee-shifting statutes - favors treating a case as an inclusive

19    whole, rather than as atomized line-items. . . . The "substantial justification" requirement of the

20    EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that

21    properly focuses on the governmental misconduct giving rise to the litigation."); <u>United States v.</u>

22    <u>Marolf</u>, 277 F.3d 1156, 1163-64, n.5 (9th Cir. 2002) ("Notwithstanding the government's partly

23    reasonable litigation position, we hold that the government's position as a whole was not

24    substantially justified. In so holding, we 'properly focus[] on the governmental misconduct giving

25    rise to the litigation.' A reasonable litigation position does not establish substantial justification in

26    the face of a clearly unjustified underlying action," although stopping short of adopting an automatic

27    rule) (internal citation omitted); <u>Hells Canyon Pres. Council v. US Forest Service</u>, 2004 WL

28    1853134, at *1 (D. Or. Aug. 18, 2004) ("Thus, even if the government's litigation position is

justified, it cannot meet its burden if the underlying conduct was not. And even when some aspects of the government's position were substantially justified, the court may still find that the government's overall position was not.") (internal citations omitted). Here, Defendants have not shown that their conduct prior to the remedies phase was substantially justified, so they have not shown substantial justification.

**2.      Reasonableness of the fee request**

Plaintiffs state that they have expended 6,475.52 hours in this case, for total attorneys' fees in the amount of $3,111,208.00. Declaration of Paul Achitoff (Achitoff Decl.) ¶ 22. Plaintiffs applied billing judgment to eliminate 638 hours of attorney time with a market value of over $297,000. Id. ¶ 18. Plaintiffs also eliminated time spent by attorneys Henkin, Reames, Mendelson, Haskins, Kaulukukui, and all the time spent by two law clerks. Accordingly, Plaintiffs seek a total of $2,814,056.00 in attorneys' fees for 5,837.52 hours of time spent on this case.

**A.      Success on Plaintiffs' claims**

A court may consider the results obtained when considering whether to adjust a fee award upward or downward. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley, 461 U.S. at 435. The Hensley Court stated:

> This [results obtained] factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

Hensley, 461 U.S. at 434. As to the first question, "in some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," such that "counsel's work on one claim will be unrelated to his work on another claim." Id. at 435. In those cases, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" Id. (internal citation omitted). As to the second question, "a reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of

**United States District Court**
For the Northern District of California

the litigation as a whole." <u>Id.</u> at 440.  Further,

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

<u>Hensley</u>, 461 U.S. at 435.  Defendants argue that any fee award should be reduced in light of the limited degree of success that Plaintiffs obtained in this case.

### i.     PPA claim

Defendants argue that Plaintiffs' PPA claim was unsuccessful, so the fee award should be reduced by ten percent to account for that claim.  Defendants argue that the PPA claim was unrelated to the NEPA claim, and involved a distinct challenge to Defendants' determination that Roundup Ready sugar beets did not pose a plant pest risk based on the analysis in its Plant Pest Risk Assessment.  Further, Defendants note that the factual and legal issues raised under the substantive PPA were different than those raised under the procedural NEPA, citing <u>Hells Canyon</u>, 2004 WL 1853134, at *5 (excluding time spent on unsuccessful ESA claim when the plaintiff prevailed on NEPA claim) and <u>Sierra Club v. US Dep't of Transp.</u>, 1998 WL 289316, at *6 (N.D. Cal. Apr. 6, 1998) ("In fixing the fee amount to be awarded, the Court will look to only those expenditures related to the noise impact violation upon which plaintiffs prevailed, and will not grant an award for those expenditures related to alleged NEPA violations upon which plaintiffs were unsuccessful.").  However, <u>Hells Canyon</u> and <u>Sierra Club</u> are inapposite.  In <u>Hells Canyon</u>, the plaintiff conceded that it was not entitled to fees on the ESA claim.  Further, in both <u>Hells Canyon</u> and <u>Sierra Club</u>, the courts declined to award fees for claims and legal theories that were expressly found to have no merit.

Here, by contrast, Judge White did not conclude that the PPA claim lacked merit, but instead found it unnecessary to reach the PPA claim because he had already held that Defendants violated NEPA.  <u>See</u> <u>Center for Food Safety v. Vilsack</u>, C-08-484 JSW (EDL) (N.D. Cal. Sept. 21, 2009) (Order Regarding Cross-Motions for Summary Judgment (docket no. 139) at 14, n.4) ("Moreover, because the Court has concluded that APHIS must prepare an EIS before approving the petition to deregulate Roundup Ready sugar beets, the Court need not address whether APHIS also violated the

PPA."). Therefore, the fee award should not be reduced to account for time spent on the PPA claim.

### ii. Remedies phase

Defendants argue that Plaintiffs' fee award should be reduced due to Plaintiffs' limited success in the remedies phase of this case. See Citizens for Better Forestry v. USDA, 567 F.3d 1128, 1133 (9th Cir. 2009) (in determining that a plaintiff was not a prevailing party, stating that: "But a favorable determination on a legal issue, even if it might have put the handwriting on the wall, is not enough by itself. A 'favorable judicial statement of law,' as Citizens obtained here, cannot substitute for 'a form of judicial relief,' such as declaratory judgment."); see also Save San Francisco Bay Ass'n v. US Dep't of Interior, 2006 WL 1581882, at *6-7, 9-10 (E.D. Cal. June 6, 2006) (reducing the fee award for various phases of the case that the court determined could stand-alone). Defendants argue that because Judge White denied Plaintiffs' preliminary injunction motion, filed after his ruling on the merits, Plaintiffs are not entitled to recover any fees related to this component of the case. See Defs.' Ex. 2. The Ninth Circuit, however, has rejected Defendants' argument:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense.
>
> We hold, instead, that a plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.

Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991).

Further, Plaintiffs persuasively argue that even though the motion was denied, Judge White made findings of irreparable harm and the inequity of continuing the status quo at that time that he later cited in support of the order of vacatur. Defendants have not shown that the denial of the preliminary injunction motion was such a separate phase of this case that the fee award should be reduced by the amount attributable to that motion. Plaintiffs ultimately obtained the relief they sought, that is, an order requiring the preparation of an EIS, and a halt to further production of

1   Roundup Ready sugar beets absent a new agency action.

2       Defendants also argue that in the permanent remedy phase of this case, Judge White denied

3   Plaintiffs' request for permanent injunctive relief and granted only a vacatur, while allowing

4   already-planted Roundup Ready sugar beets to remain in the ground. Thus, Defendants argue that

5   Plaintiffs did not obtain all the relief they sought in this case and the award for fees related to the

6   remedy phase should be reduced by thirty percent because the majority of Plaintiffs' briefing on

7   permanent relief focused on entry of an injunction and expressed concern with a vacatur-only

8   remedy. See Defs.' Ex. 3. Plaintiffs, however, note that Judge White declined to issue a permanent

9   injunction because he concluded that the relief that he ordered was sufficient to address Plaintiffs'

10  injury, and ruled that the denial was without prejudice to further relief if Intervenors violated the

11  vacatur in the future:

> 12 Plaintiffs seek an injunction in addition to the vactur of the deregulation decision. The Supreme Court recently stated in Monsanto, 130 S.Ct. at 2761, that recourse to
> 13 the "additional and extraordinary relief of an injunction" was not warranted if a less drastic remedy, such as a vacatur of APHIS's deregulation decision, was sufficient to
> 14 redress the plaintiff's injury. Here, Plaintiffs' only argument that a vacatur would not be sufficient to redress their injury is that Defendant-Intervenors or other third parties
> 15 might violate the vacatur and APHIS might not be able to enforce the reinstated regulated status of genetically engineered sugar beets. (Plaintiffs' Suppl. Br. at 5-6.)
> 16 The Court finds that any injury from such conduct is purely speculative and dependant on future conduct, and therefore, finds that Plaintiffs' request for an
> 17 injunction is not warranted. Accordingly, the Court denies Plaintiffs' request for a permanent injunction. This Order is without prejudice to Plaintiffs seeking further
> 18 redress if, after the deregulation decision is vacated, Plaintiffs can demonstrate that Defendant-Intervenors or other third parties have in fact violated the vacatur.

19

20  See Center for Food Safety v. Vilsack, C-08-484 JSW (EDL) (N.D. Cal. Aug. 13, 2010) (Order

21  Regarding Remedies (docket no. 570) at 8-9). Thus, Plaintiffs have argued persuasively that they

22  obtained "excellent results" despite the denial of permanent injunctive relief and are therefore

23  entitled to a "fully compensable fee." Hensley, 461 U.S. at 435.

24      **B.      Time spent on intervenors' issues**

25      Defendants argue that Plaintiffs should not be compensated for hours spent on issues raised

26  by the intervenors rather than by government defendants.[2] See Love v. Reilly, 924 F.2d 1492, 1495-

27  96 (9th Cir. 1991) ("Similarly, an award against the government for fees incurred by [the plaintiff] in

28

---

[2]      Plaintiffs note that they do not seek fees relating to the intervention motions themselves.

opposing the stay is unjust because the government did not join the intervenors' motion to stay, and [the plaintiff] has not shown that the attorney's fees attributable to fighting the stay were incurred in opposing government resistance.  Consequently, the award of fees by the district court for the opposition to the stay was error."); Sw. Ctr. for Biological Diversity v. Bartel, 2007 WL 2506605, at *9-10 (S.D. Cal. Aug. 30, 2007) (denying fee award for time spent on tasks that were generated solely by private parties); Lands Council v. Swick, 2005 WL 3241184, at *8 (D. Idaho Nov. 23, 2005) ("Where plaintiffs are opposing a motion filed by private defendants and the government did not join the motion, an award for fees against the government for that particular motion 'would be manifestly unfair and contrary to historic fee-shifting principles.'") (internal citation omitted); Hells Canyon, 2004 WL 1853134 at *7 (excluding time spent on intervenors' motion).  Here, Defendants argue that they took no position on intervention in this case.  Defendants deny that they worked "hand in glove" with intervenors, and argue that Defendants' litigation efforts were in furtherance of the interests of the United States, not the Intervenors.  Further, Defendants note that Plaintiffs and Intervenors had discovery disputes in which Defendants had no role.  See Center for Food Safety v. Vilsack, C-08-484 JSW (EDL) (N.D. Cal. Apr. 29, 2010, May 5, 2010, May 12, 2010) (Minute Orders at docket numbers 347, 350, 402).  Defendants argue that the bulk of document review in this case involved document produced by the Intervenors, not by Defendants, and that Plaintiffs expended time on evidentiary objections brought by the Intervenors, not by Defendants.  Accordingly, Defendants argue that 1085.5 hours should be deleted from the fee request for time spent on matters relating only to Intervenors on intervention issues, discovery or evidentiary objections.

Even if Defendants and the Intervenors did not have identical interests in this case, Plaintiffs persuasively argue that the time entries challenged by Defendants in this category were incurred in the remedies phase, during which time Defendants were heavily involved in the motion practice and litigation, and often aligned with the Intervenors.  Further, Defendants have cited no authority for Defendants' request to exclude fees attributable to review of Intervenors' documents for the purpose of countering Defendants' and Intervenors' joint resistance to Plaintiffs' remedy request.  See Defs.' Opp. Ex. 4 at 4.

Finally, Plaintiffs argue that Defendants chose to vigorously oppose any relief directed at halting planting, which was primarily for the benefit of Intervenors, so the tasks associated with opposing the Intervenors' position are compensable.  See Sw Ctr. for Biological Diversity v. Bartel, 2007 WL 2506605, at *10 (S.D. Cal. Aug. 30, 2007) ("To the extent that there are overlapping expenses during the preparation of the summary judgment motions that disposed of the merits of the entire action, the Court finds that the issues raised by the Builder Intervenors were variations of the positions of the Federal Defendants. Both the Builder Intervenors and the Federal Defendants opposed the Plaintiffs' motion for summary judgment on the Third Amended Complaint. Federal Defendants, like the Builder Intervenors, sought to defeat the Plaintiffs' claims, for instance, that the ITP violated the ESA because the regional plan provided inadequate mitigation measures. In some instances, the Builder Intervenors provided additional arguments to those provided by the Federal Defendants, but the Federal Defendants were clearly adverse to the Plaintiffs' position in this aspect of the case. Plaintiffs' reply brief quickly disposes of any additional arguments presented by the Builder Intervenors.").

Plaintiffs have shown that the positions of Defendants and Intervenors were intertwined in the relief phase and not readily compartmentalized.  Accordingly, the hours in this category should not be reduced.

### C.    Depositions

Defendants argue that the Court should reduce the time Plaintiffs spent on deposition activities by thirty percent because Defendants did not notice any depositions in this case, nor did Plaintiffs notice any depositions of Defendants' witnesses.  Defendants also argue that they played a minor role in the depositions that were taken in this case, and that they only attended (at times telephonically) seven depositions.  Thus, Defendants argue that the Court should reduce the time spent on deposition activities by thirty percent.  See Defs.' Ex. 5.

Plaintiffs counter that even though Defendants did not notice any depositions and may have played a minor role in depositions that were taken, Defendants attended some depositions and used evidence from the depositions in their briefs resisting Plaintiffs' remedy request.  As an example, at the hearing, Plaintiffs noted that even though Defendants did not attend the deposition of

Intervenors' expert Susan Manning, Defendants' expert relied on at least some portions of her expert report.

However, given that Defendants did not notice any depositions and Plaintiffs did not depose any government witnesses, there has been no showing that the entire amount of fees incurred for deposition activities were attributable to Defendants' involvement in this case. Accordingly, fees in this category should be reduced by thirty percent.

### D. Vague billing entries

Vague billing entries may be excluded from the fee award. See Prineville Sawmill Co. v. Longview Fibre Co., 2003 WL 23957141, at *2 (D. Or. 2003) ("Defendant's bills also reflect many entries for items such as 'conference,' 'telephone call with ...,' 'correspondence to ...,' 'review facsimile from ...' with no description of the subject of the conference, the call, or the correspondence. The Court, therefore, cannot assess the reasonableness of the requested time based on the information in these entries."). As an example of vague entries, Defendants point to billing entries such as "t/c from W. Rostov; t/c to D. Reames; emails to/from G. Loarie." See Defs.' Ex. 6 at 1 (entry dated 12/05/07). This entry, which is .8 hours, is impermissibly vague; there is no indication that the time spent was attributable to this case. Other entries challenged by Defendants, however, are not unduly vague because they contain additional information in the entry that could connect the entry to work done in the case, for example, "emails to/from P. Goldman; t/c to G.Loarie; t/c to W. Rostov; emails to/from B. Smith; research facts re herbicide tolerant crops." Id. at entry dated 12/14/07.

Defendants argue that 268.39 hours should be excluded due to vague billing entries. Instead, because there are some billing entries that are too vague for Defendants to evaluate, the hours in this category should be reduced by five percent.

### E. Block billing

As stated at the August 23, 2011 hearing, Plaintiffs do not contest that some of attorney Rakowsky's time was improperly block billed. See Defs.' Ex. 6. The total block billed hours are 92.79. Defendants argue that this time should be excluded. See Hells Canyon, 2004 WL 1853134, at *8 (disallowing block billed time).

11

At the hearing, Plaintiffs reiterated its suggestion that the Court apply a discount to the amount of the block billed time rather than disallow the entire amount. See Welch, 480 F.3d at 948 (finding that it was reasonable for the district court to conclude that block billing makes it more difficult to determine how much time was spent on particular activities, but concluding that the district court erred in applying a twenty percent reduction to all of the plaintiff's requested hours: "In fact, barely more than half of all hours submitted by Welch's counsel were block billed. Reducing the total hours by 20 percent thereby effectively served as a 40 percent penalty on those hours actually block billed, well above the range justified by the Fee Report."). The Welch court noted that a report from the California State Bar's Committee on Mandatory Fee Arbitration concluded that block billing "may increase time by 10% to 30%." Accordingly, because it is undisputed that there was some block billing in this case, Rakowsky's time should be reduced by twenty-five percent to account for it.

**F.      Non-compensable time**

Defendants argue that Plaintiffs should not be compensated for time spent on clerical tasks, public relations, soliciting clients, and matters unrelated to the litigation. See, e.g., Davis v. City and County of San Francisco, 976 F.2d 1536, 1542 (9th Cir. 1992) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."); League for Coastal Protection v. Kempthorne, 2006 WL 3797911, at *8 (N.D. Cal. Dec. 22, 2006) (denying fee award for public relations because the " Plaintiffs have not shown the required direct, intimate relationship between their press activities and success on the merits of the case."). For example, Defendants argue that time spent on press releases is non-compensable. See Defs.' Ex. 2 at 3, 9. Defendants also argue to clerical tasks, such as "filed opening brief" and "discovery log, exporting, Bates stamping," are not compensable. See Defs.' Ex. 2 at 9, 15. The attorney time spent on clerical tasks and press releases is non-compensable because these tasks were not required to be handled by an attorney.

Defendants also argue that the Court should deduct time spent on matters not relevant to this case, including work related to ESA, which was not at issue in this case. See Defs.' Ex. 2 at 3. In addition, Defendants seek to exclude time spent related to Geertson Seed Farms as unrelated to this

case. Id. at 3. Geertson, however, was a relatively recent case involving similar issues to this case and therefore is not unrelated. Defendants also challenge time spent on research on sugar exports and sugar beets in Colorado as unrelated to this case (id. Ex. 6 at 13-14), but as Plaintiffs point out, Defendants argued in this case that granting Plaintiffs' relief would adversely affect sugar prices, so research on sugar beets in other parts of the country was relevant. Defendants challenge an entry that Plaintiffs argue was time spent to obtain a declaration from an organization on the effect denying relief would have on consumers. See id. Ex. 6 at 14 ("Catholic healthcare west dec discussion, consumer choice issue."). Plaintiffs also argue that the entry "West Coast Beta Seed RR bolters in potting soil" (id. at 14) is related to this litigation because it was related to a critical issue in the case. Plaintiffs provided many more examples that are persuasive that many of the time entries challenged by Defendants as unrelated to this litigation are actually related to this case.

The number and scope of the billing entries challenged by Defendants in this category are many, and Defendants have made a showing that at least some of the time is non-compensable. Thus, the hours in this category should be reduced by ten percent.

### G. Ineligible parties

Plaintiffs concede in their motion that Plaintiffs Sierra Club and High Mowing Organic Seeds are not eligible for EAJA fees. See Mot. at n. 1. Defendants argue that the Court should account for this by applying a ten percent discount across the board on the entire fee request. See Defs.' Ex. 2. Also, Defendants argue that the three hours on the time sheets relating specifically to the Sierra Club should be excluded. See Defs.' Ex. 4 at 3, 28; see also Sierra Club v. US Army Corps of Engineers, 776 F.2d 383, 393 (2d Cir. 1985) (reversing district court's denial of fees under EAJA which was based on finding that one of the plaintiffs was ineligible).

In League for Coastal Protection v. Kempthorne, 2006 WL 3797911, at *3 (N.D. Cal. Dec. 22, 2006), the court held that no reduction in an EAJA fee award was appropriate where the plaintiffs included the ineligible Sierra Club because Plaintiffs contended that the Sierra Club played a relatively minor role in the litigation and did not contribute significantly to attorneys' fees and expenses, and that the Sierra Club's role in the case was not material and the case would have been filed without it. Here, Plaintiffs have submitted similar evidence. See Kimbrell Decl. ¶ 7 ("CFS

13

[Center for Food Safety] would have joined this case without the participation of the Sierra Club.");

Stearns Decl. ¶ 2 (HMOS [High Mowing Organic Seeds] was not the Lead Plaintiff in this case.  In

fact, other than responding to requests for discovery made by Defendants, HMOS invested minimal

time in the litigation.  HMOS is not paying the costs of litigation for any other Plaintiffs in this case,

not paying any fees to Center for Food Safety or Earthjustice for legal representation.  HMOS staff

did not draft any pleadings or briefs or argue the case, and its role was not otherwise material.");

Carman Decl. ¶ 4-5 (". . . Sierra Club did not have plans to independently litigate the deregulation of

Roundup Ready sugarbeets and the Sierra Club would not have pursued the litigation without the

involvement and leadership role of Center for Food Safety.").

Thus, the Court does not recommend an across the board discount on fees due to the

ineligibility of the Sierra Club and High Mowing Organic Seeds.  However, the hours in this

category should be reduced by three hours for time specifically relating to the Sierra Club.

### H.    Time spent on fees motion

"Preparation of an application for attorney fees does not require specialized or distinctive

knowledge within the meaning of the EAJA."  <u>Lucas v. White</u>, 63 F. Supp. 2d 1046, 1063 (N.D. Cal.

1999).  Therefore, the time spent on the fees motion should be calculated at the EAJA statutory rate,

rather than an enhanced rate.  <u>See</u> Defs.' Ex. 8.

### I.    Time spent in travel

Plaintiffs do not dispute that travel time should be compensated at the statutory rate rather

than an enhanced rate.  Thus, fees for travel time should be awarded at the EAJA statutory rate

rather than at an enhanced rate.

### 2.    Hourly rates

The EAJA sets a base rate of $125 per hour, but provides that a court may award higher rates

if it "determines that an increase in the cost of living or a special factor . . . justifies a higher fee."

28 U.S.C. § 2412(d)(2)(A).  The statute states:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the
> reasonable cost of any study, analysis, engineering report, test, or project which is
> found by the court to be necessary for the preparation of the party's case, and
> reasonable attorney fees (The amount of fees awarded under this subsection shall be
> based upon prevailing market rates for the kind and quality of the services furnished,
> except that (i) no expert witness shall be compensated at a rate in excess of the

1  highest rate of compensation for expert witnesses paid by the United States; and (ii)
2  attorney fees shall not be awarded in excess of $125 per hour unless the court
   determines that an increase in the cost of living or a special factor, such as the limited
3  availability of qualified attorneys for the proceedings involved, justifies a higher fee.

4  Id. The rate should be adjusted for the cost of living since 1996. See U.S. v. Real Property Known

5  as 22249 Dolorosa Street, Woodland Hills, Cal.,190 F.3d 977, 984-85 (9th Cir. 1999) (stating that

6  adjustment of cost of living is proper). The adjusted rate is calculated by enhancing the base hourly

7  rate of $125 by the consumer price index for urban consumers for the year in which the fees were

8  earned. Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001). Plaintiffs' counsel states that the

9  adjusted rate in San Francisco is $186.48. Achitoff Decl. ¶ 20. Defendants state, however, without

10 dispute from Plaintiffs, that the Ninth Circuit has published adjusted rates of $172.85 in 2008,

11 $172.24 in 2009 and $175.06 in 2010, so the Court will apply those rates.

12      To determine whether a special factor justifies an enhanced rate, the Court applies a three-

13 part test: "First, the attorney must possess distinctive knowledge and skills developed through a

14 practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those

15 skills must not be available elsewhere at the statutory rate." Love v. Reilly, 924 F.2d 1492, 1496

16 (9th Cir. 1991); Natural Res. Def. Council v. Winter, 543 F.3d 1152, 1158 (9th Cir. 2008)

17 (overturning fee determination for one attorney who did not possess specialized knowledge).

18 "Environmental litigation is an identifiable practice specialty that requires distinctive knowledge."

19 Love, 924 F.2d at 1496; see also Winter, 543 F.3d at 1158 ("the statute [EAJA] contemplated

20 attorneys qualified 'in some specialized sense, rather than just in their general legal competence,'

21 such that 'attorneys hav[e] some distinctive knowledge or specialized skill needful for the litigation

22 in question.'") (citing Pierce, 487 U.S. at 572). Further, the Ninth Circuit stated:

23      Although environmental litigation may constitute an identifiable practice specialty,
        Plaintiffs must first establish that their counsel had such a specialty. Animal Lovers
24      Volunteer Ass'n, Inc. v. Carlucci, 867 F.2d 1224, 1226 (9th Cir.1989), abrogated on
        other grounds by Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir.2001).
25

26 Winter, 543 F.3d at 1159-60.

27      Plaintiffs seek the following enhanced hourly rates for counsel: (1) Paul Achitoff, $650; (2)

28 Andrew Kimbrell, $650; (3) Will Rostov, $575; (4) Isaac Moriwake, $525; (5) Greg Loarie, $450;

15

(6) George Kimbrell, $410; (7) Kevin Golden, $410; (8) Paige Tomaselli, $385; and (9) Kateryna Rakowsky, $350. Defendants argue that attorneys Andrew Kimbrell, Isaac Moriwake, Will Rostov and Kateryna Rakowsky are not entitled to an enhanced rate because they lack distinctive knowledge or skills or because they did not do work in this case that required any specialized knowledge. Further, Defendants argue that the enhanced rates sought by Paige Tomaselli, Paul Achitoff, Greg Loarie, George Kimbrell and Kevin Golden are well beyond the rates normally charged to environmental clients and should be reduced.

### A. Specialized knowledge

#### 1. Andrew Kimbrell

Andrew Kimbrell spent sixty-two hours over three years on this case, which is approximately 1% of the total hours that Plaintiffs incurred. Achitoff Decl. Ex. B at 9. Defendants argue that Kimbrell's hours do not show any substantive work on briefs in this matter, so there is no evidence to suggest that his contribution of alleged skills in and knowledge of environmental law or genetic engineering were needed in this case. However, Andrew Kimbrell is the Executive Director and Founder of the Center for Food Safety, and his declaration establishes that he has had over twenty years of experience in environmental law and has litigated cases involving biotechnology and genetic engineering. A. Kimbrell Decl. ¶¶ 2, 10-12, 17. He has authored several books on the environment, technology and society and food issues. Id. ¶ 13. He gives speeches at universities and other public forums, was recently in a film called "The Future of Food," and has testified in congressional and regulatory hearings on environmental and biotechnology issues. Id. ¶¶ 15-16. In this litigation, his timesheet shows that he was heavily involved in settlement discussions and legal strategy, both of which would necessarily involve specialized knowledge of environmental law and genetic engineering in particular. There is no question that Andrew Kimbrell possesses specialized knowledge in the issues raised by this litigation. While Defendants argue that Kimbrell did not use those specialized skills in the work he did in this case, as described below, the Court declines to adopt Defendants' view that each attorney must have specialized skills in each specific task assigned to him in a case.

#### 2. Moriwake

16

Moriwake spent fifty-six hours on this case, which is approximately 1% of the total hours that Plaintiffs incurred. Achitoff Decl. Ex. A. Moriwake graduated from law school in 1998 with a certificate in environmental law. Achitoff Decl. ¶ 10. He has been working at Earthjustice for nine years, where he has litigated environmental cases, including two involving genetic engineering. Id. ¶¶ 11-12. Moriwake worked for two months on this case on issues relating to an expert. Achitoff Decl. Ex. A at 15. Defendants argue that this general litigation work does not support an enhanced hourly rate. There is no question that Moriwake has specialized experience in environmental law and in particular, genetic engineering. While Defendants argue that Moriwake did not use those specialized skills in the work he did in this case, as described below, the Court declines to adopt Defendants' view that each attorney must have specialized skills in each specific task assigned to him in a case.

### 3. Rostov

Rostov spent 35.5 hours in this case, which is approximately .5% of the hours spent in this case. See Achitoff Decl. Ex. B at 26. Rostov worked at the Center for Food Safety from October 2005 to April 2008, after graduating from law school in 1996 and working in a law firm and at Communities for a Better Environment. G. Kimbrell Decl. ¶¶ 19-21. Rostov litigated and developed cases concerning genetically engineered crops, and worked on administrative comments related to the regulation of genetic engineered crops. Id. ¶ 21. Since April 2008, Rostov has been employed at Earthjustice, focusing on global warming an energy issues. Id. ¶ 22. He is an adjunct professor and does speaking engagements relating to environmental law. Id. ¶ 23. Rostov possesses specialized knowledge in the issues raised in this case.

### 4. Rakowsky

Rakowsky graduated from Stanford law school in 2006, and worked as a litigator at Latham & Watkins from September 2006 until May 2009, when she began teaching at the University of California at Hastings College of the Law before joining Center for Food Safety on a contract basis in January 2010 and then full time in March 2010. G. Kimbrell Decl. ¶ 16. Rakowsky has worked on several cases involving genetically engineered food at the Center for Food Safety. Id. ¶ 17. It appears that Rakowsky's experience in environmental law began in 2010 when she joined Center for

1   Food Safety.  Thus, while Rakowsky lacks extensive experience, she does possess specialized skills

2   in the issues raised in this case.

3       **B.    Hourly rates**

4           **1.    Achitoff**

5       Achitoff is Plaintiffs' lead counsel.  He graduated from law school in 1983, and worked as a

6   litigator from 1983 to 1990, when he joined another law firm where he eventually founded the firm's

7   environmental law practice through which he tried cases involving NEPA and other environmental

8   statutes.  Achitoff Decl. ¶ 14.  In 1994, he became a staff attorney with the Sierra Club Legal

9   Defense Fund, which later became known as Earthjustice.  Id. ¶ 15.  He has been managing attorney

10  of Earthjustice's Mid-Pacific office since 1995, and in addition to supervising all of the

11  environmental litigation, he litigates cases.  Id. ¶ 15.  For the past eight years, his specialty has been

12  the environmental impacts of genetically engineered organisms, and he has litigated two cases and is

13  currently litigating three others, including this case.  Id. ¶ 16.  He has taught courses in

14  environmental law, lectured widely on these issues, given continuing legal education classes, and

15  testified to the state legislature about genetic engineering.  Id. ¶ 17.  Achitoff seeks a rate of $650,

16  which he states is the market rate for his time.  Id. ¶ 18.

17      Defendants argue that Achitoff's enhanced rate should be based on his known hourly rate of

18  $250 in two cases in the District of Hawaii, and should not exceed $300 per hour.  See People Who

19  Care v. Rockford Bd. of Educ., School Dist. No. 205, 90 F.3d 1307 (7th Cir. 1996) ("The attorney's

20  actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate.");

21  see also Defs' Ex. 7 (Ocean Mammal Inst. v. Gates, C-07-254 DAE (LEK) (D. Haw. 2/13/2009)

22  ("My normal hourly rate is $250.00."); Center for Food Safety v. Johanns, 2007 U.S. Dist LEXIS

23  77438, * 42-43 (D. Haw. Oct. 18, 2007) (awarding Achitoff $250 per hour for work performed

24  related to the ESA and awarding him the EAJA statutory rate of $143 for work performed related to

25  NEPA).  The Court rejects Defendants' argument that Achitoff's hourly rate in this case should be

26  based on rates that he received several years ago in Hawaii.  The Bay Area legal market is much

27  different than the market in Hawaii, and justifies a higher rate.  See Prison Legal News v.

28  Schwarzenegger, 608 F.3d 446, 454-55 (9th Cir. 2010) ("'Generally, when determining a reasonable

18

hourly rate, the relevant community is the forum in which the district court sits.' Here, the forum is the Northern District of California. The rates prevailing in that district for "similar services by lawyers of reasonably comparable skill, experience, and reputation" thus furnish the proper measure of the reasonableness of the rates billed by PLN's attorneys. Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation," no matter the subject matter.'") (internal citations omitted). Achitoff's enhanced hourly rate of $650 is supported by the declaration of Richard Drury, who has extensive specific experience in attorney's fees matters, particularly in the environmental law area. See Drury Decl. ¶¶ 7-19. Further, as nonprofit pro bono counsel, Achitoff does not have a regular hourly rate independent of the market in the forum where a fee motion is pending. See Achitoff Reply Decl. ¶ 2. Thus, the Court finds that Achitoff's enhanced hourly rate of $650 is reasonable.

### 2. Tomaselli

Tomaselli graduated from law school in 2004 where she focused on environmental law. G. Kimbrell Decl. ¶ 12. Prior to joining the Center for Food Safety, she worked at Sher Leff from 2006 to 2008 representing public water suppliers and public agencies in mass tort litigation involving groundwater contamination. Id. ¶ 13. She has been with the Center for Food Safety since 2008, working on litigation and policy relating to, among other things, genetic engineering. Id. ¶ 14. Plaintiffs seek a hourly rate of $385 for Tomaselli. Id. at ¶ 15; Drury Decl. ¶ 27 (stating that the reasonable hourly rate for Tomaselli is at least $390 per hour).

Defendants argue that Tomaselli should receive an hourly rate of no more than $200 based on their argument, which the Court has rejected, that Achitoff is only entitled to $300 per hour. Defendants provide no evidence to rebut Drury's declaration regarding the reasonable rate for Tomaselli. Further, at the hearing, Plaintiffs stated that Tomaselli has five years of experience in environmental law and that she was an environmental attorney before joining the Center for Food Safety, although her past experience was in mass tort litigation rather than NEPA-related cases. Accordingly, the Court finds that Tomaselli's enhanced rate of $385 per hour is reasonable.

### 3. Loarie

19

1    Loarie graduated from law school in 2001, and began his career at Earthjustice following his

2    second year of law school.  Achitoff Decl. ¶¶ 4-5.  In his ten years at Earthjustice, Loarie had

3    litigated several environmental law cases.  Id. ¶ 8.  Plaintiffs seek an hourly rate of $450 for his time.

4    See Drury Decl. ¶ 27.

5    Defendants argue that Loarie, who had only seven years experience when this case was filed

6    is only entitled to $275 per hour based on their unpersuasive argument that Achitoff is entitled to

7    $300 per hour.  Defendants have failed to rebut Plaintiffs' evidence that Loarie is entitled to an

8    enhanced hourly rate of $450.  Thus, the Court finds that Loarie's enhanced hourly rate of $450 is

9    reasonable.

10                    **4.    George Kimbrell**

11   George Kimbrell graduated from law school in 2004, and completed a clerkship in the Ninth

12   Circuit.  G. Kimbrell Decl. ¶¶ 3-4.  In his six years at the Center for Food Safety, he has focused on

13   litigation involving the impacts of industrial agriculture on the environment, farmers and the public,

14   including working on issues involving genetic engineered food and crops.  Id. ¶ 5.  He has worked

15   on many cases involving genetic engineering, and that also involve NEPA and the PPA.  Id. ¶ 6.  He

16   has authored law review articles on environmental law issues, presented at numerous legal

17   conferences on genetic engineering crop litigation, and has been an adjunct professor in

18   environmental law issues, including genetic engineering.  Id. ¶¶ 8-9.  He also helps to develop legal

19   and policy strategies at the Center for Food Safety.  Id. ¶ 7.  Kimbrell seeks an hourly rate of $410.

20   Id. ¶ 10; Drury Decl. ¶ 27.

21   Defendants argue that when this case was filed, Kimbrell had at most four years of

22   experience and that therefore, his rate should be $250 per hour based on the rejected argument that

23   Achitoff is entitled to $300 per hour.  However, Defendants have provided no authority for that rate

24   and have failed to rebut Plaintiffs' evidence to support this rate.  Accordingly, the Court finds that

25   Kimbrell's enhanced hourly rate of $410 is reasonable.

26                    **5.    Golden**

27   Golden graduated from law school in 2004 with a certificate in environmental law.  G.

28   Kimbrell Decl. ¶ 25.  During his summers in law school he clerked for Communities for a Better

Environment and Earthjustice. Id. Upon graduation, he worked for two years as a legal fellow for Adams Broadwell Joseph & Cardozo, a plaintiff-oriented environmental law firm where he practiced administrative law and environmental law. Id. He worked at the Center for Food Safety from November 2006 through March 2010. Id. While at the Center for Food Safety, Golden focused on public interest environmental litigation and policy concerning genetically engineered crops, including this case and two others. Id. ¶ 26. Plaintiffs seek the hourly rate of $410 for Golden.

Defendants argue that when this case was filed, Golden had at most four years of experience and that therefore, his rate should be $250 per hour based on their unpersuasive argument that Achitoff is entitled to $300 per hour. However, Defendants have provided no authority for that rate and have failed to rebut Plaintiffs' evidence to support this rate. Accordingly, the Court finds that Golden's enhanced hourly rate of $410 is reasonable.

### 6.      Andrew Kimbrell, Moriwake, Rostov, and Rakowsky

Defendants do not specifically challenge the hourly rates sought by Plaintiffs' other counsel. Based on the description of each attorney's experience set forth above, the Court finds that the rates sought are reasonable for the level of each attorneys' experience, and are supported by evidence in the record, including the Drury declaration.

### 7.      Law clerks

During the summer of 2010, Center for Food Safety had three law clerks working on this case. George Kimbrell Decl. ¶ 27. Plaintiffs seek an hourly rate of $145 for these law clerks. Id.; Drury Decl. ¶ 27.

Instead, Defendants argue that $75 per hour is a reasonable hourly rate for law clerks. See Nadarajah v. Holder, 569 F.3d 906, 918 (9th Cir. 2009) (awarding $75 per hour for law clerks where the plaintiffs only sought $75 per hour for law clerks, the government did not object, the fees were incurred on 2004 to 2006 and were incurred in another district, stating: "Based on the Appellate Commissioner's experience, the requested paralegal and law student intern rates are 'in line with those [rates] prevailing in the community for similar services by [paralegals] of reasonably comparable skill, experience and reputation.'"); In re Hunt, 238 F.3d 1098, 1105 (9th Cir. 2001) (awarding $75 per hour for law clerk work and stating that the court was unable to analyze the

1    excessiveness of the fee award on appeal because the relevant documents had not been submitted).

2        Nadarajah and Hunt are inapposite.  Defendants have provided no authority to support an

3    hourly rate of $75 for law clerks in this district during the time this case was filed.  By contrast,

4    Plaintiffs have provided evidence of the reasonableness of the $145 hourly rate.  See Drury Decl. ¶

5    27.  Thus, fees for law clerk work should be awarded at the rate of $145 per hour.

6        **B.        Whether the distinctive knowledge and skills were needed in this litigation**

7        Under the second prong of the Love test, Plaintiffs must also show that counsel's distinctive

8    knowledge and skills were "needful to the litigation" in order to justify fees above the statutory cap.

9    Love, 924 F.2d at 1496.  This case involved much more than a straightforward application of NEPA

10   and PPA.  See Drury Decl. ¶¶ 21-22 ("Additionally, the environmental law field related to

11   genetically-engineered crops is an entirely new field requiring specialized knowledge.  The case at

12   issue here is not a typical NEPA case.").  Rather, counsel's knowledge of environmental law in

13   general, and genetically-engineered crops in particular, was necessary to appropriately craft the

14   complaint in this case and litigate the case successfully through the remedy phase.  See id. ¶ 25 ("I

15   believes that Mr. Paul Achitoff's, Mr. Greg Loarie's and CFS's attorneys' special expertise in

16   environmental law, particularly related to the unique scientific and legal issues related to agricultural

17   biotechnology and the genetic engineering of agricultural crops, was necessary to the success of this

18   litigation."); see also Love, 924 F.2d at 1496 (stating that attorney's knowledge of the Federal

19   Insecticide, Fungicide and Rodenticide Act and familiarity with areas of expert testimony necessary

20   to quickly obtain a preliminary injunction constituted specialized knowledge necessary for

21   litigation).

22       Defendants have cited no authority, and the Court could find none, that requires the Court to

23   examine each specific task to determine whether specialized knowledge was required for each

24   specific task.  Rather, the question is whether an attorney has specialized knowledge that was

25   "needful for the litigation," even if some tasks within the case did not require that specific

26   knowledge.  See Love, 924 F.2d 1496 (stating that an attorney's distinctive knowledge and skills

27   must be "needed in the litigation"); see also Natural Resources Defense Council v. Winter, 543 F.3d

28   1152, 1158 (9th Cir. 2008) (analyzing whether the distinctive knowledge of counsel was "needful to

22

the litigation"); cf. United States v. 22249 Dolorosa St., 190 F.3d 977, 984 (9th Cir. 1999) (stating that even if a case arises in a particular field of law, enhanced fees are not warranted when the action is a "routine . . . case, not needing special skills."). To accept Defendants' invitation to the Court to scrutinize the assignment of each specific task to a particular attorney on a team while in the heat of litigating a complex case such as this one would create a logistical nightmare for staffing complex cases eligible for EAJA fee awards. Such cases necessarily demand specialized substantive experience, but also require generalized knowledge of the applicable federal rules and procedures. In addition, allocating work as litigation unfolds requires flexibility.

Here, Plaintiffs have shown that the specialized knowledge of all counsel was needed in the litigation. For example, as described above, Achitoff has extensive experience in the field of genetically-engineered crops. His specialized experience was necessary to this litigation in his role as lead counsel. Andrew Kimbrell was heavily involved in settlement discussions and legal strategy, for which his extensive experience in environmental law and genetic engineering would have been necessary. Further, even though Moriwake worked on more general aspects of this case, his lengthy experience in environmental law and genetic engineering was needed in this litigation in general, and the ruling on the motion on which Moriwake worked was important to Plaintiff's success and was cited by Judge White in his vacatur opinion. In addition, Rostov's time records show that he worked on drafting the complaint in this case, a task for which his specialized skill and knowledge were necessary. Although Rakowsky and Tomaselli each have only a few years of experience, they have worked on several cases involving genetically engineered food, experience which was needful to this litigation. Finally, Loarie, George Kimbrell and Golden have experience with genetically-engineered crops which is a sub-specialty that was necessary for this case. Under the circumstances of this case, the Court finds that counsel's specialized knowledge was needed in this litigation.

### C. Unavailability of other counsel

Plaintiffs have the burden of providing evidence of the unavailability of appropriate counsel at the statutory rate. See United States v. 22249 Dolorosa St., 190 F.3d 977, 985 (9th Cir.1999). "In other words, the plaintiff must show that the skills required are not available elsewhere at the statutory rate." See Winter, 543 F.3d at 1162. Here, Plaintiffs' counsel states that the specialized

23

skills needed for challenging agency decisions involving genetic engineering "are not generally shared among non-specialized attorneys, even among environmental lawyers." A. Kimbrell Decl. ¶ 6. Plaintiff Center for Food Safety was "unsuccessful in locating any private attorney or firm in the environmental field that would accept the statutory rate under EAJA to litigate a case as complex as this." Id. Further, Achitoff was hired as lead counsel for this case because Plaintiff Center for Food Safety could not "locate a lead attorney with necessary experience and capacity to take on this matter in the Bay Area." Id.; see also Drury Decl. ¶ 22 ("No private attorney or firm in the environmental field would accept the statutory rate under EAJA to litigate a case as complex as this."). Thus, Plaintiffs have met their burden of establishing that no other suitable counsel could be obtained at the statutory rate.

**Conclusion**

Accordingly, the Court recommends granting Plaintiffs' Motion for Attorneys' Fees with the reductions noted above. The parties shall meet and confer and file a stipulation no later than October 28, 2011 reflecting the revised amount of fees recoverable by Plaintiffs in light of the Court's Report and Recommendation.

Any party may serve and file specific written objections to this recommendation within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: October 12, 2011

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge